SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
JOHN A. MOE, II (Bar No. 066893)
john.moe@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone:    (213) 623-9300
Facsimile:    (213) 623-9924

Attorneys for Debtor,
GARDENS REGIONAL HOSPITAL
AND MEDICAL CENTER, INC.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>GARDENS REGIONAL HOSPITAL AND MEDICAL CENTER, INC., dba GARDENS REGIONAL HOSPITAL AND MEDICAL CENTER,[1]<br><br>               Debtor. | Case No. 2:16-bk-17463-ER<br><br>Chapter 11<br><br>(Voluntary Petition Filed:  June 6, 2016)<br><br>**NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION OF DEBTOR FOR ORDER LIMITING SCOPE OF NOTICE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>(Declarations of David Herskovitz and Eric Weissman in Support of Emergency Motions filed concurrently herewith)<br><br>(Filed Pursuant to:  LBR 2081-1(a)(1) and 9075-1(a) )<br><br>Hearing:<br>Date:       June 9, 2016<br>Time:       10:00 a.m.<br>Courtroom: 1568<br>Place:      U.S. Bankruptcy Court<br>               255 East Temple Street<br>               Los Angeles, California 90012<br>Judge:     Hon. Ernest M. Robles |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

---

[1] The Debtor is a California nonprofit public benefit corporation, Fed. Tax I.D. No. 33-0738307. The Debtor's mailing address is 21530 Pioneer Boulevard, Hawaiian Gardens, California 90716.

84806360\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# **TABLE OF CONTENT**

|  |  | Page(s) |
|---|---|---|
| I. | INTRODUCTION | 4 |
| II. | STATEMENT OF FACTS | 4 |
| | A. Jurisdiction and Venue | 4 |
| | B. General Background | 4 |
| | C. General Description of the Debtor | 4 |
| | 1. General Background | 4 |
| | 2. The Debtor's Management | 5 |
| | 3. Medical Staff and Employees | 8 |
| | 4. The Debtor's Market | 8 |
| | 5. The Debtor's Facilities | 9 |
| | 6. The Debtor's Liabilities | 10 |
| | 7. Events Leading to the Filing of This Chapter 11 Case | 11 |
| III. | ARGUMENT | 14 |
| | A. Proposed Limited Notice | 14 |
| | B. The Court Has Authority to Limit the Scope of Notice | 15 |
| | C. Proposed Notice Procedures | 15 |
| | 1. Service of Limited Notice Matters that Are Not Emergency or Expedited Motions | 16 |
| | 2. Service of Limited Notice Matters that Require Emergency or Expedited Relief | 16 |
| | D. The Limited Notice Procedures are Necessary and Appropriate | 17 |
| | E. Service of This Motion | 17 |
| IV. | CONCLUSION | 18 |

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Statutes**

11 U.S.C.
    § 101................................................................................................................4
    § 327..............................................................................................................14
    § 328..............................................................................................................14
    § 329..............................................................................................................14
    § 330..............................................................................................................14
    § 331..............................................................................................................14
    § 363..............................................................................................................14
    § 365..............................................................................................................14
    § 502..............................................................................................................14
    § 554..............................................................................................................14
    § 1102.......................................................................................................14, 16
    § 1103............................................................................................................14
    § 1104............................................................................................................14
    § 1121............................................................................................................14

28 U.S.C.
    § 157...............................................................................................................4
    § 157(b)(2)......................................................................................................4
    § 1334.............................................................................................................4
    § 1408.............................................................................................................4
    § 1409.............................................................................................................4

**Rules and Regulations**

Federal Rules of Bankruptcy Procedure
    Rule 1107(a)...................................................................................................4
    Rule 1007(d) ..........................................................................................1, 3, 16
    Rule 1108 .......................................................................................................4
    Rule 2002(a)(2)............................................................................................14
    Rule 2002(a)(3)............................................................................................14
    Rule 2002(a)(6)............................................................................................14
    Rule 2002(f)..................................................................................................16
    Rule 2002(i) .......................................................................................1, 15, 16
    Rule 2002(m) .........................................................................................1, 15
    Rule 2014......................................................................................................14
    Rule 2016......................................................................................................14
    Rule 2017......................................................................................................14
    Rule 2019(a).................................................................................................14
    Rule 2019(b).................................................................................................14
    Rule 3002......................................................................................................14
    Rule 3003......................................................................................................14
    Rule 3007......................................................................................................14
    Rule 3016......................................................................................................14

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Rule 4001 ..................................................................................................1, 15, 16
Rule 4001(a) ....................................................................................................14
Rule 4001(b) ...........................................................................................1, 14, 15, 16
Rule 6004 ...............................................................................................1, 14, 15, 16
Rule 6005 .........................................................................................................14
Rule 6006 ..................................................................................................1, 15, 16
Rule 6006(a) ....................................................................................................14
Rule 6006(c) ....................................................................................................14
Rule 6007 ........................................................................................................1, 16
Rule 6007(a) ....................................................................................................14
Rule 6007(c) ....................................................................................................14
Rule 9006 ........................................................................................................1, 15
Rule 9007 ........................................................................................................1, 15
Rule 9013 ........................................................................................................1, 15
Rule 9014 ...............................................................................................1, 14, 15
Rule 9019 ...............................................................................................1, 14, 15

Local Bankruptcy Rules
Rule 2081-1(a)(1) ..............................................................................................2, 16
Rule 9075-1 ......................................................................................................17
Rule 9075-1(a)(4) ...............................................................................................2
Rule 9075-1(a)(5) ..........................................................................................17, 18
Rule 9075-1(a)(6) ..................................................................................3, 16, 17, 18

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE, CREDITORS HOLDING THE TWENTY LARGEST UNSECURED CLAIMS, SECURED CREDITORS, PARTIES REQUESTING SPECIAL NOTICE, THE UNITED STATES OF AMERICA AND THE STATE OF CALIFORNIA, AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

**PLEASE TAKE NOTICE** that Gardens Regional Hospital and Medical Center, Inc., a California not for profit corporation, doing business as Gardens Regional Hospital and Medical Center, formerly doing business as Tri-City Regional Medical Center, the above-captioned debtor and debtor in possession (the "Debtor"), hereby moves the Court for entry of an order limiting the scope of notice of certain matters as set forth herein (the "Motion").  By this Motion, the Debtor seeks, pursuant to Rules 2002(i), 2002(m), 4001, 6004, 6006, 6007, 9006, 9007, 9013, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")[2], entry of an order authorizing the Debtor to limit notice of the Limited Notice Matters (as defined in the Memorandum of Points and Authorities) in this chapter 11 case (the "Case") to the following parties:  (1) the Office of the United States Trustee, (2) the creditors appearing on the list filed by the Debtor in accordance with Bankruptcy Rule 1007(d) unless and until an official committee of unsecured creditors (the "Committee") is appointed, then in such event, to counsel of the Committee, (3) parties that file with the Court and serve upon the Debtor requests for notice of all matters in accordance with Bankruptcy Rule 2002(i), (4) the United States of America and the State of California, (5) all alleged secured creditors, and (6) any party with a pecuniary interest in the subject matter of the particular Limited Notice Matter or its counsel.  If the relief requested herein is granted, the burden, complication, delay and cost to the Debtor's estate that is associated with administering the Case and providing notice of the proceedings in this Case to hundreds of parties would be dramatically reduced.

**PLEASE TAKE FURTHER NOTICE** that, because, concurrently with this Motion, the Debtor is filing other motions seeking relief in connection with other matters and will in all

---

[2] All references to "Sections" herein are to the sections of the Bankruptcy Code; all references to "Bankruptcy Rule" herein are to provisions of the Federal Rules of Bankruptcy Procedure.

1    likelihood file various other motions during the first few days of this Case, the Debtor, pursuant

2    to Local Bankruptcy Rule 2081-1(a)(1) of the *Local Bankruptcy Rules of the United States*

3    *Bankruptcy Court of the Central District of California*,[3] requests that this Motion be heard on an

4    emergency basis.  Granting the relief requested in this Motion on an emergency basis will benefit

5    the estate immediately by saving the Debtor the substantial costs of serving the various notices

6    and motions that will be filed in the beginning of this Case on the many parties, including former

7    patients and employees who, if the *Emergency Motion of the Debtor for Entry of an Order:*

8    *(I) Authorizing the Debtor to (a) Pay Prepetition Wages, Salaries, Employee Benefits, and Other*

9    *Compensation; (b) Remit Withholding Obligations; (c) Maintain Worker's Compensation and*

10    *Benefits Programs; (d) Pay Related Administrative Obligations; and (e) Pay Reimbursable*

11    *Employee Expenses; and (II) Authorizing and Directing the Bank to Pay All Checks and*

12    *Electronic Payment Requests Made by the Debtor Relating to the Foregoing* (the "Wage

13    Motion") is granted, will not have any outstanding prepetition claims against the Debtor.

14        **PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice and

15    Motion, the Notice of Emergency Motions that will be filed and served after obtaining a hearing

16    date for the Debtor's "First Day Motions," the attached Memorandum of Points and Authorities,

17    the concurrently filed Declarations of David Herskovitz and Eric Weissman in support of the

18    Emergency Motions, the arguments of counsel, and other admissible evidence properly brought

19    before the Court at or before the hearing regarding this Motion.  In addition, the Debtor requests

20    that the Court take judicial notice of all documents filed with the Court in this Case.

21        **PLEASE TAKE FURTHER NOTICE** that any opposition or objection to the Motion

22    may be presented at any time before or at the hearing regarding the Motion.  You will receive

23    separate notice of the date and time of the hearing.  Your failure to timely object may be deemed

24    by the Court to constitute consent to the relief requested herein.

25        **PLEASE TAKE FURTHER NOTICE** that the Debtor will serve this Notice and

26    Motion, the attached Memorandum of Points and Authorities, and the Declarations of David

27

28

---

[3] Pursuant to Local Bankruptcy Rule 9075-1(a)(4), no separate motion for an expedited hearing is required.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  Herskovitz and Eric Weissman, on (i) the Office of the United States Trustee, (ii) the list of

2  twenty largest general unsecured creditors appearing on the list filed by the Debtor in accordance

3  with *Federal Rule of Bankruptcy Procedure* 1007(d), (iii) the United States of America and the

4  State of California, and (iv) all alleged secured creditors, and (v) any parties who have requested

5  special notice.  To the extent necessary, the Debtor requests that the Court waive compliance with

6  Local Bankruptcy Rule 9075-1(a)(6) and approve service (in addition to the means of services set

7  forth in such Local Bankruptcy Rule) by overnight delivery.  In the event that the Court grants the

8  relief requested by the Motion, the Debtor shall provide notice of the entry of the order granting

9  such relief upon each of the foregoing parties and any other parties in interest as the Court directs.

10  The Debtor submits that such notice is sufficient and that no other or further notice be given.

11      **WHEREFORE**, for all the foregoing reasons, and such additional reasons as may be

12  advanced at or prior to the hearing regarding this Motion, the Debtor respectfully requests that the

13  Court enter an order (i) limiting the scope and manner of notice as set forth herein and in the

14  Memorandum of Points and Authorities attached hereto and (ii) granting such other and further

15  relief as is just and proper under the circumstances.

16

17  Dated:  June 6, 2016                                    DENTONS US LLP
                                                            SAMUEL R. MAIZEL
18                                                          JOHN A. MOE, II

19

20                                                          By____/s/ John A. Moe, II_____
                                                                    JOHN A. MOE, II
21
                                                            Attorneys for Gardens Regional Hospital and
22                                                          Medical Center, Inc.

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The Debtor hereby requests that this Court approve a limited notice procedure.  Such a procedure is necessary and appropriate because the Debtor's creditor matrix in this Case exceeds thousands of entries.  Requiring notice to, and service upon, so many persons or entities would substantially increase the cost and administrative burden to the Debtor and its estate and diminish the assets ultimately available for creditors without conferring any meaningful benefit on the Debtor's estate.  The Debtor submits that the proposed limited scope of notice is necessary to avoid the administrative costs of serving notice of all pleadings on hundreds of parties while simultaneously assuring that the interested parties in this Case receive proper and sufficient notice of all matters that may materially impact their interests.

## II.    STATEMENT OF FACTS

### A.    Jurisdiction and Venue

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### B.    General Background

On June 6, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").  The Debtor continues to operate its business and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or committee has been appointed in this chapter 11 case (the "Case").

### C.    General Description of the Debtor

#### 1.    General Background

The Debtor leases a 137 bed, acute care hospital doing business at 21530 South Pioneer Boulevard, Hawaiian Gardens, Los Angeles, California.  The Debtor is currently staffed to operate approximately 30-35 beds on a normal day, although it has access to visiting nurse

///

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  registries, which allow it to quickly increase its staff to meet patient needs (Declaration of David

2  Herskovitz ("Herskovitz Decl."), ¶ 5).

3      The Debtor features an Intensive Care Unit, a Cardiac Care Unit, and an 8-bed,

4  Emergency Department ("ED") staffed with a team of qualified ED physicians, nurses, and other

5  professional personnel.  The ED is a paramedic-receiving emergency room that works

6  hand-in-hand with Los Angeles County and Orange County Emergency Medical Services to

7  provide emergency services 24-hours each day, seven days each week.  The Debtor provides a

8  full range of inpatient and outpatient services, including, but not limited to, medical acute care,

9  general surgical services, bariatric surgery services (for weight loss), spine surgery services,

10  orthopedic and sports medicine and joint replacement services, wound care and pain management

11  services, physical therapy, respiratory therapy, outpatient ambulatory services, diagnostic

12  services, radiology and inpatient/outpatient imaging services, laboratory and pathology services,

13  geriatric services, and community wellness and education programs (Herskovitz Decl. ¶ 6).

14      More than 8,500 patients visited the Debtor's emergency room last year, and the Debtor

15  had a total of more than 2,850 admissions.  Its physicians performed nearly 1,400 inpatient and

16  2,250 outpatient surgeries.  The Debtor has invested millions of dollars over approximately the

17  past five years for updated furniture, fixtures, equipment and technology as well as long-overdue

18  improvements to the facility (Herskovitz Decl. ¶ 7).

19          2.    **The Debtor's Management**

20      The Debtor's Board currently is comprised of four members:  Brian Walton, Esq., Chair

21  (attorney, consultant and adjunct professor of law at UCLA); Hassney Hamood, M.D. (former

22  Chief of Staff of the Debtor and practicing physician); Jonathan Pastor, Esq. (attorney and

23  arbitrator); and in-house counsel David Herskovitz (Herskovitz Decl. ¶ 10).

24      From 1997, when the Debtor opened, to November, 2010, the Debtor's President and

25  Chief Executive Officer ("CEO") was Arthur Gerrick.  From December 1999, until June 1, 2015,

26  the Debtor had contracted, pursuant to written management agreements, with a series of third

27  party management companies to provide a qualified professional senior management team for the

28  Debtor that assisted the Board in implementing measures necessary for operational management

1    of the Debtor.  Effective June 1, 2015, the Debtor terminated the last management services

2    agreement and hired James Sherman as Chief Executive Officer ("CEO") (he had been CEO but

3    employed by the management company previously, rather than being employed by the Debtor

4    directly).  On August 17, 2015, the Board replaced Mr. Sherman with Kenneth Strople as Interim

5    CEO and engaged Edmund King as Interim Chief Financial Officer ("CFO").  Mr. Strople served

6    until October 11, 2015 (Herskovitz Decl. ¶ 11).

7        On October 12, 2015, the Debtor entered into a long-term management services

8    agreement ("MSA") with Paladin-Gardens Management, LLC ("Paladin"), whereby Paladin

9    assumed exclusive responsibility to provide management and financial advisory services on

10    behalf of Debtor, and to oversee the entirety of the hospital operations of Debtor, subject to the

11    ultimate authority of the Board. The Paladin MSA required Paladin to engage and to pay for the

12    services of the Chief Executive Officer, the Chief Financial Officer, and the Chief Nursing

13    Officer, and, in addition, an average of 250 hours per month of Paladin's principals, advisors and

14    other personnel.  For its management services, the Debtor was required to pay Paladin $325,000

15    per month (Herskovitz Decl. ¶ 12).

16        In addition to the Paladin MSA, Paladin was required to assist Debtor to obtain necessary

17    and available financing.  As a result, Paladin secured a Bridge Loan Agreement between its

18    affiliate, Harbor-Gardens Capital I, LLC ("Harbor") and the Debtor, whereby Harbor agreed to

19    loan to Debtor $2,000,000, at an interest rate of 14% per annum.  Amounts loaned and due under

20    the Harbor Bridge Loan Agreement are set forth in the Declaration of Eric Weissman filed

21    concurrently herewith (Herskovitz Decl. ¶ 13).

22        Paladin (the Debtor's Management Company), by virtue of its letter dated April 4, 2016,

23    notified the Debtor of its intent to terminate the MSA effective April 11, 2016.  Paladin

24    unilaterally withdrew all of its personnel as of midnight on April 11th.  The Debtor disputes

25    Paladin's alleged bases for terminating the Agreement and unilaterally withdrawing the Debtor's

26    entire executive management team on short notice – especially at a time when the Debtor was

27    particularly vulnerable and only eleven days before the Debtor's deadline to submit and start

28    implementing a critical Plan of Correction to CMS – and asserts that Paladin, through its various

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  acts and omissions, has materially breached and failed to meet its obligations under the MSA, and

2  that both Paladin and Harbor, separately and acting in concert, have materially harmed and

3  damaged the Debtor as a result thereof (Herskovitz Decl. ¶ 14).

4       Pursuant to an Interim Management Services Agreement ("IMSA") entered into between

5  the Debtor and Genesis Healthcare Management, LLC ("Genesis") on April 11, 2016,

6  commencing as of April 12, 2016, at 12:01 am, Genesis assumed exclusive responsibility to

7  provide interim management and financial advisory services on behalf of Debtor, and to oversee

8  the entirety of the hospital operations of Debtor, subject to the ultimate authority of the Board.

9  The Genesis IMSA required Genesis to engage and to pay for the services of the Interim Chief

10  Executive Officer, the Interim Chief Financial Officer, the Interim Chief Operations Officer and

11  the Interim Chief Nursing Officer, to oversee the Debtor's day-to-day management, on an interim

12  basis. The Genesis Interim CEO and CFO completed their services under the IMSA on April 22,

13  2016 and the Genesis Interim CNO ceased providing his temporary Interim CNO coverage as of

14  midnight on April 20, 2016 (Herskovitz Decl. ¶ 15).

15       The Debtor has promoted Aileen Tamares, RN, BSN, CEN, an existing employee and

16  member of the Debtor's nursing leadership team, to assume the position of Interim CNO,

17  effective as of 12:01 am on the morning of April 21st (Herskovitz Decl. ¶ 16).

18       On April 6, 2016, the Debtor appointed Eric Weissman, President of Wilshire Pacific

19  Capital Advisors, LLC, as its Financial Advisor. Mr. Weissman has been advising hospitals and

20  other business entities in the healthcare industry on mergers and acquisitions, financial matters,

21  financing, raising capital, and restructuring debts for more than 17 years (Herskovitz Decl. ¶ 17).

22       The Debtor's Board of Directors has added to the Debtor's executive management team

23  several more seasoned healthcare professionals who previously have served in key executive

24  positions (including CEO and CFO) at other area hospitals (Herskovitz Decl. ¶ 18).

25       More specifically, the Debtor has engaged Stan Otake, as its Interim CEO/President, to

26  help manage the Debtor, effective as of April 22, 2016.  Mr. Otake is a seasoned health care

27  executive, with over 30 years of hospital leadership experience, and a successful record of

28  / / /

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

helping to manage difficult hospital turnarounds and improved patient care and profitability (Herskovitz Decl. ¶ 19).

The Debtor has engaged Charles Natcher, CPA, as its Interim CFO, to help support the operations and financial management of the Debtor, effective as of April 22, 2016.  Mr. Natcher is a seasoned CFO and health care executive, with over 25 years of hospital leadership experience, in both for-profit and not-for-profit healthcare entities (Herskovitz Decl. ¶ 20).

In addition, the Debtor's existing personnel, along with Mr. Weissman, outside consultants and members of the Board of Directors are providing day-to-day assistance, as needed (Herskovitz Decl. ¶ 21).

### 3.    **Medical Staff and Employees**

Approximately 300 doctors have medical staff privileges at the Hospital.  The Medical Staff of Gardens Regional Hospital and Medical Center ("Medical Staff") is an unincorporated association that was formed on July 24, 2015 by, is governed by, and operates for the benefit of, the physicians who are members of the Debtor's medical staff.  The Medical Staff is responsible for governing the medical staff, subject to all applicable laws, rules and regulations.  The Medical Staff is wholly separate and apart from the Debtor, including separate bylaws, bank accounts, IRS Employer Identification Number, officers and directors.  The Medical Staff is not filing bankruptcy (Herskovitz Decl. ¶ 23).

The Debtor currently employs approximately 332 people (222 full-time, 22 part-time, and 88 per diem).  Of this, 107 are nurses, who are represented by Service Employees International Union ("SEIU") Local 121RN.  The remainder include, but are not limited to, management/ supervision, professional/clinician, office, technician/technologist, plant operations, I.T. staff, human resources, Quality Assurance and dietary staff.  Debtor is the second largest employer in the City of Hawaiian Gardens (Herskovitz Decl. ¶ 24).

### 4.    **The Debtor's Market**

The Debtor provides emergency and acute hospital services to the largely low-income population of Hawaiian Gardens, which is the smallest city in Los Angeles County, with a total area of 0.9 square miles, and a population of only approximately 15,000 (Herskovitz Decl. ¶ 25).

The Debtor provides a wide-range of healthcare services to under-served and indigent communities in Hawaiian Gardens, Artesia, Bellflower, Cerritos, Lakewood, Long Beach, Norwalk and Paramount (the "Service Area"), as well as patients from other cities, states and counties including Orange, San Bernardino and San Diego Counties.  The Debtor provides annually in excess of $11 million of charitable care, community services and health professions education.  The Debtor is a vital part of Los Angeles County's health care safety net, serving some of Southern California's most medically vulnerable residents (Herskovitz Decl. ¶ 26).

The Debtor serves a high volume of medically under-served and indigent patients and has been designed a Disproportionate Share Hospital ("DSH") by HHS in connection with the Medicaid program.  As a result of the high volume of indigent patients, millions of dollars worth of Debtor's services have been historically expended on Charity Care, and the amount of uncompensated care provided by Debtor is expected to continue[4] (Herskovitz Decl. ¶ 27).

### 5.    **The Debtor's Facilities**

The Debtor is the lessee of a fully licensed and accredited 137-bed[5] acute care general hospital (Herskovitz Decl. ¶ 29).

The Debtor also leases clinic space in a Medical Office Building ("MOB") at 21520 South Pioneer Boulevard, Hawaiian Gardens (directly across the parking lot from its acute care facility), which the Debtor currently sub-leases to physicians for their private use.  In addition, the Debtor leases a nearby office building located at 22101 Norwalk Boulevard in Hawaiian Gardens (the "Norwalk Property"), for its Business Office operations.  The Debtor has not paid the rent that was due for the MOB and Norwalk Property on April 1, 2016, which amounts, along with any applicable late charges, remain delinquent (Herskovitz Decl. ¶ 31).

---

[4] The Debtor also leases clinic space in a Medical Office Building ("MOB") at 21520 South Pioneer Boulevard, Hawaiian Gardens (directly across the parking lot from its acute care facility), that the Debtor currently sub-leases to physicians for their private use.  In addition, the Debtor leases a nearby office building located at 22101 Norwalk Boulevard in Hawaiian Gardens (the "Norwalk Property"), for its Business Office operations (Herskovitz Decl. ¶ 28).

[5] The Debtor has not undertaken an exhaustive review to ascertain whether there is any defect in the security interest granted or the perfection of that security interest.  For the purposes herein, I, on behalf of the Debtor, will assume that the security interests were in fact duly perfected, while reserving all rights with regard to this issue (Herskovitz Decl. ¶ 30).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    The main hospital facility and MOB are leased from Cerritos Gardens General Hospital

2  Company ("CGGHCO").  The Debtor's hospital premises have been leased from CGGHCO

3  continuously since February 1, 1997.  Effective January 1, 2001, the lease with CGGHCO was

4  renegotiated, and the Debtor and CGGHCO entered into an Amended and Restated Lease dated

5  January 1, 2001 (the "Hospital Lease"), as further amended in 2013, under which the Debtor has

6  exercised the right to continue to lease the hospital premises until December 31, 2025.  The

7  Hospital Lease provides for a $64,692 per month rental payment, with annual CPI increases, and

8  the Norwalk property has a base rent of $3,149 per month, also with annual CPI increases.  Under

9  the terms of the Hospital Lease, rent is dues on the first calendar day of each month. If any

10  installment of rent is not received by CGGHCO within fifteen days after such amount is due, such

11  rent payment is deemed late, and an additional late charge equal to five percent of the delinquent

12  amount shall be due forthwith.  The Debtor has not paid the rent that was due on March 1, 2016

13  and April 1, 2016, which amounts, along with any applicable late charges, remain delinquent.

14  CGGHCO has demanded payment for the delinquent rent along with late charges, and has

15  reserved all of CGGHCO's rights and remedies under the Hospital Lease, including the right to

16  serve a three-day notice to pay rent or quit.  As of this date, CGGHCO has not served Debtor with

17  a three-day notice to pay rent or quit (Herskovitz Decl. ¶ 32).

18              6.    **The Debtor's Liabilities**

19                   a.    Secured Claims

20    The Debtor has not undertaken an exhaustive review to ascertain whether there is any

21  defect in the security interest granted or the perfection of that security interest.  For the purposes

22  herein, the Debtor assumes that the security interests were in fact duly perfected, reserving all

23  rights with regard to this issue (Declaration of Eric Weissman ("Weissman Decl.") ¶ 8).

24    The following parties have security interests in the Debtors assets:  (a) RollinsNelson Grp

25  (*sic*), LLC, a California limited liability company ("RNG"), (b) Sycamore Healthcare Services,

26  LLC ("Sycamore"), (c) Roxbury Healthcare Services, LLC ("Roxbury") and (d) Harbor-Gardens

27  Capital 1, LLC ("Harbor") (Weissman Decl. ¶ 9).

28  / / /

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   Pursuant to a Claims Settlement Agreement And Release Agreement, executed in

2   April 2016 ("April Settlement Agreement"), RNG has a $500,000 secured claim, plus interest

3   (Weissman Decl. ¶ 10).

4   Pursuant to that same April Settlement Agreement, Sycamore has a $250,000 secured

5   claim, plus interest (Weissman Decl. ¶ 11).

6   Pursuant to that same April Settlement Agreement, RNG has a $575,000 secured claim,

7   plus interest (Weissman Decl. ¶ 12) ).

8   Pursuant to a previous settlement agreement, Roxbury has a secured claim for $675,000,

9   plus interest (Weissman Decl. ¶ 13).

10   Under the terms of the April Settlement Agreement, the Debtor consented to treat all four

11   claims described above on a *pari-passu* basis as senior secured claims in a total amount of $2.0

12   million (Weissman Decl. ¶ 14).

13   Finally, I believe that Harbor loaned the Debtor $2.5 million during the period of October

14   2015 through February 2016 (Weissman Decl. ¶ 15).

15   Thus, I believe that the Debtor's total senior and junior secured claims are equal to $4.5

16   million, plus interest (Weissman Decl. ¶ 16).

17   b.   Capitalized Leases

18   The Debtor has capitalized leases for medical equipment, the remaining balances due on

19   which total approximately $203,230 (Weissman Decl. ¶ 17).

20   c.   The Debtor's Unsecured Debt

21   The Debtor has approximately $25,825,435 in total unsecured debt, including a significant

22   amount of disputed, unliquidated or contingent claims, which are comprised of claims made by

23   vendors of goods and services, cost report payables, management fees, and incurred but not

24   reported third party claims (Weissman Decl. ¶ 18).

25   7.   **Events Leading to the Filing of This Chapter 11 Case**

26   The current fiscal crisis for the Debtor is the result of the confluence of many factors.

27   However, a significant contributor is reduction in DSH payments described above.  As an

28   underlying constant goal and challenge, the Debtor provides over a million dollars per year in

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  care to indigent patients, for which it is not fully compensated.  The percentage of the Debtor's

2  resources expended on indigent care is significant because the Debtor serves a depressed

3  community.  The Debtor has been able to recoup only about 20% of the DSH payment reduction

4  due to the large amount of charity care provided by the Debtor (Herskovitz Decl. ¶ 33).

5          Additional factors that contributed to the Debtor's financial difficulties include

6  inconsistent patient census, insufficient reimbursements for individual patient cases because of

7  denials of coverage or partial denials based on extended lengths of stay, unanticipated operational

8  costs, a lower case mix, a decline in bariatric and other surgeries, difficulties in implementing the

9  required change to electronic medical records, managing the length of stay of patients, and

10  difficulties in collections and billings, among other things (Herskovitz Decl. ¶ 34).

11          Moreover, as a small stand-alone hospital, the Debtor has been unsuccessful in its efforts

12  to negotiate significant increases in reimbursement rates from various governmental and

13  commercial payors that would be comparable to rates of reimbursement received by many other

14  hospitals (Herskovitz Decl. ¶ 35).

15          Once the ACA took effect, there was a marginal increase in some of the Debtor's patients

16  who had obtained health insurance coverage, but this was grossly overshadowed by the annual

17  loss of DSH payments that had previously enabled the Debtor to treat the local low-income

18  population.  To the extent previously uninsured patients now have some health insurance

19  coverage, this population continues to be chronically underinsured, or have insurance with high

20  deductibles, which they cannot afford to pay.  This results in insufficient health insurance benefits

21  payments to the Debtor as well as to other health care providers.  Further, Medi-Cal and Medicare

22  reduced their payment rates in the range of 2.9% to 10% in or after 2010, which slowly whittled

23  down reimbursements and revenues.  These changes have caused a decline in the Debtor's

24  revenues without a corresponding reduction in the Debtor's obligations to provide patient care,

25  and annual CPI increases in costs of the Debtor's supplies and overhead costs (Herskovitz Decl.

26  ¶ 36).

27          In addition to these continual struggles with changes in government programs and benefits

28  available to help public benefit charity care hospitals that are common to most DSH providers,

and negative operational cash flow, the Debtor, in approximately 2010, discovered large-scale mismanagement of its operations, resulting in turnover of certain key personnel (Herskovitz Decl. ¶ 37).

There are approximately 10 to 15 litigation or arbitration matters for which insurance coverage does not exist, which the Debtor has been required to defend or has chosen to prosecute (Herskovitz Decl. ¶ 38).

In addition, the Debtor has been named as a defendant or cross-defendant in approximately 25 to 30 lawsuits and arbitration proceedings for which insurance coverage does exist (after payment of retentions or deductibles) (Herskovitz Decl. ¶ 39).

The Debtor currently is a plaintiff in approximately 3 litigation matters (Herskovitz Decl. ¶ 41).

The cost, resources, distraction and potential liability arising from all of the foregoing disputes is substantial, and has taken – and continues to take – a meaningful toll on the Debtor (Herskovitz Decl. ¶ 42).

Over the past 12 months, the Debtor needed to generate approximately $129,359 per day to cover its costs. No appreciable cost savings are recognized by the Debtor when the patient census drops below 50 beds a day, as the fixed costs remain fairly constant. The Debtor has been generating only approximately $96,728 per day in cash collections. Thus, the Debtor loses money every month it operates, and would soon be unable to pay its employees for the next pay period or to pay the necessary COD advance payments to obtain critical medical supplies for patient care. The Debtor's many efforts to identify and implement a better solution have been unsuccessful. The termination by Paladin of the MSA and its unilateral withdrawal of its entire executive management team as of April 12, 2016, along with the Debtor's dire need to line up and maintain a stable and consistent executive management team and source of adequate funding for the Debtor's Hospital operations, and to focus key resources for the preparation, submission to CMS by April 22, 2016 and immediate implementation of a Plan of Correction (which, among other necessities, requires the Debtor to promptly address certain costly deferred maintenance), has created further challenges for the Debtor. The Debtor did not take this decision lightly.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    However, in light of these dire circumstances and the severe ongoing cash flow shortage, the

2    Debtor was forced to file this chapter 11 case (Herskovitz Decl. ¶ 43).

3    **III.    ARGUMENT**

4        **A.    Proposed Limited Notice**

5        The Debtor requests that the Court limit the scope of service of all notices, motions, or

6    applications, including, but not limited to, the following:

7    - any proposed use, sale, or lease of property of the estate pursuant to section 363 of the
         Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 4001(b), and 6004);

8

9    - any proposed debtor in possession financing or use of cash collateral;

10   - any proposed extension of the Debtor's exclusive time to file a plan of reorganization
         and solicit acceptance thereof (including, without limitation, the time to file a

11       disclosure statement) pursuant to section 1121 of the Bankruptcy Code and
         Bankruptcy Rule 3016;

12   - any proposed approval of a compromise or settlement of a controversy pursuant to
         Bankruptcy Rules 2002(a)(3) and 9019 and/or section 363 of the Bankruptcy Code;

13

14   - any proposed abandonment or disposition of property of the estate pursuant to section
         554 of the Bankruptcy Code and Bankruptcy Rules 6007(a) or (c);

15   - any proposed assumption, assumption and assignment or rejection of contracts or
         leases pursuant to section 365 of the Bankruptcy Code and Bankruptcy Rule 6006(a)

16       or (c);

17   - any proposal to prohibit or condition the use, sale or lease of property pursuant to
         section 363 of the Bankruptcy Code or Bankruptcy Rule 4001(a);

18

19   - any proposed objections to claims pursuant to section 502 of the Bankruptcy Code or
         Bankruptcy Rules 3002, 3003 or 3007;

20   - any verified statement filed by any entity or committee (other than those appointed
         pursuant to sections 1102 or 1104 of the Bankruptcy Code) representing more than

21       one creditor pursuant to Bankruptcy Rule 2019(a) and any motion filed in respect
         thereof pursuant to Bankruptcy Rule 2019(b);

22

23   - any proposed application for employment of professionals pursuant to sections 327,
         1103 or 1104 of the Bankruptcy Code or Bankruptcy Rule 2014;

24   - any proposed application for compensation or reimbursement of expenses of
         professionals, pursuant to sections 328, 329, 330, or 331 of the Bankruptcy Code and

25       Bankruptcy Rules 2002(a)(6), 2016, 2017, and 6005; except as provided by other
         orders of this Court;

26

27   - a hearing on any other contested matter in this Case that requires notice to all creditors
         or equity holders pursuant to the Bankruptcy Code, Bankruptcy Rule 9014, or the
         Local Bankruptcy Rules; and

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- all other pleadings, papers, and requests for relief or other order of the Court, except as limited below.

(The notices, motions and applications for which the Debtor is seeking to limit notice are hereinafter referred to as the "Limited Notice Matters.")

Notwithstanding the foregoing, the relief requested in this Motion does not affect the rights of all creditors to receive notice of the following matters or proceedings: (i) the date fixed for filing proofs of claim; (ii) the time fixed for filing objections to any disclosure statement and any hearing to consider approval of any disclosure statement; (iii) the time fixed for accepting, rejecting, or objecting to confirmation of a plan or any modification thereof and the hearing thereon; (iv) the entry of an order confirming a plan; and (v) a hearing regarding the dismissal or conversion of this Case (the "Complete Notice Matters").

### B.  The Court Has Authority to Limit the Scope of Notice

Bankruptcy Rule 2002(i) provides, in pertinent part:

> (T)he Court may order that notices required by subdivision (a)(2), (3) and (6) of this rule be transmitted to the United States Trustee and be mailed only to the committees ... appointed under § 1102 of the Code or to their authorized agents and to the creditors and equity security holders who serve on the trustee or debtor in possession and file a request that all notices be mailed to them.

Fed. R. Bankr. P. 2002(i).  In addition, Bankruptcy Rules 4001, 6004, 6006, 9006, 9007, 9013, 9014 and 9019 each allow this Court to determine those parties to whom the Debtor must provide notice.  Given the number of parties in interest in this Case, it would be impractical and would impose a large administrative and economic burden upon the Debtor's estate if the Debtor were required to mail notice of every matter in this Case to all parties listed on the creditor matrix.

### C.  Proposed Notice Procedures

As permitted by Bankruptcy Rules 2002(i) and (m), the Debtor proposes that the Court enter an order that, to the extent allowed, limits the parties upon whom the Debtor must serve the Limited Notice Matters in this Case.  This Order should also designate the manner of service as set forth below regarding all matters for which the Bankruptcy Code and the Bankruptcy Rules authorize the Court to designate the manner of service, including matters subject to Bankruptcy

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   Rules 2002(i), 4001, 6004, 6006 or 6007 and Local Bankruptcy Rule 2081-1(a)(1).  It is well

2   within the Court's authority to regulate notices and to approve the notice procedures proposed by

3   the Debtor.  Further, these notice procedures will minimize administrative burdens in this Case

4   without diminishing creditor participation.

5           1.      **Service of Limited Notice Matters that Are Not Emergency or**

6                   **Expedited Motions**

7           Specifically, the Debtor proposes that notices regarding the Limited Notice Matters that

8   will be heard on regular notice be served by first class mail upon only:  (a) the Office of the

9   United States Trustee, (b) the creditors appearing on the list filed in accordance with Bankruptcy

10  Rule 1007(d) by the Debtor unless and until a Committee is appointed and it retains counsel, then

11  in such event, to counsel for the Committee, (c) the United States of America, by service to the

12  Attorney General of the United States and the United States Attorney for the Central District of

13  California, and any department or agency of the United States of America that is affected by the

14  Limited Notice Matter until counsel for the United States makes an appearance on behalf of that

15  department or agency, and, thereafter on that counsel, (d) the State of California, by service to the

16  Attorney General of California, and any department or agency of the State that is affected by the

17  Limited Notice Matter until counsel for the State makes an appearance on behalf of that

18  department or agency, and thereafter on that counsel, (e) parties that file with the Court and serve

19  upon the Debtor requests for notice of all matters in accordance with Bankruptcy Rule 2002(i),

20  and (f) any party with a pecuniary interest in the subject matter of the particular Limited Notice

21  Matter or its counsel (collectively, the "Limited Service List").

22          2.      **Service of Limited Notice Matters that Require Emergency or**

23                  **Expedited Relief**

24          Pursuant to Local Bankruptcy Rule 9075-1(a)(6), motions filed in chapter 11 cases that

25  require emergency or expedited relief must be served by email, fax or personal service.  In some

26  instances, service by one of the means listed is not possible within the time frame available or is

27  not practical (*e.g.*, service on a very large group for which a debtor has no fax or email addresses

28  readily available).  The Debtor proposes that service of emergency or expedited Limited Notice

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   Matters be upon only the Limited Service List and that, in addition to the service methods

2   authorized by Local Bankruptcy Rule 9075-1, service of emergency or expedited Limited Notice

3   Matters by overnight delivery be authorized if such notice will be delivered prior to the scheduled

4   hearing time.

5               **D.      The Limited Notice Procedures are Necessary and Appropriate**

6               The above proposed limited notice procedures are necessary and appropriate given that

7   the creditor body is large and many of the creditors (including former patients and employees

8   who, if the Wage Motion is approved, will receive payment in full of their prepetition claims)

9   would not be interested in receiving copies of all the Limited Notice Matters, but would find

10  service of all these motions and other documents wasteful.  Requiring notice to, and service upon,

11  so many parties, therefore, would substantially augment the cost and administrative burden on the

12  Debtor, without conferring any meaningful benefit to the Debtor's estate, and thus would

13  diminish the assets ultimately available for the operations of the Debtor and distributions to

14  creditors.  Further, allowing service of an emergency motion by overnight delivery in the

15  instances outlined above provides parties on the Limited Service List with adequate notice and

16  preserves the Debtor's ability to bring such matters on a timely and efficient basis.  The Debtor

17  submits that such notice constitutes due and sufficient notice of the Limited Notice Matters.

18              If this Motion is granted, the Debtor will provide a copy of the Limited Service List to any

19  creditor or party in interest that requests it.  *The Debtor will also send a copy of any order*

20  *granting this Motion to all known creditors.*

21              **E.      Service of This Motion**

22              The Debtor is serving this Motion by email, overnight delivery or facsimile on the Limited

23  Service List prior to the day of the hearing.  The Debtor submits such notice is appropriate under

24  the circumstances.

25              The Debtor notes that Local Bankruptcy Rule 9075-1(a)(5) and (6) could plausibly be

26  interpreted to require that the Debtor serve all parties on the creditor matrix by personal delivery,

27  messenger, telephone, fax or email with this Motion because the Motion affects their right to

28  receive service of certain notices, motions and applications.  As stated above, there are hundreds

1   of parties on the creditor matrix.  The Debtor does not have fax numbers or email addresses for

2   many of these parties.  Serving the Motion by telephone, messenger or personal delivery on each

3   of the parties would clearly be cost and time prohibitive, if not impossible.

4          Further, serving the Motion by overnight delivery on thousands of parties would be cost

5   prohibitive, defeat the very purpose for which this Motion is filed and would accomplish very

6   little.  The vast majority of parties will not be interested in receiving the Limited Notice Matters

7   or this Motion and will likely simply dispose of the material upon receipt.  Also, the Debtor is

8   serving the Limited Service List, which contains the names of the creditors holding the largest

9   claims against the Debtor, all secured creditors, the United States and the State of California, and

10  the U.S. Trustee.

11         The Debtor submits that service of this Motion as set forth above is sufficient under the

12  circumstances and, in the event that Local Bankruptcy Rule 9075-1(a)(5) and (6) actually requires

13  personal delivery, messenger, telephone, fax or email on thousands of creditors, the Debtor

14  hereby requests that the Court waive compliance with said Rule and find that notice of this

15  Motion to the Limited Service List is sufficient and appropriate notice.

16  **IV.    CONCLUSION**

17  **WHEREFORE**, to facilitate the efficient administration of this Case, and to reduce the

18  significant costs, delays, and burdens that would be associated with providing notice of all

19  matters in this Case to all creditors, the Debtor hereby respectfully requests that the Court enter

20  the order granting (a) the relief requested herein; (b) finding that notice of the Motion is sufficient

21  under the circumstances; and (c) granting the Debtor such other and further relief as is just and

22  proper under the circumstances.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1

2

Dated:  June 6, 2016

DENTONS US LLP
SAMUEL R. MAIZEL
JOHN A. MOE, II

3

4

By____/s/ John A. Moe, II_____
        JOHN A. MOE, II

5

6

Attorneys for Gardens Regional Hospital and
Medical Center, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300