SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
JOHN A. MOE, II (Bar No. 066893)
john.moe@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone:     (213) 623-9300
Facsimile:     (213) 623-9924

Attorneys for Debtor,
GARDENS REGIONAL HOSPITAL
AND MEDICAL CENTER, INC.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>GARDENS REGIONAL HOSPITAL<br>AND MEDICAL CENTER, INC., dba<br>GARDENS REGIONAL HOSPITAL<br>AND MEDICAL CENTER,[1]<br><br>Debtor. | Case No. 2:16-bk-17463-ER<br><br>Chapter 11<br><br>(Voluntary Petition Filed:  June 6, 2016)<br><br>**NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION OF DEBTOR FOR ORDER PURSUANT TO 11 U.S.C. §§ 363, 1107 AND 1108 AUTHORIZING (1) MAINTENANCE OF EXISTING BANK ACCOUNTS, (2) CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, AND (3) CONTINUED USE OF BUSINESS FORMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>(Declarations of David Herskovitz and Eric Weissman in Support of Emergency Motions filed concurrently herewith)<br><br>(Filed Pursuant to: LBR 2081-1(a)(9) and 9075-1(a) )<br><br>Hearing:<br>Date:          June 9, 2016<br>Time:          10:00 a.m.<br>Courtroom: 1568<br>Place:         U.S. Bankruptcy Court<br>               255 East Temple Street<br>               Los Angeles, California 90012<br>Judge:        Hon. Ernest M. Robles |

[1] The Debtor is a California nonprofit public benefit corporation, Fed. Tax I.D. No. 33-0738307. The Debtor's mailing address is 21530 Pioneer Boulevard, Hawaiian Gardens, California 90716.

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ................................................................................................. 5

II.     STATEMENT OF FACTS .................................................................................... 5

      A.      Jurisdiction and Venue .............................................................................. 5

      B.      General Background ................................................................................... 6

      C.      General Description of the Debtor ............................................................. 6

            1.      General Background ....................................................................... 6

            2.      The Debtor's Management .............................................................. 7

            3.      Medical Staff and Employees ........................................................ 9

            4.      The Debtor's Market .................................................................... 10

            5.      The Debtor's Facilities ................................................................. 11

            6.      The Debtor's Liabilities ............................................................... 12

                  a.      Secured Claims ................................................................. 12

                  b.      Capitalized Leases ............................................................ 13

                  c.      The Debtor's Unsecured Debt ........................................... 13

            7.      Events Leading to the Filing of This Chapter 11 Case ............... 13

III.    DEBTOR'S ACCOUNTS AND CASH MANAGEMENT ................................. 15

      A.      The Bank of America Accounts ............................................................... 15

            1.      The Government-Old Account (Account No. 05947-14482) (the "Old Government Account") ......................................................... 15

            2.      The Government-New Account (Account No. 09458-73238) (the "New Government Account") ........................................................ 16

            3.      The Non-Government Account (Account No. 09455-40890) (the "Non-Government Account") ......................................................... 16

            4.      The Payroll Account (Account No. 05945-14483) (the "Payroll Account") .................................................................................... 16

            5.      The Flexible Spending Account (Account No. 3250-0048-3098) (the "FSA Account") ...................................................................... 16

            6.      The Maximizer Account (Account No. 05949-10525) (the "Maximizer Account") .................................................................. 16

            7.      The New Checking Account (Account No. 001453032488) (the "New Checking Account") ............................................................. 17

      B.      The Wells Fargo Account (Account No. 2832723536) (the "Credit Card Account") ...................................................................................... 17

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

C.    The U.S. Bank Accounts ............................................................. 17

1.    U.S. Bank Account (Account No. 1-534-6492-4015) (the "IPA Account") ............................................................................. 17

2.    The U.S. Bank Savings Account (Account No.1-534-9323-6845) (the "U.S. Bank Savings Account") ........................................... 17

D.    Operation of Accounts ............................................................... 17

E.    Balance in Accounts .................................................................. 18

IV.    REQUESTED RELIEF .......................................................................... 18

V.    ARGUMENT ......................................................................................... 19

A.    Maintenance of the Accounts Is in the Best Interests of the Debtor's Estate ........ 19

B.    Authorizing and Directing the Banks to Honor Postpetition Checks and Granting Banks Limited Relief from the Automatic Stay ...................................... 20

C.    Maintenance of the Debtor's Existing Business Forms Is in the Best Interests of the Debtor's Estate .......................................................... 21

VI.    CONCLUSION ...................................................................................... 22

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Baldwin-United Corp.*,
  79 B.R. 321 (Bankr. S.D. Ohio 1987) ....................................................................................20

*In re Empire Land, LLC*,
  Case No. 6:08-bk-14592-MH (Bankr. C.D. Cal. 2008) ...........................................................20

*In re Johnson*,
  106 B.R. 623 (Bankr. D. Neb. 1989) ......................................................................................21

*In re People's Choice Home Loans, Inc.*,
  Case No. 8:07-10765-RK (Bankr. C.D. Cal. 2007) ................................................................20

*In re Sizzler Restaurants Int'l, Inc.*,
  Case Nos. SV 96-16075-AG through 16079 (Bankr. C.D. Cal. 1996) ....................................20

*In re Tie Communications, Inc.*,
  Case No. SA-98-15557-JB (Bankr. C.D. Cal. 1998) ..............................................................20

*In re Victor Valley Community Hospital*,
  Case No. 6:10-39537-CB (Bankr C.D. Cal. 2010) .................................................................20

*In re Z Galleries*,
  Case No. 2:09-18400-VZ (Bankr. C.D. Cal. 2009) ................................................................20

## STATUTES

11 United States Code
  § 101, *et seq.* ..............................................................................................................................6
  § 345 ........................................................................................................................................18
  § 345(B) ...................................................................................................................................20
  § 363 ....................................................................................................................................5, 20
  § 1107 ..................................................................................................................................5, 20
  § 1107(a) ....................................................................................................................................6
  § 1108 ...............................................................................................................................5, 6, 20

28 United States Code
  § 157 ...........................................................................................................................................5
  § 157(b)(2) .................................................................................................................................5
  § 1334 ........................................................................................................................................5
  § 1408 ........................................................................................................................................5
  § 1409 ........................................................................................................................................5

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# RULES AND REGULATIONS

Federal Rules of Bankruptcy Procedure
    Rule 1007(d) ................................................................................................................3

Local Bankruptcy Rules
    Rule 2015-2 ...............................................................................................................20
    Rule 2081-1(a)(9).........................................................................................................2
    Rule 9075-1(a)(4).........................................................................................................2
    Rule 9075-1(a)(6).........................................................................................................3

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE, CREDITORS HOLDING THE TWENTY LARGEST UNSECURED CLAIMS, SECURED CREDITORS, PARTIES REQUESTING SPECIAL NOTICE, THE UNITED STATES OF AMERICA AND THE STATE OF CALIFORNIA, AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

**PLEASE TAKE NOTICE** that Gardens Regional Hospital and Medical Center, Inc., a California not for profit corporation, doing business as Gardens Regional Hospital and Medical Center, formerly doing business as Tri-City Regional Medical Center, the above-captioned debtor and debtor in possession (the "Debtor"), hereby moves the Court for entry of an Order authorizing the Debtor to maintain and to continue to use certain of its existing bank accounts, to continue to use its cash management system and continue to use its existing business forms and checks pursuant to the requirements set forth in more detail below ("Motion").

**PLEASE TAKE FURTHER NOTICE** that the Debtor currently has ten accounts (the "Accounts"), listed on **Exhibit "A"** hereto, with Bank of America, Wells Fargo and U.S. Bank (collectively the "Banks").  The Debtor requests authority to continue utilizing the Accounts. Requiring the Debtor to close certain of the Accounts and open new ones will disrupt the Debtor's cash flow because (i) the depositors (some of which are governmental agencies) will not respond quickly to the change and will likely continue to send deposits to the original deposit account, and (ii) certain key vendors are paid by electronic funds transfer that they initialize after the Debtor authorizes payment and changes to the disbursement account have the potential of slowing down payment to these crucial vendors.  Closing the Accounts will also increase the work of the Debtor's accounting personnel, who are already dealing with the many and varied issues related to this chapter 11 case (the "Case").  Closing the Accounts and opening new ones under the circumstances described in the attached Memorandum of Points and Authorities would needlessly cost the Debtor time and money at a time when it is trying to conserve both and would result in no discernible benefit to the Debtor's bankruptcy estate (the "Estate").

**PLEASE TAKE FURTHER NOTICE** that the Debtor also is requesting authority to continue using its business forms without the designation "Debtor in Possession" on them *for a*

1    *limited time*.  The Debtor's forms are either electronically printed or can be electronically altered.

2    The Debtor seeks the authority of this Court to utilize its electronically generated forms without

3    the "Debtor in Possession" designation until the adjustments to the software can be initiated, *but*

4    *in no event for more than thirty (30) days*.

5    **PLEASE TAKE FURTHER NOTICE** that the Debtor requests that the Court authorize

6    it to continue using its cash management system in connection with the continued use of

7    accounts, the Banks honoring the Debtor's transaction, and continued use of the Debtor's

8    business forms.

9    **PLEASE TAKE FURTHER NOTICE** that the Debtor requests that the relief sought

10    herein be granted on an emergency basis because the uninterrupted use of its Accounts and cash

11    management system and the continued use of its current business forms and checks as described

12    herein are essential to the Debtor's ability to maximize its postpetition operations and to adjust

13    smoothly to being an operating debtor in possession.  Therefore, pursuant to Local Rule

14    2081-1(a)(9) of the *Local Bankruptcy Rules for the Bankruptcy Court of the Central District of*

15    *California* (the "Local Bankruptcy Rules"),[2] the Debtor requests that this Motion be heard on an

16    emergency basis.

17    **PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice and

18    Motion, the Notice of Emergency Motions that will be filed and served after obtaining a hearing

19    date for the Debtor's "First Day Motions," the attached Memorandum of Points and Authorities,

20    the concurrently filed Declarations of David Herskovitz and Eric Weissman in support of the

21    Emergency Motions, the arguments of counsel and other admissible evidence properly brought

22    before the Court at or before the hearing on this Motion.  In addition, the Debtor requests that the

23    Court take judicial notice of all documents filed with the Court in this Case.

24    **PLEASE TAKE FURTHER NOTICE** that any opposition to the relief requested in the

25    Motion may be presented at any time before or during the hearing regarding the Motion.  You

26    will receive a separate notice of the date and time of the hearing regarding the Motion.  Your

27

28    [2] Pursuant to Local Rule 9075-1(a)(4), no separate motion for an expedited hearing is required.

DENTONS US LLP
601 SOUTH FIGUEROA STREET , SUITE 2500
LOS ANGELES , CALIFORNIA 90017-5704
(213) 623-9300

1  failure to timely object may be deemed by the Court to constitute consent to the relief requested

2  herein.

3      **PLEASE TAKE FURTHER NOTICE** that the Debtor will serve this Notice and Motion

4  and the attached Memorandum of Points and Authorities and the Declarations of David

5  Herskovitz and Eric Weissman on:  (i) the Office of the United States Trustee, (ii) all alleged

6  secured creditors, (iii) the United States of America and the State of California, (iv) the twenty

7  largest general unsecured creditors appearing on the list filed in accordance with Rule 1007(d) of

8  the *Federal Rules of Bankruptcy Procedure*, and (v) any parties requesting special notice.  To the

9  extent necessary, the Debtor requests that the Court waive compliance with Local Bankruptcy

10  Rule 9075-1(a)(6) and approve service (in addition to the means of service set forth in such Local

11  Bankruptcy Rule) by overnight delivery.  In the event that the Court grants the relief requested by

12  the Motion, the Debtor shall provide notice of the entry of the order granting such relief upon

13  each of the foregoing parties and any other parties-in-interest as the Court directs.  The Debtor

14  submits that such notice is sufficient and that no other or further notice be given.

15      **WHEREFORE**, the Debtor respectfully requests that this Court enter an Order:

16      (i)      Authorizing the Debtor to maintain and continue using its existing Accounts and

17  cash management system as described in the attached Memorandum of Points and Authorities;

18      (ii)      Authorizing the Debtor to continue using its business forms without "Debtor in

19  Possession" being imprinted on them until the Debtor can alter its software to include that

20  designation, limited to a maximum period of thirty (30) days;

21      (iii)      Authorizing and directing the Banks to honor postpetition checks drawn on and

22  transfers made from the Accounts;

23      (iv)      Requiring that, in the event the Banks refuse to honor a check drawn or a transfer

24  made on an Account maintained by it (provided there are sufficient good funds in the account to

25  complete the transfer), the Banks immediately turn over the deposits held in the applicable

26  Account upon the Debtor's request;

27  / / /

28  / / /

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1      (v)     Granting the Banks limited relief from the automatic stay to continue to offset

2 standard monthly or periodic bank fees against the Accounts in the same manner as such fees

3 were offset prepetition; and

4      (vi)     Granting such other and further relief as is just and proper under the

5 circumstances.

6

7 Dated: June 6, 2016

                           DENTONS US LLP

8                            SAMUEL R. MAIZEL
                           JOHN A. MOE, II

9

10                            By____/s/ John A. Moe, II_____

11                                JOHN A. MOE, II

12                            Attorneys for Gardens Regional Hospital And
Medical Center, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Debtor is requesting authority to maintain and utilize ten bank accounts (the "Accounts").  If the Debtor is required to close certain of the accounts it needs for the smooth and uninterrupted operation of its business and open new ones, the deposit of the payments it receives from hundreds of sources would be disrupted while the depositors (many of which are governmental agencies) change their internal records regarding the new deposit instructions, which can be a very lengthy period.

Any interruption in the Debtor's cash flow could result in a potentially harmful interruption of the Debtor's business.

The Debtor's accounting staff, which also will be working on supplying all of the information needed to meet the Debtor's chapter 11 reporting requirements as well as performing their regular tasks, would be further distracted by a needless, time-consuming exercise of closing accounts, opening new ones, advising and explaining the same to interested parties, dealing with the logistical issues of getting the depositors to utilize the new accounts and getting checks printed for the new disbursement account.

Accordingly, it is critical that the Debtor be allowed to maintain the existing Accounts and its cash management procedures as described in this Memorandum of Points and Authorities and in the *Emergency Motion of Debtor for Order Pursuant to 11 U.S.C. §§ 363, 1107 and 1108 Authorizing (1) Maintenance of Existing Bank Accounts, (2) Continued Use of Existing Cash Management System, and (3) Continued Use of Business Forms* (the "Motion").[3]

## II.    STATEMENT OF FACTS

### A.    Jurisdiction and Venue

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The venue of the Case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3] Capitalized terms that are not otherwise defined herein shall have the meaning given them in the Notice and Motion.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

### B.   General Background

On June 6, 2016 (the "Petition Date"), the Debtor filed a Voluntary Petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").  The Debtor continues to operate its business and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or committee has been appointed in this chapter 11 case (the "Case").

### C.   General Description of the Debtor

#### 1.   General Background

The Debtor leases a 137 bed, acute care hospital doing business at 21530 South Pioneer Boulevard, Hawaiian Gardens, Los Angeles, California.  The Debtor is currently staffed to operate approximately 30-35 beds on a normal day, although it has access to visiting nurse registries, which allow it to quickly increase its staff to meet patient needs (Declaration of David Herskovitz ("Herskovitz Decl.") ¶ 5).

The Debtor features an Intensive Care Unit, a Cardiac Care Unit, and an 8-bed, Emergency Department ("ED") staffed with a team of qualified ED physicians, nurses, and other professional personnel.  The ED is a paramedic-receiving emergency room that works hand in hand with Los Angeles County and Orange County Emergency Medical Services to provide emergency services 24-hours each day, seven days each week.  The Debtor provides a full range of inpatient and outpatient services, including, but not limited to, medical acute care, general surgical services, bariatric surgery services (for weight loss), spine surgery services, orthopedic and sports medicine and joint replacement services, wound care and pain management services, physical therapy, respiratory therapy, outpatient ambulatory services, diagnostic services, radiology and inpatient/outpatient imaging services, laboratory and pathology services, geriatric services, and community wellness and education programs (Herskovitz Decl. ¶ 6).

More than 8,500 patients visited the Debtor's emergency room last year, and the Debtor had a total of more than 2,850 admissions.  Its physicians performed nearly 1,400 inpatient and 2,250 outpatient surgeries.  The Debtor has invested millions of dollars over approximately the / / /

1  past five years for updated furniture, fixtures, equipment and technology as well as long overdue

2  improvements to the facility (Herskovitz Decl. ¶ 7).

3  **2.    The Debtor's Management**

4  The Debtor's Board currently is comprised of four members:  Brian Walton, Esq., Chair

5  (attorney, consultant and adjunct professor of law at UCLA); Hassney Hamood, M.D. (former

6  Chief of Staff of the Debtor and practicing physician); Jonathan Pastor, Esq. (attorney and

7  arbitrator); and in-house counsel David Herskovitz (Herskovitz Decl. ¶ 10).

8  From 1997, when the Debtor opened, to November, 2010, the Debtor's President and

9  Chief Executive Officer ("CEO") was Arthur Gerrick.  From December 1999, until June 1, 2015,

10 the Debtor had contracted, pursuant to written management agreements, with a series of third

11 party management companies to provide a qualified professional senior management team for the

12 Debtor that assisted the Board in implementing measures necessary for operational management

13 of the Debtor.  Effective June 1, 2015, the Debtor terminated the last management services

14 agreement and hired James Sherman as Chief Executive Officer ("CEO") (he had been CEO but

15 employed by the management company previously, rather than being employed by the Debtor

16 directly).  On August 17, 2015, the Board replaced Mr. Sherman with Kenneth Strople as Interim

17 CEO and engaged Edmund King as Interim Chief Financial Officer ("CFO").  Mr. Strople served

18 until October 11, 2015 (Herskovitz Decl. ¶ 11).

19 On October 12, 2015, the Debtor entered into a long-term management services

20 agreement ("MSA") with Paladin-Gardens Management, LLC ("Paladin"), whereby Paladin

21 assumed exclusive responsibility to provide management and financial advisory services on

22 behalf of Debtor, and to oversee the entirety of the hospital operations of Debtor, subject to the

23 ultimate authority of the Board. The Paladin MSA required Paladin to engage and to pay for the

24 services of the Chief Executive Officer, the Chief Financial Officer, and the Chief Nursing

25 Officer, and, in addition, an average of 250 hours per month of Paladin's principals, advisors and

26 other personnel.  For its management services, the Debtor was required to pay Paladin $325,000

27 per month (Herskovitz Decl. ¶ 12).

28 / / /

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   In addition to the Paladin MSA, Paladin was required to assist Debtor to obtain necessary

2   and available financing.  As a result, Paladin secured a Bridge Loan Agreement between its

3   affiliate, Harbor-Gardens Capital I, LLC ("Harbor") and the Debtor, whereby Harbor agreed to

4   loan to Debtor $2,000,000, at an interest rate of 14% per annum.  Amounts loaned and due under

5   the Harbor Bridge Loan Agreement are set forth in the Declaration of Eric Weissman filed

6   concurrently herewith (Herskovitz Decl. ¶ 13).

7   Paladin (the Debtor's Management Company), by virtue of its letter dated April 4, 2016,

8   notified the Debtor of its intent to terminate the MSA effective April 11, 2016.  Paladin

9   unilaterally withdrew all of its personnel as of midnight on April 11th.  The Debtor disputes

10  Paladin's alleged bases for terminating the Agreement and unilaterally withdrawing the Debtor's

11  entire executive management team on short notice – especially at a time when the Debtor was

12  particularly vulnerable and only eleven days before the Debtor's deadline to submit and start

13  implementing a critical Plan of Correction to CMS – and asserts that Paladin, through its various

14  acts and omissions, has materially breached and failed to meet its obligations under the MSA, and

15  that both Paladin and Harbor, separately and acting in concert, have materially harmed and

16  damaged the Debtor as a result thereof (Herskovitz Decl. ¶ 14).

17  Pursuant to an Interim Management Services Agreement "(IMSA") entered into between

18  the Debtor and Genesis Healthcare Management, LLC ("Genesis") on April 11, 2016,

19  commencing as of April 12, 2016, at 12:01 am, Genesis assumed exclusive responsibility to

20  provide interim management and financial advisory services on behalf of Debtor, and to oversee

21  the entirety of the hospital operations of Debtor, subject to the ultimate authority of the Board.

22  The Genesis IMSA required Genesis to engage and to pay for the services of the Interim Chief

23  Executive Officer, the Interim Chief Financial Officer, the Interim Chief Operations Officer and

24  the Interim Chief Nursing Officer, to oversee the Debtor's day-to-day management, on an interim

25  basis. The Genesis Interim CEO and CFO completed their services under the IMSA on April 22,

26  2016 and the Genesis Interim CNO ceased providing his temporary Interim CNO coverage as of

27  midnight on April 20, 2016 (Herskovitz Decl. ¶ 15).

28  ///

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    The Debtor has promoted Aileen Tamares, RN, BSN, CEN, an existing employee and

2  member of the Debtor's nursing leadership team, to assume the position of Interim CNO,

3  effective as of 12:01 am on the morning of April 21st (Herskovitz Decl. ¶ 16).

4    On April 6, 2016, the Debtor appointed Eric Weissman, President of Wilshire Pacific

5  Capital Advisors, LLC, as its Financial Advisor. Mr. Weissman has been advising hospitals and

6  other business entities in the healthcare industry on mergers and acquisitions, financial matters,

7  financing, raising capital, and restructuring debts for more than 17 years (Herskovitz Decl. ¶ 17).

8    The Debtor's Board of Directors has added to the Debtor's executive management team

9  several more seasoned healthcare professionals who previously have served in key executive

10  positions (including CEO and CFO) at other area hospitals (Herskovitz Decl. ¶ 18).

11    More specifically, the Debtor has engaged Stan Otake, as its Interim CEO/President, to

12  help manage the Debtor, effective as of April 22, 2016. Mr. Otake is a seasoned health care

13  executive, with over 30 years of hospital leadership experience, and a successful record of

14  helping to manage difficult hospital turnarounds and improved patient care and profitability

15  (Herskovitz Decl. ¶ 19).

16    The Debtor has engaged Charles Natcher, CPA, as its Interim CFO, to help support the

17  operations and financial management of the Debtor, effective as of April 22, 2016. Mr. Natcher

18  is a seasoned CFO and health care executive, with over 25 years of hospital leadership

19  experience, in both for-profit and not-for-profit healthcare entities (Herskovitz Decl. ¶ 20).

20    In addition, the Debtor's existing personnel, along with Mr. Weissman, outside

21  consultants and members of the Board of Directors are providing day-to-day assistance, as needed

22  (Herskovitz Decl. ¶ 21).

23    **3.    Medical Staff and Employees**

24    Approximately 300 doctors have medical staff privileges at the Hospital. The Medical

25  Staff of Gardens Regional Hospital and Medical Center ("Medical Staff") is an unincorporated

26  association that was formed on July 24, 2015 by, is governed by, and operates for the benefit of,

27  the physicians who are members of the Debtor's medical staff. The Medical Staff is responsible

28  for governing the medical staff, subject to all applicable laws, rules and regulations. The Medical

1    Staff is wholly separate and apart from the Debtor, including separate bylaws, bank accounts, IRS

2    Employer Identification Number, officers and directors.  The Medical Staff is not filing

3    bankruptcy (Herskovitz Decl. ¶ 23).

4    　　　The Debtor currently employs approximately 332 people (222 full-time, 22 part-time, and

5    88 per diem).  Of this, 107 are nurses, who are represented by Service Employees International

6    Union ("SEIU") Local 121RN.  The remainder include, but are not limited to, management/

7    supervision, professional/clinician, office, technician/technologist, plant operations, I.T. staff,

8    human resources, Quality Assurance and dietary staff.  Debtor is the second largest employer in

9    the City of Hawaiian Gardens (Herskovitz Decl. ¶ 24).

**4.    The Debtor's Market**

10

11    　　　The Debtor provides emergency and acute hospital services to the largely low-income

12    population of Hawaiian Gardens, which is the smallest city in Los Angeles County, with a total

13    area of 0.9 square miles, and a population of only approximately 15,000 (Herskovitz Decl. ¶ 25).

14    　　　The Debtor provides a wide-range of healthcare services to under-served and indigent

15    communities in Hawaiian Gardens, Artesia, Bellflower, Cerritos, Lakewood, Long Beach,

16    Norwalk and Paramount (the "Service Area"), as well as patients from other cities, states and

17    counties including Orange, San Bernardino and San Diego Counties.  The Debtor provides

18    annually in excess of $11 million of charitable care, community services and health professions

19    education.  The Debtor is a vital part of Los Angeles County's health care safety net, serving

20    some of Southern California's most medically vulnerable residents (Herskovitz Decl. ¶ 26).

21    　　　The Debtor serves a high volume of medically under-served and indigent patients and has

22    been designed a Disproportionate Share Hospital ("DSH") by HHS in connection with the

23    Medicaid program.  As a result of the high volume of indigent patients, millions of dollars worth

24    of Debtor's services have been historically expended on Charity Care, and the amount of

25    uncompensated care provided by Debtor is expected to continue[4] (Herskovitz Decl. ¶ 27).

26

27    [4] The Debtor also leases clinic space in a Medical Office Building ("MOB") at 21520 South
Pioneer Boulevard, Hawaiian Gardens (directly across the parking lot from its acute care facility),

28    that the Debtor currently sub-leases to physicians for their private use.  In addition, the Debtor

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

### 5.    The Debtor's Facilities

The Debtor is the lessee of a fully licensed and accredited 137-bed[5] acute care general hospital (Herskovitz Decl. ¶ 29).

The Debtor also leases clinic space in a Medical Office Building ("MOB") at 21520 South Pioneer Boulevard, Hawaiian Gardens (directly across the parking lot from its acute care facility), which the Debtor currently sub-leases to physicians for their private use.  In addition, the Debtor leases a nearby office building located at 22101 Norwalk Boulevard in Hawaiian Gardens (the "Norwalk Property"), for its Business Office operations.  The Debtor has not paid the rent that was due for the MOB and Norwalk Property on April 1, 2016, which amounts, along with any applicable late charges, remain delinquent (Herskovitz Decl. ¶ 31).

The main hospital facility and MOB are leased from Cerritos Gardens General Hospital Company ("CGGHCO").  The Debtor's hospital premises have been leased from CGGHCO continuously since February 1, 1997.  Effective January 1, 2001, the lease with CGGHCO was renegotiated, and the Debtor and CGGHCO entered into an Amended and Restated Lease dated January 1, 2001 (the "Hospital Lease"), as further amended in 2013, under which the Debtor has exercised the right to continue to lease the hospital premises until December 31, 2025.  The Hospital Lease provides for a $64,692 per month rental payment, with annual CPI increases, and the Norwalk property has a base rent of $3,149 per month, also with annual CPI increases.  Under the terms of the Hospital Lease, rent is dues on the first calendar day of each month. If any installment of rent is not received by CGGHCO within fifteen days after such amount is due, such rent payment is deemed late, and an additional late charge equal to five percent of the delinquent amount shall be due forthwith.  The Debtor has not paid the rent that was due on March 1, 2016 and April 1, 2016, which amounts, along with any applicable late charges, remain delinquent. CGGHCO has demanded payment for the delinquent rent along with late charges, and has

leases a nearby office building located at 22101 Norwalk Boulevard in Hawaiian Gardens (the "Norwalk Property"), for its Business Office operations (Herskovitz Decl. ¶ 28).

[5] The Debtor has not undertaken an exhaustive review to ascertain whether there is any defect in the security interest granted or the perfection of that security interest.  For the purposes herein, I, on behalf of the Debtor, will assume that the security interests were in fact duly perfected, while reserving all rights with regard to this issue (Herskovitz Decl. ¶ 30).

1    reserved all of CGGHCO's rights and remedies under the Hospital Lease, including the right to

2    serve a three-day notice to pay rent or quit.  As of this date, CGGHCO has not served Debtor with

3    a three-day notice to pay rent or quit (Herskovitz Decl. ¶ 32).

**6.    The Debtor's Liabilities**

a.    Secured Claims

6        The Debtor has not undertaken an exhaustive review to ascertain whether there is any

7    defect in the security interest granted or the perfection of that security interest.  For the purposes

8    herein, the Debtor assumes that the security interests were in fact duly perfected, reserving all

9    rights with regard to this issue (Declaration of Eric Weissman ("Weissman Decl."), ¶ 8).

10       The following parties have security interests in the Debtors assets:  (a) RollinsNelson Grp

11   (*sic*), LLC, a California limited liability company ("RNG"),  (b) Sycamore Healthcare Services,

12   LLC ("Sycamore"), (c)  Roxbury Healthcare Services, LLC ("Roxbury") and (d) Harbor-Gardens

13   Capital 1, LLC ("Harbor") (Weissman Decl. ¶ 9).

14       Pursuant to a Claims Settlement Agreement And Release Agreement, executed in

15   April 2016 ("April Settlement Agreement"), RNG has a $500,000 secured claim, plus interest

16   (Weissman Decl. ¶ 10).

17       Pursuant to that same April Settlement Agreement, Sycamore has a $250,000 secured

18   claim, plus interest (Weissman Decl. ¶ 11).

19       Pursuant to that same April Settlement Agreement, RNG has a $575,000 secured claim,

20   plus interest (Weissman Decl. ¶ 12).

21       Pursuant to a previous settlement agreement, Roxbury has a secured claim for $675,000,

22   plus interest (Weissman Decl. ¶ 13).

23       Under the terms of the April Settlement Agreement, the Debtor consented to treat all four

24   claims described above on a *pari-passu* basis as senior secured claims in a total amount of $2.0

25   million (Weissman Decl. ¶ 14).

26       Finally, I believe that Harbor loaned the Debtor $2.5 million during the period of October

27   2015 through February 2016 (Weissman Decl. ¶ 15).

28   */ / /*

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    Thus, I believe that the Debtor's total senior and junior secured claims are equal to $4.5

2    million, plus interest(Weissman Decl. ¶ 16).

3                            b.    Capitalized Leases

4    The Debtor has capitalized leases for medical equipment, the remaining balances due on

5    which total approximately $203,230 (Weissman Decl. ¶ 17).

6                            c.    The Debtor's Unsecured Debt

7    The Debtor has approximately $20,816,823 in total unsecured debt, including a significant

8    amount of disputed, unliquidated or contingent claims, which are comprised of claims made by

9    vendors of goods and services, cost report payables, management fees, and incurred but not

10    reported third party claims (Weissman Decl. ¶ 18).

11                    **7.    Events Leading to the Filing of This Chapter 11 Case**

12    The current fiscal crisis for the Debtor is the result of the confluence of many factors.

13    However, a significant contributor is reduction in DSH payments described above.  As an

14    underlying constant goal and challenge, the Debtor provides over a million dollars per year in

15    care to indigent patients, for which it is not fully compensated.  The percentage of the Debtor's

16    resources expended on indigent care is significant because the Debtor serves a depressed

17    community.  The Debtor has been able to recoup only about 20% of the DSH payment reduction

18    due to the large amount of charity care provided by the Debtor (Herskovitz Decl. ¶ 33).

19    Additional factors that contributed to the Debtor's financial difficulties include

20    inconsistent patient census, insufficient reimbursements for individual patient cases because of

21    denials of coverage or partial denials based on extended lengths of stay, unanticipated operational

22    costs, a lower case mix, a decline in bariatric and other surgeries, difficulties in implementing the

23    required change to electronic medical records, managing the length of stay of patients, and

24    difficulties in collections and billings, among other things (Herskovitz Decl. ¶ 34).

25    Moreover, as a small stand-alone hospital, the Debtor has been unsuccessful in its efforts

26    to negotiate significant increases in reimbursement rates from various governmental and

27    commercial payors that would be comparable to rates of reimbursement received by many other

28    hospitals (Herskovitz Decl. ¶ 35).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    Once the ACA took effect, there was a marginal increase in some of the Debtor's patients

2  who had obtained health insurance coverage, but this was grossly overshadowed by the annual

3  loss of DSH payments that had previously enabled the Debtor to treat the local low-income

4  population.  To the extent previously uninsured patients now have some health insurance

5  coverage, this population continues to be chronically underinsured, or have insurance with high

6  deductibles, which they cannot afford to pay.  This results in insufficient health insurance benefits

7  payments to the Debtor as well as to other health care providers.  Further, Medi-Cal and Medicare

8  reduced their payment rates in the range of 2.9% to 10% in or after 2010, which slowly whittled

9  down reimbursements and revenues.  These changes have caused a decline in the Debtor's

10 revenues without a corresponding reduction in the Debtor's obligations to provide patient care,

11 and annual CPI increases in costs of the Debtor's supplies and overhead costs (Herskovitz Decl.

12 ¶ 36).

13    In addition to these continual struggles with changes in government programs and benefits

14 available to help public benefit charity care hospitals that are common to most DSH providers,

15 and negative operational cash flow, the Debtor, in approximately 2010, discovered large-scale

16 mismanagement of its operations, resulting in turnover of certain key personnel (Herskovitz Decl.

17 ¶ 37).

18    There are approximately 10 to 15 litigation or arbitration matters for which insurance

19 coverage does not exist, which the Debtor has been required to defend or has chosen to prosecute

20 (Herskovitz Decl. ¶ 38).

21    In addition, the Debtor has been named as a defendant or cross-defendant in

22 approximately 25 to 30 lawsuits and arbitration proceedings for which insurance coverage does

23 exist (after payment of retentions or deductibles) (Herskovitz Decl. ¶ 39).

24    The Debtor currently is a plaintiff in approximately 3 litigation matters (Herskovitz Decl.

25 ¶ 41).

26    The cost, resources, distraction and potential liability arising from all of the foregoing

27 disputes is substantial, and has taken – and continues to take – a meaningful toll on the Debtor

28 (Herskovitz Decl. ¶ 42).

Over the past 12 months, the Debtor needed to generate approximately $129,359 per day to cover its costs.  No appreciable cost savings are recognized by the Debtor when the patient census drops below 50 beds a day, as the fixed costs remain fairly constant.  The Debtor has been generating only approximately $96,728 per day in cash collections.  Thus, the Debtor loses money every month it operates, and would soon be unable to pay its employees for the next pay period or to pay the necessary COD advance payments to obtain critical medical supplies for patient care.  The Debtor's many efforts to identify and implement a better solution have been unsuccessful.  The termination by Paladin of the MSA and its unilateral withdrawal of its entire executive management team as of April 12, 2016, along with the Debtor's dire need to line up and maintain a stable and consistent executive management team and source of adequate funding for the Debtor's Hospital operations, and to focus key resources for the preparation, submission to CMS by April 22, 2016 and immediate implementation of a Plan of Correction (which, among other necessities, requires the Debtor to promptly address certain costly deferred maintenance), has created further challenges for the Debtor. The Debtor did not take this decision lightly. However, in light of these dire circumstances and the severe ongoing cash flow shortage, the Debtor was forced to file this chapter 11 case (Herskovitz Decl. ¶ 43).

## III.    DEBTOR'S ACCOUNTS AND CASH MANAGEMENT

As set forth in the concurrently filed Declaration of Eric Weissman (p. 14, l. 3 – p. 26, l. 16), the Debtor maintains seven bank accounts with Bank of America, one account with Wells Fargo Bank and two accounts with Union Bank, as follows.

### A.    The Bank of America Accounts

#### 1.    The Government-Old Account (Account No. 05947-14482) (the "Old Government Account")

As to the Old Government Account:  The Debtor receives payment for its services, in the form of checks, cash, and credit card payments from patients and non-patients and from checks and electronic funds transfers from governmental agencies, and from various insurance companies and other sources including a monthly capitation payment from Blue Cross.  The primary source of these payments is the United States of America under the Medicare program

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

and, to a lesser extent, under the Medicaid program.  The Medicare and Medicaid payments are deposited into this Old Government Account.  To a much lesser extent, the Debtor receives payments from private insurance companies, attorneys and self-pay individual patients. Medicare, Medi-Cal and a few insurance companies have the Debtor's bank routing and account information in their payment systems and they direct the payments, with a few exceptions as discussed below, into the Old Government Account.  As such, all non-credit card collections are deposited in the Old Government Account.  If the Debtor is required to close the Old Government Account and open a new depository account, each of these payers will have to update its payment system with the new information, a process over which the Debtor has no control and which the Debtor believes would take a substantial period of time.

**2.      The Government-New Account (Account No. 09458-73238) (the "New Government Account")**

The Debtor pays its vendors from the New Government Account.

**3.      The Non-Government Account (Account No. 09455-40890) (the "Non-Government Account")**

The Debtor pays vendors from the Non-Government Account.  This is the hospitals primary checking account.

**4.      The Payroll Account (Account No. 05945-14483) (the "Payroll Account")**

ADP, a supplier of human resources and document services, provides the Debtor with payroll management and administrative services and they draw funds from the Payroll Account to cover payroll.

**5.      The Flexible Spending Account (Account No. 3250-0048-3098) (the "FSA Account")**

The FSA Account is used to pay medical bills for the employees from tax deferred amounts that are deducted from employee pay checks.  United Healthcare is the insurance company which handles this account.

/ / /

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**6.      The Maximizer Account (Account No. 05949-10525) (the "Maximizer Account")**

The Debtor uses the Maximizer Account as a savings account.

**7.      The New Checking Account (Account No. 001453032488) (the "New Checking Account")**

The New Checking Account used by the Debtor is a checking account used as a "lockbox account" which receives payments from -- for example -- insurance companies.

**B.      The Wells Fargo Account (Account No. 2832723536) (the "Credit Card Account")**

The Credit Card Account is used for credit card payments only.  Money is kept in the Wells Fargo Account until it is transferred to the New Government Account at Bank of America.

**C.      The U.S. Bank Accounts**

**1.      U.S. Bank Account (Account No. 1-534-6492-4015) (the "IPA Account")**

The IPA Account is used for the fees arising from third party claims in connection with the Independent Practice Association (the "IPA") which is an independent group of physicians and other health-care providers that are under contract to provide services to members of different HMOs, as well as other insurance plans, usually at a fixed fee per patient.  Payments made for the claims of the IPA are paid from this IPA Account.  Signal Hills Solution, Inc. ("Signal Hill") is a management company with a partnership with the Debtor.  Signal Hills processes all third party claims arising from parties connected with the IPA, issues the checks and directs them to the Debtor for review and signature.

**2.      The U.S. Bank Savings Account (Account No.1-534-9323-6845) (the "U.S. Bank Savings Account")**

This U.S. Bank Savings Account is a savings account used for payroll, but currently has a zero balance and is not currently used.

/ / /

/ / /

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

### D.    Operation of Accounts

Bank of America accounts are on automatic "zero balance" transfer except for the Maximizer account.  This means all accounts are swept to a zero balance at midnight and all funds will be transferred to the main New Government Account on a daily basis.  The funds remain in the New Government Account until they are needed for the payment of the Debtor's business expenses, including payroll, at which time they are transferred into the Payroll Account.  Disbursements are made via paper check and by electronic funds transfers.

The amounts needed to cover the payroll are transferred from the New Government Account into the Payroll Account every other Wednesday and Thursday.  Signal Hill pays the U.S. Bank IPA account every other Friday.  The Debtor authorizes such payments.  As in the case with the payers noted above, these vendors have the Debtor's bank routing and account information in their systems.  From time to time, the Debtor will transfer money to Bank of America Accounts as needed.

If the Debtor is required to close the Bank of America Accounts and open a new account or accounts, each of these vendors, including Signal Hill will have to update its system.

### E.    Balance in Accounts

As of the Petition Date, the aggregate balance in the Accounts was approximately $130,034.00.  Bank of America, Wells Fargo and U.S. Bank are approved depositories for funds of debtors in possession by the Office of the United States Trustee for Region 16, so the funds in these Accounts are protected as required by section 345 of the Bankruptcy Code.

## IV.    REQUESTED RELIEF

The Debtor seeks an order of this Court:  (a) authorizing the Debtor to maintain and continue using the existing Accounts as set forth above; (b) authorizing the Debtor to continue using its business forms without "Debtor in Possession" being imprinted on them until the Debtor can alter its software to include that designation, limited to a maximum period of thirty (30) days; (c) authorizing and directing the Banks to honor postpetition checks drawn on and transfers made from the Accounts; (d) requiring that in the event the Bank refuses to honor checks drawn on the Accounts or transfer instructions made on the Accounts (provided there are sufficient good funds

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   in the account to honor the checks or transfer instructions and the checks are otherwise properly

2   payable), the Banks immediately turn over the deposits held in the Accounts upon the Debtor's

3   request; (e) granting the Banks limited relief from the automatic stay to continue to offset

4   standard monthly or periodic bank fees against the Accounts in the same manner as such fees

5   were offset prepetition; and (f) granting such other and further relief as is just and proper under

6   the circumstances.

7   **V.**     **ARGUMENT**

8          **A.**     **Maintenance of the Accounts Is in the Best Interests of the Debtor's Estate**

9          The U.S. Trustee Guidelines require a chapter 11 debtor in possession to open new bank

10  accounts and close all existing accounts upon the commencement of its bankruptcy case.  The

11  U.S. Trustee Guidelines also require that new bank accounts be opened at certain financial

12  institutions designated as authorized depositories by the U.S. Trustee.  *See* Notice Of

13  Requirements For Chapter 11 Debtors In Possession, available at www.usdoj.gov/ust/r16.

14         However, requiring the Debtor to close the Accounts and to open new ones will disrupt

15  the Debtor's business and cash flow.  Further, closing the Accounts and opening new ones will

16  also increase the work required of the Debtor's accounting personnel who already are dealing

17  with the many and varied issues related to the commencement of this Case, and would needlessly

18  cost the Debtor time and money with no discernible benefit to the Estate at a time when it is

19  trying to conserve both.

20         Local Bankruptcy Rule 2015-2 requires that a debtor comply with the U. S. Trustee

21  Notices and Guidelines.  The Debtor hereby seeks a waiver of the U.S. Trustee's requirements

22  that it close the existing Accounts and open new postpetition bank accounts at depositories

23  authorized by the U.S. Trustee.  The Debtor requests instead that it be allowed to convert the

24  Accounts, which are already at a depository authorized by the U.S. Trustee, to "debtor in

25  possession" accounts and continue to utilize them as necessary to best serve its business needs.

26         Even though there are 10 Accounts, only one Account, the New Government Account, is

27  utilized for daily disbursements by the Debtor.  As such, there will be no confusion of

28  postpetition transactions with prepetition ones.  Requiring the Debtor to close the Accounts would

1   serve no purpose but would, as stated, delay the Debtor's ability to utilize its funds, put further

2   burdens on accounting personnel dealing with the Debtor's many financial issues and cost the

3   Debtor time and money better used in its efforts to maximize value of the Estate for its creditors.

4          Courts have waived the strict enforcement of the U.S. Trustee Guidelines requiring

5   closing prepetition bank accounts and have implemented alternative procedures to achieve the

6   same protection.  Because such considerations are so obvious, however, few decisions related to

7   such requests are published.  *See In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D.

8   Ohio 1987).

9          The continued use of existing cash management systems (which includes the authority to

10  continue using prepetition bank accounts) has, however, been approved as a routine matter in

11  unreported orders in a number of chapter 11 cases in this district.[6]

12         The Debtor respectfully submits that continued use of the Accounts should be approved in

13  this Case as well.

14  ///

15  ///

16  ///

17  _____

18  [6] *See, e.g., In re Empire Land, LLC*, Case No. 6:08-bk-14592-MH (Bankr. C.D. Cal. 2008) (Final
    Order Granting Emergency Motion of Debtors for Order Pursuant to 11 U.S.C. §§ 363, 1107 and
    1108 Authorizing (1) Maintenance of Existing Bank Accounts, (2) Continued Use of Existing

19  Business Forms, and (3) Wavier of Section 345(b) Deposit and Investment Requirements); *In re
    People's Choice Home Loans, Inc.*, Case No. 8:07-10765-RK (Bankr. C.D. Cal. 2007) (Final

20  Order (a) Authorizing the Continued Use of the Debtor's Cash Management Systems; (b)
    Authorizing Maintenance of the Debtor's Existing Bank Accounts and Business Forms, and (c)

21  Extending the Debtor's Time to Comply with Section 345 of the Bankruptcy Code); *In re Tie
    Communications, Inc.*, Case No. SA-98-15557-JB (Bankr. C.D. Cal. 1998) (Order on Debtor's

22  Motion for Order Approving (1) Centralized Cash Management System and (2) Use of Existing
    Bank Accounts, Business Forms and Investment and Deposit Guidelines); *In re Sizzler

23  Restaurants Int'l, Inc.*, Case Nos. SV 96-16075-AG through 16079 (Bankr. C.D. Cal. 1996)
    (Order on Debtor's Motion for Order Approving (1) Centralized Cash Management System and

24  (2) Use of Existing Bank Accounts, Business Forms and Investment and Deposit Guidelines); *In
    re Victor Valley Community Hospital*, Case No. 6:10-39537-CB (Bankr C.D. Cal. 2010)(Order

25  Pursuant to 11 U.S.C. §§ 363, 1107 and 1108 Authorizing (1) Maintenance of Existing Bank
    Accounts, (2) Continued Use of Existing Cash Management System, and (3) Continued Use Of

26  Business Forms; *In re Z Galleries*, Case No. 2:09-18400-VZ (Bankr. C.D. Cal. 2009)(Order
    Pursuant to 11 U.S.C. §§ 363, 1107 and 1108 Authorizing (1) Maintenance of Existing Bank

27  Accounts, (2) Continued Use of Existing Cash Management System (3) Continued Use of
    Business Forms, and (4) Limited Waiver of Section 345(B) Deposit and Investment

28  Requirements).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

84806358\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**B.**     **Authorizing and Directing the Banks to Honor Postpetition Checks and Granting Banks Limited Relief from the Automatic Stay**

In relation to the above requested relief, the Debtor also requests that the Court: (i) authorize and direct the Banks to honor postpetition checks drawn on and transfers made from the Accounts; (ii) require that in the event the Banks refuse to honor checks drawn on its Accounts or transfer instructions made on its Accounts (provided there are sufficient good funds in the account to honor the checks or transfer instructions and the checks are otherwise properly payable), the Banks immediately turn over the deposits held in the applicable Accounts upon the Debtor's request, and (iii) grant the Banks limited relief from the automatic stay to continue to offset standard monthly or periodic bank fees against the Accounts in the same manner as such fees were offset prepetition

**C.**     **Maintenance of the Debtor's Existing Business Forms Is in the Best Interests of the Debtor's Estate**

The Debtor is also requesting authority to continue using its business forms without the designation "Debtor in Possession" on them for a limited time.  Many of the Debtor's business forms are electronically generated or, if printed, can be electronically altered.  The Debtor seeks the authority of this Court to utilize its forms without the "Debtor in Possession" designation for no more than thirty (30) days, until the Debtor can make the necessary adjustments to its software so that these forms will contain the phrase "Debtor in Possession."

Bankruptcy courts routinely grant authority to continue using existing business instruments in chapter 11 cases.  *See, e.g., In re Johnson*, 106 B.R. 623, 624 (Bankr. D. Neb. 1989) (debtor not required to obtain new checks imprinted with "Debtor in Possession" legend; *see also supra* note 4 and the cases cited therein).  Such authority is routinely granted forcing a business enterprise to incur the disruption and expense of stamping or otherwise placing the "Debtor in Possession" designation on all of its business forms, hampering the administration of a chapter 11 case to the further economic detriment of creditors while the new forms are being generated, is counter-productive to the purpose of the bankruptcy filing.

**/ / /**

1    Accordingly, the Court should authorize the Debtor's continued use of existing business

2    forms as set forth above, for a period of thirty days.

3    **VI.    CONCLUSION**

4    For the foregoing reasons, the Debtor respectfully requests that this Court enter an Order:

5    (a)    Authorizing the Debtor to maintain and continue using its existing Accounts and

6    cash management system as set forth in the attached Memorandum of Points and Authorities;

7    (b)    Authorizing the Debtor to continue using its business forms without "Debtor in

8    Possession" being imprinted on them until the Debtor can alter its software to include that

9    designation, limited to a maximum period of thirty (30) days;

10    (c)    Authorizing and directing the Banks to honor postpetition checks drawn on and

11    transfers made from the Accounts;

12    (d)    Requiring that in the event that the Banks refuse to honor a check drawn or a

13    transfer made on Accounts maintained by it (provided there are sufficient good funds in the

14    account to complete the transfer), the Banks immediately turn over the deposits held in the

15    applicable Account upon the Debtor's request;

16    (e)    Granting the Banks limited relief from the automatic stay to continue to offset

17    standard monthly or periodic bank fees against the Accounts in the same manner as such fees

18    were offset prepetition; and

19    (f)    Granting such other and further relief as is just and proper under the

20    circumstances.

21

22    Dated:  June 6, 2016                              DENTONS US LLP
                                                         SAMUEL R. MAIZEL
23                                                       JOHN A. MOE, II

24
                                                         By____/s/ John A. Moe, II_____
25                                                            JOHN A. MOE, II

26                                                       Attorneys for Gardens Regional Hospital and
                                                         Medical Center, Inc.
27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# EXHIBIT A

**Bank of America Accounts:**

      (1) Account No. 05947-14482 (the "Old Government Account")

      (2) Account No. 09458-73238 (the "New Government Account")

      (3) Account No. 09455-40890 (the "Non-Government Account")

      (4) Account No. 05945-14483 (the "Payroll Account")

      (5) Account No. 3250-0048-3098 (the "FSA Account")

      (6) Account No. 05949-10525 (the "Maximizer Account)

      (7) Account No. 001453032488 (the "New Checking Account")

**Wells Fargo Bank:**

      (1)  Account No. 2832723536 (Credit Card Account)

**U.S. Bank:**

      (1) Account No.1-534-6492-4015 (IPA Account)

      (2) Account No.1-534-9323-6845 (U.S. Bank Savings Account)

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300