1  SAMUEL R. MAIZEL (BAR NO. 189301)
   samuel.maizel@dentons.com
2  JOHN A. MOE, II (BAR NO. 066893)
   john.moe@dentons.com
3  DENTONS US LLP
   601 South Figueroa Street, Suite 2500
4  Los Angeles, California 90017-5704
   Telephone:    (213) 623-9300
5  Facsimile:    (213) 623-9924

6  Attorneys for Debtor,
   GARDENS REGIONAL HOSPITAL
7  AND MEDICAL CENTER, INC.

8

9

                    UNITED STATES BANKRUPTCY COURT
10
                    CENTRAL DISTRICT OF CALIFORNIA
11
                        LOS ANGELES DIVISION
12

13  In re:                                    Case No. 2:16-bk-17463-ER

14  GARDENS REGIONAL HOSPITAL AND             CHAPTER 11
    MEDICAL CENTER, INC., dba GARDENS
15  REGIONAL HOSPITAL AND MEDICAL             DEBTOR'S NOTICE OF EMERGENCY
    CENTER,                                   MOTION AND EMERGENCY MOTION
16                                            FOR INTERIM AND FINAL ORDERS (A)
            Debtor.                           AUTHORIZING THE DEBTOR TO
17                                            OBTAIN POSTPETITION FINANCING;
                                              (B) AUTHORIZING THE DEBTOR TO
18                                            USE CASH COLLATERAL AND (C)
                                              GRANTING ADEQUATE PROTECTION
19                                            TO PREPETITION SECURED
                                              CREDITORS
20
                                              Hearing:
21                                            Date:        June 9, 2016
                                              Time:        10:00 a.m.
22                                            Place:       U.S. Bankruptcy Court
                                                           255 E. Temple St.
23                                                         Los Angeles, CA 90012

24                                            Judge Ernest M. Robles

25                                            [Declarations of David Herskovitz and Eric
                                              Weissman In Support of Emergency
26                                            Motions filed Concurrently herewith]

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

93329891\V-1

# TABLE OF CONTENTS

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**Page(s)**

I.      Preliminary Statement ..................................................................................................... 4

II.     Bankruptcy Rule 4001 Statement .................................................................................. 6

III.    Disclosure Pursuant to Bankruptcy Rule 4001 and Compliance with LBR 4001-2 .......... 10

IV.     Background ..................................................................................................................... 11

V.      Jurisdiction ..................................................................................................................... 11

VI.     Relief Requested ............................................................................................................ 11

VII.    Basis for Relief ............................................................................................................... 13

        A.      The Debtor's Need for Financing and Use of Cash Collateral .............................. 13

        B.      The Debtor's Entry into the DIP Facility Is Authorized Under Section 364 of the
                Bankruptcy Code ................................................................................................... 14

                (1)     The Debtor is Unable to Obtain Unsecured or Junior Secured Credit ....... 16

                (2)     The Prepetition Secured Creditors' Interests Are Adequately Protected ... 17

                (3)     The DIP Facility Is Fair, Reasonable, and in the Best Interests of the Estate
                        ................................................................................................................... 18

        C.      The Use of Cash Collateral Is Appropriate Under the Current Circumstances and
                Should Be Authorized ........................................................................................... 20

        D.      The Proposed Adequate Protection for the Use of Cash Collateral Is Appropriate 21

VIII.   Request for a Final Hearing ........................................................................................... 22

IX.     The Need for Immediate Relief Pending a Final Hearing ............................................... 22

X.      Waiver of Bankruptcy Rules 6004(a) and (h) ................................................................ 23

XI.     Notice ............................................................................................................................. 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anchor Sav. Bank FSB v. Sky Valley. Inc.*,
    99 B.R. 117 (N.D. Ga. 1989) ........................................................................18, 19

*In re Aqua Assocs.*,
    123 B.R. 192 (Bankr. E.D. Pa. 1991)..........................................................18, 20

*In re Crouse Group. Inc.*,
    71 B.R. 544 (Bankr. E.D. Pa. 1987)...................................................................18

*In re Defender Drug Stores. Inc.*,
    126 B.R. 76 (Bankr. D. Ariz. 1991) ..................................................................17

*MBank Dallas N.A. v. O'Connor (In re O'Connor)*,
    808 F.2d 1393 (10th Cir. 1987)..........................................................................24

*Owens-Corning Fiberglas Corp. v. Ctr. Wholesale, Inc. (In re Ctr. Wholesale. Inc.)*,
    759 F.2d 1440 (9th Cir. 1985)............................................................................24

*Richmond Leasing Co. v. Capital Bank. N.A.*,
    762 F.2d 1303 (5th Cir. 1985)............................................................................21

*In re Simasko Prod. Co.*,
    47 B.R. 444 (Bankr. D. Colo. 1985) ..................................................................21

*In re Sky Valley, Inc.*,
    100 B.R. 107  (Bankr. N.D. Ga. 1998)........................................................19, 20

*In re Snowshoe Co., Inc.*,
    789 F.2d at 1087-89 (4th Cir. 1986); ..........................................................19, 24

*In re Stein*,
    19 B.R. 458 (Bankr. E.D. Pa. 1982)..................................................................24

*Trans World Airlines. Inc. v. Travellers Int'l AG. (In re Trans World Airlines, Inc.)*,
    163 B.R. 964 (Bankr. D. Del. 1994) ..................................................................21

**Statutes**

11 U.S.C. §105.......................................................................................................10
11 U.S.C. §328.....................................................................................................9, 11
11 U.S.C. §330.....................................................................................................9, 11
11 U.S.C. §331.....................................................................................................9, 11

DENTONS US LLP
601 SOUTH FIGUEROA STREET , SUITE 2500
LOS ANGELES, CALIFORNIA  90017-5704
(213) 623-9300

- i -

11 U.S.C. § 361 .................................................................................................10,14
11 U.S.C. § 362 ...................................................................................................5,15
11 U.S.C. § 363 ...................................................................................................7,14
11 U.S.C. § 363(a) .................................................................................................6
11 U.S.C. § 363(e) ............................................................................................14,23
11 U.S.C. § 364 ...........................................................................................14,17,18
11 U.S.C. § 364(c)-(d)(1) ...................................................................................17
11 U.S.C. § 364(c)(2) ....................................................................................10,23
11 U.S.C. § 364(c)(3) .........................................................................................10
11 U.S.C. § 364(d) .............................................................................................10
11 U.S.C. § 364(d)(1) .....................................................................................18, 20
11 U.S.C. §503(b) ..............................................................................................11
11 U.S.C. §507(b) ..............................................................................................11
28 U.S.C. § 157 ..................................................................................................13
28 U.S.C. § 157(b) ............................................................................................13
28 U.S.C. § 1408 ...............................................................................................14
28 U.S.C. § 1930(a)(6) ........................................................................................9

**Other Authorities**

Fed. R. Bankr. P. 2002 .......................................................................................25

Fed. R. Bankr. P. 4001 ....................................................................................8, 12

Fed. R. Bankr. P. 4001 (b) ................................................................................24

Fed. R. Bankr. P. 4001(b)(2) ............................................................................24

Fed. R. Bankr.. P. 4001(b)(2) .......................................................................24, 25

Fed. R. Bankr. P. 4001 (c)(1)(B)(i)-(xi) ..........................................................12

Fed. R. Bankr. P. 6004 ......................................................................................15

Fed. R. Bankr. P. 6004(a) ..................................................................................25

Fed. R. Bankr. P. 6004(h) ..................................................................................25

Fed. R. Bankr. P. 6004(a) and (h) ....................................................................25

Fed. R. Bankr. P. 9014 ........................................................................................5

LBR Rule 4001-2 ................................................................................................5

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

93329891\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE, CREDITORS HOLDING THE TWENTY LARGEST UNSECURED CLAIMS, SECURED CREDITORS, PARTIES REQUESTING SPECIAL NOTICE, THE UNITED STATES OF AMERICA AND THE STATE OF CALIFORNIA, AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

Gardens Regional Hospital and Medical Center, Inc., as the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), files this motion (the "Motion") pursuant to sections 105(a), 361, 362, 363, 364 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1530 (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR") for entry of an interim order (substantially in the form attached hereto as Exhibit "A", the "Interim Order") and a final order (the "Final Order" and together with the Interim Order, the "DIP Orders") (i) (a) authorizing the Debtor to enter into a senior secured, superpriority debtor in possession financing facility with NAEROK Group International, Inc. (the "DIP Lender"), in an amount up to $2,000,000.00 (as amended, modified or otherwise in effect from time to time, the "DIP Facility"), substantially on the terms set forth in the debtor in possession credit agreement attached as Exhibit "1" to the Interim Order (as amended, supplemented, or otherwise modified and in effect from time to time, the "DIP Credit Agreement,"[1] (together with all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to or in favor of the DIP Lender, the "DIP Financing Agreements"), and (b) granting the DIP Liens and the DIP Superpriority Claims (in each case, as defined below); (ii) authorizing the interim use of Cash Collateral (as defined below) on the terms set forth in the Interim Order; (iii) granting "adequate protection" to the DIP Lender; (iv) modifying the automatic stay as imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the DIP Facility and the DIP Orders; and (v) scheduling a final hearing with respect to the relief requested

---

[1] Capitalized terms used but not defined herein shall have the meanings given to them in the DIP Credit Agreement or, if not defined in the DIP Credit Agreement, the Interim Order.

1  herein (the "Final Hearing").  In support of the Motion, the Debtor relies upon and refers this

2  Court to the Declarations of David Herskovitz and Eric Weissman in Support of First Day

3  Motions (the "Herskovitz Declaration" and "Weissman Declaration" respectively), and

4  respectfully represents as follows:

5  **I.    <u>Preliminary Statement</u>**

6        Prior to the commencement of this chapter 11 case (the "Chapter 11 Case"), the Debtor's

7  operations were funded, in part by use of Cash Collateral.  However, postpetition the Debtor

8  needs additional liquidity to reorganize.

9        During that time, the Debtor requires the use of cash, which comprises the cash collateral

10  of the existing Prepetition Secured Creditors[2] securing the Prepetition Debt within the meaning of

11  section 363(a) of the Bankruptcy Code (the "Cash Collateral"),[3] and the proceeds of the proposed

12  DIP Facility, mainly to fund day-to-day operations and maintain and preserve the value of the

13  Debtor's business (including the Prepetition Collateral), pending the Debtor's reorganization for

14  the benefit of the Debtor's estate and creditors, including the Prepetition Secured Creditors.  The

15  availability to the Debtor of sufficient working capital and liquidity to finance its operations is

16  vital to its ability to maintain such operations and is necessary for the preservation of the value of

17  the estate as a whole, pending the contemplated reorganization.

18        The Debtor seeks authority during the interim period, and pursuant to the terms of the

19  Interim Order, to use Cash Collateral.  It further seeks authority to borrow up to $500,000.00

20  under the proposed DIP Facility during the interim period, and up to three additional payments of

---

21  [2] The alleged existing secured creditors as of the petition date are: Sycamore Healthcare Services,
22  LLC, Roxbury Healthcare Services, LLC, Rollins Nelson Grp [sic], LLC and Harbor-Gardens
    Capital 1, LLC (collectively, the " Prepetition Secured Creditors").  Referring to the Prepetition
23  Secured Creditors in this way is not a concession by the Debtor that these parties, in fact, have
    valid, enforceable prepetition security interests in the Debtor's assets; the Debtor reserves all
24  rights with regard to that issue.  As described in the Weissman Declaration, the estimated total
    amount owed to the Prepetition Secured Creditors is approximately $4,500,000 (the "Prepetition
25  Debt"), allegedly secured by a lien on all the Debtor's assets (the "Prepetition Liens).

26  [3] Section 363(a) of the Bankruptcy Code defines "cash collateral" as:  "cash, negotiable
    instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever
27  acquired in which the estate and an entity other than the estate have an interest and includes the
    proceeds, products, offspring, rents, or profits of property . . . subject to a security interest as
28  provided in section 552(b) of this title, whether existing before or after the commencement of a
    case under this title." 11 U.S.C. § 363(a).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

93329891\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    $500,000.00 following entry of the Final Order.

2          As discussed more fully below, the Debtor proposes to secure its obligations under the

3    DIP Facility by, among other things, granting to the DIP Lender under the DIP Facility first,

4    priming liens on, and security interests in, substantially all of the Debtor's assets, with certain

5    exceptions and, in each case, subject to the "Carve Out," as defined and described more fully

6    below.  The DIP Credit Agreement and the DIP Orders also provide the DIP Lender with allowed

7    superpriority administrative expense claims.

8          The DIP Credit Agreement and the DIP Orders provide for, among other things, budgetary

9    constraints on the use of Cash Collateral and the proceeds of the DIP Facility.  The proceeds of

10   the DIP Facility will provide credit for up to approximately six months to fund the Chapter 11

11   Case.

12         The Prepetition  Secured Creditors are also provided adequate protection under the

13   proposed DIP Orders, solely to the extent of any diminution in the value of their interests in the

14   Prepetition Collateral as more fully set forth in the DIP Orders (and subject to the Carve Out and

15   the Debtor's preserved rights pursuant to section 506(c) of the Bankruptcy Code), in the form of

16   replacement security interests in and liens on substantially all of the Debtor's assets and property

17   (with certain exclusions) and superpriority claims (in each case, in accordance with their relative

18   priorities, and junior and subject to the liens and superpriority claims granted to the DIP Lender).

19   If the Debtor is unable to obtain approval of the use of Cash Collateral and the DIP Facility, its

20   ability to reorganize will be jeopardized, substantially reducing recoveries to all creditors.  Entry

21   of the Interim Order and, after the requisite notice and the Final Hearing, the Final Order is

22   therefore (a) critical to the Debtor's ability to preserve and maximize the value of its assets in a

23   sale of substantially all of its assets under section 363 of the Bankruptcy Code, (b) in the best

24   interests of the Debtor and its estate, and (c) necessary to avoid irreparable harm to the Debtor, its

25   creditors and its assets, business, goodwill, reputation and employees.  Furthermore, access to the

26   Cash Collateral and the proceeds under the DIP Facility is necessary to avoid immediate and

27   irreparable harm to the value of the Debtor's assets pending the sale.  The Debtor, therefore,

28   respectfully requests that this Motion be granted.

- 5 -

93329891\V-1

## II.    **Bankruptcy Rule 4001 Statement**

In accordance with Bankruptcy Rule 4001, the following sets forth a concise summary of material terms of the proposed DIP Facility and the DIP Orders:[4]

| | |
|---|---|
| SECURED CREDITORS: | Sycamore Healthcare Services, LLC, Roxbury Healthcare Services, LLC, Rollins Nelson Grp [sic], LLC and Harbor-Gardens Capital 1, LLC |
| BORROWER: | Gardens Regional Hospital and Medical Center, Inc. |
| DIP LENDER: | Naerok Group International, Inc. |
| DIP FACILITY: | Superpriority, first lien, secured debtor in possession credit facility in the aggregate principal amount of up to $2,000,000.00. |
| AVAILABILITY: | Up to $500,000.00 in the aggregate under the DIP Facility will be available upon entry of the Interim Order. Another three advances of $500,000.00 will be available upon entry of the Final Order and completion of due diligence by Lender. DIP Credit Agreement, § 2.2(b). |
| CLOSING DATE: | Upon satisfaction or waiver of the conditions precedent set forth in the DIP Credit Agreement, including Court approval of the Interim Order. DIP Credit Agreement, § 2.2. |
| MATURITY DATE: | The earliest to occur of (a) December 31, 2016, (b) the effective date of a plan, (c) the date of a final order approving the sale or all or substantially all of the Debtor's assets, (d) the date which is 180 days after entry of a final order approving this Motion, or (e) the acceleration of the Loans and or the occurrence of an event of default. DIP Credit Agreement §2.3. |
| USE OF PROCEEDS: | To fund the Debtor's day-to-day operations and general corporate purposes, pay the costs of the bankruptcy case, and to maintain and preserve the Debtor's assets. DIP Credit Agreement §2.1. |
| AGREED BUDGET: | The Debtor's use of the DIP Facility proceeds will be in accordance with a budget (the "Agreed Budget") providing financial projections for the Parties covering the period from the Petition Date on a rolling 13-week basis, which projections shall include, at a minimum, projected receipts, and projected disbursements, substantially in the forms of the initial Budget previously approved by the Lender, and any subsequent projections furnished pursuant to the DIP Credit Agreement. DIP Credit Agreement §2.1. The proposed budget is attached |

---

[4] This summary is not intended to limit the terms of the DIP Facility, including in respect of any use of Cash Collateral, in each case as set forth in the DIP Credit Agreement, the Interim Order and the Final Order. Reference should be made to the Interim Order, the DIP Credit Agreement and the Final Order for the full terms thereof.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

93329891\V-1

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

1    to the DIP Credit Agreement as Exhibit 1.

2    INTEREST RATE:    7%.  DIP Credit Agreement § 2.7.

3    FEES:    The Debtor agrees to pay to the DIP Lender, as applicable, the
       fees in the amounts and on the dates as set forth in the DIP
4      Credit Agreement, including reasonable attorneys' fees, costs
       and expenses, incurred by DIP Lender in connection with the
5      DIP Facility.  DIP Credit Agreement §2.9.

6    CARVE OUT:    The DIP Liens, DIP Superpriority Claim, the Prepetition
       Liens, the Prepetition Replacement Liens, and the Prepetition
7      Superpriority Claims are subordinate only to the following
       (collectively, the "Carve Out"):

8
       (a)    allowed administrative expenses pursuant to 28 U.S.C.
9             Section 1930(a)(6) for fees required to be paid to the
              Clerk of the Court and to the Office of the United
10            States Trustee (collectively, the "U.S. Trustee Fees");
              and
11
       (b)    professional fees and costs and expenses incurred by,
12            professionals or professional firms retained by the
              Debtor and of any Committee(s) and out-of-pocket
13            costs and expenses incurred by members of the
              Committee(s), always as provided in and as may be
14            limited by the Carve Out Budget (defined below) and
              allowed by the Court (collectively, the "Case
15            Professionals"), in an aggregate amount not to exceed
              the sum of $500,000.
16
       Notwithstanding anything to the contrary contained in the
17     Interim Order, so long as no notice of the occurrence of a DIP
       Order Event of Default shall have been delivered, the payment
18     of compensation and reimbursement of expenses allowed and
       payable under 11 U.S.C. §§328, 330 and 331, as the same may
19     be due and payable and allowed by the Court, shall in all
       instances be limited by, and not exceed, the Carve Out.  In
20     addition, the amount of the Carve Out shall automatically
       reduce dollar-for-dollar by the amount of compensation
21     allowed and paid during the Chapter 11 Case.  Nothing
       contained in the Interim Order shall limit payment of
22     compensation and reimbursement of expenses allowed and
       payable under 11 U.S.C. §§ 328, 330 and 331, as the same
23     may be due and payable and allowed by the Court even if they
       exceed the amounts contained in the Budget or the Carve Out
24     Budget, out of funds other than the Carve Out, after (x) the
       DIP Obligations have been irrevocably paid in full to the DIP
25     Lender, and (y) the Prepetition Debts have been irrevocably
       paid in full to the Prepetition Secured Creditor.  Interim Order
26     ¶¶ _____.

27   DIP LIENS:    The DIP Lender is granted pursuant to sections 361, 362,
       364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code,
28     priming first priority, continuing, valid, binding, enforceable,

- 7 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

non-avoidable, and automatically perfected postpetition security interests and Liens (collectively, the "DIP Liens") senior and superior in priority to all other secured and unsecured creditors of the Debtor's estate, including the Prepetition Liens in favor of the Prepetition Lenders, except as otherwise provided in the Interim Order with respect to Permitted Prior Liens, and subject to the Carve Out, upon and to substantially all of the Debtor's assets (collectively, the "DIP Collateral") including, but not limited to Bankruptcy Recoveries (as defined below), but only (A) the full amount of any such recovery or settlement thereof to the extent arising under Section 549 of the Bankruptcy Code and (B) all amounts necessary to reimburse the DIP Lender for the amount of the Carve Out, if any, used to finance the pursuit of such recovery or settlement with respect to all Bankruptcy Recoveries, and no other Bankruptcy Recoveries.  As used herein, "Bankruptcy Recoveries" shall mean any claims and causes of action to which the Debtor may be entitled to assert by reason of any avoidance or other power vested in or on behalf of the Debtor or the estate of the Debtor under Chapter 5 of the Bankruptcy Code and any and all recoveries and settlements thereof. Interim Order, ¶¶ 7-15.

**ADEQUATE PROTECTION:**

As adequate protection for the interest of the Prepetition Secured Creditors in the Prepetition Collateral (including Cash Collateral) on account of the granting of and subordination to the DIP Liens, subordination to the Carve Out, the Debtor's use of Cash Collateral, and other decline in value arising out of the automatic stay or the Debtor's use, sale, depreciation, or disposition of the Prepetition Collateral, the Prepetition Secured Creditors shall receive adequate protection as follows (collectively, "Adequate Protection"):

(a) Prepetition Replacement Liens.  To the extent of the diminution in the value of the interest of the Prepetition Secured Creditors in the Prepetition Collateral, the Prepetition Secured Creditors shall have, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code additional and replacement security interests and Liens in the DIP Collateral (the "Prepetition Replacement Liens") which shall be junior only to the Carve Out, the DIP Liens securing the DIP Obligations, and Permitted Prior Liens.  Interim Order, ¶ 17.

(b) Prepetition Superpriority Claim.  To the extent of the diminution in the value of the interests of the Prepetition Secured Creditors in the Prepetition Collateral, the Prepetition Secured Creditors shall have an allowed superpriority administrative expense claim (the "Prepetition Superpriority Claim") which shall have priority (except with respect to (i) the DIP Liens, (ii) the DIP Superpriority Claim, and (iii) the Carve Out), in the Chapter 11 Case under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and

- 8 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

otherwise over all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552, 726, 1113, and 1114 of the Bankruptcy Code, and, upon entry of the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy, or attachment.  Other than the DIP Liens, the DIP Superpriority Claim, and the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Case, or in any Successor Case, will be senior to, prior to, or on parity with the Prepetition Superpriority Claim.  The Prepetition Superpriority Claim shall be secured by Liens in the DIP Collateral which shall be junior only to the Carve Out and the DIP Liens securing the DIP Facility (for purposes hereof, such liens will be deemed part of the ''Prepetition Replacement Liens'').  Interim Order ¶ 17.

| | |
|---|---|
| PRIORITY: | Except to the extent expressly set forth in the Interim Order in respect of the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative claims against the Debtor with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(d), 726, 1113 and 1114 of the Bankruptcy Code and, upon entry of the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy, or attachment.  Interim Order ¶ 17. |
| FINANCIAL REPORTING: | Monthly, a rolling 13-week budget, setting forth anticipated cash receipts and cash disbursements on a weekly basis.  DIP Credit Agreement § 5.1(f).  Weekly, a line by line variance report for the preceding week and on a cumulative basis comparing actual and budgeted cash receipts and cash disbursements. DIP Credit Agreement § 5.1(g). |
| AFFIRMATIVE AND NEGATIVE COVENANTS: | Customary for financings of this type, as set forth more fully in the DIP Credit Agreement.  DIP Credit Agreement §§ 5.1, 5.2, 5.3. |
| REPRESENTATIONS | Customary for financings of this type, as set forth more fully in |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

| | |
|---|---|
| AND WARRANTIES: | the DIP Credit Agreement.  DIP Credit Agreement §§ 3.1. |
| EVENTS OF DEFAULT: | Customary and appropriate for financings of this type (subject to customary and appropriate grace periods), including, without limitation, failure to make payments when due, breaches of representations and warranties, defaults under other agreements or instruments of indebtedness, and noncompliance with covenants.  DIP Credit Agreement §6.1. |
| CONDITIONS PRECEDENT: | Include, *inter alia*: (i) execution and delivery of Loan Documents, (ii) satisfaction of the DIP Lender with the Agreed Budget, and (iii) entry of the Interim Order by the Court.  DIP Credit Agreement §4.1. |
| CONDITIONS TO EACH EXTENSION OF CREDIT: | Include, *inter alia*: (i) no default or event of default shall have occurred, (ii) accuracy of representations in all material respects, and (iii) the Interim Order, or following entry thereof, the Final Order shall be in full force and effect.  DIP Credit Agreement § 4.1. |
| INDEMNIFICATION: | The Debtor shall indemnify the DIP Lender and any agent or sub-agent thereof (each such Person being called an "Indemnitee") against, and hold each Indemnitee harmless from, any and all losses, claims, causes of action, damages, liabilities, settlement payments, costs, and related expenses (including the fees, charges and disbursements of any counsel for any Indemnitee), incurred by any Indemnitee or asserted against any Indemnitee by any third party or by the Debtor arising out of, in connection with, or as a result of the execution or delivery of the DIP Credit Agreement, any other Loan Document or any agreement or instrument contemplated thereby, the performance by the parties thereto of their respective obligations thereunder, the consummation of the transactions contemplated thereby, or the administration of the DIP Credit Agreement, provided that such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from the gross negligence or willful misconduct of such Indemnitee.  DIP Credit Agreement, § 7.1. |

## III.    Disclosure Pursuant to Bankruptcy Rule 4001 and Compliance with LBR 4001-2

The provisions described in Bankruptcy Rule 4001 (c)(1)(B)(i)-(xi), to the extent applicable, are set out in the following sections of the DIP Credit Agreement and or the Interim Order:

- *Grant of a Priority or Lien on Property of the Estate*:  Interim Order ¶¶ 17.

- *Waiver or Modification of Bankruptcy Code Provisions or Applicable Rules Relating to Automatic Stay*:  Interim Order ¶21.

- *Waiver or Modification of Applicability of Nonbankruptcy Law Relating to Perfection of Lien on Property of Estate or on Foreclosure or Other Enforcement of Lien*:  Interim Order ¶¶ 20.

- *Indemnification of any Entity*:  DIP Credit Agreement § 7.11.

- *Release, Waiver, or Limitation of any Right under § 506(c)*.  Interim Order ¶¶41-42.

- *Granting of a Lien on any Claim or Cause of Action Arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a) or 724(a)*:  Interim Order ¶ 6(b).

As discussed more fully below, the provisions of the DIP Facility are all justified under the circumstances of this Chapter 11 Case.  The Debtor was unable to obtain financing on more favorable terms from sources other than the DIP Lender, and without such financing the Debtor's ability to consummate the sale of its assets will be jeopardized.  The Debtor thus respectfully submits that the facts and circumstances of this Chapter 11 Case demonstrates that the above-described provisions, which are set forth in greater detail below, are necessary and appropriate and should be authorized and approved by this Court.

## IV.    Background

On June 3, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manages its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

Additional background facts on the Debtor, including an overview of the Debtor's business, information on the Debtor's corporate structure, information on the Debtor's debt structure and information on the events leading up to the Debtor's Chapter 11 Case is contained in the Herskovitz and Weissman Declarations.

## V.    Jurisdiction

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## VI.    Relief Requested

By this Motion, the Debtor seeks entry of the DIP Orders, *inter alia*:

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 11 -

(i)    under sections 363, 364(c) and 364(d) of the Bankruptcy Code, authorizing the Debtor, as Borrower, to obtain senior secured superpriority priming debtor in possession financing under the terms and conditions of the DIP Credit Agreement and the other DIP Financing Agreements, consisting of a loan facility in an aggregate amount of $2 million, from NAEROK Group International, Inc., as DIP Lender, and authorizing the Debtor to enter into and comply in all respects with the DIP Financing Agreements, and approving the terms and conditions of the DIP Financing Agreements;

(ii)    under sections 363 and 364 of the Bankruptcy Code, authorizing the Debtor to use the proceeds of the DIP Facility in a manner consistent with the terms and conditions of the DIP Financing Agreements, and in accordance with the Agreed Budget, (i) to fund the Chapter 11 Case, (ii) to pay fees and expenses associated with the DIP Facility, and (iii) for working capital and other corporate purposes of the Debtor;

(iii)    under sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, as security for the repayment of the borrowings and all other obligations arising under the DIP Financing Agreements, authorizing the Debtor to grant to the DIP Lender (first priority priming, valid, perfected and enforceable liens, subject to certain exceptions, including the Carve Out, upon substantially all of the Debtor's property, as described below and in the DIP Orders, the DIP Credit Agreement and the other DIP Financing Agreements;

(iv)    under section 364(c)(1) of the Bankruptcy Code, granting in favor of the DIP Lender a superpriority administrative expense claim (the "DIP Superpriority Claim") in respect of all Obligations under (and as defined in) the DIP Credit Agreement (the "DIP Obligations"), subject only to the payment of the Carve Out;

(v)    under sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, authorizing the use of Cash Collateral by the Debtor, in accordance with the Agreed Budget, and under the terms set forth in the DIP Orders;

(vi)    under sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, authorizing the granting the Prepetition Secured Creditors, of the Adequate Protection Liens and Adequate Protection Claims to the extent of any Diminution in Value of the Prepetition Secured Creditor's interests in the Prepetition Collateral, and having the priorities set forth in the DIP Orders; as well as additional adequate protection in the form of the payment of fees and expenses incurred by the Prepetition Secured Creditors;

(vii)    under section 362 of the Bankruptcy Code, modifying the automatic stay to the extent necessary to implement and effectuate the terms and provisions of the DIP Orders, the DIP Credit Agreement and the other DIP Financing Agreements;

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 12 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

(viii) scheduling the Final Hearing on the earliest date permitted under the Bankruptcy Rules and available in the Bankruptcy Court after entry of the Interim Order to consider entry of the Final Order granting the relief requested in the Motion on a final basis, including final approval of the Debtor's use of Cash Collateral and entry into the DIP Credit Agreement, and approving the form of notice with respect to the Final Hearing; and

(ix) waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for the immediate effectiveness of the DIP Orders.

## VII.    Basis for Relief

### A.    The Debtor's Need for Financing and Use of Cash Collateral

As indicated above, the financing requested herein is being requested for only the necessary period of time, as the Debtor contemplates speedy resolution of its Chapter 11 case. Despite the proposed expedited term of the Chapter 11 Case, however, such financing is critical to the Debtor's operation and its ability to preserve the value of the assets pending confirmation of a plan, or, if necessary, the auction and approval of a sale.  The proposed financing under the DIP Facility is needed to maintain an appropriate level of liquidity and help fund the Debtor's day-to-day operations.

The Debtor requires sufficient liquidity during the Chapter 11 Case to fund working capital and general corporate requirements for essential, day-to-day operations, to preserve and maintain the value of the Debtor's assets (including the Prepetition Collateral) and fund the reorganization efforts in an amount consistent with the Debtor's receivables and payables, in accordance with the Agreed Budget for the benefit of the estate and creditors, including the Prepetition Secured Creditors.

The Debtor requires the immediate use of cash on hand, the DIP Facility, and other income generated from its commercial activities in order to maintain the day-to-day business operations and pay employees and vendors on a timely basis pending confirmation of a plan, or, if necessary, a sale of the Debtor's assets.  Absent such relief from the Court, the Debtor will not have sufficient liquidity to ensure uninterrupted business operations and will suffer a substantial loss of asset value to the detriment of all parties in interest.  It is therefore critical that the Debtor

93329891\V-1

have the initial $500,000 of the DIP Facility in place on an interim basis in order to ensure that

the Debtor has enough cash to operate the business.  Moreover, it is necessary that the Debtor be

able to demonstrate to its staff, vendors, and patients that the Hospital will continue to function

without interruption and that the Debtor will continue to pay vendors in the ordinary course of

business.  Absent such a showing—and in the event of any interruption or delay in the business—

the Debtor's patients and staff will likely pursue opportunities with competitors, which would

cripple the Debtor's business.

The interests of the Prepetition Secured Creditors will be protected and enhanced by the

Debtor's use of Cash Collateral and the DIP Facility because such relief will ensure the

uninterrupted operation of the Debtor's business and operations that secure the Prepetition

Secured Creditors claims, thus protecting the Debtor's revenue streams and protecting the going

concern value of the Debtor.  In the absence of approval of the DIP Facility, the Debtor's

customers, for whom time is of the essence, would likely discontinue seeking treatments with the

Debtor if the Debtor's operations were halted, even briefly, and the Debtor was unable to timely

fulfill its medical obligations.  The DIP Facility is critical to the Debtor's ability to continue to

operate during the chapter 11 process.  Moreover, employees, doctors and patients will expect the

Debtor to have more than ample access to liquidity in order to continue operations.

The ability of the Debtor to finance its operations and the availability to the Debtor of

sufficient working capital and liquidity is vital to its ability to maintain operations.  If the Debtor

is unable to obtain such financing and to use Cash Collateral for such purposes, the recoveries to

all creditors, including the Prepetition Secured Creditors, would be greatly reduced because the

value of the Debtor's estate would decline dramatically.  Entry of the Interim Order is therefore

(i) critical to the Debtor's ability to reorganize pursuant to the Bankruptcy Code, (ii) in the best

interests of the Debtor and its estate and (iii) necessary to avoid irreparable harm to the Debtor, its

creditors, and its assets, business, goodwill, reputation and employees.

## B. The Debtor's Entry into the DIP Facility Is Authorized Under Section 364 of the Bankruptcy Code

Section 364 of the Bankruptcy Code gives bankruptcy courts the power to authorize

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  postpetition financing for a chapter 11 debtor in possession. *See In re Defender Drug Stores. Inc.*,

2  126 B.R. 76, 81 (Bankr. D. Ariz. 1991) aff'd. 145 B.R. 312 (B.A.P. 9th Cir. 1992).

3        Bankruptcy courts have the power to authorize secured postpetition financing under

4  section 364 of the Bankruptcy Code, which provides, in pertinent part, as follows:

5        (c)      If the [debtor in possession] is unable to obtain
unsecured credit allowable under section 503(b)(1) of this title as an

6  administrative expense, the court, after notice and a hearing, may
authorize the obtaining of credit or the incurring of debt -

7

8        (1)      with priority over any or all administrative expenses of the
kind specified in section 503(b) or 507(b) of this title;

9        (2)      secured by a lien on property of the estate that is not

10  otherwise subject to a lien; or

11        (3)      secured by a junior lien on property of the estate that is
subject to a lien.

12        (d)(1) The court, after notice and a hearing, may authorize

13  the obtaining of credit or the incurring of debt secured by a senior
or equal lien on property of the estate that is subject to a lien only

14  if -

15        (A)      the [debtor in possession] is unable to obtain such credit
otherwise; and

16        (B)      there is adequate protection of the interest of the holder of
the lien on the property of the estate on which such senior or equal lien is

17  proposed to be granted.

18  11 U.S.C. § 364(c)-(d)(1).

19        "Having recognized the natural reluctance of lenders to extend credit to a company in

20  bankruptcy. Congress designed [section] 364 to provide 'incentives to the creditor to extend post-

21  petition credit.'" *Defender Drug Stores*. 126 B.R. at 81 (quoting *Unsecured Creditors' Comm. v.*

22  *First Nat'l Bank & Trust Co. of Escanaba (In re Ellingsen MacLean Oil Co.)*, 834 F.2d 59, 603

23  (6th Cir. 1987). *cert. denied*, 488 U.S. 817 (1988)). The incentives enumerated in section 364 are

24  not intended to be an exhaustive list of the inducements that a court may grant. *Id.* In fact, it is

25  not uncommon for a court to approve a lending arrangement containing terms that far exceed

26  those authorized by section 364. *Id.*

27        Generally, courts apply a three-part test to determine whether a debtor in possession may

28  obtain credit under section 364(c) of the Bankruptcy Code. Under such test, the Debtor may

1    incur postpetition financing under the DIP Facility pursuant to section 364(c) if it demonstrates

2    that (a) it cannot obtain credit unencumbered or without superpriority status, (b) the DIP Facility

3    is necessary to preserve the assets of its estate, and (c) the terms of the DIP Facility are fair,

4    reasonable and adequate given the circumstances of the Debtor, as Borrower, and the proposed

5    lenders.  *See In re Crouse Group. Inc.*, 71 B.R. 544. 549-50 (Bankr. E.D. Pa. 1987); *see also In re*

6    *Aqua Assocs.*, 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991).

7           In addition, section 364(d)( 1) of the Bankruptcy Code authorizes a debtor in possession to

8    incur superpriority senior secured debtor or "priming" liens if (a) the debtor is unable to obtain

9    financing from another source and (b) the interests of the secured creditors whose liens are being

10    primed by the postpetition financing are adequately protected. 11 U.S.C. § 364(d)(1); *see also*

11    *Aqua Assocs.*, 123 B.R. at 196.  Additionally, consent to priming by the prepetition secured

12    creditors obviates the need to show adequate protection. *See Anchor Sav. Bank FSB v. Sky Valley.*

13    *Inc.*, 99 B.R. 117, 122 (N.D. Ga. 1989) ("[B]y tacitly consenting to the superpriority lien, those

14    [undersecured] creditors relieved the debtor of having to demonstrate that they were adequately

15    protected.").  Accordingly, the Debtor may incur "priming" liens under the DIP Facility if it is

16    unable to obtain unsecured or junior secured credit and either (i) the prepetition secured carditors

17    have consented or (ii) their interests in the collateral are adequately protected.

18           Against this statutory backdrop, courts will evaluate the facts and circumstances of a

19    debtor's case and accord significant weight to the necessity for obtaining the financing.  *See, e.g.,*

20    *In re Ames Dep't* Stores. *Inc.*, 115 B.R. 34, 40-41 (Bankr. S.D.N.Y. 1990).  Debtors in possession

21    are generally permitted to exercise their basic business judgment consistent with their fiduciary

22    duties when evaluating the necessity of proposed protections for a party extending credit under

23    section 364 of the Bankruptcy Code.  *Id.* at 38.

24                (1)      The Debtor is Unable to Obtain Unsecured or Junior Secured Credit

25           To show that the credit required is not obtainable on an unsecured basis, the Debtor need

26    only demonstrate "by a good faith effort that credit was not available" without the protections

27    afforded to potential lenders by section 364(c) or (d) of the Bankruptcy Code.  *Bray v.*

28    Shenandoah *Fed. Sav. & Loan ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986);

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    *see also Anchor Sav. Bank*, 99 B.R. at 120 n.4 (noting that the debtor satisfied the requirement of

2    section 364(d) by "approach[ing] all lenders reasonably likely to be willing to make a junior or

3    unsecured loan"); *Ames,* 115 B.R. at 37-40 (debtor in possession must show that it has made a

4    reasonable effort to seek other sources of financing under section 364(a) and (b) of the

5    Bankruptcy Code).  Thus. "[the statute imposes no duty to seek credit from every possible lender

6    before concluding that such credit is unavailable."  *Snowshoe*. 789 F.2d at 1088; *see also In re*

7    *Sky Valley, Inc.*, 100 B.R. 107. 113 (Bankr. N.D. Ga. 1998) (finding that "it would be unrealistic

8    and unnecessary to require [the debtor] to conduct such an exhaustive search for financing" where

9    the debtor "suffers some financial stress and has little or no unencumbered property"), *aff'd sub*

10   *nom., Anchor Sav. Bank*, 99 B.R. at 117.

11        As discussed above and in the Weissman Declaration, the Debtor's assets are subject to

12   the Prepetition Liens asserted by the Prepetition Secured Creditors.  Because of the Debtor's

13   prepetition debt, obtaining the financing needed as unsecured debt on an administrative priority

14   basis, or as debt which would be secured solely by liens junior to the liens of the Prepetition

15   Secured Creditors, was not a viable option, especially from a third party who did not already have

16   a financial interest in the Debtor to protect.  The Debtor thus concluded that adequate alternative

17   financing terms more favorable than those to be provided by the DIP Lender under the DIP

18   Facility are currently unobtainable.

19             (2)      The Prepetition Secured Creditors' Interests Are Adequately Protected

20        If a debtor is unable to obtain credit under the provisions of section 364(c) of the

21   Bankruptcy Code, the debtor may obtain credit secured by a senior or equal lien on property of

22   the estate that is already subject to a lien (*i.e.*, a priming lien).  *See* 11 U.S.C. § 364(d).  Such

23   relief may be granted so long as there is adequate protection of any pre-existing secured creditor's

24   interests in the property on which the senior lien is supposed to be granted.  *See id.; see also*

25   *Aqua,* 123 B.R. at 196.  Although the Bankruptcy Code does not explicitly define "adequate

26   protection, section 361 of the Bankruptcy Code provides that it may take the form of (1) a cash

27   payment or periodic cash payments to the extent that there is a decrease in the lien holder's

28   property interest; (2) an additional or replacement lien to the extent that there is a decrease in the

DENTONS US LLP
601 SOUTH FIGUEROA STREET , SUITE 2500
LOS ANGELES , CALIFORNIA  90017-5704
(213) 623-9300

- 17 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  lien holder's property interest; or (3) other relief that will result in a secured party's realizing the

2  indubitable equivalent of its property interest. *See* 11 U.S.C. § 361.

3      Where a debtor's proposed use of funds from additional postpetition financing augment

4  the value of the secured creditor's collateral, adequate protection exists. *Sky Valley,* 100 B.R. at

5  114 (noting the flexible nature of section 361(3) and collecting cases). The Debtor believes that

6  the measures of protection set forth in the DIP Facility and the Interim Order constitute adequate

7  protection. In addition to replacement liens on substantially all assets, junior in priority only to

8  the DIP Liens and any existing senior liens (and subject to the Carve Out), the Prepetition

9  Secured Creditors will receive superpriority administrative expense claims. Moreover, the use of

10  any DIP Facility proceeds shall be solely in accordance with the Agreed Budget and subject to

11  borrowing base requirements. Accordingly, the DIP Facility not only maintains the value of the

12  collateral in which the Prepetition Secured Creditors are receiving replacement liens, it increases

13  the collateral base and strengthens the value of the Debtor's business.

14      Finally, as mentioned above, consent may take the place of adequate protection under

15  section 364(d)(1) of the Bankruptcy Code, and the Debtor  hopes to obtain consent of at least

16  some of the Prepetition Secured Creditors to use the Cash Collateral and enter into the DIP

17  Facility on the terms set forth in the DIP Orders.

18          (3)    The DIP Facility Is Fair, Reasonable, and in the Best Interests of the Estate

19      The Debtor believes that the terms and conditions of the DIP Facility are fair and

20  reasonable. The DIP Facility is necessary to support the Debtor's ongoing operations pending

21  approval and confirmation of a plan will signal the Debtor's continued strength to compete in the

22  marketplace for new patients. The DIP Facility will also ensure the continued support of the

23  Debtor's patients and critical suppliers. Furthermore, as is more fully explained in the

24  Declaration, the Debtor, with Wilshire Pacific's assistance, undertook an effort to obtain the best

25  available terms for debtor in possession financing. Based upon these efforts, the interest rates and

26  fees appear to be consistent with the existing market for debtor in possession loans of this nature.

27  The Debtor believes that the proposed DIP Facility is the best financing available and well within

28  the exercise of sound business judgment.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    Bankruptcy courts consistently defer to a debtor's business judgment on most business

2    decisions, including the decision to borrow money, unless such decision is arbitrary and

3    capricious. *See Trans World Airlines. Inc. v. Travellers Int'l AG. (In re Trans World Airlines,*

4    *Inc.)*, 163 B.R. 964. 974 (Bankr. D. Del. 1994) (noting that an interim loan, receivables facility

5    and asset-based facility were approved because they "reflect[cd] sound and prudent business

6    judgment... [were] reasonable under the circumstances and in the best interests [of the debtor] and

7    its creditors"); *In re Simasko Prod. Co.*, 47 B.R. 444. 449 (Bankr. D. Colo. 1985) ("In exercising

8    [the debtor's] business judgment of conducting its drilling operations, it has found it necessary to

9    obtain loans to make these endeavors possible."). In fact, "[m]ore exacting scrutiny [of the

10   debtor's business decisions] would slow the administration of the debtor's estate and increase its

11   cost, interfere with the Bankruptcy Code's provision for private control of administration of the

12   estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v.*

13   *Capital Bank. N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985); *see also Simasko Prod.*, 47 B.R. at 449

14   ("Business judgments should be left to the board room and not to this Court." (quoting *In re*

15   *Lifeguard Indus. Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983)). Consistent with this authority, the

16   Debtor respectfully submits that the Court should approve the Debtor's decision to accept and

17   enter into the proposed DIP Facility.

18   Moreover, the Debtor has made a concerted good faith effort to obtain credit on the most

19   favorable terms available. Specifically, in connection with the marketing of the Debtor's assets,

20   the Debtor also sought debtor in possession financing from interested parties, none of whom

21   would agree to provide financing on a junior or *pari passu* basis. The DIP Facility was ultimately

22   determined to provide the requisite liquidity on the most advantageous terms given the

23   circumstances. Absent consent, distracting and costly litigation over the propriety of any priming

24   or *pari passu* third party debtor in possession financing would likely have ensued, with

25   potentially severe consequences for the Debtor, its estate, and creditors. Against this backdrop,

26   the Debtor carefully evaluated the proposed financing structure from the DIP Lender, engaged in

27   negotiations with the DIP Lender regarding the proposed terms, and eventually agreed to the DIP

28   Lender's proposal as the proposal best suited to the Debtor's needs. The terms and conditions of

- 19 -

1   the DIP Facility were negotiated by the parties (and their legal and financial advisors) in good

2   faith and at arms' length, and, as outlined above, were instituted for the purpose of enabling the

3   Debtor to meet ongoing operational expenses while in chapter 11 and to preserve the going

4   concern status of the Debtor as well as the value of the Prepetition Collateral. Accordingly, the

5   DIP Lender should be provided with the benefit and protection of section 364(c) of the

6   Bankruptcy Code, such that if any of the provisions of the DIP Facility are later modified,

7   vacated, stayed or terminated by subsequent order of this or any other Court, the DIP Lender will

8   be fully protected with respect to any amounts previously disbursed.

9       **C.  The Use of Cash Collateral Is Appropriate Under the Current Circumstances**

10          **and Should Be Authorized**

11          The Court should authorize the Debtor to use Cash Collateral, whether existing as of the

12  Petition Date or arising thereafter based on the conversion of existing non-cash collateral into

13  cash. It is essential to the continued operation of the Debtor that it obtains authority to use Cash

14  Collateral to fund payroll and other operating needs, including the costs of administration of this

15  Chapter 11 Case. Currently, the Debtor has little or no available cash or assets readily convertible

16  into cash that are not likely subject to the Prepetition Secured Creditors' asserted liens and

17  security interests.

18          If the Debtor is permitted to use Cash Collateral to fund ongoing business operations and

19  administration of this Chapter 11 Case, the Debtor will preserve the value of the Debtor's assets

20  as a going concern. Thus, the Debtor can continue to run its business successfully, but only if it is

21  allowed to use Cash Collateral in the course of the day to day operations. Without such use, the

22  detrimental result to the value of the estate will be rapid and ultimately disastrous, given the

23  nature of the Debtor's business. Access to Cash Collateral is crucial to the Debtor's ability to

24  avoid immediate and irreparable harm to the value of the estate and the creditors, and ongoing

25  business both before and after the Final Hearing.

26          Section 363(c)(2) of the Bankruptcy Code sets forth the requirements for a debtor's

27  proposed use of cash collateral. Specifically, section 363(c)(2) provides, in pertinent part:

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

93329891\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

> The trustee [or debtor in possession] may not use, sell, or Lease cash collateral under paragraph (1) of this subsection unless - (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2). Additionally, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

The Debtor respectfully submits that the proposed use of Cash Collateral, in conjunction with the DIP Facility, is necessary for the Debtor to have sufficient liquidity during the chapter 11 process to preserve the value of its assets and property (including the Prepetition Collateral). The Debtor's proposed use of Cash Collateral thus prejudices no one; it affirmatively and directly benefits the Debtor's estates and creditors, including the Prepetition Secured Creditors, and enhances the prospects of a successful outcome in this case.

### D. **The Proposed Adequate Protection for the Use of Cash Collateral Is Appropriate**

In considering whether to authorize use of cash collateral, a court generally must find that the interests of the holder of the secured claim are adequately protected. *See* 11 U.S.C. § 363(e). Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property ... proposed to be used, sold, or leased, by the trustee [or debtor in possession], the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). The Debtor's use of Cash Collateral is conditioned upon adequate protection being provided to the Prepetition Secured Creditors, as set forth in the DIP Orders.

The Prepetition Secured Creditors' primary form of adequate protection will be the Debtor's use of Cash Collateral to preserve the going concern value of the Debtor's assets and solely in accordance with the Agreed Budget. Courts have held that adequate protection may be demonstrated by a showing that the going concern value of the debtor is preserved by the debtor's continuing operations and use of cash collateral. *See, e.g., In re Snowshoe Co., Inc.*, 789 F.2d at 1087-89 (trustee reported that ski resort would lose 50% to 90% of its fair market value if it

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   ceased operations). Additionally, as mentioned above, the Debtor will be granting replacement

2   liens and superpriority claims as adequate protection, which is commonplace. *See, e.g., MBank*

3   *Dallas N.A. v. O'Connor (In re O'Connor),* 808 F.2d 1393, 1396-98 (10th Cir. 1987) (allowing

4   the debtor to replace a lien on cash with a lien on property likely to be worth five times as much);

5   *Owens-Corning Fiberglas Corp. v. Ctr. Wholesale, Inc. (In re Ctr. Wholesale. Inc.)*, 759 F.2d

6   1440, 1450 (9th Cir. 1985) (observing that a lien on additional property of the debtor would likely

7   constitute adequate protection for the secured creditor); *Wrecelesham Grange*, 221 B.R. at 981)

8   (noting that a replacement lien of equal value on postpetition rents is adequate protection); *In re*

9   *Stein*, 19 B.R. 458. 459 (Bankr. E.D. Pa. 1982) (continued lien on debtors' crops, livestock and

10  equipment resulted in an increase rather than a decrease in collateral, and debtors were granted

11  authority to use cash collateral to meet operating expenses during chapter 11 proceedings).

12      For the foregoing reasons, the Debtor respectfully submits that the adequate protection

13  contemplated herein (described in more detail above) and in the DIP Orders is appropriate and

14  should be approved.

15  **VIII.   Request for a Final Hearing**

16      Pursuant to Bankruptcy Rule 4001(b)(2), the Debtor respectfully request that the Court set

17  a date for the Final Hearing no later than twenty (20) days from entry of the Interim Order and

18  approve the provisions for notice of the Final Hearing and the objection procedures that are set

19  forth in the Interim Order.

20  **IX.    The Need for Immediate Relief Pending a Final Hearing**

21      Bankruptcy Rule 4001 (b) provides that a final hearing on a motion for authorization to

22  use cash collateral may not be commenced earlier than fourteen (14) days after service of such

23  motion. Fed. R. Bankr. P. 4001(b)(2). Upon request, however, a court may conduct a

24  preliminary expedited hearing on a motion and authorize the use of only that amount of cash

25  collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final

26  hearing, based on the business exigencies of individual cases. *See id*. The Debtor submits that,

27  for the reasons set forth herein, authority to use Cash Collateral on an interim basis as requested

28  in the Motion is necessary to enable the Debtor to maintain ongoing operations pending a

93329891\V-1

1   reorganization in this Chapter 11 Case.

2   **X.     Waiver of Bankruptcy Rules 6004(a) and (h)**

3       Should the Court grant the Motion and enter the DIP Orders, the Debtor seeks a waiver of

4   the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order

5   authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).

6   **XI.    Notice**

7       Notice of this Motion has been provided to the Office of the United States Trustee for the

8   Central District of California, the Prepetition Secured Creditors and their counsel, the DIP Lender

9   and its counsel, the Debtor's 20 largest unsecured creditors (including counsel if known), and all

10  parties requesting notices pursuant to Bankruptcy Rule 2002.  The Debtor submits that no other or

11  further notice need be provided.

12      No previous motion for the relief sought herein has been made to this or any other court.

13      WHEREFORE, the Debtor respectfully requests entry of an order (i) granting the relief

14  requested herein and (ii) granting the Debtor such other and further relief as the Court deems just

15  and proper.

16  Dated:  June 6, 2016                                    DENTONS US LLP
                                                            SAMUEL R. MAIZEL
17                                                          JOHN A. MOE, II

18

19                                                          By____/s/Samuel R. Maizel_____
                                                                  Samuel R. Maizel
20
                                                            Attorneys for Gardens Regional Hospital and
21                                                          Medical Center, Inc.

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

93329891\V-1