SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
JOHN A. MOE, II (Bar No. 066893)
john.moe@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone:     (213) 623-9300
Facsimile:     (213) 623-9924

Attorneys for Debtor,
GARDENS REGIONAL HOSPITAL
AND MEDICAL CENTER, INC.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>GARDENS REGIONAL HOSPITAL AND MEDICAL CENTER, INC., dba GARDENS REGIONAL HOSPITAL AND MEDICAL CENTER,[1]<br><br>Debtor | Case No. 2:16-bk-17463-ER<br><br>Chapter 11<br><br>**DEBTOR'S APPLICATION TO EMPLOY WILSHIRE PACIFIC CAPITAL ADVISORS AS FINANCIAL ADVISOR, NUNC PRO TUNC; DECLARATION OF ERIC J. WEISSMAN**<br><br>**[NO HEARING REQUIRED PURSUANT TO LBR 2015-2(b)(3)]** |

---

[1] The Debtor is a California nonprofit public benefit corporation, Fed. Tax I.D. No. 33-0738307. The Debtor's mailing address is: 21530 Pioneer Blvd., Hawaiian Gardens, California 90716.

**TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE, THE TWENTY LARGEST UNSECURED CREDITORS OF THE DEBTOR, ALL ALLEGED SECURED CREDITORS, THE UNITED STATES OF AMERICA AND THE STATE OF CALIFORNIA, PARTIES REQUESTING SPECIAL NOTICE, AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

**PLEASE TAKE NOTICE** that Gardens Regional Hospital and Medical Center, Inc., a California not for profit corporation, doing business as Gardens Regional Hospital and Medical Center, formerly doing business as Tri-City Regional Medical Center, the debtor and debtor in possession in the above-captioned case (the "Debtor"), by and through his proposed undersigned counsel, submits this application (the "Application") pursuant to sections 328(a) and 1103 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the retention and employment of Wilshire Pacific Capital Advisors, LLC ("Wilshire") as financial advisor for the Debtor, effective as of June 6, 2016.  In support of this Application, the Debtor has attached hereto the Declaration of Eric J. Weissman (the "Weissman Decl."), and further states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. § 1334.

2.      Venue for this chapter 11 case and this Application is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This Application constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

3.      On June 6, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Los Angeles Division.

## RELIEF REQUESTED

4.      By this Application, the Debtor seeks to employ and retain WPCA as its financial advisor, effective as of the Petition Date.  Accordingly, the Debtor respectfully requests the entry of an Order pursuant to sections 328(a) and 1103(a) of the Bankruptcy Code and Rule 2014(a) of

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 2 -

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor to employ and retain WPCA as its investment banker and financial advisor to perform advisory services that will be necessary during this case.

5.    Pursuant to section 328(a) of the Bankruptcy Code, the Debtor requests that the Court approve the retention of WPCA on the terms and conditions set forth herein and in the Weissman Declaration, which, *inter alia*, provides that WPCA will be compensated in accordance with the terms of the letter agreement attached hereto as Exhibit B.

**SERVICES TO BE RENDERED**

6.    As set forth in the attached Weissman Declaration, at ¶ 5, WPCA is prepared to render the following services in this case:

a.    Review and analysis of the Debtor's financial, operational and cash flow performance;

b.    Review of the Debtor's historical operating results, recent performance, business plan and associated restructuring initiatives, and advise the Debtor and its counsel regarding the Debtor's business plans, cash flow forecasts, financial projections, cash flow reporting, claims, and plan alternatives;

c.    Advise the Debtor and its counsel with respect to possible capital restructuring and sale and financing alternatives, including providing options regarding potential courses of action and assisting with the design, structuring and negotiation of alternative restructuring and/or transaction structures;

d.    Lead, analyze, review or assist in a sale process of the Debtor's assets and add strategic buyers to a sale process;

e.    Review and analyze any proposals the Debtor or its counsel receives from third parties in connection with a sale of assets;

f.    Assist the Debtor and its counsel in identifying and valuing undisclosed assets, if any, and consult with the Debtor and its counsel on the progress of asset sales, locations, identification, and value;

g.    Preparation of estimated payout or distribution analyses;

h.    Assist the Debtor and its counsel in developing strategies and related negotiations with the Debtor and other interested parties with respect to treatment of the unsecured creditors under a proposed plan or such treatment under alternative proposals, including a sale of assets;

i.    Preparation of periodic reports and updates to the Debtor regarding the status of the Debtor's post-petition operating performance, and various other issues as requested by the Debtor and its counsel to facilitate informed decisions;

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

96113257\V-1

j.  Advise the Debtor and its counsel regarding identity and value of avoidance actions; and,

k.  Perform all other services as directed by the Debtor or its counsel and as may be required in the interests of the creditors.

7.  The Debtor believes that WCPA's services are necessary to enable the Debtor to fulfill its statutory duties and to maximize recovery for all creditors in this case.  Further, WPCA is well-qualified and able to represent the Debtor in a cost-effective, efficient, and timely manner.

## WPCA'S QUALIFICATIONS

8.  WPCA is a FINRA licensed broker dealer that specializes in the healthcare industry.  Eric Weissman supervises all activities at WPCA.  A copy of his resume is attached as Exhibit "A."  WPCA's professionals have significant experience in providing investment banking and financial advisory services to distressed hospitals, including negotiating sale transactions, financings and balance sheet restructurings, having advised debtors, creditors, secured lenders and other parties-in-interest on chapter 11 proceedings.  *See* Weissman Decl., ¶ 3.

## PROPOSED COMPENSATION

9.  Pursuant to section 328(a) of the Bankruptcy Code, the Court may approve WPCA's retention on any reasonable terms.  The Debtor submits that the most reasonable terms and conditions are those agreed upon by WPCA and the Debtor, which are substantially similar to those entered into between WPCA and other clients on a daily basis in a competitive market for financial advisory services.  Subject to the Court's approval, WPCA will charge for its services as provided for in the letter agreement between the parties, which provides that: (a) WPCA will be paid a commission of 2.5% on any financing raised by WPCA on behalf of the Debtor; (b) WPCA will be paid the greater of $200,000 or a commission of 2.5% on any sale or other transfer of assets arranged by WPCA on behalf of the Debtor; and (c) a monthly fee of $25,000 for the other financial advisory and bankruptcy reporting work being provided by WPCA to the Debtor. Weissman Decl., ¶ ¶ 9-10.

10.  WPCA commenced working for the hospital on October 7, 2013, in accordance with an Engagement Letter, a copy of which is attached as Exhibit "B."  Over a period of approximately eight months, WPCA arranged for a commitment of $2 million in financing from a

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 4 -

96113257\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

new management company called Sycamore Health Care Services, owned by Rollins Nelson Grp [sic] and Selvin & Weiner Health Management Co., Inc.  The Debtor terminated its relationship with Sycamore Health Care Services on May 31, 2015.  Weissman Decl., ¶6.

11.    The Debtor re-engaged WPCA in June 2015 to find a replacement for Sycamore.  After conducting an exhaustive marketing process, WPCA negotiated a new transaction for the Debtor with Paladin Healthcare, which commenced providing comprehensive management services in October 2015.  Weissman Decl., ¶ 7.

12.    WPCA also arranged for a mezzanine credit facility with Paladin's affiliate, Harbor Gardens Capital 1, LLC.  Funded in several tranches from October 2015 through February 2016, the balance on the Harbor credit facility grew to $2.5 million.  WPCA was entitled to a success fee equal to 5% of the total credit facility ($125,500), plus $30,000 in unpaid monthly retainer fees, plus accrued interest of 1.5% per month.  In February 2016, Debtor requested that WPCA help it to secure Debtor in Possession (DIP) financing and to provide other critical financial advisory services to help to prepare the Debtor's bankruptcy petition.  WPCA agreed to provide such services.  Weissman Decl., ¶ 8.

13.    WPCA is willing to continue to provide financial advisory services to the Debtor postpetition under the terms and conditions set forth in this Application.  Weissman Decl., ¶ 9.

14.    On the Petition Date, WPCA was owed more than $172,000 by the Debtor but has agreed to waive that prepetition claim.  Weissman Decl.,¶ 8.

15.    In regards to WCPA's commitment to help secure financing and other critical financial advisory services as well as it efforts in assisting the Debtor in conducting an auction of the Debtor's assets, the Debtor agrees to pay to WPCA (a) 2.5% of any DIP financing obtained and paid to the Debtor, and (b) the greater of 2.5% or $200,000 if any sale transaction is completed, as described in the October 7, 2013, engagement letter (Exhibit "B") and Amendment Number Two to that Agreement. Weissman Decl., ¶ 9.

16.    WPCA will charge for its additional advisors' services described in Paragraph 5 above a flat monthly fee of $25,000.  Weissman Decl., ¶ 10.

17.    Eric Weissman will be primarily responsible for the work in this case.  The hourly

96113257\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

rates applicable to anticipated professionals assigned to this are as follows: (i) Eric J. Weissman (President) - $300/hour; (ii) Mary Lane (Managing Director) - $300/hour; (iii) Derek Buchanan (Vice President) - $200/hour, and (iv) S. Joshua Davidson (Director) - $200/hour. Weissman Decl., ¶ 11.

18.    WPCA will also seek reimbursement, subject to the Court's approval, for all actual out-of-pocket expenses incurred by WPCA on the Debtor's behalf, such as document reproduction and telecopier charges, mail and express mail charges, travel expenses, overnight courier expenses, and other disbursements.  WPCA will charge for these expenses in a manner and at rates consistent with charges made generally to WPCA other clients.  WPCA will make every effort to minimize expenses in this case.   Weissman Decl., ¶ 12.

19.    WPCA will maintain detailed records of any actual and necessary costs incurred in connection with the aforementioned services. Weissman Decl., ¶ 13.

20.    WPCA intends to apply to the Court for compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, further Orders of this Court and the Guidelines established by the Office of the United States Trustee for all services performed and expenses incurred. Weissman Decl., ¶ 14.

21.    WPCA understands that, notwithstanding any court-approved procedures for interim compensation and reimbursement of expenses, any and all compensation for services rendered and expenses incurred on behalf of the Debtor during the cases shall be subject to Court approval, after notice and hearing.   WPCA further understands that the sole source of such compensation shall be from the Debtor's bankruptcy estate.  Weissman Decl., ¶ 15.

22.    The Debtor requests – and WPCA understands – that all advisory fees and related costs incurred by the Debtor on account of services rendered by WPCA in this case be paid as administrative expenses of the Debtor's estate in accordance with the Bankruptcy Code and applicable Orders entered in this case.

## DISINTERESTEDNESS

23.    Neither Eric Weissman, WPCA, nor any director or associate thereof: (a) hold or represent any interest adverse to the Debtor or its estate, largest creditors, or equity security

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

holders; or, (b) represent any other entity in connection with these cases having an interest adverse to the Debtor.  Further, other than in connection with this case, WPCA has no connection with the Debtor, its creditors, or any other party-in-interest herein, or their respective attorneys or accountants, or the United States Trustee or any person employed in the Office of the United States Trustee, except as set forth below.  Accordingly, WPCA is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.  Weissman Decl., ¶ 16.

24.    From time to time, WPCA may have represented, may currently represent, or may in the future represent, certain of the Debtor's creditors and other parties-in-interest, or interests adverse to such creditors or parties-in-interest, in matters unrelated to this case.   Weissman Decl.,¶ 17.

25.    WPCA has searched WPCA's conflicts database; this conflicts check did not reveal any conflicts with any of the known creditors or other parties-in-interest.  Therefore, upon reasonable inquiry and to the best of its knowledge, WPCA has determined that WPCA does not represent any interests adverse to the Debtor or creditors of the estate in this case.  Weissman Decl.,¶ 18.

26.    WPCA is conducting a continuing inquiry to ascertain whether there exists any connections which would affect, or appear to affect, WPCA's status as a "disinterested person." If additional disclosure is required, WPCA will promptly file a Supplemental Statement with this Court after this inquiry is completed.  Weissman Decl., ¶ 19.

27.    WPCA has not entered into any arrangement to share any compensation that may be awarded by the Court, except as permitted under section 504(b) of the Bankruptcy Code.

28.    WPCA further states, in accordance with Bankruptcy Rule 5002, that no professional at WPCA is a relative of the bankruptcy judge assigned to the Debtor's bankruptcy case.  Weissman Decl., ¶ 20.

**RETROACTIVE RELIEF**

29.    The Debtor requests that this Application be approved retroactive to June 6, 2016, the date of the filing of the Debtor's petition.  It is well-established that bankruptcy courts have the authority and discretion to approve *nunc pro tunc* orders for the employment of professionals.

*See Atkins v. Wain, Samuel & Co. (In re Atkins)*, 69 F.3d 970, 973 (9th Cir. 1995); *Halperin v. Occidental Fin. Group, Inc. (In re Occidental Fin. Group, Inc.)*, 40 F.3d 1059, 1062 (9th Cir. 1994). Whether to approve an application for employment *nunc pro tunc* is left to the bankruptcy court's discretion. *In re Kroeger Prop. and Dev., Inc.*, 57 B.R. 821, 822 (9th Cir. BAP 1986). The Debtor submits that retroactive approval of WPCA's retention is appropriate under the circumstances because of: (1) the short duration of time between the retention of WPCA and the filing of this Application; (2) the pressing need for WPCA's assistance in conducting the sale of the Debtor's assets; and (3) the need for WPCA's services immediately after its petition date by the Debtor. *See In re Sinor*, 87 B.R. 620 (Bankr. E.D. Cal. 1988) (30 days from start of services presumed to be a reasonable time within which professional must seek retroactive employment.). Moreover, Mr. Weissman has already provided essential services to the Debtor since this case was commenced, including filing two important declarations in support of, among other things, the Debtor obtaining the necessary Debtor in Possession financing to avoid immediate and irreparable harm to the Debtor. He is now organizing the filing of the Debtor's schedules and statement of financial affairs, and will serve as the point of contact for all potential buyers of the Debtor's assets at the upcoming auction, currently scheduled for July 11, 2016.

## <u>NOTICE</u>

WHEREFORE, the Debtor, through his proposed counsel, respectfully requests that the Court: (a) authorize the Debtor, pursuant to sections 328(a) and 1103 of the Bankruptcy Code and Bankruptcy Rule 2014, to retain and employ WPCA in accordance with the terms hereof, retroactive to June 6, 2016; and (b) grant such other and further relief as the Court deems just and proper.

Dated: June 29, 2016

DENTONS US LLP
SAMUEL R. MAIZEL
JOHN A. MOE, II


By  /s/ Samuel R. Maizel
    SAMUEL R. MAIZEL

Attorneys for Gardens Regional Hospital And Medical Center, Inc.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 8 -

96113257\V-1

### DECLARATION OF ERIC J. WEISSMAN

I, Eric J. Weissman, hereby declare under penalty of perjury as follows:

1.  I am the President of Wilshire Pacific Capital Advisors, LLC ("WPCA"), with its office located at 8447 Wilshire Boulevard, Suite 202, Beverly Hills, California  90211.  I am over the age of 18 and competent to testify as to the facts set forth herein and will do so if called upon.

2.  I am familiar with the matters set forth herein and make this Declaration in support of the Application of the Debtor to Employ WPCA as Financial Advisor (the "Application") filed in the chapter 11 case of Gardens Regional Hospital And Medical Center, Inc. (the "Debtor").

3.  WPCA is a FINRA licensed broker dealer that specializes in the healthcare industry.  I supervise all activities at the firm.  A copy of my resume is attached as Exhibit "A".  WPCA's professionals have significant experience in providing financial advisory services to distressed hospitals, including negotiating sale transactions, financings and balance sheet restructurings, having advised debtors, creditors, secured lenders and other parties-in-interest on chapter 11 proceedings.

4.  WPCA and its employees are duly qualified to perform all functions that are required in relation to their proposed employment as financial advisor to the Debtor.

5.  WPCA will provide the following financial advisory services to the extent requested by the Debtor and its counsel and as agreed upon by WPCA:

a.  Review and analysis of the Debtor's financial, operational and cash flow performance;

b.  Review of the Debtor's historical operating results, recent performance, business plan and associated restructuring initiatives and advise the Debtor and its counsel regarding the Debtor's business plans, cash flow forecasts, financial projections, cash flow reporting, claims, and plan alternatives;

c.  Advise the Debtor and its counsel with respect to possible capital restructuring and sale and financing alternatives, including providing options regarding potential courses of action and assisting with the design, structuring and negotiation of alternative restructuring and/or transaction structures;

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA  90017-5704
(213) 623-9300

96113257\V-1

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

d.    Lead, analyze, review or assist in a sale process of the Debtor's assets and add strategic buyers to a sale process;

e.    Review and analyze any proposals the Debtor receives from third parties in connection with a sale of assets;

f.    Assist the Debtor and its counsel in identifying and valuing undisclosed assets, if any, and consult with the Debtor and its counsel on the progress of asset sales, locations, identification, and value;

g.    Preparation of estimated payout or distribution analyses;

h.    Assist the Debtor and its counsel and its counsel in developing strategies and related negotiations with the Debtor and other interested parties with respect to treatment of the unsecured creditors under a proposed plan or such treatment under alternative proposals, including a sale of assets;

i.    Preparation of periodic reports and updates to the Debtor and its counsel regarding the status of the Debtor's post-petition operating performance, and various other issues as requested by the Debtor and its counsel to facilitate informed decisions;

j.    Advise the Debtor and its counsel regarding identity and value of avoidance actions; and

k.    Perform all other services as directed by the Debtor or its counsel and as may be required in the interests of the creditors.

6.    WPCA commenced working for the hospital on Oct 7, 2013, in accordance with an Engagement Letter, a copy of which is attached as Exhibit "B". Over a period of approximately eight months, WPCA arranged for a commitment of $2 million in financing from a new management company called Sycamore Health Care Services, owned by Rollins Nelson and Selvin & Weiner Health Management Co., Inc. The Debtor terminated its relationship with Sycamore Health Care Services on May 31, 2015, due to a combination of compliance issues and failure to completely fund the $2 million financing.

7.    The Debtor re-engaged WPCA in June 2015 to find a replacement for Sycamore. After conducting an exhaustive marketing process, WPCA negotiated a new transaction for the

96113257\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  Debtor with Paladin Healthcare, which commenced providing comprehensive management

2  services in October 2015.

3        8.     WPCA also arranged for a mezzanine credit facility with Paladin's affiliate,

4  Harbor Gardens Capital 1, LLC. Funded in several tranches from October 2015 through February

5  2016, the balance on the Harbor credit facility has grown to $2.5 million. WPCA was entitled to

6  a success fee equal to 5% of the total credit facility, $125,500, plus $30,000 in unpaid monthly

7  retainer fees, plus accrued interest of 1.5% per month. The unpaid balance as of March 31, 2016,

8  was equal to $165,012. Subsequently, WPCA agreed to waive 50% of its unpaid balance of

9  $165,012, provided that the Debtor cured the remaining 50% balance as soon as it obtains its DIP

10  financing. Debtor also committed to pay down the amount due by $15,000 per month in advance

11  starting March 1, 2016. In any event, on the Petition Date, the Debtor owned more than

12  $172,000.00 to WPCA, all of which WPCA will waive.

13        9.     In February 2016, Debtor requested that WPCA help it to secure Debtor in

14  Possession (DIP) financing and to provide other critical financial advisory services to help to

15  prepare the Debtor's bankruptcy petition. WPCA provided that assistance and is willing to

16  continue to do so, in accordance with the Debtor's agreement to pay to WPCA, subject to the

17  Court's approval, as follows: WPCA will charge for its services as provided for in the letter

18  agreement between the parties, which provides that: (a) WPCA will be paid a commission of

19  2.5% on any financing raised by WPCA on behalf of the Debtor; and (b) WPCA will be paid the

20  greater of $200,000 or a commission of 2.5% on any sale or other transfer of assets arranged by

21  WPCA on behalf of the Debtor.

22       10.    WPCA will charge for its additional advisors' services described in Paragraph 5

23  above on a flat monthly fee of $25,000. WPCA understands that proposed payments are subject

24  to review and approval of the Bankruptcy Court.

25       11.    I will be primarily responsible for the work in this case. The hourly rates

26  applicable to anticipated professionals assigned to this are as follows: (i) Eric J. Weissman

27  (President) - $300/hour; (ii) Mary Lane (Managing Director) - $300/hour; (iii) Derek Buchanan

28  (Vice President) - $200/hour, and (iv) S. Joshua Davidson (Director) - $200/hour. In all

96113257\V-1

1    appropriate circumstances, WPCA will employ the services of junior professionals in order to

2    minimize administrative expenses to the estate.

3        12.     WPCA will also seek reimbursement, subject to the Court's approval, for all actual

4    out-of-pocket expenses incurred by WPCA on the Debtor's behalf, such as document

5    reproduction and telecopier charges, mail and express mail charges, travel expenses, overnight

6    courier expenses, and other disbursements. WPCA will charge for these expenses in a manner

7    and at rates consistent with charges made generally to WPCA other clients. WPCA will make

8    every effort to minimize expenses in this case.

9        13.     WPCA will maintain detailed records of any actual and necessary costs incurred in

10    connection with the aforementioned services.

11        14.     WPCA intends to apply to the Court for compensation and reimbursement of

12    expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy

13    Rules, further Orders of this Court and the Guidelines established by the Office of the United

14    States Trustee for all services performed and expenses incurred.

15        15.     WPCA understands that, notwithstanding any court-approved procedures for

16    interim compensation and reimbursement of expenses, any and all compensation for services

17    rendered and expenses incurred on behalf of the Debtor during the cases shall be subject to Court

18    approval, after notice and hearing. WPCA further understands that the sole source of such

19    compensation shall be from the Debtor's bankruptcy estate.

20        16.     Neither I, WPCA, nor any director or associate thereof, insofar as I have been able

21    to ascertain and except as set forth below: (a) hold or represent any interest adverse to the Debtor

22    or its estate, largest creditors, or equity security holders; or (b) represent any other entity in

23    connection with these cases having an interest adverse to the Debtor. Further, insofar as I have

24    been able to ascertain, other than in connection with this case, WPCA has no connection

25    (connection being defined as a familial or professional relationship) with the Debtor, its creditors,

26    or any other party-in-interest herein, or their respective attorneys or accountants, or the United

27    States Debtor or any person employed in the Office of the United States Debtor, except as set

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

96113257\V-1

forth below.   Accordingly, I believe WPCA is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

17.     From time to time, WPCA may have represented, may currently represent, or may in the future represent, certain of the Debtor's creditors and other parties-in-interest, or interests adverse to such creditors or parties in interest, in matters unrelated to this case.

18.     Specifically, in reaching this conclusion, my staff has searched WPCA's conflicts database; this conflicts check did not reveal any conflicts with any of the known creditors or other parties-in-interest.   Therefore, upon reasonable inquiry and to the best of my knowledge, I have determined that WPCA does not represent any interests adverse to the Debtor or creditors of the estate in this case.

19.     WPCA is conducting a continuing inquiry to ascertain whether there exists any connections which would affect, or appear to affect, WPCA's status as a "disinterested person." If additional disclosure is required, I will promptly file a Supplemental Statement with this Court after this inquiry is completed.

20.     WPCA has not entered into any arrangement to share any compensation that may be awarded by the Court, except as permitted under section 504(b) of the Bankruptcy Code. WPCA further states, in accordance with Bankruptcy Rule 5002, that no professional at WPCA is a relative of the bankruptcy judge assigned to the Debtor's bankruptcy case.

I state hereby under penalty of perjury, under laws of the United States of America, that the foregoing is true and correct to the best of my knowledge, information and/or belief.

Executed this 29th day of June, 2016.

_____
Eric J. Weissman

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

96113257\V-1

# EXHIBIT A

## EXPERIENCE

**PRESIDENT. Wilshire Pacific Capital Advisors (formerly London & Pacific Capital Advisors).** Los Angeles
(May 2006 – Present)

> Generated >$10 million in transaction fees and consulting revenue from healthcare service companies,
> including hospitals, health plans, surgery centers, physician groups, ancillary service providers and others.

Healthcare Clients and Targets

| | |
|---|---|
| Anaheim General Hospital | Hospital |
| Arcadian Healthcare | Health Plan |
| AssistMed | Healthcare IT |
| Associated Dignity Medical Group | Physician Group |
| Avanti Hospitals | Hospital |
| Avanti Medical Group | Physician Group |
| Bakersfield Family Medical Clinic | Physician Group |
| Bakersfield Heart Hospital | Hospital |
| Casa Colina | Hospital |
| Centinela Valley IPA | Physician Group |
| Century City Doctors Hospital | Hospital |
| Community and Mission Hospital of Huntington Park | Hospital |
| Deanco Healthcare | MSO |
| Digital Union | Healthcare IT |
| Downey Regional Medical Center | Hospital |
| East Los Angeles Doctors Hospital | Hospital |
| Gardena Memorial Hospital | Hospital |
| Gardens Regional Hospital & Medical Center | Hospital |
| Good Samaritan Hospital | Hospital |
| Hawaii Medical Center | Hospital |
| Heritage Provider Network | Physician Group |
| Hudson Crossing Surgery Center | Surgery Center |
| Inland Valley Surgical Center | Surgery Center |
| Integrated Healthcare Holdings, Inc. (OTC: IHHI) | Hospital |
| Kansas Spine Hospital | Hospital |
| Magellan Global Healthcare | MSO |
| Maui Memorial Medical Center | Hospital |
| MaxVision Care | Health Plan |
| MD Care | Health Plan |
| Memorial Healthcare IPA | Physician Group |
| Mission Community Hospital | Hospital |
| Monrovia Memorial Hospital | Hospital |
| Pacific Hospital of Long Beach | Hospital |
| Pacifica Hospital of the Valley | Hospital |
| Quality Long-Term Care | SNF |
| Radiology Associates of San Luis Obipso | Ancillary |
| RN India | Healthcare Service |
| S&B Surgery Center | Surgery Center |
| Sacramento Family Medical Clinics | Clinics |
| Salus Surgical Group | MSO |
| Short Hills Surgery Center | Surgery Center |
| St. Mary's Medical Center | Hospital |
| St. Peter Medical Group | Physician Group |
| Strategic Global Management | MSO |
| Totally Kids Specialty Hospital | Hospital |
| United Focus Ultrasound | Ancillary |
| Verdugo Hills Hospital | Hospital |
| Victor Valley Community Hospital | Hospital |
| Walbut Hill Physicians Hospital | Hospital |

- Insulin Algorithms – Healthcare IT for diabetes management

Public Speaking Engagements:
- Arent Fox Healthcare Conference
- Healthcare Finance Management Association Conference
- Medical Development Specialists Annual Conference
- USC School of Health
- Verdugo Hills Hospital Board of Directors Retreat
- Pepperdine Law School – Health Law Class, Guest Lecturer

**MANAGING DIRECTOR, MERGERS & ACQUISITIONS. Galen Capital Group**, Los Angeles (Feb '05 – Apr '06.)
Opened Galen office in Los Angeles, focused on merchant and investment banking in healthcare industry.
Created niche for smallcap public and private companies with enterprise values from $5 million to $100 million.

M&A Transactions and Capital Raises
- Negotiated and executed reverse takeover of Eye Dynamics (OTC: EYDY) by OrthoNetx (private).
- Raised $10 million in a Standby Equity Distribution Agreement for AcuNetx (OTC: ATNX).
- Spearheaded acquisition of Cogient (Canada) by AssistMed (private) and $2 million in acquisition financing.

**SR. ASSOCIATE, MERGERS & ACQUISITIONS. Huntington Securities LLC**, Los Angeles (Aug 2003 – Jan 2005)
Sellside M&A advisor to Bianchi International & Gregory backpacks (private) in sale to Armor Holdings
(NYSE: AH) for $60 million (8.8x EBITDA).
Negotiated management buyout and financing for Empire Music Group (private), the 6th largest independent
music CD distributor in the US.
Buyside fundamental equity research coverage for $50 million private fund in four industries:
- **Bioarrays**: Affymetrix (AFFX), Illumina (ILMN), Luminex (LUMX) and Sequenom (SQNM).
- **Electronic Manufacturing Services**: Benchmark Electronics (BHE), Celestica (CLS), Flextronics
International (FLEX), Jabil Circuit (JBL), Sanmina-SCI (SANM) and Solectron (SLR).
- **Power Supplies**: Artesyn Technologies (ATSN), C&D Technologies (CHP), Cherokee International
(CHRK), Magnatek (MAG), Power-One (PWER) and Vicor (VICR).
- **IT Hardware**: Dell (DELL), Hewlett-Packard (HPQ), IBM (IBM) and Sun Microsystems (SUNM).

**PARTNER, MERGERS & ACQUISITIONS. Phoenix Group LLP**, Los Angeles (Dec 2001 – Aug 2003)
Launched a new sell-side M&A advisory division to support an established insolvency and turnaround practice.
Delivered financial advisory services in areas of capital formation, corporate finance and strategy consulting.

**ASSOCIATE, TAX MERGERS AND ACQUISITIONS. PricewaterhouseCoopers**, Philadelphia (Sep 1999 – Dec 2001)
Devised a structure for a $10 billion debt instrument used to finance the Glaxo Welcome / Smithkline Beecham
merger, which saved GSK shareholders over $3.5 billion in incremental tax liabilities
Served on four-man core M&A team for Teva Pharmaceuticals, now the world's largest generic pharma co.
- Acquisitions included Novapharm (Canada) for $300 million; Copley Pharmaceticals for $220 million;
Pharmachemie N.V. for $89 million; IVAX for $7.2 billion (explored in 2000, closed in 2005)
- Joint Ventures included Aventis (Copaxone), Lundbeck (Parkinson's drugs) and Impax (R&D).
Performed over 30 due diligence engagements for domestic and cross-border acquisitions.
Developed a robust §338(h)(10) tax model that saved clients millions in stock versus asset tax structuring.
Worked with Private Client Service team, specializing in post-transaction tax planning (e.g., ESOP rollovers)

## EDUCATION

**PRINCETON UNIVERSITY**, Princeton, New Jersey.
A.B. from Department of Economics, June 1996.
Senior Thesis Title: **A Cost-Utility Analysis of the Managed Behavioral Healthcare Industry**

**WILLIAM AND MARY SCHOOL OF LAW**, Williamsburg, Virginia.
J.D. received in May 1999, Licensed member of the Virginia State Bar, July 1999.

Other academic distinctions: Valedictorian, National Merit Scholar, Exeter Univ. European Union Law Fellowship.

**PROFESSIONAL LICENSES:** NASD Series 7, Series 24, Series 63, Series 79, Virginia Bar License (Associate
Member)

# EXHIBIT B



## LONDON & PACIFIC
### CAPITAL ADVISORS, LLC

October 7, 2013

James Sherman, President/CEO
Gardens Regional Hospital and Medical Center, Inc.
dba Tri-City Regional Medical Center
21530 Pioneer Blvd.
Hawaiian Gardens, CA 90716

       ***Re:    Engagement Letter***

Dear Mr. Sherman:

We are pleased to submit to Tri-City Regional Medical Center ("the Company" or the "TCRMC") this letter agreement ("Letter Agreement") which sets forth the terms pursuant to which London & Pacific Capital Advisors, LLC ("LPCA") will assist the Company in exploring strategic alternatives, including, but not limited to the merger or strategic alliance to address Company's long-term goals and concerns (an "M&A Transaction"). This Letter Agreement supersedes all prior versions of the parties' agreement and also sets forth the terms under which LPCA may act as your exclusive financial advisor to obtain debt in one or more series or closings (a "Financing"). It is intended that any M&A Transaction or Financing would be conducted in a manner such that the offers and sales of any securities or issuance of debt will be exempt from registration under the Securities Act of 1933, as amended (the "Securities Act"), and the securities laws of any state or other jurisdiction in which the Securities are offered. In acting as a placement agent for any M&A Transaction or Financing, LPCA would seek to complete the transaction on a best-efforts basis, acting as an agent and not as a principal. LPCA may separately engage sub-agents at its own expense and with your prior approval.

### PURPOSE OF ENGAGEMENT

1. To assist the Company in:

    a. Reviewing and structuring of documents and materials relevant to an M&A Transaction;

    b. The completion of an M&A Transaction;

    c. Reviewing and structuring of documents and materials relevant to a Financing;

    d. The completion of a Financing; and

    e. Corporate strategic and financial advisory services (collectively, the "Purpose of the Engagement").



## TERM OF ENGAGEMENT

2. The period of time within which LPCA will provide its services to you under this Agreement ("Term of Engagement") shall begin as of the date that you sign this Agreement and shall end with the termination of this Agreement in the event of one or more of the following:

    a. Either party has received from the other a written 30-day notice of termination of this Agreement;

    b. Conclusion of a transaction or series of transactions that accomplishes the Purpose of the Engagement;

    c. Non-payment by the Company to LPCA of any of the fees or expense reimbursements described in this Agreement; or

    d. A determination by LPCA that the Purpose of the Engagement is no longer feasible due to materially adverse changes in the Company, its circumstances or capital market conditions.

**NOTE:** The requirements under this Agreement of confidentiality, non-circumvention, indemnification, and payment of all compensation due to LPCA shall survive termination of this Agreement.

## EXCLUSIVITY

3. You agree that LPCA shall represent you as your exclusive financial advisor during the Term of the Engagement.

## SERVICES TO BE PROVIDED BY LPCA

4. LPCA shall advise and assist the Company in executing an M&A Transaction, which will include the following:

    a. Assist in identifying and qualifying potential buyers, financing sources or partners, significant strategic alliances, collaborations, and/or joint ventures or other economic relationships that benefit Company and act as the Company's exclusive financial advisor (but without any authority to bind or obligate the Company) in discussions with such parties;

    b. Assist in the negotiation and implementation of and review of proposals in connection with an M&A Transaction;

    c. Perform the financial and strategic analysis necessary to facilitate the proper and timely integration of the financial, tax, and merger and acquisition aspects of an M&A Transaction;

    d. Assist in all aspects of the negotiation process including establishment of structure, price and terms; and

    e. Assist in the non-legal aspects of final documentation and closing.

    f. In performing its services under this Agreement, LPCA will use and rely primarily on the information and documentation provided to LPCA by the Company which LPCA determines in its sole discretion to be necessary to obtain the Financing ("Information") and secondarily on



information available from generally recognized public sources ("Research").  LPCA will not independently verify and LPCA has no responsibility for the accuracy or completeness of the Information, the Research or any other information as may be obtained by LPCA in connection with performing its services under this Agreement.

g.   LPCA will not make an appraisal of any assets of the Company.

h.   LPCA may, with Company's advance written permission, investigate and analyze the financial status of the Company at any time during the Term of Engagement.

5.   LPCA may advise and assist the Company in devising and executing a program to secure the Financing, which will include the following:

   a.   Selecting and structuring of materials, documents, and applications in a manner which LPCA determines to be necessary to obtain the Financing, based upon the practices of various investors and lenders in the capital market place as determined by LPCA;

   b.   Identifying on a best efforts basis, prospective capital investors and lending institutions that may have an interest in providing the Financing to the Company. There is no guarantee that LPCA will be successful in securing the Financing;

   c.   Negotiating the terms of the Financing with prospective capital investors and lending institutions identified by LPCA, the Company, or any third party; and

   d.   Structuring of and participation in presentations to prospective investors and lending institutions as reasonably necessary to obtain the Financing.

6.   LPCA may advise and assist the Company in analyzing its portfolio of workers' compensation related accounts receivable and negotiating bulk settlements with certain payors.

## OBLIGATIONS OF THE COMPANY

7.   Provide LPCA with the Information within a reasonable time requested by LPCA.  To the extent that the Company has knowledge, the Company represents and warrants to the best of its knowledge that the Information previously or hereafter furnished by it or on its behalf to LPCA shall be complete, accurate and not misleading.  LPCA assumes no responsibility for the accuracy, completeness or fairness of the Information.

8.   Provide LPCA, within a reasonable time requested by LPCA, with feedback on materials prepared by LPCA on behalf of the Company which must be approved, in advance in writing, by the Company for distribution to prospective bidders (the "Information Memorandum") and/or lenders ("third parties") (the "Financing Memorandum").  LPCA assumes no responsibility for the accuracy, completeness or fairness of any Information Memoranda or Offering Materials that have been approved in writing in advance by the Company.

9.   Notify LPCA, as soon as possible, and in any event within 48 hours of being informed or suspecting that, for any reason, there has been any material change in the Company including, without limitation, its operations, structure, financial condition, balance sheet, prospects, or participation in litigation, **whether or not such change is adverse**.

LP | LONDON & PACIFIC
CAPITAL ADVISORS, LLC

10. Fully cooperate with LPCA in LPCA's efforts to investigate and analyze the financial status of the Company at any time during the Term of Engagement.

11. Since LPCA will be acting on behalf of the Company in connection with its engagement hereunder, the Company and LPCA have entered into a separate indemnification agreement, which is contemporaneous with this Agreement and attached hereto, providing for the indemnification of the parties, and certain related persons ("Indemnification Agreement"). The Indemnification Agreement is an integral part of this Agreement. Before any other person or entity may be used to carry out any transaction contemplated by this Agreement, such person or entity must first enter into engagement and indemnification agreements with LPCA or the Company substantially similar to this Agreement and the Indemnification Agreement.

12. Make available at such reasonable times as may be agreed, all of the Company's personnel whom the parties agree are needed for the purpose of conference calls, site inspections, meetings, and otherwise gathering the Information as requested by LPCA.

13. the Company represents and warrants to LPCA that:

   a. The individual signing this Agreement has been authorized to do so by the Board of Directors or equivalent managing party of the Company;

   b. This Agreement constitutes a legal, valid and binding agreement of the Company, enforceable in accordance with its terms; and

   c. All Information provided, directly or indirectly, by the Company to LPCA, and all Information and Financing Memoranda that have been approved by the Company, will not, to the best of Company's knowledge, at any time, contain any untrue statements of a material fact or omit to state any material fact which would make the statements contained therein misleading in any material way.

14. LPCA represents and warrants to the Company that:

   a. The individual signing this Agreement has been authorized to do so by LPCA's principals and managers;

   b. This Agreement constitutes a legal, valid and binding agreement of the Company, enforceable in accordance with its terms; and

   c. All Information provided, directly or indirectly, by the LPCA to third parties, and all Information and Financing Memoranda that have been approved by Company and LPCA, will not to the best of its knowledge, at any time, contain any untrue statements of a material fact or omit to state any material fact which would make the statements contained therein misleading in any material way.

15. Each party shall advise the other party in writing, as soon as possible, and in any event within 48 hours of being informed or suspecting that, for any reason, the Information, Information Memoranda or Offering Materials contain any untrue statement of a material fact or omit to state any material fact which would make the statements contained therein misleading in any material way.

4

LP | LONDON & PACIFIC
CAPITAL ADVISORS, LLC

16.  The Company is solely responsible, to the extent not borne by any third parties, for the payment of all costs to third parties involved in completing a Financing including, without limitation, all lender costs, investor costs and appraisal costs. All costs incurred on behalf of or by the Company for which it will be responsible, will be submitted in advance to Company for its written consideration and approval before being incurred.

17.  During the Term of Engagement, the Company will not seek an M&A Transaction or a Financing on its own or through any means other than as set forth in this Agreement ("Outside Transaction"), except as follows:

   a.  the Company must obtain the written consent of LPCA before seeking Outside Transaction, which shall not be unreasonably withheld, delayed or conditioned;

   b.  LPCA has exclusive direction and control over any such Outside Transaction;

   c.  the Company provides to LPCA all of the Information available relevant to the Outside Transaction; and

   d.  The pursuit of the Outside Transaction will otherwise be done in accordance with all of the terms of this Agreement, as if the source of the Outside Transaction were procured by LPCA.

## CONFIDENTIALITY AND NON-CIRCUMVENTION

18.  During the Term of Engagement, the Company will have been and will continue to be introduced to certain information, forms, writings, techniques and sources of financing that are trade secrets of and are proprietary to LPCA ("LPCA Trade Secrets"). The Company and its respective subsidiaries, affiliates, successors, assigns, officers, directors, employees and agents will keep confidential all such LPCA Trade Secrets and not reveal those LPCA Trade Secrets to any third party for any reason without the prior written consent of LPCA.

19.  In the event that, within 24 months after the termination of this Agreement by the Company or LPCA, the Company completes an M&A Transaction that LPCA worked on (and documented in writing between the parties during the Term of Engagement and prior to Notice of Termination being given), LPCA shall be entitled to all compensation and performance from the Company under this Agreement, on the same terms as if this Agreement had not been terminated. In the event that, within 24 months after the termination of this Agreement by the Company or LPCA, the Company obtains the Financing, or any portion thereof, from any lender/investor to which the Company had been introduced (and documented in writing between the parties prior to Termination) during or prior to the Term of Engagement, then LPCA shall be entitled to all compensation and performance from the Company under this Agreement on the same terms as if this Agreement had not been terminated.

20.  For a period of 24 months from the signing of this Agreement, the Company and its subsidiaries, affiliates, successors, assigns, employees and agents shall not (except for transactions that are not for the same purpose as those contemplated by this Agreement; i.e., banking, personal investment or financing) contact or conduct business with any financial institution, investor, or placement agent introduced (and documented in writing between the parties) by LPCA to the Company without first obtaining written consent, which shall not be unreasonably withheld, delayed or conditioned from LPCA and entering into a written agreement with LPCA for just compensation payable to LPCA, to the extent that compensation payable to LPCA is not otherwise covered by this Agreement

LP | LONDON & PACIFIC
CAPITAL ADVISORS, LLC.

21.    It is further understood, and LPCA acknowledges, that the Company in the course of this Engagement will be furnishing proprietary, confidential and other information, documents, and materials (collectively "Confidential Information") to LPCA including, without limitation, trade secrets concerning the business and affairs of the company, data, know-how, technologies, processes, techniques, designs, inventions and ideas, operational methods and processes, vendor lists, customer lists, price lists, cost data, sales data, business plans, and other information concerning the business and affairs of the Company. LPCA hereby agrees to hold and keep the same strictly confidential, not to disclose or in any way make Confidential Information available to any third party, and not to use any of the Confidential Information without the Company's prior written consent. If LPCA is requested or becomes legally compelled to make any disclosure that is prohibited or otherwise constrained by this Section 20, LPCA will promptly provide the Company with notice of the same, so that it may seek an appropriate protective order or other appropriate remedy. Subject to the foregoing, LPCA may furnish that portion (and only that portion) of the Confidential Information that, in the written opinion of its counsel, LPCA is legally compelled or is otherwise required to disclose. The Company shall promptly reimburse LPCA for any legal or operating costs incurred in connection with the required disclosure of Confidential Information under this Section 20.

## COMPENSATION

22.    **Change of Control Event.** Upon the completion of the M&A Transactions that result in a change of control of the Company (including the sale of stock, assets, or the formation of new provider or payor relationships that have substantially the same effect), then, upon the closing of the transaction, LPCA will have earned and be immediately paid a Success Fee equal to $250,000. In the event the M&A Transactions result in multiple closings, the Success Fee shall be payable one time in connection with the first closing.

23.    **Senior Credit Facility Success Fee.** Upon closing a Financing for a senior credit facility, LPCA will have earned and be paid a Success Fee equal to 2.50% (two and one-half percent) of the maximum amount for the senior credit facility committed by the source of the Financing. The Success Fee shall be paid at closing.

24.    **Mezzanine Credit Facility Success Fee.** Although not anticipated as part of this engagement, upon closing of the Financing for a mezzanine credit facility, LPCA will have earned and be immediately paid a Success Fee equal to 5.00% (five percent) of the maximum amount for the mezzanine credit facility committed by the source of the Financing. The Success Fee shall be paid as the facility is drawn on by the Company.

25.    **Equity Placement Success Fee.** Although not anticipated as part of this engagement, upon closing of the Financing for equity financing (preferred stock, common stock, or its equivalent), LPCA will have earned and be immediately paid a Success Fee equal to 5.00% (five percent) of the maximum amount for the equity financing committed by the source of the Financing.

26.    **Monthly Work Fee.** Upon the execution of this Agreement, the Company will pay to LPCA a monthly work fee of $6,000 (six thousand dollars) per month ("Monthly Work Fee"), in advance, due on the 1st day of each month. The Monthly Work Fee payments are nonrefundable, and are for the purpose of compensating LPCA for its efforts to position the Company to obtain the Financing, including, without limitation, performing its due diligence on the Company and the research and preparation of Information Memoranda and/or Offering Materials.

LONDON & PACIFIC
CAPITAL ADVISORS, LLC

27. **Minimum Success Fee.** Notwithstanding the aforementioned, the minimum total Success Fees paid to LPCA for the successful closing of the M&A Transaction or the Financing pursuant to this engagement shall not be less than $100,000 (the "Minimum Success Fee").

28. **Hourly Rates for Non-Investment Banking Work.** LPCA shall invoice the Company separately for work performed that has been approved in advance, in writing, by the Company in connection with the analysis and bulk settlement of any portion of the Company's portfolio of workers' compensation accounts receivable, according to the following rate schedule:
    a. Managing Directors – $250.00/hour
    b. Vice Presidents – $150.00/hour
    c. Associates – $75.00/hour

29. Prior to closing of a Financing, the Company will sign a payment authorization letter, in a form to be prepared at the sole discretion of LPCA, irrevocably instructing the source of the Financing to deduct the Success Fees due to LPCA from the Financing and remit those Success Fees directly to LPCA.

30. Unless otherwise specified in this Agreement, the Success Fees are due to LPCA in connection with the Company securing the Financing from any lender/investor during the term of Engagement, irrespective of the source of initial identification of the lender/investor or the degree of participation of LPCA in obtaining the Financing.

31. For a period of two (2) years after the closing of each Financing covered by this Agreement, should the Company request and be granted an expansion of any such Financing, upon the approval for the expansion of the Financing by the source for the requested expansion of Financing, LPCA shall immediately be paid a Success Fee for the expanded Financing on the same terms as the Success Fees described above, except that the Minimum Success Fee described in paragraph 26 above will not apply.

32. Any late payment of Monthly Work Fees, Success Fees or other fees shall be subject to interest at a rate of 1.5% per month.

## EXPENSE REIMBURSEMENT

33. The Company agrees to pay for all pre-approved document preparation and out-of-pocket expenses incurred by LPCA in providing its services under this Agreement. These expenses include, but are not limited to, telephone calls, printing and copying charges, facsimiles, express shipping, travel expenses at economy level, and local mileage @ $0.565 per mile. These expenses will be billed as incurred and are immediately due and payable upon receipt. Prior to LPCA incurring any expense over $400.00 per item, a written approval and acknowledgement from the Company will be required and LPCA will provide sufficient documentation of all expenses to meet the IRS requirements for business deductions.

## RIGHT TO ADVERTISE

34. Upon the closing of any M&A Transaction or Financing completed under this Agreement, LPCA at its own expense, shall have the right to advertise its involvement in successfully securing the Financing and/or an M&A Transaction for the Company, upon receiving the Company's prior written approval for such advertisement.

7

**LP | LONDON & PACIFIC**
**CAPITAL ADVISORS, LLC**

## DISPUTE RESOLUTION

35.    **Mediation.** All disputes, claims or controversies arising out of or relating to this Agreement with more than $5,000 in controversy shall be submitted to Judicial Arbitration and Mediation Services ("JAMS") in Los Angeles, California, or its successor, for mediation, and if the matter is not resolved through mediation, then it shall be submitted to JAMS in Los Angeles, California, or its successor, for final and binding arbitration.   Either party may commence mediation by providing to JAMS and the other party a written request for mediation, setting forth the subject of the dispute and the relief requested. The parties will cooperate with JAMS and with one another in selecting a mediator from JAMS' panel of Neutrals, and in scheduling the mediation proceedings. The parties will participate in the mediation in good faith, and they will share equally in its costs. All offers, promises, conduct and statements, whether oral or written, made in the course of the mediation by any of the parties, their agents, employees, experts and attorneys, and by the mediator or any JAMS employees, are confidential, privileged, and inadmissible for any purpose, including impeachment, in any arbitration or other proceeding involving the parties. The mediation may continue after the commencement of arbitration if the parties so desire. Unless otherwise agreed by the parties, the mediator shall be disqualified from serving as arbitrator in the case.   The provisions of this paragraph may be enforced by any Court of competent jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees, and expenses, including attorney fees, to be paid by the party against whom enforcement is ordered.

36.    **Arbitration.** Any dispute, claim or controversy ("Claim") arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, which has not been resolved by mediation, shall be determined by arbitration at the JAMS office in Los Angeles, California, before a single retired Judge of Justice of the California courts, in accordance with the laws of the State of California for agreements made in and to be performed in that State. If LPCA has a claim against Company's manager, it shall also be subject to this Dispute Resolution agreement.

   a.    Either party may initiate arbitration by serving its demand for arbitration within the applicable statute of limitations, with respect to the matters submitted to mediation by filing a written demand for arbitration at any time following the initial mediation session.   If the demand for arbitration is not served within the applicable statute of limitations, then the Claim will be waived.

   b.    The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures if the amount in controversy exceeds $250,000, or pursuant to its Streamlined Arbitration Rules and Procedures if the amount in controversy is $250,000 or less. The California Rules of Evidence shall apply.   Judgment on the Award may be entered in any court having jurisdiction.

   c.    The arbitrators shall, in the Award, allocate all of the costs of the arbitration and the mediation, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail.

37.    **Small Claims.** All disputes, claims or controversies arising out of or relating to this Agreement within its jurisdiction shall be adjudicated in the Los Angeles County Small Claims division of the Court.

8

LP | LONDON & PACIFIC
     CAPITAL ADVISORS, LLC

38.    **Waiver of Jury Trial and Related Rights.** By initialing the space below, the parties agree to have all disputes, claims, or controversies arising out of or relating to this Agreement, which are not resolved by mediation, decided by neutral binding arbitration as provided in this Agreement, and the they are each giving up any rights either might possess to have those matters litigated in a court or jury trial. By initialing in the space below, the parties are giving up their judicial rights to discovery and appeal except to the extent that they are specifically provided for under this Agreement. If either party refuses to submit to arbitration after agreeing to this provision, it may be compelled to arbitrate under federal or state law.

The foregoing has been read and understood. The parties agree to submit all disputes, claims, or controversies arising out of or relating to this Agreement, that have not been resolved by mediation, to binding arbitration in accordance with this Agreement.

_____ (LPCA)  _____ (TCRMC)

## ATTORNEYS' FEES

39.    If any legal action based in contract law is necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs, and necessary disbursements in addition to any other relief to which that party may be entitled. This provision for recovery of attorneys' fees shall be construed as applicable to the entire Agreement.

## MISCELLANEOUS

40.    The signing of this Agreement shall not obligate LPCA to make any investment in the Company or any other entity, directly or indirectly, nor make LPCA responsible for the payment of any fees or costs due to any lender or investor involved with the Financing.

41.    This Agreement may not be modified or amended except in a writing signed by the parties hereto.

42.    The advice (written or oral) rendered by LPCA pursuant to this agreement is intended solely for the benefit and use of the Company in considering the matters to which this Agreement relates. Neither such advice nor LPCA's retention by the Company may be disclosed publicly or otherwise made available to third parties without the prior written consent of LPCA.

43.    Any determination that any one or more of the provisions of this Agreement may be, or is, invalid, illegal, or unenforceable shall not affect the validity, legality, or enforceability of the remainder of this Agreement.

44.    This Agreement may be executed in counterparts, each of which together shall be considered a single document.

45.    As a condition to LPCA proceeding under this Agreement, the Company shall retain legal counsel and an accounting firm, acceptable to LPCA, who are experienced in credit facility and securities documentation issues, to advise the Company in all aspects of this Agreement, including, without limitation, executing documentation required to obtain the Financing.

46.    This Agreement shall be binding on and shall be for the benefit of the parties hereto and their respective heirs, executors, administrators, successors, and assigns, and shall be governed exclusively by the laws of the State of California, including those pertaining to conflict of laws.

9

LP | LONDON & PACIFIC
CAPITAL ADVISORS, LLC

47.   This Agreement supersedes any and all other agreements, either oral or in writing, between the parties with respect to the subject of this Agreement. This Agreement contains all of the covenants and agreements between the parties with respect to the subject of this Agreement, and each party acknowledges that no representations, inducements, promises, or agreements have been made by or on behalf of any party except the covenants and agreements embodied in this Agreement. No agreement, statement, or promise not contained in this Agreement shall be valid or binding between the parties with respect to the subject of this Agreement, except as provided in this Agreement.

48.   This engagement agreement may be assigned at any time to an affiliate of LPCA upon prior written notice of assignment to the Company. In such a case, Eric Weissman would be required to continue his personal supervision of the project, and the designated affiliate would assume all obligations set forth in this engagement letter.

We appreciate the opportunity of working with you and the Company and look forward to your response. Please indicate your agreement with all of the foregoing by signing and returning a FULLY EXECUTED ORIGINAL OF THIS AGREEMENT to this office.

Sincerely,

London & Pacific Capital Advisors LLC
Eric J. Weissman, President

**ACCEPTED AND AGREED:**

For Gardens Regional Hospital and Medical Center, Inc., dba Tri-City Regional Medical Clinic and any affiliates and subsidiaries:

Jim Sherman, President/CEO on _Oct. 8,_ 2013

Approved by Hospital's Contracts Officer:

David Herskovitz, Esq. on _10 - 8_ 2013

10

LP | LONDON & PACIFIC
CAPITAL ADVISORS, LLC

October 7, 2013

London & Pacific Capital Advisors LLC
Attn: Eric J. Weissman
9538 W. Pico Blvd., Suite 205
Los Angeles, CA 90035

Ladies and Gentlemen:

In connection with your engagement as our financial advisor pursuant to a letter agreement, dated October 7, 2013 ("Agreement"), between you and us, we hereby agree to indemnify and hold harmless you and your affiliates, and your respective directors, officers, agents, employees, and controlling persons, and each of their respective successors and assigns (collectively, the "indemnified persons"), to the full extent lawful, from and against all losses, claims, damages, liabilities, and expenses (or actions in respect thereof) that are related to or arise out of (i) actions or alleged actions taken or omitted to be taken (including any untrue statements made or any statements omitted to be made) by us or any of our affiliates, directors, officers, employees, or agents; (ii) actions or alleged actions taken or omitted to be taken by an indemnified person (including acts or omissions constituting ordinary negligence) pursuant to the terms of, or in connection with services rendered pursuant to or in accordance with the terms of, the Agreement or any transaction or proposed transaction contemplated thereby or any indemnified person's role in connection therewith; or (iii) any untrue statement or alleged untrue statement of a material fact contained in any offering materials or in any amendment or supplement thereto, or any omission or alleged omission of a material fact required to be stated therein or necessary to make the statements therein not misleading. We will not be responsible, however, for any losses, claims, damages, liabilities or expenses pursuant to clause (ii) of the preceding sentence that are finally judicially determined to have resulted primarily from the willful misconduct or gross negligence of the person seeking indemnification hereunder. We also agree that (i) no indemnified person shall have any liability to us or any of our affiliates, directors, officers, employees, or agents except for losses, claims, damages, liabilities, or expenses incurred by us in connection with the transaction that are finally judicially determined (which shall include determinations resulting from arbitration) to have resulted primarily from the willful misconduct of such indemnified person; and (ii) in no event shall the indemnified persons' aggregate liability in connection with such losses, claims, damages, liabilities, and expenses exceed the fees you actually receive from us pursuant to the Agreement.

Promptly after receipt by an indemnified person of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify us in writing, via fax and by personal delivery, of such complaint or of the commencement of such action or proceeding, but failure so to notify us will relieve us from any liability that we may have hereunder only if, and to the extent that, such failure results in the forfeiture by us of any material defenses, and will not in any event relieve us from any other obligation or liability that we may have to any indemnified person. We will not, without the prior written consent of you, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not you or any other indemnified person is an actual or potential party to such claim, action, suit or proceeding).

We agree that if any indemnification sought by an indemnified person pursuant to this letter agreement is held by a court or arbitration tribunal to be unavailable for any reason other than as specified in the second sentence of the first paragraph of this letter agreement, then we will contribute to the losses, claims, damages, liabilities, and expenses for which such indemnification is held unavailable (i) in such proportion as is appropriate to reflect the relative benefits to us, on the one hand, and you, on the other hand, in connection with your engagement referred to above, or (ii) if the allocation provided by clause (i) above in this paragraph is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) in this paragraph, but

LP | LONDON & PACIFIC
CAPITAL ADVISORS, LLC

also the relative fault of us, on the one hand, and you, on the other hand, as well as any other relevant equitable considerations; provided however, that in any event the aggregate contribution by all indemnified persons to all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder will not exceed the amount of fees actually received by you from us pursuant to your engagement referred to above.

We further agree that we will promptly reimburse you and any other indemnified person hereunder for all reasonable expenses (including fees and disbursements of counsel) as they are incurred in connection with investigating, preparing or defending any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder, whether or not in connection with pending or threatened litigation in which any indemnified person is a party.

Our indemnity, contribution, and other obligations under this letter agreement shall be in addition to any rights that you or any other indemnified person may have at common law or otherwise, and shall be binding on our successors and assigns.

We hereby consent to personal jurisdiction, service and venue in any court in which a third party claim which is subject to, or which may give rise to a claim for indemnification or contribution under, this letter agreement is brought against you or any other indemnified person.

This letter agreement shall be deemed made in California. This letter agreement and all controversies arising from or relating to performance under this letter agreement shall be governed by and construed in accordance with the laws of the State of California, without giving effect to such state's rules concerning conflicts of laws, and shall be resolved in accordance with the Dispute Resolution procedures set forth in the Agreement, which is incorporated herein by this reference. ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS LETTER AGREEMENT OR ANY ENGAGEMENT OF YOU IS HEREBY WAIVED. The parties have agreed that all of the disputes between them shall be brought by binding arbitration pursuant to the Dispute Resolution provisions of the underlying Agreement.

It is understood that, in connection with your above-mentioned engagement, you may also be engaged to act in one or more additional capacities and that the terms of the original engagement or any such additional engagement may be embodied in one or more separate written agreements. The provisions of this letter agreement shall apply to the original engagement, related activities prior to the date of the original engagement, any such additional engagement and any modification of the original engagement or such additional engagement and shall remain in full force and effect following the completion or termination of your engagement(s).

Sincerely,
Gardens Regional Hospital and Medical Center, Inc., dba Tri-City
Regional Medical Center

By: _____
James Sherman, President/CEO

Accepted:
London & Pacific Capital Advisors LLC

By: _____
Eric J. Weissman, President

Approved by Hospital's Contracts Officer:

By: _____
David Herskovitz, Esq.

12

LP | LONDON & PACIFIC
CAPITAL ADVISORS, LLC

# AMENDMENT NUMBER TWO TO AGREEMENT

THIS AMENDMENT NUMBER TWO TO AGREEMENT ("Amendment 2") amends that certain Engagement Letter agreement dated October 7, 2013 between London & Pacific Capital Advisors, LLC ("Advisor") and Tri-City Regional Medical Center ("Hospital" or "Company") ("Original Agreement"), as amended by the March 1 "Amendment to Agreement" ("Amendment No. 1"). Advisor and Company are sometimes referred to collectively as the "parties" and individually as "party." The Amendment is entered into on or around, and shall be effective, as of June 6, 2016.

## RECITALS

A.      From October 2013 through approximately June 2015, Company and Advisor had been working together intermittently under the terms of the Original Agreement. From approximately July 2015 until February 29, 2016, Advisor had been working on a regular basis for the Company under the Original Agreement and as of March 1, 2016 the parties anticipated that for the foreseeable future that would continue to be the case.

B.      As of February 29, 2016 the parties recognized that (1) Advisor had claims for payment that had not been made and (2) differing interpretations of the Original Agreement as to what was due and would be due were possible and existed.

C.      On or around March 1 2016, the parties agreed to amend the Original Agreement as set forth in Amendment No. 1.

D.      The parties recognize, among other things, that the cash needs of the Company were not being met and that retention of cash was important. The Company wants Advisor to continue to provide services and Advisor wants to do so and to get paid for doing so, but in a manner sensitive to the circumstances of the Company.

E.      The following sets forth the agreement of the parties reached to settle past claims for payment and set forth the terms and conditions of compensation for future services.

## AMENDMENT

**I.      Parties**

Wilshire Pacific Advisors Advisor, LLC has assumed the position of London & Pacific Capital Advisors, LLC under the Original Agreement and the Company consents to that assumption..    The Company now does business under the name "Gardens Regional Company and Medical Center" and shall assume the position of Tri-City Regional and Medical Center, Inc, under the Original Agreement.

**II.     Claims for Pre March 1, 2016 Payments To Advisor**

Advisor's claim for payments for services under the Original Agreement (inclusive of monthly fees, success fees or otherwise) as of February 29, 2016 ("pre-March 1, 2016

1

claims") was at least $191,838.    Under Amendment No. 1, Advisor's claims were
provisionally reduced to $95, 919 and all other pre-March 1, 2016 claims waived. The
parties now agree, further, that all of Advisors pre-March 1, 2016 services shall be waived
in full, provided that Advisor has been engaged as financial advisor to the debtor in
bankruptcy by on or around June 30, 2016.

## III.    Future Services as Financial Advisor

Advisor shall continue to provide services to Company and be the financial advisor to its
Board of Directors. Should Company file a bankruptcy, Advisor will continue services,
including those services required as a financial advisor to the Company as a debtor in
bankruptcy.

## IV.    Compensation for Future Services

A.    Success Fee(s).

Paragraphs 22, 23, 24, 25, 27 and 28 of the Original Agreement and paragraphs IV A and B
of Amendment No. 1 are replaced by the following.

    1.    Debtor in Possession ("DIP") Financing. Advisor shall receive an amount
equal to 2.5% of any Debtor in Possession ("DIP") financing received by the
Company in connection with a bankruptcy.

    2.    Transaction Success Fee. If any Transaction is consummated during the term
of this agreement, Advisor shall receive the greater of $200,000 or 2.5% of
the "Transaction Value."

        a.    For purposes of this agreement, "Transaction" means (i) any gift or loan
(including line(s) of credit) to the Company or for its benefit which
permits or facilitates the continued operation of the Gardens Hospital by
the Company, (ii) any merger, consolidation, reorganization or other
business combination pursuant to which all or a substantial portion of the
business of the Company is combined with that of any party; (ii) the
acquisition, directly or indirectly, by any party or parties of all or a
substantial portion of the assets of, or of any right to all or a substantial
portion of the revenues or income of, the Company, by way of a purchase,
lease, license, exchange, joint venture or other means.

        b.    For purposes of this agreement, "Transaction Value" means the value of
the greater of any of the following individually or in combination: (i) total
financing raised for the Transaction, or (ii) all cash paid, installment notes
and/or securities issued, any indebtedness canceled or assumed, any
assets retained by the Company in connection with or arising from the
Transaction, and (iii) any other form of payment made to the Company in
connection with or arising from the Transaction, including any contingent

2

payments, consideration to be paid in the form of earnouts, any consideration placed in escrow, and the amount of any indebtedness.

c. For clarity, "Transaction Value" shall not include any financing already on which Advisor was already paid a Success Fee under section "IV.A.1 Debtor-in-Possession Financing" above.

B.    Monthly Work Fee

Paragraph 26 of the Original Agreement is amended so that from March 1, 2016 until the Company files for bankruptcy, the monthly work fee shall be $15,000, after which time the monthly work fee shall be $25,000. Advisor shall be paid additional work fees at a rate of $350/hour when required to appear in bankruptcy court.

## V.    CONTINUATION OF ORIGINAL AGREEMENT

All provisions of the Original Agreement and Amendment No 1 not amended hereby and not inconsistent with the foregoing, continue to be in effect.

Agreed and effective as of June 6, 2016

Wilshire Pacific Advisors Advisor, LLC

Gardens Regional Hospital and Medical Center

_____

By Eric J. Weissman, President

_____

By Brian Walton
Chairman of the Board of Directors

3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Dentons US LLP, 601 South Figueroa Street, Suite 2500, Los Angeles, CA 90017

A true and correct copy of the foregoing document entitled (*specify*):   **DEBTOR'S APPLICATION TO EMPLOY
WILSHIRE PACIFIC CAPITAL ADVISORS AS FINANCIAL ADVISOR, NUNC PRO TUNC; DECLARATION OF ERIC J.
WEISSMAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-
2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*) June 29, 2016, I will serve the following persons and/or entities at
the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a
sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here
constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*SEE ATTACHED SERVICE LIST*

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) June 17, 2016, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

The Honorable Ernest M. Robles
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1560/Courtroom 1568
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 29, 2016 | Alicia Aguilar | /s/ Alicia Aguilar |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

## SERVICE LIST

*In re: Gardens Regional Hospital and Medical Center, Inc. dba Gardens Regional Hospital and Medical Center*

### *Regulatory Agencies*

| | |
|---|---|
| Hatty Yip<br>Office of the United States Trustee<br>915 Wilshire Boulevard, Suite 1850<br>Los Angeles, CA 90017<br>Hatty.Yip@usdoj.gov<br>Office: (213) 894-1507<br>Fax: (213) 894-2603 | United States Attorney's Office<br>Central District of California<br>312 North Spring Street, Suite 1200<br>Los Angeles, CA 90012<br>Office: (213) 894-2400<br>Fax: (213) 894-0141 |
| U.S. Department of Justice<br>Office of the Attorney General of the United States<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001<br>Office (202) 514-2000<br>Fax: (202) 307-6777 | Wendi A. Horwitz<br>Deputy Attorney General<br>Dept. of Justice<br>Office of the Attorney General<br>300 South Spring Street, Suite 1702<br>Los Angeles, CA 90013<br>Office: (213) 897-2178<br>Email: wendi.horwitz@doj.ca.gov |
| Internal Revenue Service<br>300 North Los Angeles Street<br>Los Angeles, CA 90012<br>Office: (213) 576-3009<br>Fax: None | State of California<br>Franchise Tax Board<br>300 South Spring Street, #5704<br>Los Angeles, CA 90013<br>Office: (916) 845-6500<br>Fax: None |
| Sylvia Mathews Burwell, Secretary<br>U.S. Department of Health & Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201<br>Office: (202) 690-6610<br>Fax: (202) 690-7203 | Employment Development Dept.<br>722 Capitol Mall<br>Sacramento, CA 95814<br>Office: (866) 333-4606 |
| Jennifer Kent, Director<br>California Department of Health Care Services<br>1501 Capitol Avenue, Suite 4510<br>Sacramento, CA 95814<br>Office: (916) 464-4430<br>Fax: None | Internal Revenue Service<br>600 Arch Street<br>Philadelphia, PA 19101<br>Office: (267) 941-6800 |
| Angela M. Belgrove<br>Assistant Regional Counsel<br>U.S. Department of Health and Human Services<br>Office of the General Counsel, Region IX<br>90 7th Street, Suite 4-500<br>San Francisco, CA 94103-6705<br>Office: (415) 437-8156<br>Fax: (415) 437-8188 | Office of the Attorney General<br>Consumer Law Section<br>Attn: Bankruptcy Notices<br>455 Golden Gate Ave., Suite 11000<br>San Francisco, CA 94102<br>Office: (415) 703-5500<br>Fax: (415) 703-5480 |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 1 -

*SERVICE LIST (cont'd)*
In re:  Gardens Regional Hospital and Medical Center, Inc. dba Gardens Regional Hospital and Medical Center

### List of Creditors Holding 20 Largest Unsecured Claims

| | |
|---|---|
| Darrell W. Clark<br>Stinson Leonard Street LLP<br>1775 Pennsylvania Ave., N.W., Suite 800<br>Washington, DC 20006<br>Office:  (202) 728-3019<br>Fax:  (202) 572-9991<br>darrell.clark@stinson.com<br>[counsel for Siemens (Cerner Health Servs.] | UCLA Medical Center<br>Paul Staton<br>757 Westwood Place<br>Los Angeles, CA 90095<br>Office:  (310) 825-9111<br>Fax:  (310) 267-3671 |
| DeLage Landen Financial Services, Inc.<br>Cheryl Glick<br>1111 Old Eagle School Road<br>Wayne, PA 19087<br>Office:  (610) 386-3850<br>Fax: | Spinal Solutions LLC / Orthopedic Alliance<br>Roger Williams<br>26157 Jefferson Ave., #A<br>Murietta, CA 92562<br>Office:  (951) 304-9001<br>Email:  rkwplus@aol.com |
| Cardinal Health<br>c/o Patricia Benson<br>Mitchell Silberberg<br>11377 West Olympic<br>Los Angeles, CA 90064<br>Office:  (310) 312-2000<br>Email:  phb@msk.com | Spine Surgical Implants, Inc.<br>Andy Navid<br>9445 Fairway View Place<br>Rancho Cucamonga CA 91730<br>Cell:  (714) 319-7793<br>Office:  (909) 484-2328<br>Email:  andynavid@yahoo.com |
| Rollins Nelson<br>Jess Ahlholm<br>4333 Torrance Blvd, 2nd Floor<br>Torrance, CA 90503<br>Office:  (818) 224-4534<br>Fax:  (323) 297-1554 | Regency Surgical Devices LLC<br>Pam Patterson<br>21500 Pioneer Blvd #208<br>Hawaiian Gardens CA 90716<br>Office:  (310) 995-3799<br>Fax:  (310) 540-2344 |
| St. Mary Medical Center<br>Leon Choiniere<br>1050 Linden Avenue<br>Long Beach, CA 90813<br>Office:  (562) 491-9000<br>Fax:  (562 436-6378 | Signal Health Solution<br>George Jayatilaka<br>2525 Cherry Ave., #225<br>Signal Hill, CA 90755<br>Office:  (562) 435-3333<br>Fax:  (562) 981-7431 |
| Starbase, Inc.<br>Ismael Silva<br>2034 E. Lincoln PMB321<br>Anaheim, CA 92806<br>Office:  (949) 500-5513<br>Email:  drsilva@orthosportsmedicine.com | Long Beach Memorial Medical Center<br>Yiers Katz<br>2801 Atlantic Avenue<br>Long Beach, CA 90806<br>Office:  (562) 933-2000<br>Fax:  (562) 933-1107 |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*SERVICE LIST (cont'd)*
*In re:  Gardens Regional Hospital and Medical Center, Inc. dba Gardens Regional Hospital and Medical Center*

County of Los Angeles
Don Knabe
Kenneth Hahn Hall of Administration
500 W. Temple Street, Room 358
Los Angeles, CA 90012
Office:  (213) 974-4444
Fax:  (213)  626-6941

Brittany M. Whitman, Esq.
Corporate Counsel
Avanti Hospitals
222 N. Sepulveda Blvd., Suite 950
El Segundo, CA 90245
Office:  (310) 356-0501
Fax:  (310) 200-5961
bwhitman@avantihospitals.com
[counsel for Gardena Hospital, LP]

Advance Bariatric Center
Houshmand Naim MD
321 N. Larchmont Blvd Suite 505
Los Angeles, CA 90004
Office:  (310) 975-9546
Fax:  (310) 807-8345

Anthem Blue Cross
Sean Forrester
21555 Oxnard Street, #8B
Woodland Hills, CA 91367

LAC Harbor UCLA Medical Center
Ellie Kanjian
313 North Figueroa Street, Suite 534
Los Angeles, CA 90012
Office:  (213) 240-7918
Fax:

Noridian Healthcare Solutions LLC
Andrew Wegman
900 42nd Street
Fargo, ND 58108
Office:  (701) 277-6500

Paladin-Gardens Management
222 N. Sepulveda Blvd., Suite 950
El Segundo, CA 90245
Office:  (310) 414-2700
Fax:  (310) 414-2709

Dept of Health Care Services
Jennifer Kent
1501 Capitol Avenue, #71.2048
Sacramento, CA 95899
Office:  (916) 464-4430
Email:  contactus@dhcs.ca.gov.

Harbor-Gardens Capital I, LLC
Joel Freedman
222 N. Sepulveda Blvd., Suite 950
El Segundo, CA 90245

DENTONS US LLP
601 SOUTH FIGUEROA STREET, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*SERVICE LIST (cont'd)*
*In re: Gardens Regional Hospital and Medical Center, Inc. dba Gardens Regional Hospital and Medical Center*

*Entities Asserting Liens / Secured Creditors*

| | |
|---|---|
| VFI-SPV IX Corp<br>6340 South 3000 E Ste 400<br>Salt Lake City, UT 84121<br>Office: (801) 733-8100<br>Fax: (801) 733-8900 | Kansas State Bank of Manhattan<br>1010 Westloop Place<br>Manhattan, KS 66502<br>Fax: (785) 587-4040 |
| Diamond Medical Equipment<br>999 N. Tustin Ave<br>Santa Ana, CA 92705<br>Office: (714) 542-8999<br>Fax: (714) 542-0055 | General Electric Capital Corp<br>83 Wooster Heights Rd<br>Danbury, CT 06810 |
| **Fuji Film Medical Systems USA Inc**<br>**419 West Avenue**<br>**Stamford, CT 06902**<br>Office: (800) 385-4666<br>Fax: (973) 633-8818 | Stryker Sales Corporation<br>950 Trade Center Way Ste 200<br>Portage, MI 49002<br>Office: (269) 324-6500<br>Fax: 269-385-1062 |
| US Bancorp Equipment Finance<br>13010 SW 68th Place Suite 100<br>Portland, OR 97223 | Philips Medical Capital<br>1111 Old Eagle School Road<br>Wayne, PA 19087<br>Office: (610) 386-5000<br>Fax: (866) 351-4762 |
| Cerritos Gardens General Hospital<br>21520 S Pioneer Blvd Ste 205<br>Hawaiian Gardens, CA 90716<br>Office: (562) 924-3709<br>Fax: (562) 924-3809 | CIT Communications Finance<br>1 CIT Drive<br>Livingston, NJ 07039<br>Office: (973) 740-5000 |
| General Electric Capital Corp<br>3333 Hesper Road<br>Billings, MT 59102<br>Office: (888) 212-1380<br>Fax: (866) 529-9303 | Stryker Sales Corporation<br>1901 Romence Road Parkway<br>Portage, MI 49002<br>Office: (269) 324-6500<br>Fax: (269) 385-1062 |
| Olympus America Inc<br>3500 Corporate Parkway<br>Center Valley, PA 18034<br>Office: (484) 896-5000<br>Fax: (484) 896-7126 | Siemens Diagnostic Finance Co<br>1717 Deerfield Road #1<br>Deerfield, IL 60015<br>Office: (847) 267-5300 |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*SERVICE LIST (cont'd)*
*In re: Gardens Regional Hospital and Medical Center, Inc. dba Gardens Regional Hospital and Medical Center*

| | |
|---|---|
| Stryker Financial Solutions<br>1901 Romence Road Parkway<br>Portage, MI 49002<br>Office: (503) 225-1761<br>Fax: (269) 385-1062 | Corporation Service Company<br>801 Adlai Stevenson Dr<br>Springfield, IL 62703 |
| Diligenz Inc<br>6500 Harbor Hgts Pkwy Ste 400<br>Mukilteo, WA 98275<br>Office: (425) 609-1700<br>Fax: (800) 345-6059 | Lease Processing Center<br>1111 Old Eagle School Road<br>Wayne, PA 19087<br>Fax: (610) 386-5000 |
| UCC Direct Services<br>2727 Allen Parkway<br>Houston, TX 77019<br>Office: (800) 331-3282<br>Fax: (818) 662-4141 | Myron Meyers Professional Corp<br>11800 E Tahquitz Canyon Way<br>Palm Springs, CA 92262<br>Office: (760) 318-8426<br>Fax: (760) 318-1457<br>Email: mnmpd@aol.com |
| Parasec<br>2804 Gateway Oaks Drive Suite 200<br>Sacramento, CA 95833<br>Office: (800) 533-7272<br>Fax: (800) 603-5868 | Lerman Law Group<br>11400 W Olympic Ste 700<br>Los Angeles, CA 90064<br>Office: (310) 734-8244<br>Email: info@lermanlawgroup.com |
| CT Lien Solutions<br>2727 Allen Parkway<br>Houston, TX 77019 | Sycamore Healthcare Services LLC<br>c/o S&W Health Management Services, Inc.<br>12401 Wilshire Blvd., Suite 200<br>Los Angeles, CA 90025<br>Office: (310) 207-1555<br>Fax: (310) 207-3666<br>bweiner@swlawyers.com |
| RollinsNelson Group, LLC<br>Bill Nelson<br>4333 Torrance Blvd<br>Torrance, CA 90503 | Selvin & Weiner, APC<br>Beryl Weiner<br>12401 Wilshire, 2nd Floor<br>Los Angeles, CA 90025-1089<br>Office: (310) 207-1555<br>Fax: (310) 207-3666<br>bweiner@swlawyers.com |
| Stryker Orthopedics<br>CFO<br>325 Corporate Drive<br>Mahwah, NJ 07430<br>Office: (201) 831-4000<br>Fax: (800) 438-1150 | Roxbury Healthcare Services LLC<br>c/o S&W Health Management Services, Inc.<br>12401 Wilshire Blvd Suite 200<br>Los Angeles, CA 90025<br>Office: (310) 207-1555<br>Fax: (310) 207-3666<br>bweiner@swlawyers.com |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*SERVICE LIST (cont'd)*
*In re: Gardens Regional Hospital and Medical Center, Inc. dba Gardens Regional Hospital and Medical Center*

| | |
|---|---|
| Harbor-Gardens Capital 1, LLC<br>222 N. Sepulveda Blvd Suite 950<br>El Segundo, CA 90245<br>Office: (310) 414-2700<br>Fax: (310) 414-2709 | AmeriSourceBergen Drug Corp.<br>1300 Morris Drive<br>Chesterbrook, PA 19087<br>Office: (610) 727-7000<br>Email: solutions@amerisourcebergen.com |
| Cerritos Gardens General Hospital<br>1800 E Tahquitz Canyon Way<br>Palm Springs, CA 92262<br>Office: (310) 282-2225<br>Fax: (310) 510-6729<br><br>Karl Block<br>Loeb & Loeb<br>10100 Santa Monica Blvd, Suite 2200<br>Los Angeles, CA 90067<br>[counsel for Harbor-Gardens Capital I]<br>Office: (310) 282-2225<br>Fax: (310) 510-6729<br>Email: kblock@loeb.com | Sycamore Healthcare Services<br>4333 Torrance Blvd.<br>Torrance, CA 90503<br>Office: (818) 224-4534<br>Fax: (323) 297-1554 |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**SERVICE LIST (cont'd)**
*In re:  Gardens Regional Hospital and Medical Center, Inc. dba Gardens Regional Hospital and Medical Center*

**Request for Special Notice**

| | |
|---|---|
| Mary H. Rose<br>Buchalter Nemer<br>1000 Wilshire Blvd., Suite 1500<br>Los Angeles, CA 90017<br>Office:  (213) 891-0700<br>Fax:  (213) 896-0400<br>Email:  mrose@buchalter.com | R. David Jacobs<br>Ted Gehring<br>Epstein Becker Green<br>1925 Century Park East, Suite 500<br>Los Angeles, CA 90067<br>Office:  (310) 556-8861<br>Fax:  (310) 553-2165<br>Email:  djacobs@ebglaw.com<br>Email:  tgehring@ebglaw.com |
| Dawn M. Coulson<br>Epps & Coulson, LLP<br>707 Wilshire Blvd., Suite 3000<br>Los Angeles, CA 90017<br>Office:  (213) 929-2390<br>Fax:  (213) 929-2394<br>Email:  dcoulson@eppscoulson.com | Howard N. Madris<br>Law Office of Howard N. Madris<br>424 S. Beverly Drive<br>Beverly Hills, CA 90212<br>Office:  (310) 277-0757<br>Fax:  (310) 975-6757<br>Email:  hmadris@madrislaw.com |
| Ivan Kallick<br>Manatt Phelps & Phillips, LLP<br>11355 West Olympic Boulevard<br>Los Angeles, CA 90064<br>Office:  (310) 312-4000<br>Fax:  (310) 312-4224<br>Email:  ikallick@manatt.com | Karl E. Block<br>Loeb & Loeb LLP<br>10100 Santa Monica Blvd., Suite 2200<br>Los Angeles, CA 90067<br>Office:  (310)  282-2000<br>Fax:  (310) 510-6729<br>Email:  kblock@loeb.com |
| Gary Torrell<br>Valensi Rose, PLC<br>1888 Century Park East, Suite 1100<br>Los Angeles, CA 90067<br>Office:  (310) 277-8011<br>Fax:  (310) 277-1706<br>Email:  gft@vrmlaw.com | Gerald N. Sims<br>Pyle Sims Duncan & Stevenson<br>401 B Street, Suite 1500<br>San Diego, CA 92101<br>Office:  (619) 687-5200<br>Email:  jerrys@psdslaw.com<br>[Counsel for Creditor Beta Risk Management Authority] |
| Louis J. Cisz, III<br>Nixon Peabody LLP<br>One Embarcadero Center, 18th Floor<br>San Francisco, CA 94111<br>Office:  (415) 984-8320<br>Fax:  (415) 984-8300<br>Email:  lcisz@nixonpeabody.com | Amanda L. Marutzky<br>Watt Tieder Hoffar & Fitzgerald, LLP<br>2040 Main Street, Suite 300<br>Irvine, CA 92614<br>Office:  (949) 852-6700<br>Fax:  (949) 261-0771<br>Email:  amarutzky@watttieder.com |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**SERVICE LIST (cont'd)**
*In re: Gardens Regional Hospital and Medical Center, Inc. dba Gardens Regional Hospital and Medical Center*

| | |
|---|---|
| Benjamin Nachimson<br>Woolf & Nachimson, LLP<br>15300 Ventura Blvd., Suite 214<br>Sherman Oaks, CA 91403<br>Office: (310) 474-8776<br>Fax: (310) 919-3037<br>Email: bsn@nachimsonlaw.com | Kurt Ramlo<br>Gary E. Klausner<br>Eve Karasik<br>Levene Neale Bender Yoo & Brill LLP<br>10250 Constellation Blvd., Suite 1700<br>Los Angeles, CA 90067<br>Office: (310) 229-1234<br>Fax: (310) 229-1244<br>Email: gek@lnbyb.com |
| Wayne R. Terry<br>wterry@hrhlaw.com<br>J. Alexandra Rhim<br>arhim@hrhlaw.com<br>Hemar Rousso & Heald LLP<br>15910 Ventura Blvd., 12th Floor<br>Encino, CA 91436<br>Office: (818) 501-3800<br>Fax: (818) 501-2985<br>[Counsel for De Lage Landen Financial] | Alan J. Stomel<br>Alan J. Stomel, a Law Corporation<br>PO Box 1457<br>Bodega Bay, CA 94923<br>Office: (707) 377-4097<br>Email: alan.stomel@gmail.com |
| Benjamin S. Siegel<br>Yi Sun Kim<br>Greenberg & Bass LLP<br>16000 Ventura Blvd., Suite 1000<br>Encino, CA 91436<br>Office: (818) 382-6200<br>Fax: (818) 986-6534<br>Email: ykim@greenbass.com | Stephen A. Madoni<br>Law Office of Stephen A. Madoni<br>3700 Newport Blvd., Suite 206<br>Newport Beach, CA 92663<br>Office: (949) 723-7600<br>Fax: (949) 723-7601<br>Email: SteveMadone@aol.com<br>[counsel for Creditor Spine Surgical Implants] |
| **Wendy Loo, Deputy City Attorney**<br>**Los Angeles Office of the City Attorney**<br>**200 North Main Street, Suite 920**<br>**Los Angeles, CA 90012**<br>**Office: (213) 978-7750**<br>**Fax: (213) 978-7711** | **Emily P. Rich**<br>**Manual A. Boigues**<br>**Weinberg Roger & Rosenfeld**<br>**1001 Marina Village Parkway, Suite 200**<br>**Alameda, CA 94501**<br>**Office: (510) 337-1001**<br>**Fax: (510) 337-1023**<br>**erich@unioncounsel.net**<br>**mboigues@unioncounsel.net** |
| **John Kreis**<br>**1000 Wilshire Blvd., Suite 570**<br>**Los Angeles, CA 90017**<br>**Office: (213) 613-1049**<br>**Fax: (213) 330-0258**<br>**jkreis@kreislaw.com** | |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

99334960\V-1