1  SAMUEL R. MAIZEL (Bar No. 189301)
   samuel.maizel@dentons.com
2  JOHN A. MOE, II (Bar No. 066893)
   john.moe@dentons.com
3  DENTONS US LLP
   601 South Figueroa Street, Suite 2500
4  Los Angeles, California  90017-5704
   Telephone:    (213) 623-9300
5  Facsimile:    (213) 623-9924

6  Attorneys for Debtor,
   GARDENS REGIONAL HOSPITAL
7  AND MEDICAL CENTER, INC.

8

9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                LOS ANGELES DIVISION

12

13 In re:                              Case No. 2:16-bk-17463-ER

14 GARDENS REGIONAL HOSPITAL AND        Chapter 11
   MEDICAL CENTER, INC., dba GARDENS
15 REGIONAL HOSPITAL AND MEDICAL
   CENTER, INC.                         NOTICE OF MOTION AND MOTION OF THE DEBTOR
16                                      AND DEBTOR IN POSSESSION PURSUANT TO
              Debtor.                   SECTIONS 105(a), 363, AND 365 OF THE BANKRUPTCY
17                                      CODE FOR AN ORDER (I)(A) APPROVING
                                        PROCEDURES IN CONNECTION WITH THE SALE OF
18                                      CERTAIN OF THE DEBTOR'S ASSETS; (B)
                                        SCHEDULING THE RELATED AUCTION AND
19                                      HEARING TO CONSIDER APPROVAL OF SALE; (C)
                                        APPROVING PROCEDURES RELATED TO THE
20                                      ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS
                                        AND UNEXPIRED LEASES; (D) APPROVING THE FORM
21                                      AND MANNER OF NOTICE THEREOF; (E) APPROVING
                                        BREAK-UP FEE; AND (F) GRANTING RELATED
22                                      RELIEF; AND (II)(A) AUTHORIZING THE SALE OF
                                        CERTAIN OF THE DEBTORS' ASSETS FREE AND
23                                      CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND
                                        OTHER INTERESTS; (B) APPROVING THE
24                                      ASSUMPTION AND ASSIGNMENT OF CERTAIN
                                        EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
25                                      AND (C) GRANTING RELATED RELIEF

                                        Hearing:
26                                      Date:        July 5, 2016
                                        Time:        10:00 a.m.
27                                      Courtroom:   1568
                                        Place:       U.S. Bankruptcy Court
28                                                   255 East Temple Street
                                                     Los Angeles, CA 90012

                                        Judge Ernest M. Robles

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA  90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**TO THE HONORABLE  ERNEST M. ROBLES, UNITED STATES
BANKRUPTCY JUDGE, THE TWENTY LARGEST UNSECURED CREDITORS OF
THE DEBTOR, ALL ALLEGED SECURED CREDITORS, THE UNITED STATES OF
AMERICA AND THE STATE OF CALIFORNIA, PARTIES REQUESTING SPECIAL
NOTICE, AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

PLEASE TAKE NOTICE that Gardens Regional Hospital and Medical Center, Inc., a

California not for profit corporation, doing business as Gardens Regional Hospital and Medical

Center and formerly doing business as Tri City Regional Medical Center, the debtor and debtor in

possession in the above captioned case (the "Debtor"), hereby moves (the "Motion") the Court on

an emergency basis pursuant the *Interim Order Granting Debtor's Emergency Motion For

Interim and Final Orders (A) Authorizing the Debtor to Obtain Postpetition Financing; (B)

Authorizing the Debtor to Use Cash Collateral and (C) Granting Adequate Protection to

Prepetition Secured Creditors* [Docket No. 122] (the "Interim DIP Financing Order"), entered on

June 22, 2016, which ordered the Debtor to file this Motion by Friday, July 1, 2016 and set a

hearing on this Motion for Tuesday, July 5, 2016, for entry of an order pursuant to sections

105(a), 363(b) and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules

2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Rules 2002-1,  2081-1(a)(10), 6004-1(b)  and 9075-1 of the Local

Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California

(the "Local Rules") for: (i) an order substantially in the proposed form attached hereto as Exhibit

C (the "Bidding Procedures Order") (a) approving procedures in connection with the sale of

certain of the Debtor's assets (the "Bidding Procedures", which are attached as Exhibit 1 to the

Bidding Procedures Order); (b) scheduling the related auction and hearing to consider approval of

such sale; (c) approving procedures related to the assumption of certain executory contracts and

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

unexpired leases; (d) approving the form and manner of notice thereof; and (e) approving break-up fee; and (ii) an order, substantially in the proposed form attached hereto as Exhibit D (the "Sale Order") (a) authorizing the sale of such assets free and clear of liens, claims, encumbrances, and other interests, except as provided in a Purchase Agreement (defined herein) and (b) approving the assumption and assignment of certain of the Debtor's executory contracts and unexpired leases related thereto; and (iii) granting relief related.

**PLEASE TAKE FURTHER NOTICE** that the Debtor will suffer irreparable harm without the relief requested in this Motion.  The Debtor has been operating at a loss for years.  It has been trying to find a suitor to take over the operations of the Hospital and continue to ensure that its patients continue to get the medical care they expect from the Debtor, and allow continued employment to the Debtor's loyal employees.  The Debtor believes that without the relief requested it will likely be forced to cease operations.  Without approval of this Motion, the Debtor's ability to preserve its assets for the benefit of all creditors will be seriously impaired.

**PLEASE TAKE FURTHER NOTICE** that because the proposed sale is vital to the Debtor's ability to continue to operate the hospital, and provide medical care to its patients, the Debtor, pursuant to Local Rules 2081-1(a)(10) and 9075-1(a),  requests that this Motion be heard on an emergency basis.  Granting the relief requested in this Motion on an emergency basis will benefit the Debtor's estate immediately.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice and Motion, the attached Memorandum of Points and Authorities, the Declaration of Eric Weissman attached hereto (the "Supplemental Weissman Declaration") , as well as the Declaration of Eric Weissman attached as an exhibit to the Debtor's Second DIP Financing Motion [Docket No.  92], and the Declarations of David Herskovitz  [Docket No. 24] and Eric Weissman [Docket No. 23] in Support of First Day Motions (the "Herskovitz Declaration" and the "Weissman Declaration"),

which were filed at the beginning of this Case, and are incorporated herein by reference, the arguments of counsel and other admissible evidence properly brought before the Court at or before the hearing on this Motion.  In addition, the Debtor requests that the Court take judicial notice of all documents filed with the Court in this case.

**PLEASE TAKE FURTHER NOTICE that any opposition or objection to the Motion must be filed with the Court and served on proposed counsel for the Debtor at the above address any time before the hearing or may be presented at the hearing on the Motion at the time and place set forth above.  Your failure to timely object may be deemed by the Court to constitute consent to the relief requested herein.**

**PLEASE TAKE FURTHER NOTICE** that counsel to the Debtor will serve this Notice and Motion, the attached Memorandum of Points and Authorities and the Declaration on:  (1) the Office of the United States Trustee; (2) the twenty largest creditors appearing on the list filed in accordance with Bankruptcy Rule 1007(d) as supplemented by any proofs of claim, whether formal or informal, filed since the Petition Date; (3) any alleged secured creditors; (4) the United States of American; (5) the State of California; and (6) parties that file with the Court and serve upon the Debtor requests for notice of all matters in accordance with Bankruptcy Rule 2002(i). To the extent necessary, the Debtor requests that the Court waive compliance with Local Bankruptcy Rule 9075-1(a)(5) and approve service (in addition to the means of service set forth in such Local Bankruptcy Rule) by overnight delivery.  In the event that the Court grants the relief requested by the Motion, the Debtor shall provide notice of the entry of the order granting such relief upon each of the foregoing parties and any other parties in interest as the Court directs. The Debtor submits that such notice is sufficient and that no other or further notice be given.

**WHEREFORE**, for all the foregoing reasons and the reasons stated in the attached Memorandum of Points and Authorities, and such additional reasons as may be advanced at or

- 4 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

prior to the hearing on this Motion, the Debtor respectfully requests that this Court enter (i) a

Bidding Procedures Order substantially in the proposed form attached hereto as Exhibit C (a)

approving the Bidding procedures in connection with the sale of certain of the Debtor's assets

(which are attached as Exhibit 1 to the Bidding Procedures Order); (b) scheduling the related

auction and hearing to consider approval of such sale; (c) approving procedures related to the

assumption of certain executory contracts and unexpired leases; (d) approving the form and

manner of notice thereof; and (e) approving break-up fee; and (ii) an order, substantially in the

proposed form attached hereto as Exhibit C (the "Sale Order") (a) authorizing the sale of such

assets free and clear of liens, claims, encumbrances, and other interests, except as provided in a

Purchase Agreement (defined herein) and (b) approving the assumption and assignment of certain

of the Debtor's executory contracts and unexpired leases related thereto; and (iii) granting such

other and further relief as is just and proper under the circumstances.

Dated:  July 1, 2016

DENTONS US LLP
SAMUEL R. MAIZEL
JOHN A. MOE, II


By____/s/ Samuel R. Maizel_____
        SAMUEL T. MAIZEL

Attorneys for Gardens Regional Hospital and
Medical Center, Inc.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 5 -

# TABLE OF CONTENTS

**Page(s)**

Jurisdiction, Venue, and Predicates for Relief ........................................................................ 1

Background ............................................................................................................................... 1

Relief Requested ...................................................................................................................... 5

I.    PROPOSED BID AND SALE PROCEDURES ................................................................ 6

    A.    Provisions Governing Qualifications of Bidders ..................................................... 7

    B.    Due Diligence ......................................................................................................... 7

    C.    Provisions Governing Qualified Bids ..................................................................... 8

    D.    Bid Deadline ......................................................................................................... 10

    E.    Credit Bidding ...................................................................................................... 11

    F.    Evaluation of Competing Bids .............................................................................. 11

    G.    No Qualified Bids ................................................................................................. 11

    H.    Auction Process .................................................................................................... 11

    I.    Selection of Successful Bid ................................................................................... 13

    J.    Return of Deposits ................................................................................................ 14

    K.    Back-Up Bidder .................................................................................................... 14

    L.    Break-Up Fee ........................................................................................................ 14

    M.    Sale Hearing ......................................................................................................... 15

II.    APPLICABLE AUTHORITY ........................................................................................ 20

    A.    The Sale of the Debtor's Assets is Authorized by Section 363 as a Sound Exercise
        of the Debtors' Business Judgment ....................................................................... 20

    B.    The Bidding Procedures Are Appropriate and Will Maximize the Value Received
        for the Debtor's Assets. ......................................................................................... 23

    C.    The Sale of the Debtor's Assets Free and Clear of Liens and Other Interests is
        Authorized by Section 363(f) of the Bankruptcy Code ......................................... 24

    D.    The Proposed Notice of Bidding Procedures, Auction, and Sale Is Appropriate .. 27

    E.    The Break-Up Fee is Appropriate Under the Circumstances ................................. 28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

F.    Assumption and Assignment of Certain Executory Contracts and Unexpired
Leases ................................................................................................................... 30

G.    The Successful Bidder Should be Afforded All Protections Under Section 363(m)
as A Good Faith Purchaser ................................................................................... 32

H.    Relief from the 14-Day Waiting Period Under Bankruptcy Rules 6004(h) and
6006(d) is Appropriate .......................................................................................... 33

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

94478126\V-4

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re 995 Fifth Ave. Assocs.,*
5
    96 B.R. 24 (Bankr. S.D.N.Y. 1989) ...................................................................28

6

*In re Abbotts Dairies of Pennsylvania, Inc.,*
    788 F.2d 143 (3d Cir. 1986)............................................................................17, 21
7

*Allstate Ins. Co. v. Hughes,*
8
    174 BR. 884 (S.D.N.Y. 1994) ..........................................................................32

9

*In re America West Airlines, Inc.,*
10
    166 B.R. 908 (Bankr. D. Ariz. 1994) ...............................................................29

11

*American Living Systems v. Bonapfel (In re All Am. of Ashburn, Inc.),*
    56 B.R. 186 (Bankr. N.D. Ga. 1986) ...............................................................26
12

*In re Bon Ton Rest. & Pastry Shop, Inc.,*
13
    53 B.R. 789 (Bankr. N.D. Ill. 1985)..................................................................31

14

*In re Bygaph, Inc.,*
15
    56 B.R. 596 (Bankr. S.D.N.Y. 1986) ...........................................................25, 31

16

*Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.),*
    181 F.3d 527 (3d Cir. 1999)..............................................................................29
17

*Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.),*
18
    103 B.R. 524 (Bankr. D.N.J. 1989)...................................................................31

19

*In re Chateaugay Corp.,*
20
    1993 U.S. Dist. Lexis 6130 (S.D.N.Y. 1993) ...................................................32

21

*In re Comdisco, Inc.,*
    Case No. 01 ........................................................................................................28
22

*Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),*
23
    722 F.2d 1063 (2d Cir. 1983)............................................................................21

24

*Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.),*
    60 B.R. 612 (Bankr. S.D.N.Y. 1986) ...............................................................21
25

*In re Daufuskie Island Properties, LLC,*
26
    441 B.R. 60 (Bankr. D.S.C. 2010) .....................................................................9

27

*In re Delaware & Hudson Ry. Co.,*
28
    124 BR. 169 (D. Del. 1991)..............................................................................21

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*In re Dundee Equity Corp.*,
 1992 Bankr. LEXIS 436 (Bankr. S.D.N.Y. Mar. 6, 1992)........................................................25

*In re Fin'l News Network, Inc.*,
 126 B.R. 152 (Bankr. S.D.N.Y. 1991) ...................................................................................23

*Folger Adam Security v. DeMatteis/MacGregor JV*,
 209 F.3d 252 (3d Cir. 2000)...................................................................................................26

*In re Food Barn Stores, Inc.*,
 107 F.3d 558 (8th Cir. 1997)..................................................................................................21

*GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*,
 331 B.R. 251 (N.D. Tex. 2005)..............................................................................................22

*In re Hoffman*,
 53 B.R. 874 (Bankr. D.R.I. 1985) ..........................................................................................26

*In re Hupp Indus.*,
 140 B.R. 191 (Bankr. N.D. Ohio 1997) ............................................................................28, 29

*In re Lajijani*,
 325 B.R. 282 (9th Cir. B.A.P. 2005).......................................................................................22

*In re Leckie Smokeless Coal Co.*,
 99 F.3d 573 (4th Cir. 1996)....................................................................................................26

*MacArthur Company v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
 837 F.2d 89 (2d Cir. 1988).....................................................................................................26

*In re Marrose Corp.*,
 1992 WL 33848 (Bankr. S.D.N.Y. 1992) ...............................................................................28

*Meyers v. Martin (In re Martin)*,
 91 F.3d 389 (3d Cir. 1996).....................................................................................................21

*Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine
 Radio Co.)*,
 930 F.2d 1132 (6th Cir. 1991)................................................................................................25

*In re Natco Indus., Inc.*,
 54 B.R. 436 (Bankr. S.D.N.Y. 1985) ......................................................................................31

*In re New England Fish Co.*,
 19 B.R. 323 (Bankr. W.D. Wash. 1982) .................................................................................26

*The Ninth Avenue Remedial Group v. Allis-Chalmers Corp.*,
 195 B.R. 716 (Bankr. N.D. Ind. 1996)....................................................................................26

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

94478126\V-4

*Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*,
    78 F.3d 18 (2d Cir. 1996) ............................................................................................30

*Official Committee of Unsecured Creditors v. The LTV Corp. (In re Chateaugay
    Corp.)*,
    973 F.2d 141 (2d Cir. 1992) ........................................................................................21

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*,
    4 F.3d 1095 (2d Cir. 1993) ..........................................................................................30

*In re S.N.A. Nut Co.*,
    186 B.R. 98 (Bankr. N.D. Ill. 1995) ...........................................................................29

*In re Stein & Day, Inc.*,
    113 B.R. 157 (Bankr. S.D.N.Y. 1990) ........................................................................33

*In re Titusville Country Club*,
    128 B.R. 396 (W.D. Pa. 1991) ....................................................................................21

*In re Trans World Airlines, Inc.*,
    322 F.3d 283 (3d Cir. 2003) ........................................................................................26

*Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor
    Credit Corp.)*,
    75 B.R. 944 (Bankr. N.D. Ohio 1987) ........................................................................27

*WBO P'ship v. Virginia Dept. of Medical Assistance Servs. (In re WBO P'ship)*,
    189 B.R. 97 (Bankr. E.D. Va. 1995) ...........................................................................27

*In re WPRV-TV, Inc.*,
    143 B.R. 315 (D.P.R. 1991) ........................................................................................22

**Statutes**

United States Code, Title 11
    § 105 ..............................................................................................................................5
    § 363(b) ..................................................................................................................21, 32
    § 363(d)(1) ...................................................................................................................14

United States Code, Title 28
    § 157(b)(2) .....................................................................................................................1
    § 1334(b) ........................................................................................................................1
    §§ 1408 and 1409 ..........................................................................................................1

**Other Authorities**

Fed. R. Bankr. P. 2002 ..........................................................................................................1
Fed. R. Bankr. P. 2002(a) and (c) .......................................................................................27
Fed. R. Bankr. P. 2002 (iii) .................................................................................................16

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- iii -

1

Fed. R. Bankr. P. 2002 ...........................................................................................16, 27, 34
Fed. R. Bankr. P. 6004 .......................................................................................................1, 20
Fed. R. Bankr. P. 6006 .......................................................................................................1, 33
Fed. R. Bankr. P. 6006(d) ..................................................................................................33
Fed. R. Bankr. P. 6004(h) ..................................................................................................33
Fed. R. Bankr. P. 9007, and 9014 .......................................................................................1

LBR 9013-1............................................................................................................................34
LBR 2081-1 and 6004-1(v)...............................................................................................1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

94478126\V-4

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## MEMORANDUM OF POINTS AND AUTHORITIES

### Jurisdiction, Venue, and Predicates for Relief

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.    The statutory predicates for the relief requested herein are (i) Sections 105(a), 363, and 365 of the Bankruptcy Code; (ii) Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014; and (iii) Local Rules 2081-1 and 6004-1(v).

3.    The Debtor hereby consents to the entry of a final judgment or order in connection with this Motion if it is determined that this Court cannot—absent the consent of the parties— enter such final judgment or order consistent with Article III of the United States Constitution.

### Background

4.    On June 6, 2016 (the "Petition Date"), the Debtor filed with the Court its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned Chapter 11 case. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.    No Official Committee of Unsecured Creditors has been appointed in this case. No trustee or examiner has been appointed.

6.    A full description of the Debtor's business operations, corporate structure, capital structure, and reasons for commencing this case is set forth in the Herskovitz and Weissman Declarations, which are incorporated herein by reference. Additional facts in support of the specific relief sought herein are set forth in the Supplemental Weissman Declaration and as set forth below.

7.      The Debtor is in severe financial distress and has been losing money for several years.  The Debtor operates in a heavily regulated industry and has very tight working capital. The Debtor is currently not profitable and its liabilities vastly exceed its assets.  The Debtor has determined that the most appropriate method of ensuring proper care of its patients, serve the needs of the underprivileged communities in which it operates, all the while preserving and maximizing the value of its assets for the benefit of its creditors is to pursue a sale of certain of its assets.  After careful evaluation and further negotiation with the Debtor's Board, it was determined that the structure and financial support obtained through securing debtor in possession financing as well as the ability of the Debtor to conduct an auction in this Court and subsequently consummate a sale transaction or transactions presented the best option for the Debtor.

8.      Before filing this Chapter 11 case, the Debtor undertook an extensive marketing process to explore a sale of its assets.  As described in the Declaration of Eric Weissman, as well as the Declaration of Eric Weissman attached as an Exhibit to the Debtor's Second DIP Financing Motion [Docket No.  92], the Debtor has retained the services of an experienced investment banker, Eric Weissman, and his firm, Wilshire Pacific Capital Advisors LLC (the "Investment Banker").  Through the services of the Investment Banker the Debtor has marketed its assets  to many potential buyers, including but not limited to Rollins Nelson Grp [sic], KPC Global, Prime Healthcare Services, Avanti Hospitals LLC, Prospect Medical Holdings, Promise Healthcare, Inc., and many others.  However, because the Debtor leases rather than owns the real property on which the Debtor operates, many of the likely buyers were not interested.   Moreover, the list of potential buyers was reduced because of the financial difficulties facing the Debtor.  However, after a long process the Debtor has reached agreement with Promise Hospital of East Los Angeles, L.P. (the "Stalking Horse Bidder") to buy certain of the Debtor's assets as described below.

- 2 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

9.      In order to provide the Debtor with the liquidity needed to accomplish a sale of certain of its assets under Section 363 of the Bankruptcy Code, an affiliate of the Stalking Horse Purchaser has agreed to provide debtor in possession financing to the Debtor in an amount up to $2,000,000 (the "DIP Financing") pursuant to the terms and conditions in that certain Debtor In Possession Credit Agreement (as it may be amended from time to time, the "DIP Financing Agreement") , subject to approval of the Court.  An Order to approve Interim DIP Financing was entered on June 21, 2016 [Docket No. 122]; a hearing on final approval of the DIP Financing Agreement will be heard by the Court on July 18, 2016.

10.      The Debtor has negotiated and entered into an Asset Purchase Agreement with the Stalking Horse Purchaser, pursuant to which the Stalking Horse Purchaser will acquire certain of the Debtor's assets on the terms and conditions specified therein (together with the schedules and related documents thereto, the "Stalking Horse APA").  In connection with the Stalking Horse APA, the Stalking Horse Purchaser will submit a deposit in the amount of $250,000.00 (from amounts previously advanced to the Debtor under the DIP Financing), which deposit shall be forfeited if the Stalking Horse Purchaser breaches its obligations under the Stalking Horse APA. The assets to be purchased are set forth in detail in Section 2.1 of the Stalking Horse APA (the "Debtor's Assets").  The Debtor's Assets include, among other things, the lease rights for the main hospital building and offices in a nearby office building.  The Debtor's Assets do not include, among other things, the Debtor's accounts receivable or litigation rights, or the assumption of certain liabilities.  A true and correct copy of the Stalking Horse APA is attached hereto as Exhibit B.  A "Word" version of the Stalking Horse APA will be placed in the data room set up by Investment Banker on behalf of the Debtor for prospective bidders concurrently with the filing of this Motion.

94478126\V-4

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

11.     The sale transaction pursuant to the Stalking Horse APA is subject to competitive bidding as set forth herein, the Bidding Procedures, and the Bidding Procedures Order.  Pursuant to the terms of the Stalking Horse APA, the Stalking Horse Purchaser has agreed to purchase the Debtor's Assets, which does include the lease rights for the main hospital building and offices in nearby Medical Office Buildings (the "Assets"), but does not include accounts receivables or litigation rights, for the assumption of certain liabilities[1] and an amount equal to $1,000,000.00, subject to certain adjustments set forth in the Stalking Horse APA (the "Stalking Horse Purchase Price").   The Debtor intends to offer all its assets, including accounts receivables and litigation rights for sale at the auction, and the Stalking Horse Bid does not apply to assets other than the Assets as described in the Asset Purchase Agreement.

12.     The Stalking Horse Purchaser, in making this offer, has relied on promises by the Debtor to seek the Court's approval of a break-up fee in the amount of $50,000.00 plus repayment of the Stalking Horse Purchaser's reasonable and documented expenses (including professional fees) not to exceed $40,000.00 (the "Break-Up Fee") to compensate the Stalking Horse Purchaser for its time and effort in examining the Debtor's business, conducting due diligence, and the loss of opportunity that such time and effort has caused should another bidder be the Successful Bidder (as defined below).  The Debtor, in the exercise of its business judgment, believes that the Break-Up Fee is a necessary inducement for the Stalking Horse Purchaser, and thus, necessary to establish a "floor" for the sale of the Debtor's Assets and ultimately encourage competitive bidding and promote the realization of the highest value for the Debtor's Assets.  Any assets which are not sold will be liquidated for the benefit of creditors.

---

[1]   The Stalking Horse Bidder has agreed to pay any cure costs associated with leases and contracts it wants assumed by the Debtor and assigned to it.  The Debtor currently estimates that is approximately $200,000 in value. Additionally, the Stalking Horse Bidder has agreed to pay accrued but unpaid Paid Time Off ("PTO") of the Debtor's employees hired by the Stalking Horse Bidder as of the Closing Date

- 4 -

94478126\V-4

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

13.     The Debtor believes that the marketing and sale of the Debtor's Assets pursuant to the Bid Procedures presents the best opportunity to maximize the value of the Debtor's Assets for all interested parties.  Moreover, the Debtor believes the rapid transition to new ownership will maximize the value of the Debtor's Assets.  Any assets which are not sold will be liquidated for the benefit of creditors.

**Relief Requested[2]**

14.     First, the Debtor requests entry of the Bidding Procedures Order:  (i) approving the Bidding Procedures for (a) submitting bids for any or all of the Debtor's Assets and (b) conducting an auction (the "Auction") with respect to the Debtor's Assets in the event that the Debtor receives at least one bid in addition to that submitted by the Stalking Horse Purchaser; (ii) scheduling the Auction for **June 11, 2016 at 10:00 a.m. (prevailing Pacific Time)** at the offices of Dentons US LLP, 601 South Figueroa Street, Suite 2500, Loss Angeles, CA 90017, or at such other place, date, and time as may be designated by the Debtor; (iii) scheduling a hearing to approve the sale of the Debtor's Assets; (iv) approving procedures (the "Cure Procedures"), as set forth below, for the assumption and assignment of certain of the Debtors' executory contracts (the "Contracts") and unexpired leases (the "Leases") to any purchaser of the Debtor's Assets, and to resolve any objections thereto; and (v) approving (a) the form of notice of the Auction and Sale (the "Procedures Notice"), attached to the Bid Procedures Order as Exhibit 3, to be served on the Procedures Notice Parties (defined herein) and (b) the form of notice to parties holding Contracts and Leases likely to be assumed and assigned in connection with the sale of Debtor's Assets, in the form attached to the Bid Procedures Order as Exhibit 4 (the "Cure Notice").

15.     Second, the Debtor requests entry of the Sale Order, pursuant to Sections 105, 363, and 365 of the Bankruptcy Code:  (i) approving the sale of the Debtor's Assets to the purchaser(s)

---

[2]     For the convenience of the reader, the salient terms of the transaction as currently set forth in the Stalking Horse APA have been summarized and are attached hereto as Exhibit A.

(the "Sale"), free and clear of all liens, claims, encumbrances, and other interests, except as

provided in a Purchase Agreement (defined herein) (with all liens, claims, encumbrances and

other interests to attach to the Sale proceeds with the same validity and in the same order of

priority as they attached to the Debtor's Assets prior to the Sale), and (ii) authorizing the Debtor

to consummate the Sale and all documents, agreements, and contracts executed in conjunction

therewith.

## I.    PROPOSED BID AND SALE PROCEDURES

16.    As noted above, the Debtor seeks to complete the Sale of the Debtor's Assets, with

the Stalking Horse APA serving as the "floor" bid.  The Debtor intends to offer all its assets for

sale at the auction, and will proceed without a "floor" bid as to assets not being purchased by the

Stalking Horse Bidder.

17.    Except as otherwise provided in the Purchase Agreement (defined herein), all of

the Debtor's rights, title, and interest in all of the Debtor's assets which are sold at the auction,

shall be sold free and clear of any liens, security interests, claims, charges, or encumbrances in

accordance with Section 363 of the Bankruptcy Code.  The Debtor proposes that any such liens,

security interests, claims, charges, or encumbrances related to any assets which are sold, shall

attach to the amounts payable to the Debtor's estate resulting from the Sale, net of any transaction

fees (the "Sale Proceeds"), in the same order of priority and subject to the rights, claims,

defenses, and objections, if any, of all parties with respect thereto, subject to any further order of

the Court.

18.    In order to ensure that the Debtor receives the maximum value for the Debtor's

Assets, the Stalking Horse APA is subject to higher or better offers, and, as such, the Stalking

Horse APA will serve as the "stalking horse" bid for the Debtor's Assets.  The Bidding

Procedures allow Qualified Bidders (defined below) to bid to purchase some or all of the Debtor's

- 6 -

94478126\V-4

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Assets.  Additionally, any other assets to be sold at the auction will be sold without a stalking

horse bid.

**A.       Provisions Governing Qualifications of Bidders**

19.       Unless otherwise ordered by the Court, in order to participate in the bidding

process, prior to the Bid Deadline (defined herein), each person, other than the Stalking Horse

Purchaser, who wishes to participate in the bidding process (a "Potential Bidder") must deliver

the following to the Notice Parties (defined herein):

(a)       a written disclosure of the identity of each entity that will be bidding for the Debtor's
           Assets or otherwise participating in connection with such bid; and

(b)       an executed confidentiality agreement (to be delivered prior to the distribution of any
           confidential information by the Debtor to a Potential Bidder) in form and substance
           satisfactory to the Debtors and which shall inure to the benefit of any purchaser of the
           Debtor's Assets; without limiting the foregoing, each confidentiality agreement executed
           by a Potential Bidder shall contain standard non-solicitation provisions.

20.       A Potential Bidder that delivers the documents and information described above

and that the Debtor determines in its reasonable business judgment, after consultation with its

advisors and any official committee appointed in this case ("Official Committee"), is likely

(based on availability of financing, experience, and other considerations) to be able to

consummate the sale, will be deemed a "Qualified Bidder."  The Debtor will limit access to due

diligence to those parties it believes, in the exercise of its reasonable judgment, are pursuing the

transaction in good faith.

21.       As promptly as practicable after a Potential Bidder delivers all of the materials

required above, the Debtor will determine and will notify the Potential Bidder if such Potential

Bidder is a Qualified Bidder.

**B.       Due Diligence**

22.       The Debtor will afford any Qualified Bidder such due diligence access or

additional information as the Debtor, in consultation with their advisors, deem appropriate, in

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

their reasonable discretion.  The due diligence period shall extend through and including the

Auction date; provided, however, that any Qualified Bid (defined herein) submitted shall be

irrevocable until the selection of the Successful Bidder(s) (defined herein) and any Back-Up

Bidder(s) (defined herein).

## C.    Provisions Governing Qualified Bids

A bid submitted will be considered a Qualified Bid only if the bid is submitted by a Qualified
Bidder and complies with all of the following (a "Qualified Bid"):

a)    it states that (i) the applicable Qualified Bidder offers to purchase, in cash, some or all of
the Debtor's Assets, or, alternatively, assets which are not currently included in the
Stalking Horse Bid, and (ii) the applicable Qualified Bidder offers to pay, in cash, the full
amount of the outstanding indebtedness of the Debtor to Promise Gardens Lending
Company, Inc.  or its successors and assigns the ("Promise DIP Lender") within ten (10
days after entry of an order of the Bankruptcy Court approving such Qualified Bidder as
the Successful Bidder;

b)    it identifies with particularity the portion of the Debtor's Assets or, alternatively, assets
which are not currently included in the Stalking Horse Bid, or both, that the Qualified
Bidder is offering to purchase;

c)    it includes a signed writing that the Qualified Bidder's offer is irrevocable until the
selection of the Successful Bidder and the Back-Up Bidder, provided that if such bidder is
selected as the Successful Bidder or the Back-Up Bidder then the offer shall remain
irrevocable until the earlier of (i) the closing of the transaction with the Successful Bidder
and (ii) the date that is one hundred (100) days after entry of the Sale Order with respect
to the Successful Bidder;

d)    it includes confirmation that there are no conditions precedent to the Qualified Bidder's
ability to enter into a definitive agreement and that all necessary internal and shareholder
approvals have been obtained prior to the bid;

e)    it sets forth each regulatory and third-party approval required for the Qualified Bidder to
consummate the transaction and the time period within which the Qualified Bidder
expects to receive such approvals and establishes a substantial likelihood that the
Qualified Bidder will obtain such approvals by the stated time period;

f)    it includes a duly authorized and executed copy of a purchase or acquisition agreement in
the form of the Stalking Horse APA (a "Purchase Agreement"), including the purchase
price for some or all of the Debtor's Assets or, alternatively, assets which are not currently
included in the Stalking Horse Bid, or both, expressed in U.S. Dollars, together with all
exhibits and schedules thereto, together with copies marked ("Marked Agreement") to
show any amendments and modifications to the Stalking Horse APA and the proposed
order to approve the sale by the Court;

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

g)    it includes written evidence of a firm, irrevocable commitment for financing or other evidence of ability to consummate the proposed transaction, that will allow the Debtor to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Purchase Agreement, including evidence of availability in cash, or a binding commitment for availability in cash, of at least $2,000,000 to purchase the Debtor's Assets and replace the Promise DIP Lender;[3]

h)    if the bid is for some or all of the Debtor's Assets, it must have a value to the Debtor, in the Debtor's exercise of its reasonable business judgment, after consultation with its advisors and any Official Committee, that is greater than or equal to the sum of the value offered under the Stalking Horse APA plus the amount of the Break-Up Fee and $100,000.00 (the bidding increment)[4];

i)    if the bid is for some or all of the Debtor's Assets, it must provide for terms and conditions that are the same as or more favorable to the Debtor than those set forth in the Stalking Horse APA;

j)    it identifies with particularity which executory contracts and unexpired leases the Qualified Bidder wishes to assume;

k)    it contains sufficient information concerning the Qualified Bidder's ability to provide adequate assurance of performance with respect to assumed executory contracts and unexpired leases;

l)    it includes an acknowledgement and representation that the Qualified Bidder: (A) has had an opportunity to conduct any and all required due diligence regarding the Debtor's Assets prior to making its offer; (B) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Debtor's Assets in making its bid; (C) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Debtor's Assets or the completeness of any information provided in connection therewith or with the Auction (defined below), except as expressly stated in the Purchase Agreement; and (D) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its bid;

m)    it includes evidence, in form and substance reasonably satisfactory to the Debtor, of authorization and approval from the Qualified Bidder's board of directors (or comparable

---

[3] If the Qualified Bid is in the form of an overbid, (as opposed to a bid solely on assets not being acquired by the Stalking Horse Bidder) the overbidder must provide a signed commitment by the overbidder to provide debtor in possession financing to the Debtor, in amounts and on terms not less favorable to the Debtor than the debtor in possession financing provided to the Debtor by the Promise DIP Lender, within ten (10) days after entry of an order of the Bankruptcy Court approving such overbidder as the successful bidder.

[4] Depending on the assets being purchased, if a junior secured creditor is the successful bidder, it may need to pay off some or all of the Prepetition Secured creditors in cash: " A credit bid does not necessarily relieve a secured creditor of any need to come up with cash as part of the sale price. If the creditor has a junior lien, the creditor will be required to pay off or otherwise settle with the senior lienors in the sale." *Colliers on Bankruptcy*, ¶ 363.09[3]; *see also In re Daufuskie Island Properties, LLC*, 441 B.R. 60, 64 (Bankr. D.S.C. 2010) ("In purchasing property by credit bid under [section] 363(k), the credit bidding creditor must pay the mortgages and liens (if any) which have priority senior to its mortgage.").

- 9 -

94478126\V-4

governing body) with respect to the submission, execution, delivery and closing of the Purchase Agreement;

n)  it is accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Debtor), certified check or such other form acceptable to the Debtor, payable to the order of the Debtor (or such other party as the Debtor may determine) in an amount equal to $250,000.00, which deposit shall be forfeited if such bidder is the Successful Bidder and breaches its obligation to close, and if the overbidder is a secured creditor of the Debtor who intends to make a credit bid, evidence of the amount, priority and basis for such creditor's secured claim against the Debtor;

o)  it contains a detailed description of how the Qualified Bidder intends to treat current employees of the Debtor, if applicable;

p)  it is for cash or credit bid and not subject to any financing contingency;

q)  it contains such other information reasonably requested by the Debtor; and

r)  it is received prior to the Bid Deadline.

23.    The Debtor, in consultation with any Official Committee, may qualify any bid as a Qualified Bid that meets the foregoing requirements.  Notwithstanding the foregoing, the Stalking Horse Purchaser is deemed a Qualified Bidder and the Stalking Horse APA is deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction, and the Sale.

24.    The Debtor shall notify the Stalking Horse Purchaser and all Qualified Bidders in writing as to whether or not any bids constitute Qualified Bids (and with respect to each Qualified Bidder that submitted a bid as to whether such Qualified Bidder's bid constitutes a Qualified Bid) and provide copies of the Purchase Agreements relating to any such Qualified Bid to the Stalking Horse Purchaser and such Qualified Bidders no later than one (1) day following the expiration of the Bid Deadline.

**D.    Bid Deadline**

25.    A Qualified Bidder that desires to make a bid will deliver written copies of its bid to the following parties (collectively, the "Notice Parties"):  (i) counsel to the Debtors:  Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017 (Attn:  Samuel R. Maizel (samuel.maizel@dentons.com)) (ii) the Debtors' Investment Banker: Wilshire Pacific, 8447

- 10 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Wilshire Blvd., Suite 202, Los Angeles, CA 90211 (Attn: Eric Weissman

(eweissman@wilshirepacificadvisors.com)), (iii) counsel to the Stalking Horse Purchaser:

Buchalter Nemer P.C., 1000 Wilshire Blvd., Suite 1500, Los Angeles, CA 90017 (Attn: Mary H.

Rose (mrose@buchalter.com)), (v) the Office of the United States Trustee (the "U.S. Trustee"),

Attn: Dare Law, 915 Wilshire Blvd., Suite 1859, Los Angeles, CA 90017 (dare.law@usdoj.gov)),

and (vi) counsel to any Official Committee, so as to be received by the Notice Parties not later

than **July 8, 2016 at 4:00 p.m. (prevailing Pacific Time)** (the "Bid Deadline").

**E.      Credit Bidding**

26.      Any party with a valid, properly perfected security interest in any of the Debtor's

Assets may credit bid for the Debtor's Assets in connection with the Sale pursuant to section

363(k) of the Bankruptcy Code.

**F.      Evaluation of Competing Bids**

27.      A Qualified Bid will be valued based upon several factors including, without

limitation, (1) the amount of such bid, (2) the risks and timing associated with consummating

such bid, (3) any proposed revisions to the form of Stalking Horse APA, (4) experience operating

hospitals, (5) commitment to keep the hospital open, in whole or in part, as a "community

hospital" with an emergency room, and some short term acute care beds, (6) plans and

commitments as to retention and treatment of Debtor's employees, and (7) any other factors

deemed relevant by the Debtor in its reasonable discretion.

**G.      No Qualified Bids**

28.      If the Debtor does not receive any Qualified Bids other than the Stalking Horse

APA, the Debtor will not hold an auction and the Stalking Horse Purchaser will be named the

Successful Bidder for the Debtor's Assets.

**H.      Auction Process**

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

94478126\V-4

29.    If the Debtor receives one or more Qualified Bids in addition to the Stalking Horse

APA, the Debtor will conduct the Auction of the Debtor's Assets, as well as all other assets

included in a Qualified Bid, which shall be transcribed at **July 11, 2016 at 10:00 a.m.**

**(prevailing Pacific Time)**, at the offices of Dentons US LLP, 601 South Figueroa Street, Suite

2500, Los Angeles, CA or such other location as shall be timely communicated to all entities

entitled to attend the Auction.  The Auction shall run in accordance with the following

procedures:

a)    only the Debtor, the Stalking Horse Purchaser, Qualified Bidders who have timely submitted a Qualified Bid, the U.S. Trustee, and any Official Committee, and their respective attorneys and advisors may attend the Auction;

b)    only the Stalking Horse Purchaser and the Qualified Bidders who have timely submitted a Qualified Bid will be entitled to make any subsequent bids at the Auction;

c)    each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

d)    at least one (1) business day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtor whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bidder and the Back-Up Bidder (defined below) at the conclusion of the Auction.  At least one (1) day prior to the Auction, the Debtor will provide copies of the Qualified Bid or combination of Qualified Bids which the Debtor believes in its reasonable discretion is the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders;

e)    all Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (defined herein) at the Auction and the actual identity of each Qualified Bidder will be disclosed on the record at the Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person;

f)    the Debtor, after consultation with its advisors and any Official Committee, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules are (i) not inconsistent with the Bidding Procedures, the Bankruptcy Code, or

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 12 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

any order of the Court entered in connection herewith, and (ii) disclosed to the Stalking Horse Purchaser and each other Qualified Bidder at the Auction; and

g)    bidding at the Auction will begin with the Starting Bid and continue in bidding increments (each a "Subsequent Bid") providing a net value to the Debtors' estate of at least an additional $100,000 above the prior bid.  After the first round of bidding and between each subsequent round of bidding, the Debtor, after consultation with any Official Committee, shall announce the bid that it believes to be the highest or otherwise better offer (the "Leading Bid").  A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid.  Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids, the Debtor will give effect to the Break-Up Fee payable to the Stalking Horse Purchaser as well as any additional liabilities or Cure Amounts (defined herein) to be assumed by the Stalking Horse Purchaser or a Qualified Bidder, as applicable, and any additional costs which may be imposed on the Debtor.

**I.    Selection of Successful Bid**

30.    Prior to the conclusion of the Auction, the Debtor, in consultation with its advisors and any Official Committee, will review and evaluate each Qualified Bid in accordance with the procedures set forth herein and determine which offer or offers are the highest or otherwise best from among the Qualified Bidders submitted at the Auction (one or more such bids, collectively the "Successful Bid" and the bidder(s) making such bid, collectively, the "Successful Bidder"), and communicate to the Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bid.  The Successful Bid may consist of a single Qualified Bid or multiple bids.  The determination of the Successful Bid by the Debtor at the conclusion of the Auction shall be subject to approval by the Court.

31.    Unless otherwise agreed to by the Debtor and the Successful Bidder, within two (2) business days after the conclusion of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments, and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.  Within one (1) business day following the conclusion of the Auction, the Debtor shall file a notice identifying the Successful

- 13 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Bidder with the Court and shall serve such notice by fax, email, or overnight mail to all

counterparties whose contracts are to be assumed and assigned.

32.     The Debtor will sell the Debtor's Assets to the Successful Bidder pursuant to the

terms of the Successful Bid upon the approval of such Successful Bid by the Court at the Sale

Hearing and satisfaction of any other closing conditions set forth in the Successful Bidder's

Purchase Agreement.[5]

**J.      Return of Deposits**

33.     All deposits shall be returned to each bidder not selected by the Debtor as the

Successful Bidder or the Back-Up Bidder (defined herein) no later than ten (10) business days

following the conclusion of the Auction.

**K.      Back-Up Bidder**

34.     If an Auction is conducted, the Qualified Bidder or Qualified Bidders with the next

highest or otherwise best Qualified Bid, as determined by the Debtor in the exercise of their

business judgment, at the Auction shall be required to serve as a back-up bidder (the "Back-Up

Bidder") and keep such bid open and irrevocable until the earlier of one hundred days after the

Sale Hearing or approval of the Qualified Bidders' purchase by the California Attorney General,

if necessary.[6]  If the Successful Bidder fails to consummate the approved sale because of a breach

or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed

to be the new Successful Bidder, and the Debtor will be authorized, but not required, to

consummate the sale with the Back-Up Bidder without further order of the Court.

**L.      Break-Up Fee**

---

[5] Pursuant to the agreement between Wilshire Pacific Capital Advisors LLP ("WPCA") and the Debtor,  WPCA is entitled to a commission on the sale of assets in the greater amount of $200,000 or 2.5% of the value of the assets involved in the transaction.  *See Debtor's Application To Employ Wilshire Pacific Capital Advisors As Financial Advisors* [Docket No. 134].  This fee cannot be paid absent Court approval, but the Debtor intends to escrow the funds after payment by the successful Bidder until approval is obtained.

[6] Under certain circumstances, and depending on what assets are finally sold at the auction, approval of the transaction may be required by California Attorney General, as this sale involves assets of a not for profit entity.  *See* 11 U.S.C. § 363(d)(1).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

35.    In recognition of its expenditure of time, energy, and resources, the Debtor has agreed that if the Stalking Horse Purchaser is not the Successful Bidder as to the Debtor's Assets, the Debtor will pay the Stalking Horse Purchaser the Break-Up Fee.  The Break-Up Fee shall be payable to the Stalking Horse Purchaser at closing of the sale to the Successful Bidder of the Debtor's Assets, such Break-Up Fee to be payable from the proceeds of sale.  The Break-Up Fee will not be payable to the Stalking Horse Purchaser if the Stalking Horse Purchaser is the Successful Bidder, or with regard to any sale .

**M.    Sale Hearing**

36.    The Debtor will seek entry of the Sale Order from the Court at the Sale Hearing to begin on July 13, 2016 (or at another date and time convenient to the Court) to approve and authorize the sale transaction to the Successful Bidder(s) on terms and conditions determined in accordance with the Bidding Procedures.

**Notice of Sale Hearing**

37.    As stated above, in the Interim DIP Financing Order, the Court scheduled the Sale Hearing for July 13, 2016.  The Debtor proposes that any objections to the Sale (other than an Assumption Objection (defined herein) which shall be governed by the procedures set forth below) (a "Sale Objection"), must (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) set forth the specific basis for the Sale Objection; (iv) be filed with the Court at 255 East Temple St., (Attn: Judge E. Robles), Los Angeles, CA 90012, together with proof of service, **on or before the hearing on July 13, 2016** (the "Sale Objection Deadline") and (v) be served, so as to be actually received on or before the Sale Objection Deadline, upon the Notice Parties.  If a Sale Objection is not filed and served on or before the Sale Objection Deadline, the Debtor requests that the objecting party be barred from objecting to the Sale and not be heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.

- 15 -

38.     The Debtor also requests that the Court approve the form of the Procedures Notice,

substantially in the form of Exhibit 3 to the Bidding Procedures Order.  The Debtor will serve a

copy of the Procedures Notice on the following parties:  (i) the Notice Parties, (ii) any parties

requesting notices in this case pursuant to Bankruptcy Rule 2002, (iii) all Potential Bidders, (iv)

all parties known by the Debtors to assert a lien on any of the Debtor's Assets, (v) all persons

known or reasonably believed to have asserted an interest in any of the Debtor's Assets, (vi) all

non-Debtor parties to any contracts and leases to be assumed, (vii) the Office of the United States

Attorney for the Central District of California, (viii) the Office of the California Attorney

General, (ix) the Office of the California Secretary of State, (x) all taxing authorities having

jurisdiction over any of the Debtor's Assets, including the IRS, and (xi) all environmental

authorities having jurisdiction over any of the Debtor's Assets (collectively with the parties

specified in this paragraph, the "Procedures Notice Parties").

39.     The Debtor proposes to file with the Court and serve the Procedures Notice within

one (1) business day following entry of the Bidding Procedures Order, by first-class mail, postage

prepaid on the Procedures Notice Parties.  The Procedures Notice provides that any party that has

not received a copy of the Motion or the Bidding Procedures Order that wishes to obtain a copy

of the Motion or the Bidding Procedures Order, including all exhibits thereto, may make such a

request in writing to Dentons US LLP, Attn:  Samuel R. Maizel, 601 S. Figueroa St., Suite 2500,

Los Angeles, CA 90017 or by emailing samuel.maizel@dentons.com or calling (301) 892-2910.

40.     The Debtor submits that the foregoing notices comply fully with Bankruptcy

Rule 2002 and are reasonably calculated to provide timely and adequate notice of the Bidding

Procedures, Auction and Sale, and Sale Hearing to the Debtor's creditors and other parties in

interests as well as to those who have expressed an interest or are likely to express an interest in

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 16 -

1    bidding on the Debtor's Assets.  Based on the foregoing, the Debtor respectfully requests that this

2    Court approve these proposed notice procedures.

3    **Sale Hearing**

4        41.    At the Sale Hearing, the Debtor will seek Court approval of the Sale to the

5    Successful Bidder, free and clear of all liens, claims, interests, and encumbrances pursuant to

6    Section 363 of the Bankruptcy Code, with all liens, claims, interests, and encumbrances to attach

7    to the Sale Proceeds with the same validity and in the same order of priority as they attached to

8    the Debtor's Assets prior to the Sale, including the assumption by the Debtors and assignment to

9    the Successful Bidder of the Assumed Executory Contracts and Leases pursuant to Section 365 of

10   the Bankruptcy Code.  The Debtor will submit and present additional evidence, as necessary, at

11   the Sale Hearing demonstrating that the Sale is fair, reasonable, and in the best interest of the

12   Debtor's estate and all interested parties, and satisfies the standards necessary to approve a sale of

13   substantially all of a debtor's assets.  See, e.g., *In re Abbotts Dairies of Pennsylvania, Inc.*, 788

14   F.2d 143 (3d Cir. 1986).

15   **Procedures for the Assumption and Assignment of Assigned Contracts and Leases**

16       42.    As noted above, the Debtor will seek to assume and assign certain Contracts and

17   Leases to be identified in the Purchase Agreement(s) (collectively, the "Assumed Executory

18   Contracts").

19       43.    At least initially, the Assumed Executory Contracts will be those Contracts and

20   Leases that the Debtor believes may be assumed and assigned as part of the orderly transfer of the

21   Debtor's Assets.  The Successful Bidder(s) may choose to exclude (or to add) certain Contracts or

22   Leases to the list of Assumed Executory Contracts, subject to further notice.

23       44.    In the interim, the Debtor will file with the Court and serve the Cure Notice,

24   substantially in the form of Exhibit 4 to the Bid Procedures Order, (along with a copy of this

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 17 -

Motion) upon each counterparty to the Assumed Executory Contracts by no later than **July 6, 2016**.  The Cure Notice will state the date, time and place of the Sale Hearing as well as the date by which any objection to the assumption and assignment of Assumed Executory Contracts (including the Cure Amount (defined below)) must be filed and served.  The Cure Notice also will identify the amounts, if any, that the Debtor believes are owed to each counterparty to an Assumed Executory Contract in order to cure any defaults that exist under such contract (the "Cure Amounts").  To the extent there is a contract added to the list of contracts to be assumed by the Successful Bidder pursuant to the Successful Bidder's Purchase Agreement selected at the Auction, this Motion constitutes a separate motion to assume and assign that contract to the Successful Bidder pursuant to Section 365 of the Bankruptcy Code; each such contract will be listed in the Successful Bidder's Purchase Agreement, and will be given a separate Cure Notice filed and served by overnight delivery within five (5) business days of the conclusion of the Auction and announcement of the Successful Bidder.

45.     The inclusion of a contract, lease, or other agreement on the Cure Notice shall not constitute or be deemed a determination or admission by the Debtor and its estate or any other party in interest that such contract, lease, or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights with respect thereto shall be reserved.

46.     If a Contract or Lease is assumed and assigned pursuant to Court Order, then unless the Assumed Executory Contract counterparty properly files and serves an objection to the Cure Amount contained in the Cure Notice by the Assumption Objection Deadline (defined below), the Assumed Executory Contract counterparty will receive at the time of the Closing of the sale (or as soon as reasonably practicable thereafter), the Cure Amount as set forth in the Cure Notice, if any.  If an objection is filed by a counterparty to an Assumed Executory Contract, the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 18 -

Debtor proposes that such objection must set forth a specific default in the executory contract or

unexpired lease, claim a specific monetary amount that differs from the amount, if any, specified

by the Debtor in the Cure Notice, and set forth any reason why the counterparty believes the

executory contract or unexpired lease cannot be assumed and assigned to the Successful Bidder.

47.    If any counterparty objects for any reason to the assumption and assignment of an

Assumed Executory Contract (including to a Cure Amount) (a "Assumption Objection"), the

Debtor proposes that the counterparty must file the objection and serve it so as to be actually

received on or before the Assumption Objection Deadline (defined below), upon the Notice

Parties by no later than (i) **4:00 p.m. (prevailing Pacific Time) on July 12, 2016** or (ii) the date

otherwise specified in the Cure Notice (or, alternatively, the date set forth in the motion to assume

such Assumed Executory Contract if such contract is to be assumed and assigned after the

Auction) (the "Assumption Objection Deadline"), <u>provided</u>, <u>however</u>, as to any Successful Bidder

who is not the Stalking Horse Purchaser, any counterparty may raise at the Sale Hearing an

objection to the assumption and assignment of the Assumed Executory Contract solely with

respect to the Successful Bidder's ability to provide adequate assurance of future performance

under the Assumed Executory Contract.  After receipt of an Assumption Objection, the Debtor

will attempt to reconcile any differences in the Cure Amount or otherwise resolve the objection

with the counterparty.  In the event that the Debtor and the counterparty cannot resolve an

Assumption Objection, and the Court does not otherwise make a determination at the Sale

Hearing regarding an Assumption Objection related to a Cure Amount, the Debtor shall segregate

from the sale proceeds any disputed Cure Amounts pending the resolution of any such Cure

Amount disputes by the Court or mutual agreement of the parties.

48.    The Successful Bidder shall be responsible for satisfying any requirements

regarding adequate assurance of future performance that may be imposed under section 365(b) of

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 19 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

the Bankruptcy Code in connection with the proposed assignment of any Assumed Executory Contract, and the failure to provide adequate assurance of future performance to any counterparty to any Assumed Executory Contract (other than the Debtor's hospital lease) shall not excuse the Successful Bidder from performance of any and all of its obligations pursuant to the Successful Bidder's Purchase Agreement.  The Debtor proposes that the Court make its determinations concerning adequate assurance of future performance under the Assumed Executory Contacts pursuant to section 365(b) of the Bankruptcy Code at the Sale Hearing.  Cure Amounts disputed by any counterparty will be resolved by the Court at the Sale Hearing or such later date as may be agreed to or ordered by the Court.

49.     Except to the extent otherwise provided in the Successful Bidder's Purchase Agreement, the Debtor and the Debtor's estate shall be relieved of all liability accruing or arising after the assumption and assignment of the Assumed Executory Contracts pursuant to Section 365(k) of the Bankruptcy Code.

## II.     APPLICABLE AUTHORITY

### A.     The Sale of the Debtor's Assets is Authorized by Section 363 as a Sound Exercise of the Debtors' Business Judgment

50.     In accordance with Bankruptcy Rule 6004, sales of property rights outside the ordinary course of business may be by private sale or public auction.  The Debtor has determined that the Sale of the Debtor's Assets by public auction will enable it to obtain the highest and best offer for these assets (thereby maximizing the value of the estate) and is in the best interests of the Debtor's creditors.  In particular, the Stalking Horse APA is the result of comprehensive arms'-length negotiations for the Sale of the Debtor's Assets and the Sale pursuant to the terms of the Stalking Horse APA, subject to higher or otherwise better offers at the Auction, will provide a greater recovery for the Debtor's creditors than would be provided by any other existing

- 20 -

alternative.  The Debtor similarly has determined in its business judgment that a sale of the Assets

through a competitive, public auction is the best way to maximize the value of those assets.

51.    Section 363 of the Bankruptcy Code provides that a trustee, "after notice and a

hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate."  11 U.S.C. § 363(b).  Although section 363 of the Bankruptcy Code does not specify a

standard for determining when it is appropriate for a court to authorize the use, sale or lease of

property of the estate, a sale of a debtor's assets should be authorized if a sound business purpose

exists for doing so.  *See, e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996);

*In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (2d Cir. 1986); *In re Titusville Country

Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Ry. Co.*, 124 BR. 169, 176 (D.

Del. 1991); *see also Official Committee of Unsecured Creditors v. The LTV Corp. (In re

Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992); *Committee of Equity Sec. Holders v.

Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *Committee of Asbestos-

Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R.

612, 616 (Bankr. S.D.N.Y. 1986).

52.    The paramount goal in any proposed sale of property of the estate is to maximize

the proceeds received by the estate.  *See, e.g., In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65

(8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of

the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("It is a well-established principle of

bankruptcy law that the. . . [trustee's] duty with respect to such sales is to obtain the highest price

or greatest overall benefit possible for the estate.") (quoting *In re Atlanta Packaging Prods.*, Inc.,

99 BR. 124, 130 (Bankr. N.D. Ga. 1988)).  As long as the sale appears to enhance a debtor's

estate, court approval of a trustee's decision to sell should only be withheld if the trustee's

judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

94478126\V-4

Code. *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 255 (N.D. Tex. 2005); *In re Lajijani*, 325 B.R. 282, 289 (9th Cir. B.A.P. 2005); *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991) ("The trustee has ample discretion to administer the estate, including authority to conduct public or private sales of estate property.  Courts have much discretion on whether to approve proposed sales, but the trustee's business judgment is subject to great judicial deference.").

53.    Applying Section 363, the proposed Sale of the Debtor's Assets should be approved.  As set forth above, the Debtor has determined that the best method of maximizing the recovery of the Debtor's creditors would be through the Sale of the Debtor's Assets.  Further, the Debtor believes that the value its estate—and, thus, the Debtor's creditors—will receive for the Sale of the Debtor's Assets exceeds any value the Debtor's estate could obtain for the Debtor's Assets if the Debtor is required to liquidate its assets piecemeal.  As assurance of value, bids will be tested through the Auction consistent with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and pursuant to the Bidding Procedures approved by the Court.  Consequently, the fairness and reasonableness of the consideration to be paid by the Successful Bidder ultimately will be demonstrated by adequate "market exposure" and an open and fair auction process—the best means, under the circumstances, for establishing whether a fair and reasonable price is being paid.

54.    The Debtor believes that the timeline for the marketing and sale of the Debtor's Assets is aggressive, however, the Debtor and its professionals are making every effort under these circumstances.  In addition to the Debtor's prior efforts, the Debtor's Investment Banker has been contacting potential interested parties and has assembled a data room which is available upon the execution of an appropriate confidentiality agreement.  There is a limited universe of

- 22 -

potential acquirers of the Debtor's Assets, and the Debtor and its advisors have been in active

discussions with many of these potential purchasers.

**B.**     **The Bidding Procedures Are Appropriate and Will Maximize the Value Received for the Debtor's Assets.**

55.     As noted above, the paramount goal in any proposed sale of property of the estate

is to maximize the proceeds received by the estate.  To that end, courts uniformly recognize that

procedures intended to enhance competitive bidding are consistent with the goal of maximizing

the value received by the estate and therefore are appropriate in the context of bankruptcy sales.

*See, e.g., In re Fin'l News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-

imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison

of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

56.     Procedures to dispose of assets, similar to the proposed Bidding Procedures, have

been approved in other bankruptcy cases.

57.     The Debtor believes that the Bidding Procedures will establish the parameters

under which the value of the Debtor's Assets may be tested at an auction and through the ensuing

Sale Hearing.  Such procedures will increase the likelihood that the Debtor's creditors will

receive the greatest possible consideration for their assets because they will ensure a competitive

and fair bidding process.  They also allow the Debtor to undertake an auction in as expeditious

and efficient manner as possible, which the Debtor believes is essential to maximizing the value

of the Debtor's estate for their creditors.

58.     The Debtor also believes that the proposed Bidding Procedures will promote active

bidding from seriously interested parties and will dispel any doubt as to the best and highest offer

reasonably available for the Debtor's Assets.  In particular, the proposed Bidding Procedures will

allow the Debtor to conduct an auction in a controlled, fair, and open fashion that will encourage

participation by financially capable bidders who demonstrate the ability to close a transaction.

- 23 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   Further, the Bidding Procedures provide the Debtor with the opportunity to consider all Qualified

2   Bids and to select, in their reasonable business judgment, and after consultation with its

3   professionals and any Official Committee, the highest and best offer(s) for the Debtor's Assets.

4   Moreover, the Bidding Procedures provide the Debtor with the flexibility to modify the Bidding

5   Procedures, if necessary, to maximize value for the Debtor's estate.

6

7        59.    In sum, the Debtor believes that the Bidding Procedures will encourage bidding for

8   the Debtor's Assets and are consistent with the relevant standards governing auction proceedings

9   and bidding incentives in bankruptcy proceedings.  Accordingly, the proposed Bidding

10  Procedures are reasonable, appropriate, and within the Debtor's sound business judgment.

11  **C.    The Sale of the Debtor's Assets Free and Clear of Liens and Other Interests is
        Authorized by Section 363(f) of the Bankruptcy Code**

12

13       60.    The Debtor further submits that it is appropriate to sell the Debtor's Assets free and

14  clear of liens pursuant to section 363(f) of the Bankruptcy Code, with any such liens attaching to

15  the Sale Proceeds of the Debtor's Assets to the extent applicable.  Section 363(f) of the

16  Bankruptcy Code authorizes a trustee to sell assets free and clear of liens, claims, interests and

17  encumbrances if:

18

19       (1)    applicable nonbankruptcy law permits the sale of such property free and
               clear of such interests;

20       (2)    such entity consents;

21       (3)    such interest is a lien and the price at which such property is to be sold is
               greater than the value of all liens on such property;

22

23       (4)    such interest is in bona fide dispute; or

24       (5)    such entity could be compelled, in a legal or equitable proceeding, to
               accept a money satisfaction of such interest.  11 U.S.C. § 363(f).

25       61.    This provision is supplemented by Section 105(a) of the Bankruptcy Code, which

26  provides that "[t]he Court may issue any order, process or judgment that is necessary or

27  appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 24 -

94478126\V-4

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

62.    Because Section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Debtor's Assets "free and clear" of liens and interests.  *In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same); *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met).

63.    The Debtor believes that at least one of the tests of Section 363(f) of the Bankruptcy Code is satisfied with respect to the transfer of the Debtor's Assets pursuant to the Stalking Horse APA.  In particular, the Debtor believes that at least section 363(f)(2) will be met in connection with the transactions proposed under the Purchase Agreement because each of the parties holding liens on the Debtor's Assets will consent or, absent any objection to this motion, will be deemed to have consented to the Sale.  Any lienholder also will be adequately protected by having its liens, if any, in each instance against the Debtor or its estate, attach to the Sale Proceeds ultimately attributable to the Debtor's Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtor may possess with respect thereto. Accordingly, Section 363(f) of the Bankruptcy Code authorizes the transfer and conveyance of the Debtor's assets free and clear of any such claims, interests, liabilities, or liens.

64.    Although Section 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests," the term "any interest" is not defined anywhere in the

- 25 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  Bankruptcy Code.  *Folger Adam Security v. DeMatteis/MacGregor JV*, 209 F.3d 252, 257 (3d

2  Cir. 2000).  In the case of *In re Trans World Airlines, Inc.*, 322 F.3d 283, 288-89 (3d Cir. 2003),

3  the Third Circuit specifically addressed the scope of the term "any interest."  The Third Circuit

4  observed that while some courts have "narrowly interpreted that phrase to mean only in rem

5  interests in property," the trend in modern cases is towards "a more expansive reading of

6  'interests in property' which 'encompasses other obligations that may flow from ownership of the

7  property.'" *Id.* at 289 (citing 3 *Collier on Bankruptcy* 15th Ed. Rev., ¶ 363.06[1] (L. King, 15th

8  rev. ed. 1988)).  As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d

9  573, 581-582 (4th Cir. 1996), the scope of Section 363(f) is not limited to in rem interests.  Thus,

10  debtors "could sell their assets under § 363(f) free and clear of successor liability that otherwise

11  would have arisen under federal statute." *Folger*, 209 F.3d at 258 (citing *Leckie*, 99 F.3d at 582).

12     65.     Courts have consistently held that a buyer of a debtor's assets pursuant to a

13  Section 363 sale takes such assets free from successor liability resulting from pre-existing claims.

14  *See The Ninth Avenue Remedial Group v. Allis-Chalmers Corp.*, 195 B.R. 716, 732 (Bankr. N.D.

15  Ind. 1996) (stating that a bankruptcy court has the power to sell assets free and clear of any

16  interest that could be brought against the bankruptcy estate during the bankruptcy); *MacArthur

17  Company v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 93-94 (2d Cir.

18  1988) (channeling of claims to proceeds consistent with intent of sale free and clear under section

19  363(f) of the Bankruptcy Code); *In re New England Fish Co.*, 19 B.R. 323, 329 (Bankr. W.D.

20  Wash. 1982) (transfer of property in free and clear sale included free and clear of Title VII

21  employment discrimination and civil rights claims of debtor's employees); *In re Hoffman*,

22  53 B.R. 874, 876 (Bankr. D.R.I. 1985) (transfer of liquor license free and clear of any interest

23  permissible even though the estate had unpaid taxes); *American Living Systems v. Bonapfel (In re

24  All Am. of Ashburn, Inc.)*, 56 B.R. 186, 190 (Bankr. N.D. Ga. 1986) (product liability claims

- 26 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

based on successor doctrine precluded after sale of assets free and clear); *WBO P'ship v. Virginia Dept. of Medical Assistance Servs. (In re WBO P'ship)*, 189 B.R. 97, 104-05 (Bankr. E.D. Va. 1995) (Commonwealth of Virginia's right to recapture depreciation is an "interest" as used in section 363(f)).[7] The purpose of an order purporting to authorize the transfer of assets free and clear of all "interests" would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against the purchaser arising from the Debtor's pre-sale conduct. Under section 363(f) of the Bankruptcy Code, the purchaser is entitled to know that the Debtor's assets are not infected with latent claims that will be asserted against the purchaser after the proposed transaction is completed. Accordingly, consistent with the above-cited case law, the order approving the Sale should state that the Successful Bidder is not liable as a successor under any theory of successor liability, for claims that encumber or relate to the Debtor's Assets.

**D.      The Proposed Notice of Bidding Procedures, Auction, and Sale Is Appropriate**

66.      The Debtor believes that it will obtain the maximum recovery for creditors of the Debtor's estate if the Debtor's Assets are sold through a well-advertised sale and auction. The Debtor has already taken significant steps to identify potential purchasers.

67.      Under Bankruptcy Rules 2002(a) and (c), the Debtor is required to notify creditors of the proposed sale of the Debtor's Assets, including a disclosure of the time and place of an auction, the terms and conditions of a sale, and the deadline for filing any objections. The Debtor submits that the notice procedures herein comply fully with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the sale by auction to the Debtor's creditors and other interested parties, as well as to those parties who have expressed an interest, or

---

[7]      Some courts, concluding that Section 363(f) of the Bankruptcy Code does not empower them to convey assets free and clear of claims, have nevertheless found that Section 105(a) of the Bankruptcy Code provides such authority. *See, e.g., Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) (stating that the absence of specific authority to sell assets free and clear of claims poses no impediment to such a sale, as such authority is implicit in the court's equitable powers when necessary to carry out the provisions of title 11).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

may express an interest, in bidding on the Debtor's Assets. The proposed time frame between the filing of this Motion, the commencement of the bidding process and the Auction will provide interested purchasers sufficient time to participate in the Auction.

**E.    The Break-Up Fee is Appropriate Under the Circumstances**

68.    The Debtor submits that the Break-Up Fee is a normal and oftentimes necessary component of sales outside the ordinary course of business under Section 363 of the Bankruptcy Code. In particular, such a protection encourages a potential purchaser to invest the requisite time, money, and effort to conduct due diligence and sale negotiations with a debtor despite the inherent risks and uncertainties of the chapter 11 process. *See, e.g., In re Comdisco, Inc.*, Case No. 01 24795 (RB) (Bankr. N.D. Ill. Aug. 9, 2002) (approving a termination fee as, *inter alia*, an actual and necessary cost and expense of preserving the debtor's estate, of substantial benefit to the debtor's estate and a necessary inducement for, and a condition to, the proposed purchaser's entry into the purchase agreement); *Integrated Resources*, 147 B.R. at 660 (noting that fees may be legitimately necessary to convince a "white knight" to offer an initial bid by providing some form of compensation for the expenses such bidder incurs and the risks such bidder faces by having its offer held open, subject to higher and better offers); *In re Hupp Indus.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1997) (without any reimbursement, "bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around for a higher bid from another bidder who would capitalize on the initial bidder's. . . due diligence"); *In re Marrose Corp.*, 1992 WL 33848, at *5 (Bankr. S.D.N.Y. 1992) (stating that "agreements to provide reimbursement of fees and expenses are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers"); *In re 995 Fifth Ave. Assocs.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (finding that bidding incentives may be "legitimately necessary to

1    convince a white knight to enter the bidding by providing some form of compensation for the

2    risks it is undertaking") (citations omitted).

3        69.    A proposed bidding incentive, such as the Break-Up Fee, should be approved

4    when it is in the best interests of the estate.  *See In re S.N.A. Nut Co.*, 186 B.R. 98, 104 (Bankr.

5    N.D. Ill. 1995); *see also In re America West Airlines, Inc.*, 166 B.R. 908 (Bankr. D. Ariz. 1994);

6    *In re Hupp Indus., Inc.*, 140 B.R. 191 (Bankr. N.D. Ohio 1992).  Typically, this requires that the

7    bidding incentive provide some benefit to the debtor's estate.  *Calpine Corp. v. O'Brien Envtl.*

8    *Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 533 (3d Cir. 1999) (holding even

9    though bidding incentives are measured against a business judgment standard in non-bankruptcy

10    transactions the administrative expense provisions of Bankruptcy Code section 503(b) govern in

11    the bankruptcy context).

12

13        70.    In *O'Brien Environmental Energy*, the Third Circuit found that whether break-up

14    fees and expenses could be paid to Calpine Corp. as a "stalking horse" depended on whether such

15    fees were necessary to preserve the value of the estate.  *See* 181 F.3d at 536.  The court

16    determined that Calpine's right to break up fees and expenses depended on whether it provided a

17    benefit to the debtor's estate by promoting competitive bidding or researching the value of the

18    assets at issue to increase the likelihood that the selling price reflected the true value of the

19    company.  *Id.* at 537.  The Debtor believes that approval of the Break-Up Fee will create such a

20    competitive bidding process.

21

22        71.    The Debtor believes that the proposed Break-Up Fee is fair and reasonably

23    compensates the Stalking Horse Purchaser for taking actions that will benefit the Debtor's estate.

24    The Break-Up Fee compensates the Stalking Horse Purchaser for diligence and professional fees

25    incurred in negotiating the terms of the Stalking Horse APA on an expedited timeline.

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

94478126\V-4

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

72.     The Debtor does not believe that the Break-Up Fee will have a chilling effect on the sale process.  Rather, the Stalking Horse Purchaser will increase the likelihood that the best possible price for the Debtor's Assets will be received, by permitting other qualified bidders to rely on the diligence performed by the Stalking Horse Purchaser, and moreover, by allowing qualified bidders to utilize the Stalking Horse APA as a platform for negotiations and modifications in the context of a competitive bidding process.

73.     Finally, the Break-Up Fee will be paid only if, among other things, the Debtor enters into a transaction for the Debtor's Assets with a bidder other than the Stalking Horse Purchaser.  Accordingly, no Break-Up Fee will be paid unless a higher and better offer is achieved and consummated.

74.     In sum, the Break-Up Fee is reasonable under the circumstances and will enable the Debtor to maximize the value for the Debtor's Assets while limiting any chilling effect in the sale process.

**F.     Assumption and Assignment of Certain Executory Contracts and Unexpired Leases**

75.     Section 365(a) of the Bankruptcy Code provides that, subject to the court's approval, a trustee "may assume or reject any executory contracts or unexpired leases of the debtor." 11 U.S.C. § 365(a).  Upon finding that a trustee has exercised its sound business judgment in determining to assume an executory contract or unexpired lease, courts will approve the assumption under section 365(a) of the Bankruptcy Code.  *See Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996); *see also Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993).

76.     Pursuant to section 365(f)(2) of the Bankruptcy Code, a trustee may assign an executory contract or unexpired lease of nonresidential real property if:

> (A)     the trustee assumes such contract or lease in accordance with the provisions of this section; and

- 30 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1

2

(B)    adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

3

11 U.S.C. § 365(f)(2).

4

5

6

7

8

9

10

11

12

13

77.    The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").

14

15

16

17

18

19

78.    Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *In re Bygaph, Inc.*, 56 B.R. 596, 605-6 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease has financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding; chief determinant of adequate assurance is whether rent will be paid).

20

21

22

23

24

25

26

79.    The Debtor and the Successful Bidder will present evidence at the Sale Hearing to prove the financial credibility, willingness, and ability of the Successful Bidder to perform under the Contracts or Leases.  The Court and other interested parties therefore will have the opportunity to evaluate the ability of any Successful Bidder to provide adequate assurance of future performance under the Contracts or Leases, as required by section 365(b)(1)(C) of the Bankruptcy Code.

27

28

80. In addition, the Debtor submits that the cure procedures set forth herein are appropriate, reasonably calculated to provide notice to any affected party, and afford the affected party to opportunity to exercise any rights affected by the Motion, and consistent with Section 365 of the Bankruptcy Code.  To the extent that any defaults exist under any Assumed Executory Contracts, any such defaults will be cured pursuant to the Successful Bidder's Purchase Agreement.  Except as otherwise limited by Section 365 of the Bankruptcy Code, any provision in the Assumed Executory Contracts that would restrict, condition, or prohibit an assignment of such contracts will be deemed unenforceable pursuant to Section 365(f)(1) of the Bankruptcy Code.

81. Accordingly, the Debtor submits that the cure procedures for effectuating the assumption and assignment of the Assumed Executory Contracts as set forth herein are appropriate and should be approved.

**G.     The Successful Bidder Should be Afforded All Protections Under Section 363(m) as A Good Faith Purchaser**

82. Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from the debtor's estate notwithstanding that the sale conducted under section 363(b) is later reversed or modified on appeal.  Specifically, Section 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale were stayed pending appeal.

11 U.S.C. § 363(m).  Section 363(m) "fosters the 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" *In re Chateaugay Corp.*, 1993 U.S. Dist. Lexis 6130, *9 (S.D.N.Y. 1993) (quoting *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)); *see Allstate Ins. Co. v. Hughes*, 174 BR. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 32 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

that good faith transfers of property will not be affected by the reversal or modification on appeal

of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re*

*Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m),

good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay

pending appeal").

83.     The selection of the Successful Bidder will be the product of arms'-length, good-

faith negotiations in an anticipated competitive purchasing process.  The Debtor intends to

request at the Sale Hearing a finding that the Successful Bidder is a good faith purchaser entitled

to the protections of section 363(m) of the Bankruptcy Code.

**H.     Relief from the 14-Day Waiting Period Under Bankruptcy Rules 6004(h) and 6006(d) is Appropriate**

84.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease

of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court

orders otherwise."  Similarly, Bankruptcy Rule 6006(d) provides that an "order authorizing the

trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14

days after the entry of the order, unless the court orders otherwise."  The Debtor requests that the

Order be effective immediately by providing that the 14-day stays under Bankruptcy Rules

6004(h) and 6006(d) are waived.

85.     The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient

time for an objecting party to appeal before an order can be implemented.  *See* Advisory

Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).  Although Bankruptcy Rules 6004(h)

and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order

otherwise" and eliminate or reduce the 14-day stay period, *Collier* suggests that the 14-day stay

period should be eliminated to allow a sale or other transaction to close immediately "where there

has been no objection to the procedure."  *Collier on Bankruptcy* P 6004.11 (Alan N. Resnick &

1   Henry J. Sommer eds., 16th ed.).  Furthermore, *Collier* provides that if an objection is filed and

2   overruled, and the objecting party informs the court of its intent to appeal, the stay may be

3   reduced to the amount of time actually necessary to file such appeal.  *Id.*

4           86.     The Debtor hereby requests that the Court waive the 14-day stay periods under

5   Bankruptcy Rules 6004(h) and 6006(d) or, in the alternative, if an objection to the Sale is filed,

6   reduce the stay period to the minimum amount of time needed by the objecting party to file its

7   appeal.

8   **Notice**

9           87.     The Debtor will provide notice of this Motion to:  (a) the Notice Parties; (b) the

10  United States Attorney's Office for the Central District of California; (c) the Internal Revenue

11  Service; (d) the Securities and Exchange Commission; (e) the Procedures Notice Parties; (f) any

12  party that has requested notice pursuant to Bankruptcy Rule 2002; (g) the California Attorney

13  General and (h) any such other party entitled to notice pursuant to Local Bankruptcy Rule 9013-1.

14  The Debtors submit that, in light of the nature of the relief requested, no other or further notice

15  need be given.

16          WHEREFORE, the Debtor respectfully requests that the Court enter orders substantially

17  in the proposed forms attached hereto as **Exhibit C** and **Exhibit D**:  (i) granting the relief

18  requested herein; and (ii) granting to the Debtor such other and further relief as the Court may

19  deem proper.

Dated:  July 1, 2016                          DENTONS US LLP
                                              SAMUEL R. MAIZEL
                                              JOHN A. MOE, II

                                              By:  ____/s/ Samuel R. Maizel____
                                                    SAMUEL R. MAIZEL

                                              Attorneys for  Gardens Regional Hospital and
                                              Medical Center, Inc.

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

- 34 -