# SUPPLEMENTAL DECLARATION OF ERIC WEISSMAN

I, Eric J. Weissman, declare under penalty of perjury as follows:

1. I am the President of Wilshire Pacific Capital Advisors, LLC ("WPCA"), with its office located at 8447 Wilshire Boulevard, Suite 202, Beverly Hills, California 90211. I am over the age of 18 and competent to testify as to the facts set forth herein and will do so if called upon.

2. Except as otherwise stated, all facts contained within this Declaration are based upon personal knowledge, from information gathered from other employees within the Debtor's organization, my review of relevant documents, or my opinion based upon my experience concerning the operations of the Debtor. If called upon to testify, I would testify to the facts set forth in this Declaration.

3. I submit this Declaration in support of the *MOTION OF THE DEBTOR AND DEBTOR IN POSSESSION PURSUANT TO SECTIONS 105(a), 363, AND 365 OF THE BANKRUPTCY CODE FOR AN ORDER (I)(A) APPROVING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; (B) SCHEDULING THE RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE; (C) APPROVING PROCEDURES RELATED TO THE ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; (E) APPROVING BREAK-UP FEE; AND (F) GRANTING RELATED RELIEF; AND (II)(A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF* (the "Motion"). All capitalized terms not defined herein have the meaning ascribed to them in the Motion.

4. As previously described in declarations from me submitted in this case, I have extensively marketed the Debtor's assets for months. I have contacted more than a dozen entities which, based on my experience, would have an interest in acquiring the Debtor's assets, as well as

1

having the financial wherewithal to close such a transaction. Although many entities initially expressed an interest in the assets, that the Debtor merely leased the hospital facilities discouraged many potential bidders. Moreover, the pending litigation against the Debtor, which included Qui Tam litigation alleged health care fraud and the City Attorneys' lawsuit alleging patient dumping (all of which the Debtor strongly denies have any merit) discouraged many potential bidders, particularly any which wanted to acquire the assets outside of a bankruptcy filing, for fear of successor liability. The transaction proposed by the Stalking Horse Bidder is the best offer available to the Debtor under the circumstances, and fulfills the Debtor's primary objective of keeping the hospital open for the community it serves, as well as keeping its employees' jobs.

5. In my experience, any entity entering into a bankruptcy auction as a stalking horse bidder will demand a break - up fee, and this Stalking Horse Bidder is no exception. It required a break-up fee to serve as the Stalking Horse Bidder, and I believe that the fee is likely to enhance the ultimate sale price because it ensures a floor price for the Debtor's assets, as well as encourages other bidders to participate in the auction, if for no other reason than the Stalking Horse Bidder is a highly respected owner and operator of Long Term Hospitals, and that it would serve as the Stalking Horse Bidder sends a positive message to the market about the Debtor's assets.

6. I believe that the break-up fee is reasonable under the circumstances. The Stalking Horse Bidder is offering DIP financing in an amount of up to $2 million to allow the Debtor to remain in operation while trying to dispose of its assets. The Stalking Horse Bidder has already provided $500,000 in DIP financing to this end. Further, the Stalking Hose Bidder has agreed to pay $1 million for the leases it is acquiring and approximately another $200,000 in cure costs related to the leases and contracts it wants the Debtor to assume and assign to it. Using the proposed break up fee of $50,000 and the minimum value to the estate of approximately $1.2 million, I calculate the break up fee as approximately 4% of the value of the transaction, which is reasonable. Even if one includes the attorneys' fees of up to $40,000, the break up fee is only 7.5% of the value of the transaction.

94478126

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of July, 2016 at Los Angeles, California.

_____
Eric Weissman

- 3 -

94478126