SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
JOHN A. MOE, II (Bar No. 066893)
john.moe@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone:    (213) 623-9300
Facsimile:    (213) 623-9924

Attorneys for Debtor,
GARDENS REGIONAL HOSPITAL
AND MEDICAL CENTER, INC.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:16-bk-17463-ER |
| GARDENS REGIONAL HOSPITAL AND MEDICAL CENTER, INC., dba GARDENS REGIONAL HOSPITAL AND MEDICAL CENTER, | Chapter 11 |
| | [Voluntary Petition Filed: June 6, 2016] |
| Debtor. | **DECLARATION OF ERIC WEISSMAN IN SUPPORT OF DEBTOR'S MEMORANDUM ON RESULTS OF THE AUCTION AND IN SUPPORT OF ENTRY OF SALE ORDER AND ADDITIONAL BRIEFING ON NEED FOR CONTINUED DIP FINANCING** |
| | Hearing:<br>Date:    July 26, 2016<br>Time:    10:00 a.m.<br>Place:    Courtroom 1568 |
| | [Relates to Docket Nos. 142, 153, 164, 189] |
| | Judge:    Hon. Ernest M. Robles |

100437637\V-1

## DECLARATION OF ERIC WEISSMAN

I, Eric Weissman, declare:

1. I am President of Wilshire Pacific Capital Advisors, LLC ("WPCA"), located at 8447 Wilshire Boulevard, Suite 202, Beverly Hills, California 90211. WPCA was formerly known as London & Pacific Capital Advisors, and it has been in operation since May 2006. In this capacity I have advised numerous hospitals, health plans, healthcare IT companies, physician groups, medical service organizations, surgery centers, skilled nursing facilities, clinics and other entities in the healthcare industry on financing, raising capital, and restructuring debts. Previously, I served as a Senior Associate for Mergers & Acquisitions for Huntington Securities LLC, as a Partner for Mergers & Acquisitions for Phoenix Group LLP, and an Associate for Tax Mergers and Acquisitions for PricewaterhouseCoopers. All together, I have been advising healthcare entities on issues broadly related to mergers and acquisitions and financing for more than 17 years. I have a J.D. from William and Mary School of Law (1999), and an A.B. from the Department of Economics at Princeton University (1996). I have FINRA Series 7, Series 24, Series 63, Series 79 licenses, and I am an associate member of the Virginia State Bar.

2. I have marketed the Hospital extensively, since 2015, in order to obtain bidders for the hospital's assets, and more recently to obtain bidders for the auction. Those actions included creating a virtual data room with information for prospective bidders, contacting more than two dozen prospective bidders, including the entities that participated in the auction, as well as other potential buyers including but not limited to Alecto Healthcare, Prime Healthcare Management, Imperial Holdings Group, Premier Healthcare Group, Naerok Group International, SAK Management Services, ER Hospitals, Community Healthcare Partners, Skilled Nursing Group, Perotoneal Dialysis Centers of America and CHA Health Systems. Because the Debtor did not own the real estate and that it was a defendant in numerous cases, it was difficult to get prospective buyers interested in the assets.

3. After the Bankruptcy Case was commenced, I contacted, again, more than a dozen potential buyers. On behalf of the Debtor I entered into non-disclosure agreements with 14

- 2 -

100437637\V-1

potential buyers.  As a result, four bidders ultimately attended the auction and bid on the bulk of the Debtor's assets.

4. As required opening bids and a $250,000 deposit were due on or before 4:00 p.m. on Friday, July 8, 2016.  Three parties submitted opening bids and the required Good Faith Deposit, including the Stalking Horse Bidder, Promise Healthcare of East Los Angeles ("Promise"), Harbor Gardens Capital I, LLC ("Harbor"), and Strategic Global Management, Inc. ("Strategic").

5. On Tuesday afternoon, July 12, 2016, a fourth bidder, Le Summit Healthcare, LLC ("Le Summit"), submitted an opening bid and early in the morning of July 13, 2016, Le Summit provided a cashier's check for the Good Faith Deposit.  The Debtor, its counsel and I considered whether to permit Le Summit to participate in the auction (including consultation with counsel for the Official Committee of Unsecured Creditors (the "Committee")), because its bid arrived after the July 8th deadline.  Based on a review of information submitted by Le Summit, I concluded that other than being late, they were a qualified bidder, and I so advised the Debtor.  Given the importance of maximizing recovery for the benefit of creditors, among other factors, the Debtor made the decision to permit Le Summit to attend the auction and bid.

6. The auction commenced at 10:00 a.m., on Wednesday, July 13, 2016.  The Debtor, its counsel and I met extensively with representatives of the four bidders to ensure the Debtor understood the bids, and that the bidders understood what they were bidding on and how those bids would be evaluated by the Debtor.

7. The auction continued on Thursday, July 14, 2016, with five rounds of bidding.  In the fourth round, Promise passed and, shortly thereafter the bid team left the auction site.  A fifth round of bidding then proceeded with the remaining three bidders.

8. On Friday, July 14th, I received a telephone call from representatives of Promise who informed me that it wished to reenter the bidding process.  I am informed and believe that representatives of Promise also called counsel for the Debtor and Brian Walton, the Chairman of the Board of Directors.  After careful consideration of Promise's request, including telephonic discussions with representatives of Promise, and an in-person meeting with counsel for Promise

- 3 -

1    in the morning of July 18th and consultation with counsel for the Committee, the Debtor decided
2    not to permit Promise to re-enter the bidding.

3    9.    The auction continued on July 18th and July 19, 2016.  In the evening of July 19th,
4    Harbor passed and in a subsequent round Le Summit passed, leaving Strategic as the winning
5    bidder and Le Summit as the Back Up Bidder.

6    10.    I was physically present during all the auction proceedings, and provided "real
7    time" analysis to the Debtor, its counsel, and all prospective bidders of the value of bids as they
8    were announced by the bidders.  Additionally, a member of the Debtor's Board of Directors was
9    present at all times during the auction, and the Chairman of the Debtor's Board of Directors and
10   the Debtor's CEO were also present during most of the auction.

11   11.    After the conclusion of the auction of substantially all the assets, the auction
12   addressed an asset purchase agreement submitted by a potential buyer, Roxbury Healthcare
13   Services, LLC and Sycamore Healthcare Services, LLC, but only as to buying potential causes of
14   action owned by the Debtor against those two entities and several related entities.   This bidder
15   sought only to purchase the Debtor's claims and causes of action against the following parties:
16   Roxbury Healthcare Services, LLC; Sycamore Healthcare Services, LLC; S&W Health
17   Management, Inc., Selvin & Weiner apc [sic]; Beryl Weiner and all of the respective officers,
18   directors, members, agents, employees, contractors and managers.  After the Committee's counsel
19   raised a strong objection to the sale of these assets, the Debtor concluded that it would not sell
20   these assets or other similar assets at the auction.  Similar assets of the Debtor include claims and
21   causes of action against Harbor-Gardens Capital I, LLC, Paladin Healthcare Capital, PGM, LLC,
22   Joel Freedman, and RollinsNelson Grp, Inc., and all of their respective officers, directors,
23   members, agents, employees, contractors and managers, as well as any claims or causes of action
24   against current or former officers and directors or any insurance related to those claims or causes
25   of action.   Thus, those assets remain unaffected by the auction.

26   12.    The high bid, and therefore the winning bid, provided by Strategic, included the
27   following components: (i) stepping into the position of Promise as the existing DIP Lender and
28   offering up to $2.5 million in DIP funding to the Debtor (to be forgiven at closing) (Additionally,

- 4 -

100437637\V-1

the Debtor and all bidders still bidding agreed that if the Court denied the Debtor's request to increase the DIP Loan maximum amount from its current $2 million to the offered $2.5 million, the amount would be forgiven from the bid.); (ii) payment of approximately $8 million in cash at closing, which, among other things, provides sufficient funds to pay all Prepetition Secured Creditors who claim to have a security interest in the accounts receivable in full at closing, as well as to cure all payments required with regard to various leases, pay a cure amount to the United States and the State of California to facilitate the transfer of the Debtor's Medicare and Medi-Cal Provider Agreements and to pay any obligations of the Debtor with regard to Paid Time Off to its employees (Strategic can, if it hires a former employee of the Debtor simply assume the Debtor's liability for unpaid PTO, or, if it does not hire the former employee, will pay off the employee's PTO, subject to cap of $540,000.); (iii) providing the estate with five promissory notes in the amount of $1 million each, payable on December 31, 2018, 2019, 2020, 2021, and 2022 respectively (These promissory notes are to be secured by the assets of the new hospital operator, but can be subject to subordination for payment to any operating line of credit in the ordinary course of business.); (iv) paying to the Estate up to $4 million of collections on the first $7 million of accounts receivables which exist on the closing date and are being purchased by Strategic; and (v) paying all the "cure" costs associated with any executory contracts which Strategic designates to have assumed by the Debtor and assigned to it.

13. With regard to the collection of accounts receivables, all bidders and the Debtor agreed that the successful buyer would be able to charge 6% collection costs, and the payments to the Estate would be "net" of those costs. The Winning Bid provided explicitly that Strategic would receive the first $2 million of collections; that the Estate would then be paid the next $500,000 of collections; that Strategic would receive the next $500,000 of collections; then the Estate would be paid the next $2.5 million of collections; then Strategic would keep the next $500,000 of collections, the Estate would be paid the next $1 million of collections; and, finally, that Strategic would then keep all collections from the accounts receivables over $7,000,000.

14. Additionally, Strategic agreed to many non-monetary factors in its winning bid, including: (i) agreeing not to purchase certain causes of action the sale of which the Committee

- 5 -

100437637\V-1

had opposed; (ii) keeping the hospital in operation, including keeping an Emergency Department operational; (iii) retaining more than 50% of the Debtor's employees; (iv) to maintain the existing collective bargaining agreement; and (v) confirming that it did not require additional consents from third parties to close the transaction, other than government regulatory authorities.

15. The net value to the Estate of this bid is at least $19.5 million, plus the cost of any additional executory contracts that Strategic elects to cure.

16. The assets included to be purchased by Strategic, and those assets excluded from the sale, are shown on Exhibit A to the Memorandum filed by the Debtor regarding the results of the auction.

17. I am informed and believe that California law requires a nonprofit corporation, like the Debtor, to submit a written notice to the California Attorney General and to obtain a written consent of the Attorney General prior to entering into any agreement or transaction to transfer a material amount of the corporation's assets, or where there is a transfer of control over a material amount of the corporation's assets.

18. I am informed and believe that California law provides the Attorney General with up to 60 days to evaluate the notice of transaction, during which time the Attorney General usually conducts a public hearing and retains an expert to do an evaluation of the transaction. The Attorney General can extend this for one additional 45-day period. While, given my experience in such transactions and my knowledge of the successful bidders other operations in California, I would not expect significant difficulties in obtaining Attorney General approval for this buyer under these circumstances. However, this requirement does mean that it is very unlikely that the sale can close in less than 60 days, and may take as much as 105 days.

19. The second highest bid was from Le Summit, which becomes the Back Up Bidder pursuant to the Bid Procedures Order. Le Summit's bid differed from Strategic's bid in that Le Summit offered only $2,325,000 in additional DIP financing, provided approximately $7 million at closing in cash, and offered, with regard to the collection of accounts receivables, a total of $5,525,000 of the first $7 million to be collected to be paid to the Estate. Additionally, the Le Summit bid provided that the hospital would remain in the ownership of a not-for-profit entity.

20. With regard to the accounts receivable, the Le Summit Bid provided explicitly that Le Summit would receive the first $1 million of collections; that the Estate would then be paid the next $525,000 of collections, that Le Summit would receive the next $475,000 of collections, then the Estate would be paid the next 5 million of collections, then Le Summit would then keep all collections from the accounts receivables over $7,000,000.

21. Through the course of the auction, I consistently, and in "real time" evaluated each bid, as the bids were made, and considered, all bids, in each round, following each round of bidding. I created a matrix to allow the competing bids to be compared to each other and copies were distributed to all bidders after each round. Additionally, I was entering the bids into a spreadsheet which was displayed on a screen in the conference room so that all could see my entries and calculations.

22. In the matrix I created, there were be discounts for the value of payments to be made in the future pursuant to the promissory notes, to reflect both the time value of money and the risk of non-payment. Additionally, with regard to the collections of accounts receivables, the matrix provided that the value attributed to offers to pay over collections to the Estate on accounts receivables over $4 million would be discounted at varying levels to reflect the prospective risk of non-collection.

23. In addition to the monetary components, the matrix considered and provided a value to certain non-monetary issues in determining the winning and back up bids. These factors included bidders (i) agreeing to maintain the function of the hospital as a short-term, acute care hospital with an Emergency Department, (ii) not requiring the Debtor to sell certain causes of action to which the Committee had expressed an objection to their sale at this time, (iii) retaining more than 50% of the Debtor's employees, (iv) not requiring the Debtor to reject its collective bargaining agreement, and (v) attesting that, other than governmental approvals, such as from the California Attorney General, no consents were required to close the transaction. All the bidders could see both these factors on the matrix, and the value attributed to those factors by the Debtor in evaluating bids.

- 7 -

100437637\V-1

24. The successful bidder has agreed to pay $221,000 on the Debtor's leases of real property, an amount the Landlord's attorney has confirmed is the amount due, and to separately pay up to $283,000 to cure any existing defaults with regard to the assumption and assignment of the Debtor's Medicare and Medi-Cal Provider Agreements.

25. The successful bidder also has agreed to pay the cure costs of any contracts and non-real estate leases that are assumed. However, beyond the leases of real property, which will be assumed, assigned and cured, the successful bidder has not had sufficient time in the less than 24 hours since the auction concluded to determine which of approximately 296 executory contracts and unexpired non-real estate leases should be assumed and assigned.

26. Accordingly, I am informed and believe that the Debtor has not sent out a Notice on which executory contracts and unexpired non-real estate leases will be assigned and assumed, and the cure amount for each. Based on my experience with such transactions, I believe that two weeks is a reasonable time to allow Strategic to review and designate the contracts and non-real estate leases to be assumed and assigned to it.

27. The Debtor has conducted a successful sale, that will pay off in full the secured creditors, bring current the past due real estate lease payments, create a substantial fund for unsecured creditors, pay administrative claims, and provide up to $2,500,000 in replacement Debtor In Possession Financing. The Replacement DIP Financing will not only take out the current DIP lender, the replacement DIP is critical to the Debtor's consummation of the sale, because the sale must be approved by the California Attorney General before the sale can be completed. It will take an estimated 75 days to obtain that approval.

28. The budget attached hereto as Exhibit A, sets forth the Debtor's need for cash to keep the Hospital operating, while it seeks the approval of the sale from the Attorney General. Without the DIP Financing, it may not have sufficient liquidity to remain in operation until the successful bidder obtains approval to take over the operation of the Hospital.

29. The Debtor has already borrowed, through the DIP Loan with a Promise related entity, $500,000; the modified DIP Loan and Credit Agreement, which will be filed prior to the hearing, seeks approval of the additional $1,500,000 (or $2,000,000 if approved by this Court), to

- 8 -

100437637\V-1

be issued in tranches of $1,000,000 (which includes repayment of the $500,000 from the prior DIP Lender and an additional $500,000 to be borrowed), then two or three $500,000 tranches. Strategic (the successful Bidder), will be given the same liens as Promise had. The Secured Creditors, who will be paid in full at closing, will get replacement liens in postpetition accounts receivable (just as they were given in connection with the DIP Financing provided by Promise) until the Debtor can close the sale, after which they will be paid in full from the sale proceeds. The situation today, after the auction, is far better financially, than the situation before the auction.

30. The Debtor should be permitted to obtain the replacement DIP Financing, re-paying Promise its $500,000 DIP Loan, and draw down an additional $500,000 to keep the Hospital operating under the same terms and conditions under which Promise provided DIP Financing.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 21st day of July, 2016, at Beverly Hills, California.

_/s/ E. J. Weissman_
ERIC WEISSMAN

100437637\V-1

# EXHIBIT A

**GARDENS REGIONAL HOSPITAL & MEDICAL CENTER**
**16-Week Cash Flow Model**
As of July 17, 2016

| Week Ending | Actual 7/17/2016 Week 1 | Budget 7/24/2016 Week 2 | Budget 7/31/2016 Week 3 | Budget 8/7/2016 Week 4 | Budget 8/14/2016 Week 5 | Budget 8/21/2016 Week 6 | Budget 8/28/2016 Week 7 | Budget 9/4/2016 Week 8 | Budget 9/11/2016 Week 9 | Budget 9/18/2016 Week 10 | Budget 9/25/2016 Week 11 | Budget 10/2/2016 Week 12 | Budget 10/9/2016 Week 13 | Budget 10/16/2016 Week 14 | Budget 10/23/2016 Week 15 | Budget 10/30/2016 Week 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Net Collections | 419,240 | 444,438 | 444,438 | 475,424 | 498,545 | 523,545 | 548,545 | 548,545 | 548,545 | 573,545 | 573,545 | 573,545 | 573,545 | 573,545 | 573,545 | 573,545 |
| DIP Loan Draws | - | - | 1,000,000 | - | - | - | 500,000 | - | 500,000 | - | - | - | 250,000 | - | - | - |
| **TOTAL CASH INFLOWS** | 419,240 | 444,438 | 1,444,438 | 475,424 | 498,545 | 523,545 | 1,048,545 | 548,545 | 1,048,545 | 573,545 | 573,545 | 573,545 | 823,545 | 573,545 | 573,545 | 573,545 |
| Salaries and Wages | 619,455 | 26,905 | 627,141 | - | 625,000 | - | 625,000 | - | 625,000 | - | 625,000 | - | 625,000 | - | 625,000 | - |
| Contract Labor-Registry | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Employee Benefits | - | - | - | 117,000 | 30,000 | - | - | 117,000 | 30,000 | - | 117,000 | 16,000 | 30,000 | 16,000 | 117,000 | 16,000 |
| Implant Supplies | 8,500 | 5,000 | 5,000 | 4,000 | 5,000 | 5,000 | 5,000 | 4,000 | 5,000 | 5,000 | 5,000 | 4,000 | 5,000 | 5,000 | 5,000 | 4,000 |
| Medical Supplies | 120,249 | 85,335 | 35,000 | 35,000 | 31,000 | 67,000 | 31,000 | 31,000 | 26,800 | 58,800 | 26,800 | 26,800 | 26,800 | 58,800 | 26,800 | 26,800 |
| Professional Fees | - | 10,562 | 10,562 | 10,562 | 10,562 | 14,562 | 12,062 | 10,562 | 15,262 | 10,562 | 12,062 | 10,562 | 10,562 | 14,562 | 12,062 | 10,562 |
| Professional Fees:Legal | - | - | - | 17,000 | - | - | 11,750 | - | - | - | 11,750 | - | - | - | 11,750 | - |
| Purchased Services | 21,030 | 69,269 | 36,577 | 121,046 | 49,406 | 133,139 | 36,577 | 78,546 | 91,906 | 69,269 | 100,447 | 78,546 | 91,906 | 69,269 | 100,447 | 40,458 |
| Purchased Services:Management | 7,500 | 24,500 | 22,500 | 22,500 | 22,500 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 |
| Utilities | 17,725 | 30,000 | 20,000 | - | - | 30,000 | 20,000 | - | - | 30,000 | 20,000 | - | 30,000 | 20,000 | - | 30,000 |
| Other Direct | - | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Rent/Lease Expense | 64,692 | 8,000 | 75,926 | 16,559 | 8,000 | 8,000 | 75,926 | 16,559 | 8,000 | 8,000 | 8,000 | 84,485 | 8,000 | 8,000 | 8,000 | 84,485 |
| Insurance | - | - | - | 41,095 | - | - | - | 21,000 | 21,000 | - | - | 120,569 | - | - | - | - |
| Other Indirect | - | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| Financing Costs | 673 | 7,673 | 1,346 | 1,346 | 1,346 | 1,346 | 2,019 | 2,019 | 2,692 | 2,692 | 2,692 | 2,692 | 3,029 | 3,029 | 3,029 | 3,029 |
| Chapter 11 Expenses | - | - | 25,000 | - | - | 59,333 | 12,500 | 509,000 | 12,500 | - | - | 77,000 | - | - | - | 543,500 |
| Capital Expenditures | - | - | - | - | - | - | 25,000 | 25,000 | 150,000 | - | - | 6,000 | - | - | - | - |
| Financing Repayments | - | - | 590,000 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **TOTAL CASH OUTFLOWS** | 859,824 | 275,543 | 1,457,353 | 394,408 | 791,114 | 337,930 | 851,385 | 829,236 | 1,007,711 | 219,873 | 948,302 | 486,204 | 870,847 | 214,210 | 928,638 | 778,384 |
| **Net Weekly Cash Flow** | (440,584) | 168,895 | (12,914) | 81,016 | (292,570) | 185,615 | 197,160 | (280,691) | 40,834 | 353,672 | (374,757) | 87,340 | (47,302) | 359,335 | (355,093) | (204,840) |
| Cash Balance EOP | 121,079 | 289,974 | 277,060 | 358,076 | 65,506 | 251,121 | 448,281 | 167,590 | 208,424 | 562,095 | 187,339 | 274,679 | 227,377 | 586,712 | 231,619 | 26,779 |
| DIP Loan Balance | 500,000 | 500,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,500,000 | 1,500,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,250,000 | 2,250,000 | 2,250,000 | 2,250,000 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
Dentons US LLP, 601 South Figueroa Street, Suite 2500, Los Angeles, CA 90017

A true and correct copy of the foregoing document entitled (*specify*):  **DECLARATION OF ERIC WEISSMAN IN SUPPORT OF DEBTOR'S MEMORANDUM ON RESULTS OF THE AUCTION AND IN SUPPORT OF ENTRY OF SALE ORDER AND ADDITIONAL BRIEFING ON NEED FOR CONTINUED DIP FINANCING** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 21, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

*SEE ATTACHED SERVICE LIST NO. 1*

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date* )     I will serve the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) July 21, 2016, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Personal Delivery
Hon. Ernest M. Robles
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and U.S. Courthouse
255 East Temple Street/Courtroom 1568
Los Angeles, CA 90012

*Via Overnight Delivery: SEE ATTACHED SERVICE LIST NO. 3.*

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 21, 2016 | Alicia Aguilar | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                    **F 9013-3.1.PROOF.SERVICE**

**SERVICE LIST**

*In re: Gardens Regional Hospital and Medical Center, Inc. dba Gardens Regional Hospital and Medical Center*

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Karl E Block on behalf of Creditor Harbor-Gardens Capital I, LLC
kblock@loeb.com, plavine@loeb.com

Manuel A Boigues on behalf of Interested Party Courtesy NEF
bankruptcycourtnotices@unioncounsel.net

Louis J Cisz, III on behalf of Interested Party Courtesy NEF
lcisz@nixonpeabody.com, sf.managing.clerk@nixonpeabody.com

Dawn M Coulson on behalf of Interested Party Courtesy NEF
dcoulson@eppscoulson.com, cmadero@eppscoulson.com

Jerome Bennett Friedman on behalf of Interested Party Courtesy NEF
jfriedman@flg-law.com, msobkowiak@flg-law.com;jmartinez@flg-law.com;sbiegenzahn@flg-law.com

Jeffrey I Golden on behalf of Creditor Committee Official Committee of Unsecured Creditors   jgolden@wgllp.com, kadele@wgllp.com;lfisk@wgllp.com;tziemann@wgllp.com

David Jacobs on behalf of Interested Party Courtesy NEF
cemail@ebglaw.com, djacobs@ebglaw.com

Ivan L Kallick on behalf of Interested Party Courtesy NEF
ikallick@manatt.com, ihernandez@manatt.com

Eve H Karasik on behalf of Interested Party Courtesy NEF
ehk@lnbyb.com

Yi S Kim on behalf of Interested Party Courtesy NEF
ykim@greenbass.com, ksopky@greenbass.com;ecfnotification@greenbass.com

Gary E Klausner on behalf of Creditor Roxbury Healthcare Services, LLC
gek@lnbyb.com

Gary E Klausner on behalf of Creditor Sycamore Health Care Services, LLC
gek@lnbyb.com

Gary E Klausner on behalf of Interested Party Courtesy NEF
gek@lnbyb.com

John I. Koenig on behalf of Interested Party Courtesy NEF
Skoenig@cmkllp.com, knielsen@cmkllp.com

John P Kreis on behalf of Interested Party John P. Kreis, PC
jkreis@kreislaw.com, j.kreis@ca.rr.com

Wendy A Loo on behalf of Interested Party People of the State of CA
wendy.loo@lacity.org

Stephen A Madoni on behalf of Creditor Spine Surgical Implants, Inc.
stevemadoni@aol.com, nathally@madonilaw.com

DENTONS US LLP
601 SOUTH FIGUEROA STREET, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*SERVICE LIST (cont'd)*
*In re: Gardens Regional Hospital and Medical Center, Inc. dba Gardens Regional Hospital and Medical Center*

Howard N Madris on behalf of Creditor Lenders Funding, LLC
hmadris@madrislaw.com

Howard N Madris on behalf of Interested Party Courtesy NEF
hmadris@madrislaw.com

Amanda L Marutzky on behalf of Interested Party Courtesy NEF
amarutzk@wthf.com, jjensen@watttieder.com

David W. Meadows on behalf of Interested Party Courtesy NEF
david@davidwmeadowslaw.com

Benjamin Nachimson on behalf of Interested Party Courtesy NEF
ben.nachimson@wgfllp.com

Kurt Ramlo on behalf of Interested Party Courtesy NEF
kr@lnbyb.com, kr@ecf.inforuptcy.com

David M Reeder on behalf of Creditor RollinsNelson Grp, LLC
dmr@vrmlaw.com, jle@vrmlaw.com

J. Alexandra Rhim on behalf of Interested Party Courtesy NEF
arhim@hemar-rousso.com

J. Alexandra Rhim on behalf of Respondent De Lage Landen Financial Services, Inc.
arhim@hemar-rousso.com

Emily P Rich on behalf of Interested Party Courtesy NEF
erich@unioncounsel.net, bankruptcycourtnotices@unioncounsel.net

Mary H Rose on behalf of Interested Party Courtesy NEF
mrose@buchalter.com, mrose@buchalter.com

Benjamin Seigel on behalf of Interested Party Courtesy NEF
bseigel@greenbass.com, rholland@greenbass.com;ecfnotification@greenbass.com

Leonard M Shulman on behalf of Strategic Global Management, Inc.
lshulman@shbllp.com

Gerald N Sims on behalf of Creditor BETA Risk Management Authority
jerrys@psdslaw.com, bonniec@psdslaw.com

Alan Stomel on behalf of Interested Party Courtesy NEF
alan.stomel@gmail.com, astomel@yahoo.com

Wayne R Terry on behalf of Interested Party Courtesy NEF
wterry@hemar-rousso.com

Gary F Torrell on behalf of Creditor RollinsNelson Grp, LLC
gft@vrmlaw.com

Gary F Torrell on behalf of Interested Party Courtesy NEF
gft@vrmlaw.com

*SERVICE LIST (cont'd)*
*In re: Gardens Regional Hospital and Medical Center, Inc. dba Gardens Regional Hospital and Medical Center*

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Hatty K Yip on behalf of U.S. Trustee United States Trustee (LA)
hatty.yip@usdoj.gov

**3. <u>TO BE SERVED BY OVERNIGHT MAIL:</u>**

| *Regulatory Agencies* | |
|---|---|
| United States Attorney's Office<br>Central District of California<br>312 North Spring Street, Suite 1200<br>Los Angeles, CA 90012<br>Office: (213) 894-2400<br>Fax: (213) 894-0141 | U.S. Department of Justice<br>Office of the Attorney General of the United States<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001<br>Office (202) 514-2000<br>Fax: (202) 307-6777 |
| Wendi A. Horwitz<br>Deputy Attorney General<br>Dept. of Justice<br>Office of the Attorney General<br>300 South Spring Street, Suite 1702<br>Los Angeles, CA 90013<br>Office: (213) 897-2178<br>Email: wendi.horwitz@doj.ca.gov | Internal Revenue Service<br>300 North Los Angeles Street<br>Los Angeles, CA 90012<br>Office: (213) 576-3009<br>Fax: None |
| State of California<br>Franchise Tax Board<br>300 South Spring Street, #5704<br>Los Angeles, CA 90013<br>Office: (916) 845-6500<br>Fax: None | Sylvia Mathews Burwell, Secretary<br>U.S. Department of Health & Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201<br>Office: (202) 690-6610<br>Fax: (202) 690-7203 |
| Employment Development Dept.<br>722 Capitol Mall<br>Sacramento, CA 95814<br>Office: (866) 333-4606 | Jennifer Kent, Director<br>California Department of Health Care Services<br>1501 Capitol Avenue, Suite 4510<br>Sacramento, CA 95814<br>Office: (916) 464-4430<br>Fax: None |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*SERVICE LIST (cont'd)*
*In re: Gardens Regional Hospital and Medical Center, Inc. dba Gardens Regional Hospital and Medical Center*

| | |
|---|---|
| Internal Revenue Service<br>600 Arch Street<br>Philadelphia, PA 19101<br>Office: (267) 941-6800 | Angela M. Belgrove<br>Assistant Regional Counsel<br>U.S. Department of Health and Human Services<br>Office of the General Counsel, Region IX<br>90 7th Street, Suite 4-500<br>San Francisco, CA 94103-6705<br>Office: (415) 437-8156<br>Fax: (415) 437-8188 |
| Office of the Attorney General<br>Consumer Law Section<br>Attn: Bankruptcy Notices<br>455 Golden Gate Ave., Suite 11000<br>San Francisco, CA 94102<br>Office: (415) 703-5500<br>Fax: (415) 703-5480 | |

**Request for Special Notice**

| | |
|---|---|
| Eric Weissman<br>Mary D. Lane<br>Wilshire Pacific Capital Advisors LLC<br>8447 Wilshire Blvd., Suite 202<br>Beverly Hills, CA 90211<br>eweissman@wilshirepacificadvisors.com<br>marylane@wilshirepacificadvisors.com<br>[email courtesy copies only] | Lori L. Purkey<br>Purkey & Associates<br>3050 Cascade Road SE Suite A<br>Grand Rapids, MI 49546<br>Office: (619) 940-0553<br>Fax: (619) 940-0554<br>[Counsel for Stryker Instruments] |
| Daniel R. Schimizzi<br>Bernstein-Burkley, PC<br>707 Grant Street, Suite 2200<br>Gulf Tower<br>Pittsburgh, PA 15219<br>Office: (412) 456-8121<br>Fax: (412) 456-8135<br>Email: dschmizzi@bernsteinlaw.com<br>[Counsel for Beckman Coulter, Inc.] | Darrell W. Clark<br>Stinson Leonard Street LLP<br>1775 Pennsylvania Ave., NW, Suite 800<br>Washington, DC 20006<br>Office: (202) 785-9100<br>Fax: (202) 785-9163<br>[Counsel for Cerner Health Services] |
| Lawrence J. Hilton<br>ONE LLP<br>4000 MacArthur Blvd.<br>East Tower, Suite 500<br>Newport Beach, CA 92660<br>Office: (949) 502-2870<br>Fax: (949) 258-5081<br>Email: lhilton@onellp.com<br>[Counsel for Cerner Health Services] | |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 4 -

*SERVICE LIST (cont'd)*
*In re: Gardens Regional Hospital and Medical Center, Inc. dba Gardens Regional Hospital and Medical Center*

| | |
|---|---|
| Louis J. Cisz III (NEF above)<br>Nixon Peabody LLP | Robert L. Patterson, Esq.<br>Slovak Baron Empey Murphy & Pinkney LLP<br>1800 E. Tahquiz Canyon Way<br>Palm Springs, California 92662 |
| Cerritos Gardens General Hospital Company<br>21520 South Pioneer Blvd., Suite 205<br>Hawaiian Gardens, CA 90716<br>Attn:  Pioneer Carson Corp., General Partner<br>         Attn: Cherna Moskowitz, President | Mr. Oren Ben Ezra<br>1250 E. Hallandale Beach Blvd., Suite 1000<br>Hallandale Beach, FL 33009 |
| James Hamada, M.D.<br>21500 South Pioneer Blvd., Suite 208<br>Hawaiian Gardens, CA 90716 | Amable Aguiliuz, M.D.<br>21500 South Pioneer Blvd., Suite 209<br>Hawaiian Gardens, CA 90716 |
| **Creditor's Committee** | |
| Rob Speeney<br>Cardinal Health 200, LLC<br>7000 Cardinal Place<br>Dublin, OH 43017<br>Office:  (614) 533-3125<br>Email:  rob.speeney@cardinalhealth.com | Robert Zadek<br>Lenders Funding, LLC<br>1001 Bridgeway, Suite 721<br>Sausalito, CA 94965<br>Office:  (415) 227-3585<br>Email:  rzadek@buchalter.com |
| Jeffrey Golden (NEF)<br>Weiland, Golden, LLP<br>650 Town Center Drive, Suite 950<br>Costa Mesa, CA 92626<br>Office:  (714) 966-1000<br>Fax:  (714) 966-1002<br>Email:  jgolden@wgllp.com | Andrew H. Sherman<br>Sills Cummis & Gross, P.C.<br>The Legal Center<br>One Riverfront Plaza<br>Newark, NJ 07102<br>Office:  (973) 643-6982<br>Fax:  (973) 643-6500<br>Email  asherman@sillscummis.com |

100259597\V-2

- 5 -