# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

**Tuesday, July 26, 2016**                                   **Hearing Room      1568**

10:00 AM
**2:16-17463      Gardens Regional Hospital and Medical Center, Inc.**                **Chapter 11**

   **#103.00**      FINAL Hearing re [92] Debtor's Motion (A) Authorizing The Debtor To Obtain
Postpetition Financing; (B) Authorizing The Debtor To Use Cash Collateral And (C)
Granting Adequate Protection To Prepetition Secured Creditors

      fr. 6-21-16; 7-18-16

                Docket        0

  **Matter Notes:**

    7/26/2016


    <span style="color:red">The tentative ruling will be the order.</span>
    <span style="color:red">Party to lodge order: Debtor</span>

    <span style="color:red">**POST PDF OF TENTATIVE RULING TO CIAO**</span>


    Notice out sale:  July 1
    Sale procedures hearing July 5, 2016 at 10:00
    Sale:  July 11 at off-site location
    Report of results hearing: July 13, 2016 at 10:00
    Continued hearing on post-petition finance :  July 18, 2016 at 10:00

  **Tentative Ruling:**

    7/25/2016 (updated at 6:45 p.m. to reflect additional filings): For the reasons set forth
below, the Court approves the sale of the Debtor's assets to Strategic Global
Management, Inc. The Court approves the Replacement DIP Financing facility with
Strategic, and authorizes the continued use of cash collateral.

  **Pleadings Filed and Reviewed:**

    1)  Notice of Motion and Motion of the Debtor and Debtor-in-Possession Pursuant to

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

**Tuesday, July 26, 2016**                                              **Hearing Room**    **1568**

---

<u>10:00 AM</u>
**CONT...**     **Gardens Regional Hospital and Medical Center, Inc.**      **Chapter 11**

Sections 105(a), 363, and 365 of the Bankruptcy Code for an Order (I)(A)
Approving Procedures in Connection with the Sale of Certain of the Debtor's
Assets; (B) Scheduling the Related Auction and Hearing to Consider Approval of
Sale; (C) Approving Procedures Related to the Assumption of Certain Executory
Contracts and Unexpired Leases; (D) Approving the Form and Manner of Notice
Thereof; (E) Approving Break-Up Fee; and (F) Granting Related Relief; and (II)
(A) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of
Liens, Claims, Encumbrances, and Other Interests; (B) Approving the Assumption
and Assignment of Certain Executory Contracts and Unexpired Leases; and (C)
Granting Related Relief ("Sale Motion") [Doc. No. 142]

    a) Debtor's Memorandum on Results of the Auction and in Support of Entry of
Sale Order and Additional Briefing on Need for Continued DIP Financing
[Doc. No. 202]

    b) Declaration of Eric Weissman in Support of Debtor's Memorandum on
Results of the Auction and in Support of Entry of Sale Order and Additional
Briefing on Need for Continued DIP Financing [Doc. No. 204]

    c) Order (A) Approving Procedures in Connection with the Sale of Certain of the
Debtor's Assets; (B) Scheduling the Related Auction and Hearing to Consider
Approval of the Sale; (C) Approving Procedures Related to the Assumption of
Certain Executory Contracts and Unexpired Leases; (D) Approving the Form
and Manner of Notice Thereof; (E) Approving Break-Up Fee; and (F)
Granting Related Relief ("Bidding Procedures Order") [Doc. No. 153]

      i) Order Amending Bidding Procedures Order [Doc. No. 164]

    d) Notice of Service of Cure Notice [Doc. No. 161]

    e) Transcript of Auction Proceedings (Volumes I–IV)

   2) Debtor's Notice of Second Emergency Motion and Emergency Motion for Interim
and Final Orders (A) Authorizing the Debtor to Obtain Postpetition Financing; (b)
Authorizing the Debtor to Use Cash Collateral; and (C) Granting Adequate
Protection to Prepetition Secured Creditors ("Second Financing Motion") [Doc.
No. 92]

    a) Order Setting Hearing [Doc. No. 90]

    b) Declaration of Eric Weissman in Support of First Day Motions ("Weissman
Decl.") [Doc. No. 23]

    c) Declaration of Eric Weissman in Support of Debtor's Second Emergency
Motion Interim and Final Orders (A) Authorizing the Debtor to Obtain
Postpetition Financing; (b) Authorizing the Debtor to Use Cash Collateral;
and (C) Granting Adequate Protection to Prepetition Secured Creditors

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

**Tuesday, July 26, 2016**                                    **Hearing Room    1568**

---

10:00 AM

**CONT...**    **Gardens Regional Hospital and Medical Center, Inc.**    **Chapter 11**

(C) Granting Adequate Protection to Prepetition Secured Creditors ("Supplemental Weisman Decl.") [Doc. No. 92, Ex. 5]

d) Declaration of David Herkovitz in Support of First Day Motions ("Herkovitz Decl.") [Doc. No. 24]

e) Declaration of Charles Natcher in Support of Debtor's Second Emergency Motion Interim and Final Orders (A) Authorizing the Debtor to Obtain Postpetition Financing; (b) Authorizing the Debtor to Use Cash Collateral; and (C) Granting Adequate Protection to Prepetition Secured Creditors ("Natcher Decl.") [Doc. No. 92, Ex. 6]

f) Errata to Ex. 6 [includes missing list of Charles Natcher's qualifications] [Doc. No. 93]

g) Statement Regarding Cash Collateral or Debtor-in-Possession Financing [Doc. No. 95]

h) Notice of Hearing on Debtor's Second Emergency Motion for Interim and Final Orders (A) Authorizing the Debtor to Obtain Postpetition Financing; (b) Authorizing the Debtor to Use Cash Collateral; and (C) Granting Adequate Protection to Prepetition Secured Creditors

3) California Attorney General's Limited Objection to the Form of the Proposed Sale Approval Order ("AG Objection") [Doc. No. 171]

4) Limited Objection to Notice to Counterparties to Executory Contracts and Unexpired Leases of the Debtor that May be Assumed or Assigned [filed by Landlord Cerritos Gardens General Hospital Company] ("Cerritos Gardens' Objection") [Doc. No. 172]

5) KND Development 53, LLC's Limited Objection to Sale; Demand for Turnover; and Demand for Inspection ("KND Objection") [Doc. No. 176]

6) Response by Cerritos Gardens to Limited Objection to Sale Filed by KND Development 53, LLC ("Cerritos Response") [Doc. No. 186]

7) Statement by De Lage Landen Financial Services, Inc. in Response to Sale Motion [Doc. No. 190]

8) Statement by De Lage Landen Financial Services, Inc. in Response to Financing Motion [Doc. No. 192]

9) Statement of Olympus Corporation of the Americas: (1) In Support of Continuance of Hearing as to Unexpired Leases and Executory Contracts; and (2) Cure Amount Required for Assumption and Assignment of Olympus Equipment Leases and Contracts [Doc. No. 207]

10) Limited Objection of Promise Gardens Lending Company, Inc. and Promise

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

**Tuesday, July 26, 2016**                                      **Hearing Room      1568**

---

10:00 AM
**CONT...        Gardens Regional Hospital and Medical Center, Inc.**                **Chapter 11**

      Hospital of East Los Angeles, L.P. to (A) Final Approval of DIP Financing and (B) Sale of Substantially All of the Debtor's Assets [Doc. No. 208]

11) Statement and Reservation of Rights by the Official Committee of Unsecured Creditors Regarding Debtor's Memorandum on Results of the Auction and in Support of Entry of Sale Order and Additional Briefing on Need for Continued DIP Financing [Doc. No. 210]

12) Limited Objection of Promise Hospital of East Los Angeles, L.P. (As Assignee of the Secured Claims of Rollins Nelson Group, LLC) to Sale of Substantially All of the Debtor's Assets [Doc. No. 211]

13) Limited Objection [of Harbor-Gardens Capital I] to Sale Motion ("Harbor-Gardens Opposition") [Doc. No. 212]

14) Limited Objection of the United States Department of Health and Human Services to Sale of Certain of Debtor's Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests ("HHS Objection") [Doc. No. 213]

    a)   Debtor's Reply to Limited Objection of United States Department of Health and Human Services [Doc. No. 219]

15) Omnibus Response [of the Creditors' Committee] to Limited Objections to Approval of Proposed Sale and Post-Petition Financing [Doc. No. 218]

16) Declaration of Samuel Maizel Regarding Filing of Asset Purchase Agreement [Doc. No. 223]

## I. Facts and Summary of Pleadings

    Chapter 11 Debtor and Debtor-in-Possession Gardens Regional Hospital and Medical Center, Inc. ("Debtor") seeks approval of the sale of certain of the Debtor's assets to Strategic Global Management, Inc. ("Strategic"), the winning bidder at the auction. On July 6, 2016, the Court entered an order approving bidding procedures in connection with an auction scheduled to take place on July 11, 2016 ("Bidding Procedures Order") [Doc. No. 153]. The auction was subsequently rescheduled to July 13, 2016. *See* Amended Bidding Procedures Order [Doc. No. 164].

    As part of its winning bid, Strategic will take out the current DIP Lender and provide Replacement DIP Financing to the Debtor. The Debtor seeks approval of the modified DIP Loan and Credit Agreement with Strategic, as well as authorization to continue to use cash collateral pending the closing of the Sale.

**Debtor's Memorandum on Results of the Auction**

    As ordered by the Court, the Debtor submitted a Memorandum on the Results of

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

**Tuesday, July 26, 2016**                                                    **Hearing Room      1568**

10:00 AM

**CONT...        Gardens Regional Hospital and Medical Center, Inc.**                **Chapter 11**

the Auction ("Memorandum"), the contents of which are summarized as follows:

The Auction took place on July 13, 14, 18, and 19. Bidding lasted for approximately 30 hours. The four bidders that participated were the Stalking Horse Bidder (Promise Hospital of East Los Angeles, L.P. ("Promise")), secured creditor Harbor Gardens Capital I, LLC ("Harbor-Gardens"), Strategic Global Management, Inc. ("Strategic"), and Le Summit Healthcare, LLC ("Le Summit"). In the interests of maximizing the recovery for the benefit of creditors, the Debtor permitted Le Summit to participate even though Le Summit did not submit its opening bid until Tuesday, July 12, 2016, several days after the bid deadline of Friday, July 8, 2016.

On Thursday, July 14, 2016, Promise passed on the fourth round of bidding. As required by the Bidding Procedures Order, Promise was eliminated from future bidding. A fifth round of bidding then proceeded with the remaining three bidders.

On Friday, July 15, Promise requested to re-enter the bidding. After considering Promise's request and consulting with the Official Committee of Unsecured Creditors ("Committee") **[Note 1]**, the Debtor declined to permit Promise to re-enter the bidding.

The auction concluded on July 19, 2016. The Debtor designated Strategic as the winning bidder. Strategic's bid is as follows:

1) $8 million cash to be paid at closing.
2) $2.5 million in DIP financing (Strategic will replace Promises, the current DIP financier). The DIP financing will be forgiven at the closing of the Sale.
3) $4 million paid to the estate on the first $7 million of accounts receivable collected, according to the following schedule:
   a) Strategic receives the first $2 million collected;
   b) The estate receives the next $500,000 collected;
   c) Strategic receives the next $500,000 collected;
   d) The estate receives the next $2.5 million collected;
   e) Strategic receives the next $500,000 collected;
   f) The estate receives the next $1 million collected;
   g) Strategic receives all collections in excess of $7 million.
4) Five promissory notes in the amount of $1 million each provided to the estate, payable on December 31, 2018, 2019, 2020, 2020, 2021, and 2022.
5) Payment of all cure costs associated with any executory contracts which Strategic desires to have assumed by the Debtor and assigned to it.

The total value of Strategic's bid to the estate is $19.5 million. Strategic agreed to several non-monetary factors, including (1) agreeing not to purchase certain causes of

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

**Tuesday, July 26, 2016**                                    **Hearing Room      1568**

<u>10:00 AM</u>
**CONT...**      **Gardens Regional Hospital and Medical Center, Inc.**               **Chapter 11**

action, the sale of which the Committee had opposed; (2) keeping the hospital and the Emergency Department in operation; (3) retaining more than 50% of the Debtor's employees; (4) maintaining the existing collective bargaining agreement; and (5) confirming that it did not require additional consents from third parties to close the transaction (other than the consent of government regulatory authorities).

The DIP financing portion of Strategic's bid will increase the DIP Loan amount from $2 million to $2.5 million. The Debtor and all bidders still bidding agreed that if the Court denied the Debtor's request to increase the DIP Loan amount from $2 million to $2.5 million, the amount would be forgiven from the bid.

The Debtor designated Le Summit as the Back-Up Bidder. Le Summit's bid is similar to Strategic's, except that Le Summit offered only $7 million in cash upfront (instead of $8 million), and Le Summit offered to pay the estate $5.525 million of the first $7 millions of collected accounts receivable. **[Note 2]** The payment schedule of the accounts receivable is as follows:

1) Le Summit receives the first $1 million collected;
2) The estate receives the next $525,000 collected;
3) Le Summit receives the next $475,000 collected;
4) The estate receives the next $5 million collected;
5) Le Summit receives all collections in excess of $7 million.

The face value of Le Summit's bid, at $19.85 million, is $385,000 higher than Strategic's bid. Nonetheless, the Debtor argues that Strategic's bid is superior because more of the consideration is in the form of upfront cash rather than uncertain collections on accounts receivable.

The Debtor anticipates that the sale will close in 60–105 days. California Corporations Code §5914 requires a non-profit corporation such as the Debtor to obtain the written consent of the California Attorney General prior to entering into any agreement to transfer a material amount of the corporation's assets. California Corporations Code §5915 provides the Attorney General with up to sixty days to evaluate the transaction, during which time the Attorney General usually conducts a public hearing and retains an expert to evaluate the transaction. The sixty-day period can be extended for one additional forty-five-day period.

At the conclusion of the auction, the Debtor reviewed an asset purchase agreement submitted by Roxbury Healthcare Services, LLC and Sycamore Healthcare Services, LLC, in which those entities offered to buy the Debtor's causes of action against them and several related entities. After the Committee raised a strong objection to the sale of these assets, the Debtor determined that it would not sell these or other similar assets at the auction.

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

---

**Tuesday, July 26, 2016**                                                       **Hearing Room**      **1568**

---

10:00 AM
**CONT...       Gardens Regional Hospital and Medical Center, Inc.**                       **Chapter 11**

assets at the auction.

   The Debtor submitted a declaration of its investment banker, Eric Weissman, setting forth the marketing efforts undertaken in connection with the sale:

> I have marketed the Hospital extensively, since 2015, in order to obtain bidders for the hospital's assets, and more recently to obtain bidders for the auction. Those actions included creating a virtual data room with information for prospective bidders, contacting more than two dozen prospective bidders, including the entities that participated in the auction, as well as other potential buyers including but not limited to Alecto Healthcare, Prime Healthcare Management, Imperial Holdings Group, Premier Healthcare Group, Naerok Group International, SAK Management Services, ER Hospitals, Community Healthcare Partners, Skilled Nursing Group, Perotoneal Dialysis Centers of America and CHA Health Systems. Because the Debtor did not own the real estate and that it was a defendant in numerous cases, it was difficult to get prospective buyers interested in the assets.

> After the Bankruptcy Case was commenced, I contacted, again, more than a dozen potential buyers. On behalf of the Debtor I entered into non-disclosure agreements with fourteen potential buyers. As a result, four bidders ultimately attended the auction and bid on the bulk of the Debtor's assets.

Weissman Decl. [Doc. No. 204] at ¶¶2–3.

*DIP Financing*
   The Court previously approved $500,000 in interim DIP financing from Promise Gardens Lending Company, Inc. ("Promise Lending"). The Debtor has borrowed the full $500,000 from Promise Lending.

   Strategic will provide Replacement DIP Financing that will take out Promise Lending. As of July 24, the modified DIP Loan and Credit Agreement ("Credit Agreement") with Strategic has not been filed. Debtor states that the Credit Agreement will be filed prior to the hearing.

   Debtor seeks approval of an additional $1.5 million (or $2 million if approved by the Court) in DIP Financing from Strategic. An initial tranche of $1 million would repay the $500,000 borrowed from Promise Lending and would provide the Debtor with $500,000 in post-petition financing. Additional advances would be made in the amount of $500,000. Strategic will be provided the same liens as Promise Lending had. The Secured Creditors will receive replacement liens in the postpetition accounts receivable until the sale closes, after which they will be paid in full from the sale

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

---

**Tuesday, July 26, 2016**                                              **Hearing Room    1568**

---

<u>10:00 AM</u>
**CONT...       Gardens Regional Hospital and Medical Center, Inc.**                    **Chapter 11**

proceeds.

The Debtor will use the Replacement DIP Financing to operate the hospital while it awaits approval of the Sale from the California Attorney General.

*Assumption of Executory Contracts and Unexpired Leases*

By way of the Bidding Procedures Order, the Court approved the following procedures regarding the assumption of executory contracts and unexpired leases: The Debtor will file with the Court and serve a Cure Notice upon each counterparty to the Assumed Executory Contracts by no later than July 6, 2016. The Cure Notice will state the date, time, and place of the Sale Hearing, as well as the date and time by which any objection to the assumption and assignment of the Assumed Executory Contracts must be filed and served. The Cure Notice will also identify the amounts, if any, that the Debtor believes are owed to each counterparty to an Assumed Executory Contract in order to cure any defaults that exist under such contracts. To the extent that there is a contract added to the list of contracts to be assumed by the Successful Bidder, a separate Cure Notice will be filed and served by overnight delivery within five business days of the conclusion of the Auction and the announcement of the Successful Bidder. *Id.* at ¶44. The Debtor will attempt to resolve any objections to the Cure Amount with the counterparty. *Id.* at ¶47. The Successful Bidder will be responsible for satisfying any requirements regarding adequate assurance of future performance that may be imposed under §365(b) in connection with the assignment of any Assumed Executory Contract. *Id.* at ¶48.

The Debtor has agreed to assume and assign to Strategic, the Successful Bidder, its real property leases and its Medicare and Medi-Cal Provider Agreements. Strategic has agreed to pay $221,000 to cure defaults on the real property leases, an amount that the Landlord has confirmed is the amount due. Strategic has agreed to pay $283,000 to cure defaults on the Medicare and Medi-Cal Provider Agreements.

Strategic has not had sufficient time to determine which of remaining 296 executory contracts and unexpired leases that it wants the Debtor to assume and assign to it. The Debtor and Strategic request that the Court set a hearing in two weeks to determine the assumption and assignment of these additional executory contracts and unexpired leases. The Debtor proposes to provide notice of the executory contracts and unexpired leases to be assumed, and the amount of the cure payment, five days before the hearing.

Olympus Corporation of the Americas ("Olympus") supports the requested continuance of the hearing to determine the assumption and assignment of executory

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

---

**Tuesday, July 26, 2016**                                **Hearing Room    1568**

---

<u>10:00 AM</u>
**CONT...        Gardens Regional Hospital and Medical Center, Inc.                Chapter 11**

contracts and unexpired leases. Olympus requests that the Debtor be required to provide Cure Notices five court days prior to the continued hearing (as opposed to five calendar days), and that objections to the Cure Notices be permitted up to and at the continued hearing.

**<u>Limited Objection of Harbor-Gardens to Sale and Continued Use of Cash Collateral</u>**

Harbor-Gardens does not oppose the sale to Strategic *per se*, but objects to certain aspects of the sale and contends that its secured claim is not adequately protected. Harbor-Gardens' objection is summarized as follows:

Harbor-Gardens loaned the Debtor $2.5 million. Harbor-Gardens has a security interest in substantially all the Debtor's assets, while the other significant secured creditors have security interests only in the Debtor's accounts receivable.

The Debtor has not provided sufficient information about the Sale. The Debtor has not provided an Asset Purchase Agreement ("APA"). Without seeing an executed APA, the Court cannot know if there is a binding expression of a sale by the Debtor. Parties should have the opportunity to review the APA and should be provided a red-lined comparison showing the differences between the APA with Strategic and the APA executed by Promise, the Stalking Horse Bidder. The description of the assets to be sold (attached as an exhibit to the Debtor's Memorandum on Results of the Auction ("Memorandum")) is inadequate because it qualifies almost every category of assets being purchased with the language "schedule to be provided."

The Memorandum is unclear about the adequate protection to be provided to the secured parties. Nothing in the Memorandum provides that the liens of secured parties will attach to the proceeds of the Sale. Because Harbor-Gardens has liens on assets which the other secured parties do not, it is not clear whether Harbor-Gardens' lien priorities are protected.

Harbor-Gardens is not adequately protected in connection with the Replacement DIP Financing from Strategic. The Memorandum does not sufficiently explain the terms of the Replacement DIP Financing:

First, in connection with adequate protection issues, what does it mean that a part of the loan will be "forgiven from the bid?" Does this mean that if $2.5 million is loaned to the Debtor, only $2 million will have to be paid back under any circumstances? Or does it mean that only $2 million will have to be repaid if the sale closes? The Memorandum does not clarify this issue.

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

**Tuesday, July 26, 2016**                                         **Hearing Room        1568**

---

10:00 AM

**CONT...        Gardens Regional Hospital and Medical Center, Inc.**                    **Chapter 11**

Next, the Debtor proposes to borrow in tranches of $500,000 (other than the $500,000 to repay an affiliate of Promise Gardens Lending Company, Inc. for the previous debtor in possession financing.) It is not clear when these tranches will be borrowed, and whether there are three or four of them. Harbor-Gardens Opposition at 5.

In connection with any borrowing and the use of cash collateral, Harbor-Gardens should be provided all of the protections provided in the Interim Financing Order. Harbor-Gardens should be provided with replacement liens on any assets which the Debtor receives during the course of the bankruptcy case. Harbor-Gardens may also be entitled to other forms of adequate protection, including cash payments to the extent of diminution in value of its collateral. The Debtor should be required to provide at least seven days' notice of any borrowing under the DIP Loan so that each of the secured parties can request adequate protection or seek to halt the proposed borrowings if the collateral base is eroding.

The Court should order the Debtor to provide additional reporting so that secured parties can determine if their secured positions will be jeopardized. It is possible that the sale might not close or that the value of Harbor-Gardens' collateral could diminish pre-closing. So that Harbor-Gardens can determine that its secured claim is adequately protected, the Debtor should be required to provide, by no later than the tenth of each month, the following information (in addition to the daily census, receipts and payments, that the Debtor is already providing):

1) A monthly accounts receivable aging showing the accounts receivable outstanding at the end of each calendar month, segregated by the aging of the accounts and showing the type of accounts (Medi-Care, Medi-Cal, private payor);
2) The Debtor's Case Mix Index for the prior month, which sets forth the type of acute care services being rendered by the Debtor; and
3) Profit and loss statements, cash flow statements and balance sheets, both on a cumulative basis for the calendar year and separate reports showing the results of the prior month.

It will not be a hardship for the Debtor to provide these reports. Edmund C. King, who worked as the chief financial officer for Gardens Regional from October 2015 to April 2016, states that such reports were regularly generated during his tenure.

**<u>Limited Objection of Promise Gardens Lending Company to Sale and Financing Motions</u>**

---

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
**Judge Ernest Robles, Presiding**
Courtroom 1568 Calendar

**Tuesday, July 26, 2016**                                                                **Hearing Room      1568**

10:00 AM
**CONT...        Gardens Regional Hospital and Medical Center, Inc.**                                    **Chapter 11**

Promise Gardens Lending Company ("Promise Lending") is the current DIP
Lender. Promise Hospital, an affiliate of Promise Lending, was the Stalking Horse
Bidder. Promise Lending requests the following in connection with the final order
approving DIP financing ("Final Financing Order"):

1)  The Final Financing Order should fix a date, not later than ten days after entry, for
    payment in full of the DIP Obligations to Promise Lending. Promise Lending
    should retain its first priority liens and superpriority administrative claims until it
    receives payment in full of all DIP Obligations owing to it, and such liens and
    superpriority administrative claims should be senior to the liens and claims
    granted to Strategic.
2)  The amount of principal and interest owing to Promise Lending should be known
    within ten days after entry of the Final Financing Order. However, Promise
    Lending's expenses will not be known by that time. Therefore, Promise Lending
    should retain its first priority liens and superpriority administrative claims until its
    expenses are paid in full.

Under the Bidding Procedures Order, Promise Hospital is entitled to a break-up fee of
$50,000 plus documented expenses of up to $40,000. Promise Hospital requests that
the final order approving the sale to Strategic (the "Sale Order") include the following
provisions:

1)  To remind interested parties that Promise Hospital is entitled to the break-up fee
    and reimbursement of its expenses, the Sale Order should again approve the
    break-up fee and expense reimbursement.
2)  The Bidding Procedures Order did not specify a procedure for submission of
    Promise Hospital's documented expenses. The Sale Order should include a
    procedure whereby:
    a)  Promise Hospital may provide reasonably detailed invoices (redacted as
        appropriate and not subject to United States Trustee Guidelines) to counsel for
        the Debtor, counsel for the Prepetition Secured Creditors, counsel for the
        Committee, counsel for Strategic, and the Office of the United States Trustee
        (the "Notice Parties");
    b)  The Notice Parties will have ten days after submission of the invoices to
        object; and
    c)  Any dispute will be resolved by the Court.
3)  The Debtor states in the Memorandum that secured creditors will be paid in full
    from the sale proceeds. The Sale Order should include a provision stating that
    secured claims that are not disputed as of the closing date of the sale will be paid

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

**Tuesday, July 26, 2016**                                          **Hearing Room      1568**

---

10:00 AM

**CONT...      Gardens Regional Hospital and Medical Center, Inc.**                    **Chapter 11**
in full in cash at closing.

**Cerritos Gardens' Limited Objection to Cure Notice**

Cerritos Gardens General Hospital Company ("Cerritos Gardens") filed a limited objection to the proposed cure amounts. Cerritos Gardens is the holder of the hospital and medical office building leases. Cerritos Gardens objects on the grounds that the cure amounts for the Hospital Lease, the MOB Suite 208 Lease, and the MOB Suite 209 Lease do not include rents and late fees for the month of July 2016. Cerritos Gardens asserts that the July rent must be included in the cure amount.

**KND's Limited Objection to Sale**

KND does not object to the sale, but is concerned that the Debtor may falsely representing to purchasers that KND's equipment is included with the purchase of the hospital lease. KND's concerns are based upon the following:

· Prior to the commencement of the case, KND operated long-term acute care facilities within the Hospital. KND ceased its long-term acute care operations on October 19, 2015. KND Objection at ¶3. KND ceased operations because the Hospital was implicated in a scheme to defraud insurance companies by inflating the price of spinal-surgery hardware and conspiring with orthopedic surgeons to use counterfeit, non-FDA approved implantable hardware. *Id.* at ¶ 5.

· Pursuant to a written agreement between KND and the Hospital, the Hospital had up to, but no more than, 90 days to either return KND's equipment or purchase the equipment from KND. *Id.* at ¶3.

· On March 22, 2016—several months before the petition was filed on June 6, 2016—KND provided the Hospital with a detailed list of assets currently in the Hospital's possession as well as KND's net book value of the assets. KND demanded that the Hospital return the equipment. The Hospital has failed to return the equipment.

· The Debtor fully recognizes that it is holding KND's equipment, as evidenced by language in the interim order approving the use of cash collateral providing that KND's equipment is not encumbered. *Id.* at ¶7.

· As a result of the Debtor's refusal to turn over the equipment, along with the acknowledgment and recognition of the Debtor that it holds the equipment, KND is concerned that the Debtor is wrongfully using the KND equipment to market and/or sell the Hospital. No prospective purchaser should be misled to

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

**Tuesday, July 26, 2016**                                    **Hearing Room    1568**

---

**10:00 AM**
**CONT...**    **Gardens Regional Hospital and Medical Center, Inc.**                **Chapter 11**

    believe that KND's equipment is for sale or belongs to any entity other than KND. *Id.* at ¶8.

- The Debtor is likely to assert in response that it holds a monetary claims against KND for underpayment for ancillary services at the Hospital. Such claim is without merit and was only asserted after KND sought to recover its equipment. *Id.* at ¶11.

    KND demands turnover of its equipment and the immediate right to inspect its equipment. *Id.* at ¶8.

**Response by Cerritos Gardens to Limited Objection to Sale Filed by KND Development 53, LLC**

    Cerritos Gardens takes no position as to the personal property and equipment over which KND asserts an ownership interest. However, Cerritos Gardens wishes to make clear that under the relevant lease provisions, the Debtor's furniture, fixtures, and equipment are Cerritos Gardens' property, as lessor of the subject premises.

**Limited Objection of De Lage Landen Financial Services, Inc.**

    De Lage Landen Financial Services, Inc. ("DLL") leased a surgical robot arm ("Equipment") to the Debtor. Prior to the filing of the petition, the Debtor defaulted on the Lease Agreement with DLL and surrendered the Equipment to DLL. The Debtor did not schedule the Equipment in Schedule A and did not schedule the Lease Agreement in Schedules D or G.

    At the hearing on the approval of interim financing, DLL and the Debtor confirmed that the Equipment had been surrendered and that DLL's interests in the Equipment would not be affected by the proposed financing. Based on the representations made on the record, the Court declined to require the Debtor to include language in the Interim Financing Order referencing DLL or its equipment.

    DLL maintains that the Lease Agreement does not qualify as an unexpired lease capable of being assumed and assigned.

    DLL requests that the Final Financing Order include language clarifying that the Equipment does not constitute DIP Collateral and that the Equipment is excluded from the scope of the financing.

    DLL requests that the Sale Order include language confirming (1) that the Equipment is not among the assets being sold and (2) that the Lease Agreement is not a contract designated to be assumed and assigned to Strategic.

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

---

**Tuesday, July 26, 2016**                                    **Hearing Room      1568**

---

<u>10:00 AM</u>
**CONT...        Gardens Regional Hospital and Medical Center, Inc.                    Chapter 11**

<u>**Limited Objection of the California Attorney General to the Form of the Proposed Sale Approval Order**</u>

The California Attorney General does not object to the sale of the Debtor's assets, but does object to the form of the proposed order approving the sale. The Attorney General's objections are as follows:

The proposed APA clearly acknowledges that the Attorney General's consent or waiver for the sale is required, since the hospital is a nonprofit public benefit corporation. *See* APA at ¶7.4 (conditioning the buyer's obligation to close upon the Attorney General's consent or waiver of consent). **[Note 3]** Any nonprofit corporation that is subject to the Nonprofit Public Benefit Corporation Law (Cal. Corp. Code § 5110 *et seq.*) and operates or controls a health facility must obtain the written consent of the California Attorney General prior to entering into any agreement to sell a material amounts of its asset to a for-profit corporation. *See* Cal. Corp. Code §5914. The order approving the sale should include the following language to clarify that approval of the Attorney General is needed for the sale of any assets that include the operation of a health facility:

Nothing in this Order or the Final Asset Purchase Agreement is intended to be or shall be construed as an adjudication of the applicability of the California Attorney General's authority or conditions issued under California Corporations Code section 5914 *et seq.,* in relation to the sale of certain of the Debtor's assets including, but not limited to, the lease of the health facility located at 21530 South Pioneer Boulevard, Hawaiian Gardens, California, to the following listed persons and entities: the Debtor; the Trustee; the Buyer; any licensee to operate a health facility (as defined in Section 1250 of the California Health and Safety Code) located at 21530 South Pioneer Boulevard, Hawaiian Gardens, California; or any of their assignees, affiliates, lessees, sublessees, or successors in interest. The California Attorney General and these listed persons and entities reserve all rights and defenses concerning the applicability of the California Attorney General's Authority or conditions issued under California Corporations Code section 5914 *et seq.*

Nothing in this Order or the Final Asset Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations (including, but not limited to, charitable trust laws such as California Corporations Code section 5914 *et seq.*), and any associated liabilities for

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

**Tuesday, July 26, 2016**                                    **Hearing Room    1568**

10:00 AM

**CONT...**        **Gardens Regional Hospital and Medical Center, Inc.**                **Chapter 11**

penalties, damages, cost recovery, or injunctive relief that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Order. Nothing contained in this Order or in the Asset Purchase Agreement shall in any way diminish the obligation of any entity, including the Debtor, to comply with charitable trust laws. Nothing in this Order or the Asset Purchase Agreement authorizes the transfer to the Buyer of any licenses, permits, registrations, or governmental authorizations and approvals without the Buyer's compliance with all applicable legal requirements under charitable trust laws governing such transfers.

**Limited Objection of the United States Department of Health and Human Services**

The United States Department of Health and Human Services ("HHS") requests that Sale Order include language providing that its right to be reimbursed for any Medicare overpayments made to the Debtor not be extinguished by the assignment of the Debtor's Medicare Provider Agreement ("Provider Agreement") to Strategic. According to HHS, the additional language is necessary for the following reasons:

In connection with the Sale, the Debtor will assume and assign the Provider Agreement to Strategic, and Strategic will pay $283,000 to cure existing defaults under the Provider Agreement. Under applicable provisions of the Medicare Act, Strategic, as the assignee of the Provider Agreement, is required to reimburse HHS for any overpayments that HHS may have made to the Debtor under the Provider Agreement. *See* 42 U.S.C. §1395g(a); *United States v. Vernon Home Health, Inc.*, 21 F.3d 693, 696 (5th Cir. 1994) (holding that any purchase of assets involving the assignment of a Medicare Provider Agreement is subject to applicable statutory and regulatory conditions, including liability for overpayments).

HHS requests that the order approving the Sale include the following language to preserve its rights to collect any overpayments for which Strategic may be liable:

> Notwithstanding anything in the Asset Purchase Agreement to the contrary, nothing in this Sale Order shall be construed as authorizing the sale of the Medicare Provider Agreement as an asset to the Purchaser free and clear of successor liability for pre-Closing Medicare debt, whether or not such debt is as of yet undetermined, nor as restricting Medicare's right of setoff and recoupment. The assumption and assignment of the Medicare Provider Agreement will be authorized in a stipulation pursuant to 11 U.S.C. § 365 which will be negotiated by the parties and submitted for this Court's

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

**Tuesday, July 26, 2016**                                    **Hearing Room     1568**

10:00 AM
**CONT...**     **Gardens Regional Hospital and Medical Center, Inc.**                    **Chapter 11**
            approval.

**Debtor's Reply to the Limited Objection of the United States Department of
Health and Human Services**

The Debtor replies to the Limited Objection of HHS as follows:

The prospective buyer, Strategic, has reserved the right to terminate the
transaction absent a satisfactory agreement between the Debtor and the United States
related to the transfer of the Medicare Provider Agreement vis-à-vis the prospective
buyer's liability for the obligations of the Debtor. Strategic has requested an
additional sixty days to designate the executory contracts it will ask to be assumed by
the Debtor and assigned to it. Therefore, HHS will be able to raise the issue of
successor liability for Medicare overpayments at a later time.

However, HHS' Objection ignores controlling Ninth Circuit precedent holding
that the Medicare Provider Agreement is not a contract. *See, e.g.*, *PAMC, Ltd. v.
Sebelius*, 747 F.3d 1214, 1221 (9th Cir. 2014) ("As the Eleventh Circuit Court of
Appeals held when hospitals complained of legislative impairment of their contract
rights in this area because they had agreements with the Secretary: 'Upon joining the
Medicare program, however, the hospitals received a statutory entitlement, not a
contractual right.'"). Further, HHS regularly argues before courts in the Central
District of California that a Medicare Provider Agreement is not a contract, and
therefore should be judicially estopped from arguing otherwise here. *See* United
States' Sur-Reply to Tenant's Reply to its Motion for Summary Adjudication, *United
States v. Tenent Healthcare Corp.*, 2005 WL 3784642 (C.D. Cal. Dec. 22, 2005), at *
2 ("Medicare providers, upon joining the Medicare program receive a statutory
entitlement, not a contractual right").

Most courts have held that a license issued by a government agency is property of
the bankruptcy estate. As a license, rather than an executory contract, the Medicare
Provider Agreement can be sold free and clear of interests such as successor liability.

As a practical matter, Strategic will need up to sixty days to determine which
executory contracts it wants the Debtor to assume and assign to it. During that time,
the Debtor will work to achieve a settlement agreeable to the United States and the
prospective buyer. The Debtor will file a notice at the same time it files the Cure
Notices related to the assumption and assignment of executory contracts, providing its
determination as to whether it intends to proceed by treating the Medicare Providing
Agreement as an executory contract or a license, and the United States can respond
accordingly. However, to be clear, should a settlement be impossible, the Debtor

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
**Judge Ernest Robles, Presiding**
Courtroom 1568 Calendar

Tuesday, July 26, 2016                                         Hearing Room      1568

10:00 AM
**CONT...        Gardens Regional Hospital and Medical Center, Inc.                   Chapter 11**
reserves the right to sell the Medicare Provider Agreement as a license.

### Committee's Statement and Reservation of Rights

Since the conclusion of the auction, proposed counsel to the Committee has been
diligently working with the Debtor to finalize the forms of documents required to
memorialize the transaction. The Committee has no specific objections at this time,
but in an abundance of caution reserves all rights in connection with any and all relief
to be considered by the Court at the July 26 hearing.

### Omnibus Response of the Creditor's Committee to Limited Objections to
### Approval of the Proposed Sale and Post-Petition Financing

The Committee responds to the objections made to the Sale and Financing
Motions as follows:

*Promise Hospital's Sale Objection*

The Court should deny Promise Hospital's request that the Sale Order contain a
provision stating that "secured claims that are not disputed as of the closing of the
sale will be paid in full in cash at closing." Payment should be deferred until the
Committee is afforded a full and fair opportunity to conduct its diligence regarding
the extent, priority, and validity of such asserted claims and liens.

Promise Hospital is the assignee of the secured claims of Rollins Nelson Grp,
LLC ("RNG"). RNG entered into a settlement agreement with the Debtor's current
management in April 2016 (the "April Settlement Agreement"). The April Settlement
Agreement granted RNG (1) secured claims totaling $1,075,000 and (2) liability
releases. Notwithstanding the liability release, RNG sought to acquire the Debtor's
causes of action—including any causes of action against itself—by credit bidding its
purported secured claim. That is, RNG sought to acquire claims and causes of action
that were apparently released only a few short months ago. Further, during the
auction, RNG and Promise Hospital had an apparent agreement relating to the
acquisition of the Debtor's assets which was not disclosed to the parties at the
auction.

The Committee intends to investigate whether the RNG claims assigned to
Promise Hospital are subject to a valid security interest, the circumstances
surrounding the release of the claims shortly before the filing of this case, and other
issues attendant to the claims. Promise Hospital's status as a secured creditor (as
assignee of the RNG claims) may be subject to dispute. Payment of those claims
should not occur until the Committee has had a chance to investigate.

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

---

**Tuesday, July 26, 2016**                                    **Hearing Room        1568**

---

<u>10:00 AM</u>
**CONT...        Gardens Regional Hospital and Medical Center, Inc.**                    **Chapter 11**

*Harbor-Gardens Objection*

Harbor-Gardens' purported secured claims were identified as "disputed" on the Debtor's schedules. Harbor-Gardens' requests for adequate protection and more detailed reporting should not be granted until the Committee can investigate the validity of Harbor-Gardens' purportedly secured claims.

*HHS Objection*

The Committee joins the Debtor's reply [Doc. No. 219] and requests that the Sale be approved without inclusion of HHS' proposed language notwithstanding HHS' objection for the reasons set forth in the Debtor's reply. The Committee further reiterates that the issues raised in HHS' objection relating to any potential assumption and assignment of the Medicare Provider Agreement can be resolved in due course in advance of the closing of the Sale and do not present grounds for denial of approval of the Sale, which will provide a tremendous benefit to the estate, at the scheduled hearing.

## II. Findings of Fact and Conclusions of Law
### <u>The Court Approves the Sale</u>

Section 363(b) permits the debtor or trustee to sell estate property out of the ordinary course of business, subject to Court approval. The debtor or trustee must articulate a business justification for the sale of the property. *In re Walter*, 83 B.R. 14, 19–20 (9th Cir. BAP 1988) (citing *In re Continental Air Lines*, 780 F.2d 1223 (5th Cir. 1986)). Whether the articulated business justification is sufficient "depends on the case," in view of "all salient factors pertaining to the proceeding." *Id.* "The court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances." *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 288–89 (B.A.P. 9th Cir. 2005).

The Court finds that the Debtor has provided ample business justification for the Sale and on that basis approves the Sale. The Debtor's cash flow is severely constrained. Eric Weissman, the Debtor's investment banker, states that absent the Interim DIP Financing that the Court approved, the "Debtor will lack sufficient cash flow to maintain its operations for another eight weeks." Weissman Decl. at ¶10 [Doc. No. 92].

Based upon its review of the Weissman Declaration filed in support of the Memorandum [Doc. No. 204], the Court finds that the Debtor adequately marketed its assets. Weissman contacted more than two dozen suitable potential buyers and, on

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

---

**Tuesday, July 26, 2016**                                                  **Hearing Room    1568**

---

<u>10:00 AM</u>
**CONT...        Gardens Regional Hospital and Medical Center, Inc.                    Chapter 11**

behalf of the Debtor, entered into non-disclosure agreements through which fourteen of those potential buyers could obtain additional information about the assets for sale. The marketing efforts resulted in a competitive bidding process between four buyers which produced a winning bid markedly higher than the bid submitted by the Stalking Horse Bidder.

The Court finds that the Debtor's conduct of the auction was consistent with the Bidding Procedures Order and resulted in the optimal value being realized by the estate. The Debtor correctly permitted Le Summit to participate in the auction, even though Le Summit's bid was submitted several days after the July 8 deadline. The Bidding Procedures Order provides that the Debtor may "extend the deadlines set forth herein." The inclusion of Le Summit in the auction resulted in more robust bidding. Le Summit's designation as the Back-Up Bidder provides value to the estate.

The Debtor's decision to decline to permit Promise to re-enter the bidding after it passed on a bidding round was also appropriate. The Bidding Procedures Order provides: "A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid. Qualified Bidders will not have the opportunity to pass." On Thursday, July 14, Promise passed in the fourth round of bidding and did not participate in the fifth round. Promise sought to re-enter the bidding the next day. Allowing Promise to re-enter would have been unfair to the three remaining bidders, who participated in the fifth round with the expectation that Promise had been eliminated. Changing the rules in the middle of the auction would have been highly disruptive.

The Court has reviewed the four-volume transcript of the auction proceedings submitted by the Debtor. Based on its review of the transcript, the Court finds that the auction was conducted in a transparent manner that was fair to the bidders. The Debtor explained how the various forms of consideration offered in each bid would be weighted. After each round of bidding, the bidders were provided with the matrix used by the Debtor to determine the weighted value of each bid.

Harbor-Gardens' objections to the Sale are overruled. The Debtor has provided sufficient information to enable the Court to approve the Sale. The Debtor has provided a detailed list of the assets being purchased. *See* Memorandum at Exhibit A. The fact that the list of purchased assets does not include schedules setting forth the exact equipment, furniture, machinery, licenses, and leases being purchased is not sufficient reason to delay approval of the Sale. The Court notes that it was necessary for the Debtor to conduct the Sale in a shortened time frame given the Debtor's financial condition. The absence of the schedules denominating exactly which assets

# United States Bankruptcy Court
# Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

---

**Tuesday, July 26, 2016**                                          **Hearing Room    1568**

---

<u>10:00 AM</u>
**CONT...    Gardens Regional Hospital and Medical Center, Inc.**                **Chapter 11**

are being sold is not unreasonable in view of this shortened time frame.

The Court will take testimony and make a determination as to Strategic's status as a good-faith purchaser under §363(m) at the hearing.

The Sale Order should contain the following provisions:

1) Language stating that KND's equipment (listed in Exhibit 1 to the KND Objection) is not included in the assets being sold. (The Court declines to rule upon KND's demand for turnover and inspection of its equipment at this time. To the extent that KND and the Debtor are unable to resolve this issue, KND may bring a separate motion seeking turnover and inspection of its equipment.)

2) Language stating that the assets being sold do not include any property that is owned by Cerritos Gardens under the terms of Cerritos Gardens' lease agreement with the Debtor.

3) Language clarifying that the approval of the California Attorney General is needed for the sale of any assets that include the operation of a health facility (the Court finds that the clarifying language proposed by the California Attorney General is suitable).

4) Language providing that the assets being sold do not include DLL's Equipment that was surrendered by the Debtor pre-petition, and that the Lease Agreement between the Debtor and DLL pertaining to the Equipment is not an unexpired lease that may be assumed and assigned to Strategic. (By failing to list the Lease Agreement on Schedule G, the Debtor has already acknowledged that it is not an unexpired lease capable of being assumed and assigned.)

5) Language restating Promise Hospital's entitlement to the Break-Up Fee and expense reimbursement. In connection with Promise Hospital's expense reimbursement, the Sale Order should provide for the following procedure by which the amount of Promise Hospitals' reasonable expenses will be determined:

   a) Promise Hospital may provide reasonably detailed invoices (redacted as appropriate and not subject to United States Trustee Guidelines) to counsel for the Debtor, counsel for the Prepetition Secured Creditors, counsel for the Committee, counsel for Strategic, and the Office of the United States Trustee (the "Notice Parties");

   b) The Notice Parties will have ten days after submission of the invoices to object; and

   c) Any dispute will be resolved by the Court.

6) Language stating that secured claims that are not disputed by either the Debtor or the Creditor's Committee as of the closing date of the Sale will be paid in full in

---

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

---

**Tuesday, July 26, 2016**                                              **Hearing Room    1568**

---

<u>10:00 AM</u>
**CONT...**        **Gardens Regional Hospital and Medical Center, Inc.**                    **Chapter 11**

cash at closing. (It will take between 60–105 days for the Sale to close. This period will provide the Creditor's Committee sufficient time to investigate the secured claims and raise any objections, if appropriate.)

7) Language stating that to the extent a secured creditors' claim is disputed and not paid in cash in full on the date of closing, the secured creditors' liens will attach to the $8 million in cash sale proceeds, with the same priority and to the same extent that those liens attached to the assets being sold.

**<u>The Debtor Properly Designated Strategic's Bid as the Highest and Best Bid</u>**

The Court agrees with the Debtor that Strategic's bid is the highest and best bid. Strategic's bid has a face value to the estate of $19.5 million. The face value of Le Summit's bid, whom the Debtor has designated as the Back-Up Bidder, is slightly higher, at $19.85 million. However, Le Summit offers to pay $7 million in cash upon closing—$1 million less than the $8 million offered by Strategic. Le Summit's bid has a higher face value only because Le Summit offers to pay to the estate $5.525 million of the first $7 million collected in accounts receivable, whereas Strategic offers to pay $4 million of the first $7 million collected in accounts receivable. Le Summit offers slightly less in DIP financing—$2.325 million instead of the $2.5 million offered by Strategic.

Notwithstanding its slightly lower face value, Strategic's bid is superior. Le Summit offers $1 million less in cash upfront. The face value of its bid is higher than Strategic's only because the reduced upfront cash is offset by an additional $1.525 million in accounts receivable. But the collectability of those accounts receivable is uncertain. Even if the accounts receivable prove to be collectible up to the full $5.525 million amount contemplated in Le Summit's bid, those funds will not accrue to the estate until some unknown time in the future. The Debtor appropriately concluded that the $1 million in additional upfront cash from Strategic is a better offer than the uncertain possibility of receiving $1.525 million at an unknown future date.

The Debtor's fiduciary duty to maximize the value of the estate does not require the Debtor "to mechanically accept a bid with the highest dollar amount." *In re Family Christian, LLC*, 533 B.R. 600, 622 (Bankr. W.D. Mich. 2015). Courts have approved the acceptance of bids with a lower face value where those bids offer greater certainty of payment. *See, e.g., In re Scimeca Found., Inc.*, 497 B.R. 753, 779 (Bankr.E.D.Pa.2013) (approving somewhat lower all-cash bid instead of higher bid with financing contingency); *In re Bakalis*, 220 B.R. 525, 532–33 (Bankr.E.D.N.Y.1998) (approving lower bid instead of higher bid with contingencies

## United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

**Tuesday, July 26, 2016**                                **Hearing Room      1568**

10:00 AM
**CONT...      Gardens Regional Hospital and Medical Center, Inc.**                **Chapter 11**

and inherent risk).

### The Sale is Free and Clear of the Prepetition Secured Creditors' Liens

Section 363(f)(3) provides that a sale may be free and clear of liens if the price at which the property is to be sold is greater than the aggregate value of all the liens against the property. The sale will provide $8 million in cash upon closing. This amount is sufficient to pay the prepetition secured creditors' liens, which amount to approximately $4.5 million.

### Cure Amounts Due to Landlord Cerritos Gardens

Under §365, the Debtor may assume an unexpired lease, and pursuant to §363(b), assumed leases may be sold. To assume a lease that is in default, the Debtor must cure the default (or provide adequate assurance that the default will promptly be cured), and must provide adequate assurance of future performance. §365(b)(1).

The proposed cure amounts for the Hospital Lease, MOB Suite 208 Lease, and MOB Suite 209 Lease do not include rents and late fees for the month of July 2016. These amounts must be paid to Cerritos Gardens to cure the default. Provided that the cure amounts are paid by Strategic, the Court approves the assumption and assignment of the Hospital Lease and MOB Suite 208 and 209 Leases.

No timely objections to the proposed cure amounts for the MOB Suite 208 Sublease and MOB Suite 209 Sublease were filed. The assumption and assignment of those subleases is approved.

### Continued Hearing on the Assumption and Assignment of Executory Contracts and Unexpired Leases

In the Memorandum, the Debtor states that Strategic has agreed to pay $283,000 to cure existing defaults in connection with the assumption and assignment of the Medicare and Medi-Cal Provider Agreements. The Debtor has not yet served a Cure Notice pertaining to the Medicare and Medi-Cal Provider Agreements.

Pursuant to the Debtor's request, the Court will conduct a continued hearing in approximately sixty days on the assumption and assignment of the remaining executory contracts and unexpired leases (the assumption and assignment of the Medicare and Medi-Cal Provider Agreements will be finally determined at the continued hearing). At the hearing, the Court will set dates by which the Debtor must file and serve the Cure Notice upon each counterparty to the Assumed Executory Contracts, as well as the dates by which the counterparties must file an Assumption

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

---

**Tuesday, July 26, 2016**                                      **Hearing Room      1568**

---

<u>10:00 AM</u>
**CONT...        Gardens Regional Hospital and Medical Center, Inc.**                    **Chapter 11**
Objection.

    The Court makes no determination at this time on whether the Medicare Provider
Agreement is a license or an executory contract or whether Strategic acquires the
Medicare Provider Agreement subject to liability for any Medicare overpayments
made to the Debtor. To preserve this issue for later determination, the Sale Order
should include the language proposed by HHS.

    <u>**The Replacement DIP Financing and Continued Use of Cash Collateral is
Approved**</u>

    The Credit Agreement with Strategic has not yet been filed. Assuming that the
Credit Agreement contains provisions similar to those of the agreement with Promises
Lending in all material respects, the Court is prepared to approve the Replacement
DIP Financing with Strategic. The Debtor may borrow $2.5 million under the Credit
Agreement (with $500,000 of that amount to be used to repay Promises Lending).

    The Court does not agree with Harbor-Gardens that the terms of the Replacement
DIP Financing are unclear. In connection with its bid, Strategic offered up to $2.5
million in Replacement DIP Financing. The loan will be forgiven upon the closing of
the Sale. The Debtor and the remaining bidders agreed that if the Court permitted the
Debtor to borrow only $2 million in Replacement DIP Financing, the $500,000 in
financing that the Court denied "would be forgiven from the bid." Memorandum at
footnote 3. In other words, if the Court does not permit Strategic to lend $2.5 million,
Strategic will not be required to provide consideration of $500,000 in some other
form to make up for the difference. There is nothing unclear about this provision.

    The Court finds that the prepetition secured creditors whose liens are primed by
the Replacement DIP Financing are adequately protected. The Sale to Strategic will
provide $8 million in cash, which is more than adequate to repay the approximately
$4.5 million in prepetition secured claims. The Sale to Strategic also provides the
estate additional value in the amount of up to $4 million in accounts receivable, and
Replacement DIP Financing that will be forgiven upon closing. Even if collections on
the accounts receivable do not yield the full amount of $4 million to the estate, the
secured creditors are protected by an equity cushion that is far in excess of 20%.

    The final order approving post-petition financing and use of cash collateral
("Final Financing Order") should afford the same protections to the secured creditors
as were provided in the Interim Financing Order [Doc. No. 122]. This includes
prepetition replacement liens and prepetition superpriority claims. Because Harbor-
Gardens has a lien on substantially all of the Debtor's assets, Harbor-Gardens is
entitled to replacement liens to the extent that equipment, inventory, or other assets

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

**Tuesday, July 26, 2016**                                      **Hearing Room      1568**

10:00 AM

**CONT...       Gardens Regional Hospital and Medical Center, Inc.**                **Chapter 11**

replacement liens to the extent that equipment, inventory, or other assets are acquired
using the proceeds of its pre-petition collateral.

Harbor-Gardens' request that the Debtor be ordered to provide reporting beyond
that ordered in the Interim Financing Order is overruled. In view of the substantial
equity cushion, additional reporting is not required to adequately protect Harbor-
Gardens' interest. Such reporting would prove burdensome to the Debtor and increase
the costs of administering the estate.

Harbor-Gardens' request that the Debtor be required to provide seven days' notice
of borrowing under the Replacement DIP Loan Facility is denied. Such notice is
unnecessary given the substantial equity cushion. Further, there is no evidence that
the value of Harbor-Gardens' collateral is declining. To the contrary, the
unexpectedly positive results of the auction show that the Debtor's assets are worth
far more than the Debtor and secured creditors had previously believed.

The Court finds that Final Financing Order should contain the provisions
requested by Promise Lending—namely, that (1) Promise Lending will be paid in full
within ten days after the date of entry of the Final Financing Order, and will retain
first priority liens and a superpriority administrative claim superior to Strategic's until
it is paid in full; and (2) that Promise Lending will retain its first priority lien and
superpriority administrative expense, on account of its expenses, until those expenses
are paid in full.

The Debtor should circulate the proposed Sale Order and Final Financing Order to
all parties who have submitted objections prior to lodging the orders with the Court.
Because time is of the essence with respect to the entry of both orders, any objections
to the form of the orders must be filed by no later than Wednesday, July 27.

**Note 1**

The two members of the Committee are Cardinal Health 200, LLC ("Cardinal
Health") and Lenders Funding, LLC ("Lenders Funding"). Doc. No. 146.

**Note 2**

The Sale Memorandum does not describe Le Summit's bid in as much detail as
Strategic's bid. The Court's understanding is that Le Summit's bid is identical to
Strategic's bid except for the differences described in the Sale Memorandum at ¶II.E.
The Court's calculation of the face value of Le Summit's bid is predicated upon that
understanding. If the Court's understanding of Le Summit's bid is incorrect, the
Debtor should inform the Court at the hearing.

# United States Bankruptcy Court
## Central District of California
### Los Angeles
### Judge Ernest Robles, Presiding
### Courtroom 1568 Calendar

**Tuesday, July 26, 2016**                                                     **Hearing Room    1568**

10:00 AM
**CONT...     Gardens Regional Hospital and Medical Center, Inc.**                **Chapter 11**

**Note 3**
   The Attorney General is referring to the APA with the Stalking Horse Bidder,
which has been superseded by the APA with winning bidder Strategic. The APA with
Strategic is not yet on file.

| Party Information |
|:---:|

**Debtor(s):**

Gardens Regional Hospital and                     Represented By
                                                  Samuel R Maizel
                                                  John A Moe