SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
JOHN A. MOE, II (Bar No. 066893)
john.moe@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone:    (213) 623-9300
Facsimile:    (213) 623-9924

Attorneys for Debtor,
GARDENS REGIONAL HOSPITAL
AND MEDICAL CENTER, INC.

**FILED & ENTERED**

JUL 28 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez  DEPUTY CLERK

**CHANGES MADE BY COURT**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:16-bk-17463-ER |
| GARDENS REGIONAL HOSPITAL AND MEDICAL CENTER, INC., dba GARDENS REGIONAL HOSPITAL AND MEDICAL CENTER, | Chapter 11 |
| Debtor. | ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS PURSUANT TO SECTIONS 105(a), 363, AND 365 OF THE BANKRUPTCY CODE TO STRATEGIC GLOBAL MANAGEMENT, INC., FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (C) GRANTING RELATED RELIEF |
| | Hearing:<br>Date:    July 26, 2016<br>Time:    10:00 a.m.<br>Place:    U.S. Bankruptcy Court<br>        255 E. Temple St.<br>        Los Angeles, CA 90012<br>Judge    Ernest M. Robles |

100492237\V-5

This matter coming before the Court on the *Motion Of The Debtor And Debtor-In-Possession Pursuant To Sections 105(A), 363, And 365 Of The Bankruptcy Code For An Order (I)(A) Approving Procedures in Connection with the Sale of Substantially All of the Debtor's Assets; (B) Scheduling the Related Auction and Hearing to Consider Approval of Sale; (C) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (D) Approving the Form and Manner of Notice Thereof; (E) Approving Break-Up Fee; and (F) Granting Related Relief; and (II)(A) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (C) Granting Related Relief* (the "Motion")[1] [Docket No. 142] filed by the above-captioned affiliated Debtor and Debtor in Possession (the "Debtor") for the entry of an order pursuant to Sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"), and Rule 6004-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California (the "LBR").

The Court, having reviewed the Motion and the *Debtor's Memorandum Of The Results Of The Auction And In Support Of Entry Of Sale Order And Additional Briefing On Need For Additional DIP Financing* (the "Sale Memorandum") [Docket No. 202], and the *Declaration of Eric Weissman filed in support of the Sale Memorandum* [Docket No. 204] and its *Order (A) Approving Procedures in Connection With The Sale of Certain of The Debtor's Assets; (B) Scheduling The Related Auction And Hearing to Consider Approval of Sale; (C) Approving Procedures Related to The Assumption of Certain Executory Contracts And Unexpired Leases;*

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

- 2 -

100492237\V-5

*(D) Approving The Form And Manner Of Notice Thereof; (E) Approving Break-Up Fees; And (F) Granting Related Relief* (the "Bid Procedures Order") [Docket No. 153], finds that (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iv) notice of the Motion was sufficient under the circumstances; and after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate and its creditors; <span style="color:red">for the reasons set forth in the Court's tentative ruling [Docket No. 237];</span> and good and sufficient cause having been shown;

**AND IT IS FURTHER FOUND AND DETERMINED THAT**:

A.   The Debtor's notice of the Bidding Procedures, the Cure Procedures, the Auction and the hearing to approve any sale of the Debtor's Assets (the "Sale Hearing") was appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

B.   The Auction was conducted in accordance with the Bidding Procedures and resulted in the highest and best bid for the Debtor's assets offered at the Auction.

C.   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

D.   To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED THAT**:

1.   The Motion is **GRANTED** as set forth herein.

- 3 -

100492237\V-5

    2.    All objections and responses to the Motion that have not been overruled, withdrawn, waived, settled, resolved, or continued, and all reservations of rights included therein, are hereby overruled and denied. The objections to the form of this Order filed by Roxbury Healthcare Services, LLC and Sycamore Healthcare Services, LLC [Docket No. 252] and Harbor-Gardens Capital I, LLC [Docket No. 246] are overruled.

    3.    The last offer presented at the Auction by Strategic Global Management Inc. ("Strategic") for the Debtor's "Assets" (as such term is defined in the Asset Purchase Agreement (the "APA") between Strategic and the Debtor (collectively, the "Parties") dated as of July 25, 2016) is the highest and best offer for the Assets and is hereby approved.

    4.    Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, the Sale of the Assets by the Debtor pursuant to the APA, upon the closing under the APA, and transactions related thereto are authorized and approved in all respects. Notwithstanding the definition of "Assets" in the APA, the assets being sold shall not include (a) property owned by KND Development 53, LLC but in the possession of the Debtor, (b) the surgical robot previously in the possession of the Debtor but which is property of De Lage Landen Financial Services Inc. ("DLL") and was returned prepetition by the Debtor to DLL, and (c) any furniture, fixtures and equipment which is the property of Cerritos Gardens General Hospital Company ("Cerritos Gardens") under the terms of Cerritos Garden's lease agreement with the Debtor.

    5.    The APA filed on July 25, 2016 [Docket No. 223] is hereby approved pursuant to Section 363(b) of the Bankruptcy Code, and the Debtor and Strategic are authorized and directed to consummate and perform all of their obligations under the APA and to execute such other documents and take such other actions as are necessary or appropriate to effectuate the APA. All terms and conditions of the APA are incorporated herein by reference as if fully set forth herein.

    6.    Pursuant to Section 363(f) of the Bankruptcy Code, and based on the payments to Prepetition Secured Creditors in full (subject only to paragraph 7), the Debtor is authorized to sell and transfer the Assets free and clear of all liens, claims, interests and encumbrances, (collectively, "Liens"), except as otherwise provided in the APA, with any and all such Liens to attach to the proceeds of such sale with the same validity, extent, priority, force, and effect such

100492237\V-5

Liens had on the Assets immediately prior to the Sale and subject to the rights, claims, defenses, and objections, if any, of the Debtor, the Official Committee of Unsecured Creditors (the "Committee") and all other interested parties with respect to any such asserted Liens.

7.      The Debtor is ordered to promptly pay, from the proceeds of the Sale, the Prepetition Secured Creditors in full in cash or by wire transfer of immediately available funds.  If any security interest or claim of a Prepetition Secured Creditor is subject to dispute, the Debtor will escrow the disputed amounts pending resolution of the disputes by further order of this Court.  Within thirty (30) days of payment in full of each Prepetition Secured Creditor, such Prepetition Secured Creditor shall file a UCC termination statement with regard to its security interests; provided, however, that in the event that no such UCC termination statement is filed, the Court authorizes the Debtor or Strategic to file such UCC termination statement. Notwithstanding anything to the contrary herein, in the event the Debtor, Committee or any Prepetition Secured Creditor asserts any disputes as to the validity of any claims, liens or security interests of any Prepetition Secured Creditor, any and all amounts subject to such dispute shall be escrowed and not be distributed to such Prepetition Secured Creditor pending determination pursuant to further order of the Court.

8.      Pursuant to Section 365 of the Bankruptcy Code, the assumption of the Assumed Contracts and Assumed Leases, as identified in the APA, by the Debtor, and the assignment of those Assumed Contracts and Assumed Leases to Strategic, subject to and accordance with the procedures set forth in the APA and this Order, is hereby authorized and approved in all respects. The DLL Lease for a surgical robot was terminated prepetition and cannot be included in the list of leases to be assumed.

9.      The Debtor shall file with the Court and serve by overnight mail a Cure Notice (along with a copy of this Order) upon each counterparty to an executory contract or unexpired lease which Strategic designates to be assumed by the Debtor and assigned to Strategic (the "Assumed Contracts/Leases") by no later than 60 days after entry of this Order.  The Cure Notice shall state the date, time and place of a hearing to be held to approve the assumption and assignment of the Assumed Contracts/Leases (October 26, 2016 at 10:00 a.m., Pacific time)

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

100492237\V-5

1  (October 11, 2016 at 10:00 a.m., Pacific time) (the "Cure Hearing"), as well as the date by which

2  any Assumption Objection must be filed and served (October 12, 2016).  The Cure Notice also

3  will identify the amounts, if any, that the Debtor believes are owed to each counterparty to an

4  Assumed Contracts/Leases in order to cure any defaults that exist under such contract (the "Cure

5  Amounts").

6        10.      The inclusion of a contract, lease, or other agreement on the Cure Notice shall not

7  constitute or be deemed a determination or admission by the Debtor and its estate or any other

8  party in interest that such contract, lease, or other agreement is, in fact, an executory contract or

9  unexpired lease within the meaning of the Bankruptcy Code, and any and all rights with respect

10  thereto shall be reserved.

11        11.      If any counterparty to an Assumed Contracts/Leases wishes to file an Assumption

12  Objection, such counterparty must file and serve it so as to be actually received by the Notice

13  Parties by October 12, 2016 no later than seven (7) days after service by overnight mail of such

14  Cure Notice (the "Assumption Objection Deadline"). Any reply to an Assumption Objection must

15  be filed and served by October 19, 2016.

16        12.      To the extent the Assumed Contracts/Leases counterparty wishes to object to the

17  Cure Amount, if any, set forth in the Cure Notice, its Assumption Objection must set forth with

18  specificity each and every asserted default in any executory contract or unexpired lease and the

19  monetary cure amount asserted by such counterparty to the extent it differs from the amount, if

20  any, specified by the Debtor in the Cure Notice.

21        13.      Any counterparty to an Assumed Contracts/Leases that fails to timely file and

22  serve an objection to the Cure Amounts shall be forever barred from asserting that a Cure

23  Amount is owed in an amount in excess of that set forth in the Cure Notice.

24        14.      If a Contract or Lease is assumed and assigned pursuant to Court order, then

25  except for Disputed Cure Amounts (as defined herein), the Assumed Contracts/Leases

26  counterparty shall receive no later than three (3) business days following the closing of the Sale,

27  the Cure Amount, if any, as set forth in the Cure Notice.  All Cure Amounts will be funded by

28  Strategic in accordance with the terms and conditions of the APA.

15. The Court will make any and all determinations concerning adequate assurance of future performance under the Assumed Contracts/Leases pursuant to sections 365(b) and (f)(2) of the Bankruptcy Code at the Cure Hearing (including those related to adequate assurance of future performance), in the event that the Debtor and the counterparty cannot resolve the Cure Amount, such dispute may be resolved by the Court at the Cure Hearing or such later date as may be agreed to or ordered by the Court. The Debtor and Strategic shall escrow any disputed Cure Amounts ("Disputed Cure Amounts") pending the resolution of any such disputes by the Court or mutual agreement of the parties.

16. Strategic shall be responsible for satisfying any requirements regarding adequate assurance of future performance that may be imposed under section 365(b) of the Bankruptcy Code in connection with the proposed assignment of any Assumed Contracts/Leases, and the failure to provide adequate assurance of future performance to any counterparty to any Assumed Contracts/Leases shall not excuse Strategic from performance of any and all of its obligations pursuant to the APA. Pursuant to section 365(k) of the Bankruptcy Code, the Debtor and its estate shall not be liable for any breach of the Assumed Contracts or Assumed Leases after the effective date of assignment of same to Strategic.

17. Nothing in this Order or the APA shall be deemed a resolution of the status of any proposed transfer of the Medicare Provider Agreement between the Debtor and the United States or Medi-Cal Provider Agreement between the State of California and the Debtor. The Debtor shall file a notice no later than forty (40) days after entry of this Order of its intent with regard to a transfer of the Medicare Provider Agreement and Medi-Cal Provider Agreement to Strategic, and, in the event that a transfer is proposed, whether that transfer will be as a license under section 363 of the Bankruptcy Code or as an executory contract under section 365 of the Bankruptcy Code. The Debtor shall proceed on an expedited basis to obtain a further order of this Court prior to the expiration of sixty (60) days after entry of this Order if there is a dispute between the Debtor and the United States and/or the State of California with regard to the nature of the proposed transfer of the Medicare Provider Agreement or the Medi-Cal Provider Agreement. To the extent the Debtor determines that it will transfer the Medicare Provider

- 7 -

100492237\V-5

1     Agreement or Medi-Cal Provider Agreement as an executory contract, it should include those in

2     the Cure Notice procedures set forth herein.  Nothing in this Sale Order or the Asset Purchase

3     Agreement shall be deemed to restrict the United States and the State of California's rights of

4     recoupment, setoff or offset, if any, or rights, if any, to impose successor liability on Strategic

5     pursuant to applicable non-bankruptcy law or the Debtor's rights to contest such rights.

6             18.     The last offer presented at the Auction by Le Summit Healthcare, LLC ("Le

7     Summit") for the Debtor's assets described in such offer, as further described in the Sale

8     Memorandum, is the second highest and best offer for the such assets and Le Summit is hereby

9     approved as the Back Up Bidder pursuant to the Bid Procedures Order.  This Back Up Bid shall

10    remain binding until the earlier of (a) one hundred (100) days after entry of this Order or (b)

11    approval of the Strategic transaction by the California Attorney General, provided, however, that

12    nothing in this Order prohibits Le Summit from agreeing to remain bound as the Back Up Bidder

13    after the expiration of this time period.  If the Debtor seeks to sell the assets to the Back Up

14    Bidder, it shall seek a further Court Order.  The Debtor shall promptly file and serve a copy of the

15    Le Summit Asset Purchase Agreement (the "Le Summit APA") and in the event Le Summit

16    becomes the Successful Bidder, the terms of the Le Summit APA shall apply to the proposed Sale

17    between the Debtor and Le Summit.

18            19.     Strategic ~~and Le Summit are~~[2] is a good faith purchaser~~s~~ entitled to the benefits and

19    protections afforded by Section 363(m) of the Bankruptcy Code.

20            20.     The terms of this Order shall be binding on Strategic, Le Summit and their

21    respective successors, the Debtor, creditors of the Debtor, and all other parties in interest in this

22    Bankruptcy Case, and any successors of the Debtor, including any trustee or examiner appointed

23    in this case or upon a conversion of this case to Chapter 7 of the Bankruptcy Code.   To the extent

24    of any conflict or inconsistency between the APA or the Le Summit APA respectively, and this

25    Order, any pleading, prior Order of this Court or any other document relating to the subject matter

---

[2] The Court did not take testimony regarding Back-Up Bidder Le Summit's status as a good-faith purchaser at the Sale Hearing. In the event that the Sale to Strategic does not close, the Court will take testimony and determine whether Le Summit is entitled to the protections of Section 363(m) of the Bankruptcy Code.

- 8 -

100492237\V-5

hereof, the terms and conditions of the APA shall govern and control, unless expressly stated to the contrary herein.

21. With respect to the transactions consummated pursuant to this Order, this Order, the APA and documents related thereto shall be sole and sufficient evidence of the transfer of title to any particular purchaser, and the sale transaction consummated pursuant to this Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Order, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Order as sole and sufficient evidence of such transfer of title and shall rely upon this Order in consummating the transactions contemplated hereby.

22. This Court retains jurisdiction to interpret, implement and enforce the provisions of, and resolve any disputes arising under or related to, this Order and the APA, all amendments thereto, any waivers and consents thereunder and each of the agreements executed in connection therewith.

23. The failure specifically to include any particular provision of the APA or any of the documents, agreements, or instruments executed in connection therewith in this Order shall not diminish or impair the force of such provision, document, agreement, or instrument, it being the intent of the Court that the APA and each related document, agreement, or instrument be authorized and approved in its entirety.

24. The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in consultation with the Committee in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor's estate.

100492237\V-5

25. Nothing in this Order or the APA is intended to be or shall be construed as an adjudication of the applicability of the California Attorney General's authority or conditions issued under California Corporations Code section 5914 et seq., in relation to the Sale of Certain of the Debtor's Assets including, but not limited to, the health facility located at 21530 South Pioneer Boulevard, Hawaiian Gardens, California, to the following listed persons and entities: the Debtor; Strategic; any trustee subsequently appointed in this Case; any licensee to operate a health facility (as defined in Section 1250 of the California Health and Safety Code) located at 21530 South Pioneer Boulevard, Hawaiian Gardens, California; or any of their assignees, affiliates, lessees, sublessees, or successors in interest.  The Attorney General, those persons and entities listed above, and the Committee reserve all rights and defenses concerning the applicability of the California Attorney General's Authority or conditions issued under California Corporations Code section 5914 et seq.

26. Nothing in this Order or the APA releases, nullifies, precludes, authorizes or enjoins the enforcement of any liability to a governmental unit under police or regulatory statutes or regulations (including but not limited to, charitable trust laws such as California Corporations Code section 5914 et seq.), and any associated liabilities for penalties, damages, cost recovery, or injunctive relief that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Order.  Nothing contained in this Order or the APA shall in any way diminish the obligation of any entity, including the Debtor, to comply with charitable trust laws.  Nothing in this Order or the APA authorizes the transfer to the Buyer of any licenses, permits, registrations, or governmental authorizations and approvals without the Buyer's compliance with all applicable legal requirements including, but not limited to, approval under charitable trust laws governing such transfers or in contravention of 11 U.S.C. § 363(d)(1) or 28 U.S.C. § 959(b).

27. Nothing in this Order or the APA shall constitute approval or authorization for the Debtor to enter into any interim management agreement or similar arrangement with Strategic or any other person or entity.  Any request for consideration of such relief shall be subject to further order of this Court.

100492237\V-5

28.     The Debtor is authorized to pay Vizient, Inc. to prepare a healthcare impact statement for the Office of the California Attorney General to assess the potential impact of the proposed sale between the Debtor and Strategic on the availability and accessibility of healthcare services to the communities served by the Debtor in compliance with the provisions of California Corporations Code section 5914 et seq. and California Code of Regulations, title 11, section 999.5, subdivision (e)(6).

29.     Promise Hospital of East Los Angeles, L.P. (the "Stalking Horse Bidder") shall be paid the following amounts in cash from the sale proceeds at closing of a sale of the Debtor's assets: (a) a Break-Up Fee in the amount of $50,000; plus (b) reasonable documented expenses, including professional fees, incurred by the Stalking Horse Bidder in an amount not to exceed $40,000 (the "Stalking Horse Expenses").  With respect to the Stalking Horse Expenses, the Stalking Horse Bidder shall provide copies of reasonably detailed invoices (redacted as may be appropriate) to (i) the Debtor, (ii) the Prepetition Secured Creditors, (iii) counsel for the Committee, and (iv) the Office of the United States Trustee (hereinafter "Stalking Horse Expense Notice Parties").  Any Stalking Horse Expense Notice Party shall have ten (10) days after submission of any such invoice by the Stalking Horse Bidder to assert an objection to payment of the amounts sought in the subject invoice.  Provided no objection has been raised by any Stalking Horse Expense Notice Party within such time period, the Debtor shall be authorized without further order of the Court to pay such invoice in cash from the sale proceeds at closing of a sale of the Debtor's assets.  In the event any Stalking Horse Expense Notice Party(ies) asserts an objection within such time period, the Debtor shall be authorized without further order of the Court to pay the undisputed portion of such invoice in cash from the sale proceeds at closing of a sale of the Debtor's assets, and any dispute with regard to amounts objected to shall be resolved by the Court upon application of the Stalking Horse Bidder or any Stalking Horse Expense Notice Party(ies).  Professionals for the Stalking Horse Bidder are not required to comply with the United States Trustee fee guidelines.

30.     Upon payment of the Break-Up Fee and the Stalking Horse Expenses to the Stalking Horse Bidder, the Debtor and its representatives and affiliates, on the one hand, and the

100492237\V-5

Stalking Horse Bidder and its respective representatives and affiliates, on the other hand, will be deemed to have fully released and discharged each other from any liability resulting from the termination of the Stalking Horse APA (other than payment in full of the DIP Financing and distributions on any prepetition claims held by the Stalking Horse Bidder), and neither the Debtor and its representatives and affiliates, on the one hand, nor the Stalking Horse Bidder and its respective representatives and affiliates on the other hand, nor any other Person, will have any other remedy or cause of action under or relating to the Stalking Horse APA, including for reimbursement of any additional expenses incurred by the Stalking Horse Bidder in connection with the negotiation and documentation of the Stalking Horse APA or the proceedings held in connection therewith.  Nothing herein shall be deemed a release, waiver or limitation of any objections, claims, defenses or causes of action that the Debtor's estate may have with respect to any prepetition claims held by or assigned to the Stalking Horse Bidder.

31.     The stay of this Order pursuant to Bankruptcy Rule 6004(h) is hereby waived and this Order shall be effective immediately upon its entry.

32.     This Court shall retain exclusive jurisdiction to enforce the provisions of this Order and the APA and to resolve any issue or dispute concerning the interpretation, implementation or enforcement of this Order or the APA (including, but not limited to, the assignment of the Assumed Contracts and Assumed Leases to the Purchaser and any amounts payable in relation thereto), or the rights and duties of the parties hereunder or thereunder, including, without limitation, any issue or dispute concerning the transfer of the Assets free and clear of any and all Liens.

33.     The Debtor shall, within one (1) business day after entry of this Order, serve a copy of this Order by first class mail on (i) Notice Parties, (ii) any parties requesting notices in this case pursuant to Bankruptcy Rule 2002, (iii) all parties known by the Debtor to assert a lien on any of the Debtor's Assets, (iv) all persons known or reasonably believed to have asserted an interest in any of the Debtor's Assets, (v) all non-debtor parties to executory contracts and unexpired leases as described in Schedule G as filed by the Debtor [Docket No. 159], (vi) the Office of the United States Attorney for the Central District of California, (vii) the Office of the

100492237\V-5

California Department of Justice in Los Angeles, California, (viii) the Office of the California Secretary of State, (ix) all taxing authorities having jurisdiction over any of the Debtor's Assets, including the United States Internal Revenue Service, (x) the Securities and Exchange Commission, and (xi) all environmental agencies having jurisdiction over any of the Debtor's Assets. The Debtor shall file a proof of service establishing that service was accomplished in accordance with this Order by no later than one business day after entry of this Order.

34. The Court shall hold a Status Conference on October 11, 2016 at 10:00 a.m. Pacific Time to review the status of the Sale. The Debtor shall file and serve a status report no later than seven (7) days prior to the Status Conference.

###

Date: July 28, 2016

*Ernest M. Robles*
Ernest M. Robles
United States Bankruptcy Judge

- 13 -

100492237\V-5