SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
JOHN A. MOE, II (Bar No. 066893)
john.moe@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300
Facsimile: (213) 623-9924

Attorneys for Debtor,
GARDENS REGIONAL HOSPITAL
AND MEDICAL CENTER, INC., dba
GARDENS REGIONAL HOSPITAL
AND MEDICAL CENTER

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>GARDENS REGIONAL HOSPITAL AND MEDICAL CENTER, INC., dba GARDENS REGIONAL HOSPITAL AND MEDICAL CENTER,<br><br>Debtor. | Case No. 2:16-bk-17463-ER<br><br>Chapter 11<br><br>(Voluntary Petition Filed: June 6, 2016)<br><br>**DEBTOR'S EMERGENCY MOTION TO AUTHORIZE CLOSURE OF HOSPITAL; DECLARATION OF ERIC WEISSMAN**<br><br>Date: January ___, 2017 [To Be Set]<br>Time: 10:00 a.m.<br>Place: Courtroom 1568<br>      Edward R. Roybal Federal Building<br>      255 East Temple Street<br>      Los Angeles, California 90012<br>Judge: Hon. Ernest M. Robles<br><br>[Local Bankruptcy Rule 9075-1(a)] |

Gardens Regional Hospital and Medical Center, Inc., a California not for profit corporation, doing business as Gardens Regional Hospital and Medical Center, formerly doing business as Tri City Regional Medical Center (hereinafter referred to as "Gardens" or "Debtor"), files this Emergency Motion to approve the closure of the hospital owned and operated by the Debtor (the "Hospital").

- 1 -

102283180\V-1

As this Court is aware, the Court previously approved the sale of Gardens' assets to Strategic Global Management, Inc. ("Strategic") or its assignee, KPC Gardens Medical Center, Inc. ("KPC").

Unfortunately, on November 18, 2016, the Attorney General announced that it would approve the sale of the Debtors assets to KPC only if, among other things, KPC agreed to provide $2.25 million dollars per year of Charity Care over the next six years, which is $1,750,000 per year more than the Charity Care Gardens provided in 2015 and $2,100,000 per year more than the Charity Care Gardens provided in 2016.

In addition, the Attorney General also imposed a requirement to pay $2.4 million in prepetition HQAF fees.

The requirement for Charity Care and payment of HQAF fees increased Strategic's obligations by approximately $13 million.

The Asset Purchase Agreement [§ 7.5, p. 32; § 9.1(e), p. 34] gives KPC discretion on whether to proceed with the purchase dependent upon the conditions imposed by the Attorney General. The conditions imposed on the sale by the Attorney General are unacceptable to KPC. As a result, KPC has informed the Debtor that it cannot proceed with the acquisition of the Debtor's assets on terms imposed by the Attorney General. With its remaining cash on hand dwindling and no other buyer willing to acquire Gardens' assets as a going concern, the Debtor has determined in its best business judgment that it must close the Hospital.

Gardens is working diligently to complete an agreement to sell Gardens' assets as a closed Hospital.

This Motion is filed on an *emergency basis* because the Debtor has utilized nearly the full $3,130,000 of previously approved DIP Financing, is quickly running out of funds, and must preserve enough funds to effectuate an orderly and expeditious closure, while at the same time completing negotiations on, preparing an agreement for, and preparing and filing an Emergency Motion seeking this Court's approval of a private sale of Gardens' assets.

**PLEASE TAKE NOTICE** that the Debtor brings this Motion pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Rule 9075-1(a) of the Local Bankruptcy Rules of United

States Bankruptcy Court of the Central District of California, seeking an Order that the Motion be heard on an emergency basis. Granting the relief requested in this Motion on an emergency basis will benefit the estate by insuring the Debtor has enough funds to effectuate an orderly and expeditious closure of the Hospital and can complete a sale of Gardens' assets by way of a private sale.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice and Motion, the attached Memorandum Of Points And Authorities, the concurrently filed Declaration of Eric Weissman, the arguments of counsel, and other admissible evidence properly brought before the Court at or before the hearing regarding this Motion. In addition to the attached Declaration of Eric Weissman, the Debtor refers the Court to previous Declarations submitted by Mr. Weissman [Docket Nos. 23, 92-5, 142-1, 204 and 570], which explain in detail the Debtor's precarious financial circumstances, the requirement for DIP Financing, the efforts to sell Gardens' assets and the sale to Strategic. The Debtor requests that the Court take judicial notice of all documents filed with the Court in this Case.

**PLEASE TAKE FURTHER NOTICE** that the Debtor requests that the Court permit any opposition or objection to the Motion to be presented at any time before or at the hearing regarding the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Debtor will serve this Notice and Motion, the attached Memorandum Of Points And Authorities, and the Declaration of Eric Weissman on (1) the Office of the United States Trustee, (2) counsel for the Creditors Committee, (3) the Attorney General for the State of California, (4) the United States Attorney, (5) the Prepetition Secured Creditors, (6) counsel for Strategic and (7) those parties (or their counsel) who have expressed in the last sixty days a serious interest in acquiring Garden's assets (which include Promise Healthcare of East Los Angeles, L.P., Le Summit Healthcare, Harbor Gardens Capital 1, LLC, Silverpoint Capital and Verity Health System). To the extent necessary, the Debtor requests that the Court waive compliance with Local Bankruptcy Rule 9075-1(a)(6) and approve service (in addition to the means of services set forth in such Local Bankruptcy Rule) by overnight delivery. In the event that the Court sets a hearing on the Motion, the Debtor shall

- 3 -

102283180\V-1

1  provide notice of the entry of the Order setting a hearing date upon each of the foregoing parties
2  and any other parties in interest as the Court directs, including by telephone notice. The Debtor
3  submits that such notice is sufficient and that no other or further notice be given.
4      **WHEREFORE**, for all the foregoing reasons, and such additional reasons as may be
5  advanced at or prior to the hearing regarding this Motion, the Debtor respectfully requests that the
6  Court enter an Order authorizing the closure of the Hospital.

8  Dated: January 17, 2017          DENTONS US LLP
                                          SAMUEL R. MAIZEL
9                                            JOHN A. MOE, II

11                                          By____/s/ Samuel R. Maizel_____
                                                   SAMUEL R. MAIZEL
12
                                          Attorneys for Gardens Regional Hospital and
13                                            Medical Center, Inc.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

102283180\V-1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

**A.    The Bankruptcy**

Gardens filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code on June 6, 2016, in the United States Bankruptcy Court for the Central District of California, Los Angeles District ("Bankruptcy Court"), Case No. 2:16-bk-17463-ER.

**B.    Sale of the Hospital at Auction**

In connection with the bankruptcy, Gardens proceeded with an auction, selling virtually all of its assets to Strategic.

More specifically, on July 1, 2016, the Gardens filed its *Notice of Motion and Motion of the Debtor and Debtor-in-Possession Pursuant to Section 105(A), 363, and 365 of the Bankruptcy Code for an Order (I) (A) Approving Procedures in Connection with the Sale of Certain of the Debtor's Assets; (B) Scheduling the Related Auction and Hearing to Consider Approval of Sale; (C) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (D) Approving the Form and Manner of Notice Thereof; (E) Approving Break-Up Fees; and (F) Granting Related Relief; and (II) (A) Authorizing the Sale of Certain of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* (the "Sale Motion") [Docket No. 142].

The Court issued a tentative ruling on July 5, 2016 [Docket No. 147], approving the Sale Motion, subsequent to which the Court entered its *Order (A) Approving Procedures in Connection with the Sale of Certain of the Debtor's Assets; (B) Scheduling the Related Auction and Hearing to Consider Approval of Sale; (C) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (D) Approving the Form and Manner of*

/ / /

/ / /

/ / /

*Notice Thereof; (E) Approving Break-Up Fees; and (F) Granting Related Relief* [Docket No. 153].[1]

The Debtor conducted an auction over a four-day period, completing the auction on July 19th, with a sale of virtually all of the Debtor's assets to Strategic.

The Court subsequently entered an *Order (A) Authorizing the Sale of Substantially All of the Debtor's Assets Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code to Strategic Global Management, Inc., Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases Relating Thereto and (c) Granting Related Relief* [Docket No. 256].

### C. The Winning Bid at Auction

The components of Strategic's winning bid[2], in terms of acquiring the Garden's assets, were (i) payment of approximately $8 million in cash at closing, which, among other things, provides sufficient funds to pay all prepetition secured creditors who claim to have a security interest in the accounts receivable in full at closing, as well as to cure all payments required with regard to various leases, pay a cure amount to the United States and the State of California to facilitate the transfer of the Gardens' Medicare and Medi-Cal Provider Agreements and to pay any obligations of the Gardens with regard to Paid Time Off to its employees; (ii) providing the estate with five promissory notes in the amount of $1 million each, payable on December 31, 2018, 2019, 2020, 2021, and 2022 respectively; (iii) paying to the Estate up to $4 million of collections on the first $7 million of accounts receivables which exist on the closing date and are being purchased by Strategic; and (iv) paying all the "cure" costs associated with any executory contracts which Strategic designates to have assumed by the Debtor and assigned to it.

---

[1] Because the auction took four days to complete, the Court entered three additional Orders [Docket Nos. 164, 189 and 194] rescheduling dates including the date by which the auction would be completed (11:00 p.m. on July 19th), the date for a Report to the Court (July 20th), the date and time for any Opposition (4:00 p.m. on July 22nd) and the date and time for the hearing (10:00 a.m. on July 26th).

[2] Strategic's bid included a provision that its affiliate, KPC Global Management, LLC ("KPC Global"), would promptly enter into an Interim Management Agreement for to provide management services for the Debtor, which KPC Global did.

Additionally, Strategic agreed to many non-monetary factors in its winning bid, including: (a) agreeing not to purchase certain causes of action the sale of which the Committee had opposed; (b) keeping the hospital in operation, including keeping an Emergency Department operational; (c) retaining more than 50% of Debtor's employees; (v) maintaining the existing collective bargaining agreement; and (vi) confirming that it did not require additional consents from third parties to close the transaction, other than government regulatory authorities. The net value to the estate of this bid is at least $19.5 million.

D.  **Assignment of Strategic's Rights to KPC Gardens Medical Center, Inc.**

As permitted pursuant to Section 13.2 of the Strategic APA, Strategic has assigned all of its rights, and delegating all of its duties, pursuant to the Strategic APA to KPC, which was formed as an affiliate of Strategic for purposes of this acquisition and post-closing operation of the Hospital, with management support from KPC Global.

E.  **Attorney General Conditional Approval And KPC's Decision Not To Proceed**

The California Attorney General had to approve the transfer of Gardens to KPC.

In order to obtain that approval, the Debtor, through its counsel, submitted more than 5000 pages of information and documents to the Attorney General.

On November 18, 2016, the Attorney General approved the sale. A copy of the AG's approval letter is attached as Exhibit "A."

Unfortunately, the conditions imposed by the AG, specifically the requirements for Charity Care and payment of a HQAF obligation, dramatically impact the ability of the purchaser to operate the Hospital at "break even," let alone profitably.

    1.  **The Charity Care Condition**

The AG imposed Condition IV requiring that KPC provide, over the next six years, a level of Charity Care $1,750,000 per year more than the Charity Care provided by Gardens in 2015, and $2,100,000 per year more than the Charity Care provided by Gardens in 2016.

Worse, the amount of Charity Care increases each year (*despite the fact the amount of Charity Care provided by Gardens over the past six years has decreased each year*):

///

102283180\V-1

And, despite the fact it is not possible to find patients to which Gardens could give Charity Care at the level required by the Attorney General, the AG requires that a payment or payments be issued each year to a charity (not necessarily having anything to do with the Hospital) equal to any shortfall, to a tax exempt entity.

### 2. The HQAF Condition

The Attorney General also imposed Condition XIV, which requires Strategic to (a) participate in the HQAF by "assuming all known and unknown monetary obligations under the Medi-Cal program" owed by the Debtor, and (b) sign a Financial Responsibility Agreement with the State, which also imposes successor liability on Strategic. [*See*, AG Approval Letter, Condition XIV, at 7, Conditions to Approval of Sale, attached as Exhibit "A."] This imposes an obligation of at least $2.4 million on KPC.

### 3. KPC's Decision To Terminate Its Offer

Collectively the Charity Care and HQAF conditions added approximately $13 million more to the cost of the acquisition by Strategic.

As explained in the attached Declaration Of Eric Weissman, the Debtor has asked the Attorney General to amend its decision, as to the amount of Charity Care, on the basis that KPC could then complete the purchase, which the Attorney General's Office has twice refused in letters dated December 16, 2016, and January 11, 2017, copies of which are attached as Exhibits "B" and "C.".

Therefore, in accordance with its rights under the Asset Purchase Agreement, KPC has informed the Debtor that it is not willing to proceed with the purchase transaction on terms imposed by the Attorney General, as set forth in KPC's notice of termination attached as Exhibit "D."

### G. The Debtor's Decision to Close the Hospital

On December 15, 2016, the Court held a hearing on the *Emergency Motion of Debtor to Amend Existing DIP Financing Order* [Docket No. 570], during which the Court approved additional debtor in possession financing needed by the Debtor to continue its operations pending the closing of the sale.

At the December 15th hearing, the Debtor, through counsel, informed the Court that, if Gardens could not come to terms with KPC regarding new terms of the sale in light of the position taken by the Attorney General, the Debtor would run out of operating funds and be forced to close the Hospital. Because the Debtor could not effectuate a reduction by the Attorney General in the Charity Care requirement (despite two attempts to do so) and because the Debtor could not come to terms with KPC on a new arrangement, the Debtor has determined in its bests business judgment to close the Hospital and proceed with a private sale of the closed Hospital, on which the Debtor will expeditiously seek this Court's approval by way of an additional Emergency Motion.

## II.

## THE DEBTOR SHOULD BE PERMITTED
## TO WIND DOWN ITS OPERATIONS AND CLOSE

Arguably, the decision to wind down a debtor's business is a transaction outside the ordinary course of business for which court approval in accordance with section 363(b) of the Bankruptcy Code is required. Section 363(b) provides, in relevant part, that a debtor "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . .". 11 U.S.C. § 363(b).

In reviewing a debtor's decision to use estate property pursuant to section 363 of the Bankruptcy Code, courts have routinely held that if such use represents reasonable business judgment on the part of the debtor, such use should be approved. *See In re Lionel Corp.*, 722 F.2d 1063, 1070-71 (2d Cir. 1983) (requiring a "good business reason" to approve a transaction under section 363). "Ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection." *In re Lahijani*, 325 B.R. 282, 289 (9th Cir. B.A.P. 2005).

Courts emphasize that the business judgment rule is not an onerous standard and may be satisfied "as long as the proposed transaction appears to enhance the debtor's estate." *In re Food Barn Stores, Inc.*, 107 F.3d 558, 566 n.16 (8th Cir. 1997); *accord In re AbitibiBowater*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (the business judgment standard is "not a difficult standard to

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

satisfy"). Under the business judgment rule, "management of a corporation's affairs is placed in the hands of its board of directors and officers, and the Court should interfere with their decisions only if it is made clear that those decisions are, *inter alia*, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code." *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (citing *In re United Artists Theatre Co.*, 315 F.3d 217, 233 (3d Cir. 2003); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (9th Cir. B.A.P. 1992)).

Here, the Debtor has determined in its business judgment that it is prudent to shut down operations at the Hospital. The Debtor has limited cash and cannot continue operations. To the extent the Debtor receives a *bona fide* offer to acquire its assets as a going concern prior to the hearing on this Motion that the Debtor reasonably believes in good can be timely consummated, the Debtor will withdraw this Motion. Absent such an offer, however, the Debtor has determined that it is in the best interests of its estate and creditors to cease operations and focus on a safe and orderly wind-down.

As already noted, the Debtor is working diligently to complete an agreement for a private sale of the closed Hospital, on which the Debtor will file an Emergency Motion as soon as an agreement can be reached.

///
///
///
///
///
///
///
///
///

102283180\V-1

# III.

# CONCLUSION

For all the reasons set forth herein, the Debtor requests the Court's approval to commence the closure of the Hospital.

Dated: January 17, 2017

DENTONS US LLP
SAMUEL R. MAIZEL
JOHN A. MOE, II

By    /s/John A. Moe, II
　　　JOHN A. MOE, II

Attorneys for Gardens Regional Hospital and Medical Center. Inc.

- 11 -

102283180\V-1

# DECLARATION OF ERIC WEISSMAN

I, Eric Weissman, declare:

1. I am President of Wilshire Pacific Capital Advisors, LLC ("WPCA"), located at 8447 Wilshire Boulevard, Suite 202, Beverly Hills, California 90211. WPCA was formerly known as London & Pacific Capital Advisors, and it has been in operation since May 2006. In this capacity I have advised numerous hospitals, health plans, healthcare IT companies, physician groups, medical service organizations, surgery centers, skilled nursing facilities, clinics and other entities in the healthcare industry on financing, raising capital, and restructuring debts. Previously, I served as a Senior Associate for Mergers & Acquisitions for Huntington Securities LLC, as a Partner for Mergers & Acquisitions for Phoenix Group LLP, and an Associate for Tax Mergers and Acquisitions for PricewaterhouseCoopers. Altogether, I have been advising healthcare entities on issues broadly related to mergers and acquisitions and financing for more than 17 years. I have a J.D. from William and Mary School of Law (1999), and an A.B. from the Department of Economics at Princeton University (1996). I have FINRA Series 7, Series 24, Series 63, Series 79 licenses, and I am an associate member of the Virginia State Bar.

2. My firm was retained by Gardens Regional Hospital and Medical Center, Inc., dba Gardens Regional Hospital Medical Center (the "Debtor" or "Gardens") to serve as its investment banker with regards to efforts to sell Gardens' assets and to raise capital.

3. As this Court is aware, the Debtor filed for protection under Chapter 11 of the United States Bankruptcy Code on June 6, 2016.

4. I have previously prepared, executed and had filed a Declaration [Docket No. 23] in support of the Debtor's First Day Motions that explained the background and reasoning as to why Gardens filed for protection under Chapter 11, including the Debtor's precarious financial condition [Docket No. 23], a Declaration [Docket No. 92-5], in support of debtor-in-possession financing a Declarations [Docket Nos. 142-1 & 204], regarding the process and sale of Gardens' assets to Strategic Global Management, Inc. ("Strategic"), and a Declaration [Docket No. 570] the need for additional debtor-in-possession financial.

102283180\V-1

5.  As explained in my previously filed Declarations [Docket #s 142-1 and 204], I was one of the persons primarily responsible for the auction that took place in July, 2016, at which Gardens' assets were sold to Strategic.

6.  More specifically, the Debtor, pursuant to the Court's Orders, conducted an auction commencing on July 13, 2016, and concluding on July 19, 2016. The winning bid at the conclusion of the auction was from Strategic at approximately $19.5 million (the "Strategic Bid"). In addition, the Strategic Bid provided for the continuation of the Hospital's medical services, including its Emergency Department, for the community, continued employment for at least one-half of its employees, and for the transfer of the Debtor's Medicare and Medi-Cal Provider Agreements to Strategic. The terms of the offer are set forth in the Motion to which this Declaration is attached.

7.  The State has alleged that the Debtor owes at least $2.4 million to the State related to the HQAF. However, the Debtor scheduled a disputed claim on behalf of the State for the Medi-Cal program in its schedule of unsecured creditors [Docket No. 157-1, at 92] in the amount of $679,382.22. Subsequently, I am informed and believe that the State timely filed a claim against the Debtor, assigned Claim Number 278-1, asserting a claim in an "undetermined" amount. The sole basis asserted for Claim Number 278-1 was described as "Overpayment of Medi-Cal (Medicaid) program reimbursement payments for fiscal years ending December 31, 2014, -2015, and - 2016." Thus, it is my understanding that no claim was scheduled or filed on behalf of the State for the amounts allegedly owed for the HQAF Fees. The bar date applicable to the State has passed.

8.  Following the auction, the Debtor, through its counsel, submitted more than 5000 pages of material to the Attorney General asking for her consent in connection with the sale to Strategic.

9.  On November 18, 2016, the Attorney General delivered a letter granting her consent to the sale of the Hospital to Strategic (the "AG Approval Letter"). A copy of the AG Approval Letter is attached to the Motion and this Declaration as Exhibit "A." The AG Approval Letter set forth certain conditions imposed on Strategic.

102283180\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

10. One condition imposed by the Attorney General is that Strategic provide approximately $2.25 million in Charity Care levels for six years following the Sale. [*See*, AG Approval Letter, Condition IV, at 4, Conditions to Approval of Sale, attached as Exhibit "A."]

11. The Attorney General also imposed Condition XIV, which requires Strategic to (a) participate in the HQAF by "assuming all known and unknown monetary obligations under the Medi-Cal program" owed by the Debtor, and (b) sign a Financial Responsibility Agreement with the State, which also imposes successor liability on Strategic. [*See,* AG Approval Letter, Condition XIV, at 7, Conditions to Approval of Sale, attached as Exhibit "A."]

12. Collectively, the requirement for Charity Care and imposition of HQAF fees added approximately $13 million to the cost of the acquisition by Strategic.

13. The Debtor, its counsel, and representatives of Strategic and the SEIU-UHW and SEIU 121RN unions met with representatives of the Attorney General in Sacramento on Monday, December 5, 2016, and asked for reconsideration of the Charitable Care Condition. That request was denied by the Attorney General in a letter dated December 16, 2016, a copy of which is attached as Exhibit "B."

14. After intense negotiations with Strategic, on January 9, 2017 the Debtor proposed a changed transaction that would keep the hospital open and would comply with the HQAF Condition and pay the State at least $2.4 million, but required the Attorney General to reduce the Charitable Care Condition to $500,000 annually. On January 11, 2017 the AG sent a letter, a copy of which is attached as Exhibit "C," again denying the request, this time with the assertion that she (the Attorney General who issued the Conditions) lacked the authority to change the Conditions she had imposed.

15. KPC sent to Gardens a notice of termination on January 6, 2017, a copy of which is attached as Exhibit "D."

16. The Hospital is in serious financial and operational decline. First, its daily patient census continues to hover between 20 and 30 patients daily. Second, because of statutory nurse staffing ratios, the Debtor is compelled to maintain staffing ratios which are greatly more than it can afford. In early December, 2016, the Debtor conducted a significant reduction in force,

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

102283180\V-1

letting go more than 50 employees, but the Debtor is a short term acute care hospital and still employs more than 240 people. For this, and other reasons, the "burn rate" of the hospital is significant.

17. I estimate that to maintain sufficient cash to properly close the Hospital and transfer its patients, it will have to cease operations no later than January 20, 2017.

18. In summary:

- Strategic is unable to proceed with the purchase under the conditions imposed by the Attorney General.
- The Debtor has made two attempts with the Office of the Attorney General to reverse such decision, both of which failed.

19. I have had continuing discussions with prospective purchasers, regarding the possibility of their purchasing Gardens' assets, in an open and a closed scenario, including additional discussions with Strategic, Promise Healthcare of East Los Angeles, L.P., Le Summit Healthcare, Silverpoint Capital and Verity Health System. If the Hospital closes, I will pursue and I believe complete a sale of the closed Hospital.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 17th day of January 2017, at Los Angeles, California.

               /s/ Eric Weissman
               ERIC WEISSMAN

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 15 -

102283180\V-1