# EXHIBIT A

**KAMALA D. HARRIS**
*Attorney General*



*State of California*
**DEPARTMENT OF JUSTICE**

300 SOUTH SPRING STREET, SUITE 1702
LOS ANGELES, CA 90013

Public: (213) 897-2000
Telephone: (213) 897-2178
Facsimile: (213) 897-7605
E-Mail: wendi.horwitz@doj.ca.gov

November 18, 2016

**_Sent by Internet and U.S. Mail_**
Khoi Ta, Esq.
Dentons US LLP
One Market Plaza
Spear Tower, 24th Floor
San Francisco, CA 94105

RE:    <u>Proposed Sale of Gardens Regional Hospital and Medical Center</u>

Dear Mr. Ta:

Pursuant to Corporations Code section 5914 *et seq.*, the Attorney General hereby conditionally consents to the proposed sale of substantially all of the assets of Gardens Regional Hospital and Medical Center, Inc. pursuant to the terms of the Asset Purchase Agreement entered into with Strategic Global Management, Inc. Corporations Code section 5917, and California Code of Regulations, title 11, section 999.5, subdivision (f), set forth factors that the Attorney General shall consider in determining whether to consent to a proposed transaction between a nonprofit corporation and a for-profit corporation. The Attorney General has considered such factors and consents to the proposed transaction subject to the attached conditions that are incorporated by reference herein.

Thank you for your cooperation throughout the review process.

Sincerely,

WENDI A. HORWITZ
Deputy Attorney General

For    KAMALA D. HARRIS
Attorney General

Attachment
cc: Todd E. Swanson, Esq.

**Conditions to Approval of the Sale of Substantially All of the Assets of Gardens Regional Hospital and Medical Center, Inc. and the Asset Purchase Agreement by and among Gardens Regional Hospital and Medical Center, Inc. and Strategic Global Management, Inc.**

## I.

For the purposes of these conditions, and unless the context indicates otherwise, the term "Purchaser" shall mean Strategic Global Management, Inc., a California corporation, KPC Global Management, LLC, a California limited liability company, KPC Gardens Medical Center, Inc., a California corporation, any other subsidiary, parent, general partner, limited partner, member, affiliate, successor, successor in interest, assignee, or person or entity serving in a similar capacity of any of the above-listed entities, any entity succeeding thereto as a result of consolidation, affiliation, merger, or acquisition of all or substantially all of the assets of Gardens Regional Hospital and Medical Center Inc., any and all current and future managers, lessees, licensees, or operators of Gardens Regional Hospital and Medical Center[1], and any and all current and future lessees of the real property on which Gardens Regional Hospital and Medical Center is located. These Conditions shall be legally binding on the Purchaser.

For the purposes of these conditions, and unless the context indicates otherwise, the term "Seller" Gardens Regional Hospital and Medical Center, Inc. doing business as Gardens Regional Hospital and Medical Center, a California nonprofit public benefit corporation. These Conditions shall be legally binding on the Seller.

## II.

The transaction approved by the Attorney General consists of the following agreements and any agreements or documents referenced in or attached to as an exhibit or schedule to the following agreements:

1) Asset Purchase Agreement dated July 25, 2016;
2) Interim Management Agreement dated July 25, 2016;
3) Agreement for Purchase and Sale of Debtor-In-Possession Credit and Security Agreement dated August 5, 2016;
4) Assignment and Assumption of Loan dated August 5, 2016
5) Assignment and Assumption of Asset Purchase Agreement dated August 15, 2016;
6) First Amendment to Asset Purchase Agreement;
7) Interim Leaseback Agreement;
8) Post-Closing Interim Management and Lease Agreement;

---

[1] Throughout this document, the term "Gardens Regional Hospital and Medical Center" shall mean the general acute care hospital located at 21530 South Pioneer Boulevard in Hawaiian Gardens, CA 90716-2608, and any other clinics, laboratories, units, services, or beds included on the license issued to Gardens Regional Hospital and Medical Center by the California Department of Public Health, effective March 13, 2016, unless otherwise indicated.

1

9)  Billing and Collection Services Agreement;

10) Security Agreement; and

11-14) Five Secured Promissory Notes with maturity dates of December 31, 2018, December 31, 2019, December 31, 2019, December 31, 2020, and December 31, 2021.

The Purchaser and the Seller and any other parties referenced in the above agreements shall fulfill the terms of these agreements or documents and shall notify and obtain the Attorney General's approval in writing of any proposed modification or rescission of any of the terms of these agreements or documents.  Such notifications shall be provided at least sixty days prior to their closing date in order to allow the Attorney General to consider whether they affect the factors set forth in Corporations Code section 5917 and obtain the Attorney General's approval.

## III.

For five years from the closing date of the Asset Purchase Agreement[2], Gardens Regional Hospital and Medical Center, and all future owners, managers, lessees, licensees, or operators of Gardens Regional Hospital and Medical Center shall be required to provide written notice to the Attorney General sixty days prior to entering into any agreement or transaction to do any of the following:

(a) Sell, transfer, lease, exchange, option, convey, manage, or otherwise dispose of substantially all of the assets of Gardens Regional Hospital and Medical Center;

(b) Transfer control, responsibility, management, or governance of Gardens Regional Hospital and Medical Center.  The substitution or addition of a new corporate member or members of Gardens Regional Hospital and Medical Center or KPC Gardens Medical Center, Inc. that transfers the control of, responsibility for or governance of Gardens Regional Hospital and Medical Center, shall be deemed a transfer for purposes of this Condition.  The substitution or addition of one or more members of the governing body of Gardens Regional Hospital and Medical Center or KPC Gardens Medical Center, Inc., or any arrangement, written or oral, that would transfer voting control of the members of the governing body of Gardens Regional Hospital and Medical Center or KPC Gardens Medical Center, Inc., shall also be deemed a transfer for purposes of this Condition.

---

[2] As set forth in the First Amendment to the Asset Purchase Agreement, there are two stages to the closing.  Unless otherwise stated, the term "closing date" in these conditions shall mean the date of the "Initial Closing" as defined in section 1.1 of the First Amendment to the Asset Purchase Agreement (i.e., the closing on the sale of all acquired assets other than those assets used exclusively in support of pharmacy operations at Gardens Regional Hospital and Medical Center).

## IV.

For five years from the closing date of the Asset Purchase Agreement, Gardens Regional Hospital and Medical Center shall be operated and maintained as a licensed general acute care hospital (as defined in California Health and Safety Code Section 1250) and shall maintain and provide the following health care services at current[3] licensure, types, and/or levels of services:

 a. Twenty-four hour emergency medical services, including a minimum of 8 emergency beds/stations; and

 b. Intensive care/critical care services, including a minimum of 8 intensive care/coronary care beds.

Gardens Regional Hospital and Medical Center shall not place all or any portion of its above-listed licensed-bed capacity or services in voluntary suspension or surrender its license for any of these beds or services.

## V.

For five years from the closing date of the Asset Purchase Agreement, Gardens Regional Hospital and Medical Center shall:

a) Be certified to participate in the Medi-Cal program;

b) Maintain and have Medi-Cal Managed Care contracts with the below listed Medi-Cal Managed Care Plans to provide the same types and levels of emergency and non-emergency services at Gardens Regional Hospital and Medical Center to Medi-Cal beneficiaries (both Traditional Medi-Cal and Medi-Cal Managed Care) as required in these Conditions, on the same terms and conditions as other similarly-situated hospitals offering substantially the same services, without any loss, interruption of service or diminution in quality, or gap in contracted hospital coverage, unless the contract is terminated for cause:

 i) Local Initiative Plan: LA Care Health Plan or its successor; and
 ii) Commercial Plan: Anthem Blue Cross of California or its successor.

c) Be certified to participate in the Medicare program by maintaining a Medicare Provider Number to provide the same types and levels of emergency and non-emergency services at Gardens Regional Hospital and Medical Center to Medicare beneficiaries (both Traditional Medicare and Medicare Managed Care) as required in these Conditions.

---

[3] The term "current" or "currently" throughout this document means as of January 1, 2016.

3

## VI.

For six fiscal years from the closing date of the Asset Purchase Agreement, Gardens Regional Hospital and Medical Center shall provide an annual amount of Charity Care (as defined below) at Gardens Regional Hospital and Medical Center equal to or greater than $2,250,178 (the Minimum Charity Care Amount). For purposes hereof, the term "charity care" shall mean the amount of charity care costs (not charges) incurred by Gardens Regional Hospital and Medical Center in connection with the operation and provision of services at Gardens Regional Hospital and Medical Center. The definition and methodology for calculating "charity care" and the methodology for calculating "costs" shall be the same as that used by Office of Statewide Health Planning Development (OSHPD) for annual hospital reporting purposes.[4] Gardens Regional Hospital and Medical Center shall use and maintain a charity care policy that is no less favorable than its current charity care policy and in compliance with California and Federal law. The planning of, and any subsequent changes to, the charity care and collection policies, and charity care services provided at Gardens Regional Hospital and Medical Center shall be decided by the Gardens Regional Hospital and Medical Center Board of Directors after consultation with the Local Governing Board of Directors as set forth in Condition IX.

Gardens Regional Hospital and Medical Center's obligation under this Condition shall be prorated on a daily basis if the closing date of the Asset Purchase Agreement is a date other than the first day of Gardens Regional Hospital and Medical Center's fiscal year.

For the second fiscal year and each subsequent fiscal year, the Minimum Charity Care Amount shall be increased (but not decreased) by an amount equal to the Annual Percent increase, if any, in the 12 Months Percent Change: All Items Consumer Price Index for All Urban Consumers in the Los Angeles-Riverside-Orange County Consolidated Metropolitan Statistical Area Base Period: 1982-84=100" (CPI-LA, as published by the U.S. Bureau of Labor Statistics).

If the actual amount of charity care provided at Gardens Regional Hospital and Medical Center for any fiscal year is less than the Minimum Charity Care Amount (as adjusted pursuant to the above-referenced Consumer Price Index) required for such fiscal year, the Purchaser shall pay an amount equal to the deficiency to one or more tax-exempt entities that provide direct health care services to residents in Gardens Regional Hospital and Medical Center's primary service area (17 ZIP codes), as defined on page 33 of the Health Care Impact Report, dated October 7, 2016, and attached hereto as Exhibit 1. Such payment(s) shall be made within four months following the end of such fiscal year.

---

[4] OSHPD defines charity care by contrasting charity care and bad debt. According to OSHPD, "the determination of what is classified as . . . charity care can be made by establishing whether or not the patient has the ability to pay. The patient's accounts receivable must be written off as bad debt if the patient has the ability but is unwilling to pay off the account."

## VII.

For six fiscal years from the closing date of the Asset Purchase Agreement, Gardens Regional Hospital and Medical Center shall provide an annual amount of Community Benefit Services at Gardens Regional Hospital and Medical Center equal to or greater than $859,882 (the "Minimum Community Benefit Services Amount") exclusive of any funds from grants.

The planning of, and any subsequent changes to, the community benefit services provided at Gardens Regional Hospital and Medical Center shall be decided upon by the Gardens Regional Hospital and Medical Center's Board of Directors after consultation with the Local Governing Board of Directors as set forth in Condition IX.

Gardens Regional Hospital and Medical Center's obligation under this Condition shall be prorated on a daily basis if the closing date of the Asset Purchase Agreement is a date other than the first day of Gardens Regional Hospital and Medical Center's fiscal year.

For the second fiscal year and each subsequent fiscal year, the Minimum Community Benefit Services Amount shall be increased (but not decreased) by an amount equal to the Annual Percent increase, if any, in the 12 Months Percent Change: All Items Consumer Price Index for All Urban Consumers in the Los Angeles-Riverside-Orange County Consolidated Metropolitan Statistical Area Base Period: 1982-84=100" (CPI-LA, as published by the U.S. Bureau of Labor Statistics).

If the actual amount of community benefit services provided at Gardens Regional Hospital and Medical Center for any fiscal year is less than the Minimum Community Benefit Services Amount (as adjusted pursuant to the above-referenced Consumer Price Index) required for such fiscal year, the Purchaser shall pay an amount equal to the deficiency to one or more tax-exempt entities that provide community benefit services for residents in Gardens Regional Hospital and Medical Center's primary service area (17 ZIP codes), as defined on page 33 of the Health Care Impact Report, dated October 7, 2016, and attached hereto as Exhibit 1. Such payment shall be made within four months following the end of such fiscal year.

## VIII.

For at least five years from the closing date of the Asset Purchase Agreement, Gardens Regional Hospital and Medical Center shall maintain its Hospital Preparedness Program Agreement and its Confidential Data Use Agreement and any amendments and exhibits thereto with the County of Los Angeles.

## IX.

For five years from the closing date of the Asset Purchase Agreement, Gardens Regional Hospital and Medical Center shall have a Local Governing Board of Directors. Gardens Regional Hospital and Medical Center's Board of Directors shall consult with the Local Governing Board of Directors prior to making changes to medical services, community benefit programs, making changes to the charity care and collection policies, making changes to the

"Homeless Discharge Planning Policy" attached as Exhibit 2, and making changes to charity care services provided at Gardens Regional Hospital and Medical Center. The members of the Local Governing Board shall include physicians from Gardens Regional Hospital and Medical Center's medical staff, Gardens Regional Hospital and Medical Center's Chief of Staff, and community representatives from Gardens Regional Hospital and Medical Center's primary service area (17 ZIP codes), as defined on page 33 of the Health Care Impact Report, dated October 7, 2016, and attached hereto as Exhibit 1, including at least one member from a local healthcare advocacy group. Such consultation shall occur at least sixty days prior to the Closing Date of such changes or actions unless done so on an emergency basis. The Local Governing Board's approval is required of all reports submitted to the Attorney General regarding compliance with these Conditions.

## X.

Prior to the closing date of the Asset Purchase Agreement, the Seller shall submit a complete nonstructural evaluation and list of all nonstructural deficiencies to achieve NPC 5 to the California Office of Statewide Health Planning and Development as required under Title 24, California Code of Regulations, Part 1, 2013 California Administrative Code, Chapter 6, Section 11.01, Item 4.

## XI.

Within one year of the closing date of the Asset Purchase Agreement, Gardens Regional Hospital and Medical Center shall obtain NPC-2 Compliance Status from OSHPD under the Alfred E. Alquist Hospital Facilities Seismic Safety Act of 1983, as amended by the California Hospital Facilities Seismic Safety Act, (Health & Saf. Code, § 129675-130070).

## XII.

Gardens Regional Hospital and Medical Center shall maintain privileges for current medical staff who are in good standing as of the closing date of the Asset Purchase Agreement and shall not change the medical staff officers, committee chairs, or independence of the Gardens Regional Hospital and Medical Center's medical staff, and such persons shall remain in good standing for the remainder of their tenure.

## XIII.

Within 3 months of the closing date of the Asset Purchase Agreement, Gardens Regional Hospital and Medical Center shall amend its current "Homeless Discharge Planning Policy" (attached as Exhibit 2) to require that Gardens Regional Hospital and Medical Center comply with Federal and California laws regarding discharge planning of homeless patients and to include the following language:

> Under no circumstances shall a homeless patient be dropped off or discharged to a facility (i.e., board and care) or home if there is no one present to accept the patient. Under no circumstances shall a homeless patient be dropped off or discharged to a shelter without first making sure the patient meets the shelter's

6

criteria for acceptance and without first making prior arrangements with that shelter to accept the patient.

Once amended, Gardens Regional Hospital and Medical Center shall keep this "Homeless Discharge Planning Policy" for at least five years from the closing date of the Asset Purchase Agreement. Any changes to this policy must be approved by the Attorney General after sixty days notice has been given to the Attorney General and at least ninety days before any changes become effective.

## XIV.

Upon the closing date of the Asset Purchase Agreement, Gardens Regional Hospital and Medical Center is required to participate in the Hospital Quality Assurance Fee Program (HQAF), the Purchaser shall comply with the HQAF provider bulletins dated August 26, 2014 and May 13, 2016 (located at http://www.dhcs.ca.gov/provgovpart/Pages/HQAF.aspx) by assuming all known and unknown monetary obligations under the Medi-Cal program owed by Seller to the California Department of Health Care Services, and the Purchaser shall timely complete and send the Financial Responsibility Agreement (also located at http://www.dhcs.ca.gov/ provgovpart/ Pages/HQAF.aspx) to the California Department of Health Care Services.

## XV.

Seller shall request that the bankruptcy court designate the California Community Foundation as a beneficiary of all net proceeds from the transaction and any charitable assets in its Chapter 11 Plan and to require as soon as practicable, but no more than two years after entry of an order closing the bankruptcy matter entitled *In re: GARDENS REGIONAL HOSPITAL AND MEDICAL CENTER, INC., dba GARDENS REGIONAL HOSPITAL AND MEDICAL CENTER* (U.S. Bankruptcy Court, Central District, Los Angeles Division Case No. 2:16-bk-17463-ER), the Liquidating Trustee of the Gardens Regional Hospital and Medical Center Liquidation Trust or any other representative collecting funds and paying creditors on behalf of the Seller shall transfer all net proceeds from the transaction and any charitable assets to the California Community Foundation to be handled as set forth below.

a) The funds from Gardens Regional Hospital and Medical Center, if not previously restricted to support a specific charitable organization, will be deposited into the California Community Foundation's Gardens Regional Hospital and Medical Center Fund, and used to support nonprofit tax-exempt charitable organizations, clinics and facilities in providing healthcare services to residents of Gardens Regional Hospital and Medical Center's primary service area (17 ZIP codes), as described on page 33 in the Healthcare Impact Report dated October 7, 2016. (Exhibit 1.) The donated funds shall be maintained and used for the purposes specified herein for a period of at least five years.

b) If there are funds from Gardens Regional Hospital and Medical Center previously restricted to support a specific charitable organization, such funds shall be deposited into a fund or funds at California Community Foundation restricted to continuing support for such charitable organization or organizations. Such funds are protected against obsolescence. If the purposes of

7

any restricted fund become unnecessary, incapable of fulfillment, or inconsistent with the charitable needs of the community served by California Community Foundation, California Community Foundation's Board of Directors shall have the ability to modify any restriction or condition on the use such fund.

c) Any surplus funds recovered because of any official investigation of Gardens Regional Hospital and Medical Center and its board of directors and officers, conducted by State, County, City, or Federal agency or department will be paid to the California Community Foundation as specified above.

## XVI.

For six fiscal years from the closing date of the Asset Purchase Agreement, Gardens Regional Hospital and Medical Center shall submit to the Attorney General, no later than four months after the conclusion of each fiscal year, a report describing in detail compliance with each Condition set forth herein. The Chairman of the Board of Directors of Gardens Regional Hospital and Medical Center and the Chief Executive Officer at Gardens Regional Hospital and Medical Center shall each certify that the report is true, accurate, and complete and provide documentation of the review and approval of the report by the Gardens Regional Hospital and Medical Center Board of Directors and the Local Governing Board.

## XVII.

At the request of the Attorney General, all the entities listed in Condition I shall provide such information as is reasonably necessary for the Attorney General to monitor compliance with these Conditions and the terms of the transaction as set forth herein. The Attorney General shall, at the request of a party and to the extent provided by law, keep confidential any information so produced to the extent that such information is a trade secret or is privileged under state or federal law, or if the private interest in maintaining confidentiality clearly outweighs the public interest in disclosure.

## XVIII.

Upon the closing date of the Asset Purchase Agreement, all the entities listed in Condition I and any other parties referenced in the agreements listed in Condition II are deemed to have explicitly and implicitly consented to the applicability and compliance with each and every Condition and to have waived any right to seek judicial relief with respect to each and every Condition.

The Attorney General reserves the right to enforce each and every Condition set forth herein to the fullest extent provided by law. In addition to any legal remedies the Attorney General may have, the Attorney General shall be entitled to specific performance, injunctive relief, and such other equitable remedies as a court may deem appropriate for breach of any of these Conditions. Pursuant to Government Code section 12598, the Attorney General's office shall also be entitled to recover its attorney fees and costs incurred in remedying each and every violation.

8

**EXHIBIT 1**

# Analysis of the Hospital's Service Area

## *Service Area Definition*

Based upon the Hospital's 2014 inpatient discharges, the Hospital's service area is comprised of both a primary and a secondary service area, as described in the table below.

| ZIP Codes | Community | Total Discharges | % of Discharges | Cumulative % of Discharges | Total Area Discharges | Market Share |
|---|---|---|---|---|---|---|
| | | | | GARDENS REGIONAL HOSPITAL & MEDICAL CENTER: PATIENT ORIGIN 2014 | | |
| 90650 | Norwalk | 313 | 8.9% | 8.9% | 11,201 | 2.8% |
| 90715 | Lakewood | 212 | 6.1% | 15.0% | 1,787 | 11.9% |
| 90716 | Hawaiian Gardens | 172 | 4.9% | 19.9% | 1,230 | 14.0% |
| 90701 | Artesia | 167 | 4.8% | 24.7% | 1,826 | 9.1% |
| 90706 | Bellflower | 152 | 4.3% | 29.0% | 7,311 | 2.1% |
| 90815 | Long Beach | 151 | 4.3% | 33.3% | 3,722 | 4.1% |
| 90703 | Cerritos | 123 | 3.5% | 36.8% | 4,249 | 2.9% |
| 90805 | Long Beach | 101 | 2.9% | 39.7% | 9,828 | 1.0% |
| 90242 | Downey | 87 | 2.5% | 42.2% | 4,034 | 2.2% |
| 90723 | Paramount | 70 | 2.0% | 44.2% | 5,023 | 1.4% |
| 90713 | Lakewood | 62 | 1.8% | 46.0% | 2,438 | 2.5% |
| 90808 | Long Beach | 42 | 1.2% | 47.2% | 3,586 | 1.2% |
| 90807 | Long Beach | 36 | 1.0% | 48.2% | 3,683 | 1.0% |
| 90630 | Cypress | 19 | 0.5% | 48.8% | 3,731 | 0.5% |
| 90712 | Lakewood | 16 | 0.5% | 49.2% | 2,780 | 0.6% |
| 90720 | Los Alamitos | 3 | 0.1% | 49.3% | 1,837 | 0.2% |
| 90623 | La Palma | 3 | 0.1% | 49.4% | 1,210 | 0.2% |
| Primary Service Area Total | | 1,729 | 49.4% | 49.4% | 69,476 | 2.5% |
| 90503 | Torrance | 143 | 4.1% | 53.5% | 4,371 | 3.3% |
| 90745 | Carson | 78 | 2.2% | 55.7% | 6,045 | 1.3% |
| 90201 | Bell | 69 | 2.0% | 57.7% | 7,683 | 0.9% |
| 90804 | Long Beach | 56 | 1.6% | 59.3% | 3,959 | 1.4% |
| 90262 | Lynwood | 50 | 1.4% | 60.7% | 6,570 | 0.8% |
| 90221 | Compton | 47 | 1.3% | 62.0% | 5,456 | 0.9% |
| 90813 | Long Beach | 45 | 1.3% | 63.3% | 7,670 | 0.6% |
| 90059 | Los Angeles | 37 | 1.1% | 64.4% | 5,005 | 0.7% |
| 90249 | Gardena | 31 | 0.9% | 65.3% | 2,801 | 1.1% |
| 90806 | Long Beach | 28 | 0.8% | 66.1% | 5,226 | 0.5% |
| 90620 | Buena Park | 27 | 0.8% | 66.8% | 4,796 | 0.6% |
| 90810 | Long Beach | 23 | 0.7% | 67.5% | 3,847 | 0.6% |
| 90220 | Compton | 23 | 0.7% | 68.2% | 5,955 | 0.4% |
| 90638 | La Mirada | 22 | 0.6% | 68.8% | 4,380 | 0.5% |
| 90247 | Gardena | 21 | 0.6% | 69.4% | 5,222 | 0.4% |
| 90802 | Long Beach | 20 | 0.6% | 70.0% | 4,816 | 0.4% |
| 90731 | San Pedro | 18 | 0.5% | 70.5% | 6,551 | 0.3% |
| 90744 | Wilmington | 18 | 0.5% | 71.0% | 4,854 | 0.4% |
| 90270 | Maywood | 17 | 0.5% | 71.5% | 2,349 | 0.7% |
| 90660 | Pico Rivera | 14 | 0.4% | 71.9% | 6,985 | 0.2% |
| 90280 | South Gate | 12 | 0.3% | 72.2% | 7,195 | 0.2% |
| 90621 | Buena Park | 11 | 0.3% | 72.5% | 2,760 | 0.4% |
| 90061 | Los Angeles | 11 | 0.3% | 72.8% | 3,349 | 0.3% |
| 90502 | Torrance | 10 | 0.3% | 73.1% | 1,863 | 0.5% |
| 90241 | Downey | 9 | 0.3% | 73.4% | 4,135 | 0.2% |
| 90501 | Torrance | 9 | 0.3% | 73.6% | 3,867 | 0.2% |
| 90240 | Downey | 9 | 0.3% | 73.9% | 1,920 | 0.5% |
| 90605 | Whittier | 7 | 0.2% | 74.1% | 4,007 | 0.2% |
| 90717 | Lomita | 6 | 0.2% | 74.3% | 2,241 | 0.3% |
| 90505 | Torrance | 6 | 0.2% | 74.4% | 3,516 | 0.2% |
| 90670 | Santa Fe Springs | 6 | 0.2% | 74.6% | 1,620 | 0.4% |
| 90222 | Compton | 5 | 0.1% | 74.8% | 3,583 | 0.1% |
| 90604 | Whittier | 4 | 0.1% | 74.9% | 3,718 | 0.1% |
| 90755 | Signal Hill | 3 | 0.1% | 75.0% | 1,085 | 0.3% |
| 90746 | Carson | 2 | 0.1% | 75.0% | 2,988 | 0.1% |
| Secondary Service Area Total | | 897 | 25.6% | 75.0% | 152,388 | 0.6% |
| Subtotal | | 2,626 | 75.0% | 75.0% | 221,864 | 1.2% |
| Other ZIPs | | 875 | 25.0% | 100% | | |
| Total | | 3,501 | 100% | | | |

Note: Excludes normal newborns

Source: OSHPD Patient Discharge Database



**EXHIBIT 2**

| | | Title: | Homeless Discharge Planning Policy |
|---|---|---|---|
| **GARDENS REGIONAL** | | Manual: | Hospital Wide |
| | | Scope: | |
| | | Issued By: | Aileen Tamares, CNO |
| Policy Number: | | Approved By: | Governing Board |
| Effective Date: | 06/16 | Governing Board Approval Date: | 06-16 |
| Page: | 1 of 10 | | |

## POLICY

It is the policy of Gardens Regional Hospital to manage the care of the homeless patient with the same dignity and compassion that all patients should expect to receive at Gardens Regional Hospital. Prior to discharge, an appropriate discharge plan for post-hospital medical care will be completed and clearly documented in the medical record. A list of resources for follow up care will be given as appropriate.

## PROCEDURE

A. Identifying Homeless Patients

    1. Registration staff, nursing staff, or other members of the health care team will seek to identify homeless patients as soon as possible upon arrival.

    2. A person is considered homeless only when he/she resides in one of the places described below:

        a. In places not meant for human habitation, such as cars, parks, sidewalks, abandoned buildings (on the street); or

        b. In an emergency shelter; or

        c. In transitional or supportive housing for homeless persons who originally came from the streets or emergency shelters.

        d. In any of the above places but is spending a short time (up to 30 consecutive days) in a hospital or other institution.

        e. Is being evicted within a week from a private dwelling unit or is fleeing a domestic violence situation with no subsequent residence identified and the person lacks the resources and support networks needed to obtain housing.

        f. Is being discharged within a week from an institution, such as a mental health or substance abuse treatment facility in which the person has been a resident for more than 30 consecutive days and no subsequent residence has been identified and the person lacks the financial resources and social support networks needed to obtain housing.

    3. Collaboratively Social Services and ER/Nursing Staff is responsible for maintaining a log of all homeless patients admitted to observation or to inpatient units. The log will be located on a common drive for all to access. Inpatient Case Manager and/or Social Worker will be notified that a homeless patient has been admitted to observation or an inpatient unit.

B. Belongings

    1. The Emergency Department/Admitting Nurse is responsible for documenting all belongings and valuables of the patient. It is important to note that the belongings of the homeless may represent the totality of their personal assets and therefore, extra care must be taken to secure and return these belongings upon discharge.

| | Title: | Homeless Discharge Planning Policy |
|---|---|---|
| **GARDENS REGIONAL** | Manual: | Hospital Wide |
| | Scope: | |
| | Issued By: | Aileen Tamares, CNO |
| **Policy Number:** | Approved By: | Governing Board |
| **Effective Date:** 06/16 | **Governing Board Approval Date:** | 06-16 |
| **Page:** 2 of 10 | | |

2.  The Emergency Department/Discharging Nurse is responsible for ensuring that the patient has appropriate clothing prior to discharge. If patient belongings do not include adequate clothing, the hospital will provide adequate, non-hospital labeled clothing to the patient. Contact the Nursing Supervisor for assistance to provide the patient with clothing.

C.  Mental Status

1.  Gardens Regional Hospital practitioners recognize that homeless patients may be at greater risk of mental illness or other conditions that affect cognitive intactness (cognitive intactness is defined as the absence of cognitive impairment that could interfere with the patient's ability to understand and make informed decisions about treatment options and to follow post-discharge care plans or to effectively negotiate the community in which he or she resides).

    a.  The Emergency Department/Admitting Registered Nurse is responsible for conducting an initial psychosocial assessment and documenting the findings in the medical record. The Nurse shall also review the findings of the assessment with the physician for agreement.

    b.  Upon request from the treating Nurse or Physician, a Social Worker consult will be arranged for all homeless patients who are seen in the Emergency Department or admitted to an inpatient or observation unit. The Social worker will conduct a psychosocial evaluation and reassess the patient's cognitive intactness. If patient is not deemed to be cognitively intact or there are any questions related to cognitive abilities, the Social Worker will notify the attending Physician. The Physician may request additional consults as needed to determine whether a patient is cognitively intact.

2.  Treating Physicians, Nurses, and (if requested) a Social Worker will evaluate and document the mental status of homeless patients during their clinical examinations or assessments over the course of the patient's hospital stay to determine whether the patient is cognitively intact. Based on such assessment, additional services or referrals may be clinically indicated depending on mental status, such as referrals for additional cognitive or neurological evaluation, inpatient mental health treatment, outpatient mental health referrals, assistive care, involuntary (Welfare & Institutions Code § 5150) holds, or conservatorship.

3.  When developing discharge plans, hospital Nursing Staff, Case Managers and/or Social Workers will evaluate and document the patient's cognitive intactness, including his/her understanding of and ability to implement the plan. The assessment of a patient's cognitive intactness will consider, and will be appropriate to, the patient's individual circumstances (e.g., the patient's living circumstances and available support system post-discharge) and the complexity of the discharge plan to be implemented, but considerations will include the patient's orientation to person, place, circumstance and time, his or her ability to provide self-care and the ability to secure needed follow-up medical care, food and emergency shelter.

4.  In the event a patient cannot be transported to the shelter as agreed upon with the Shelter Intake personnel, the patient will not be transported and alternative arrangements will be made including delaying the transport until appropriate arrangements can be made.

D.  Discharge Planning

| | Title: | Homeless Discharge Planning Policy |
|---|---|---|
| **GARDENS REGIONAL** | Manual: | Hospital Wide |
| HOSPITAL · MEDICAL CENTER | Scope: | |
| | Issued By: | Aileen Tamares, CNO |
| Policy Number: | Approved By: | Governing Board |
| Effective Date:   06/16 | Governing Board Approval Date: | 06-16 |
| Page:   3 of 10 | | |

1.  In recognition that homeless patients face particular barriers to ongoing medical care and have complex medical and social service needs, the discharge planning process will begin as soon as possible after hospital admission.

2.  The treating Physician is responsible for determining clinical stability for discharge and identifying acute post-hospitalization medical needs.

3.  A social services ER Nurse /Designee needs assessment for homeless inpatients will be conducted by Case Manager/Social Worker if available otherwise by and ER Nurse. In the Emergency Department, Nursing staff or the treating Physician will conduct the social services needs assessment.

    a.  The Social Worker ER Nurse/Designee will communicate with the patient's County Case Worker (if available) in order to prepare the patient for return into the community and the linkage of the individual to essential community services and support.

    b.  Social services ER Nurse/ Designee needs may also include the need for the following referrals: food, shelter, substance abuse treatment, treatment for (or protection from) domestic violence. The hospital may also provide assistance with Medi-Cal enrollment, and additionally, the Social Worker will assess patients to see if they qualify for state, welfare, or federal programs (e.g., SSI, state disability, food stamps, SSA). The Social Worker will educate and assist patients how to apply at the local Department of Public Social Service or Department of Social Security Office.

4.  A discharge plan for transition to the community will be developed with the participation and agreement of the patient, or appropriate surrogate decision-maker, and will be appropriate to the patient's medical and social services needs.

    a.  Prior to discharge, the attending nurse or the discharge planner/Case Manager or Designee will complete the Homeless Discharge Checklist (Attachment 2) with signatures, dates and times.

    b.  All Treat and Release / Observation / inpatients must have a viable discharge plan with follow-up clinical care plan, placement, social services referrals and/or resources, and transportation arrangements, as appropriate to the patient. The Social Worker / Case Manager/Designee or Nurse shall prepare the patient for discharge and ensure that all necessary actions are taken to initiate the plan.

    c.  As needed, the patient will be provided with a list of available community resources and a contact number for internal Social Services assistance if any questions arise.

    d.  The Staff Nurse/Designee, in collaboration with the Social Worker and/or Case Manager/Designee shall ensure that the discharge instruction form is completed. The Staff Nurse/Designee will review the discharge instructions with the patient and ensure that the patient has verbalized understanding and agreement with the discharge plan. The Unit Nurse/Designee will ensure that the patient has signed the discharge instructions pursuant to Section I.4.n. In the event the patient refuses to sign the discharge instructions, document the refusal to sign in the medical record.

| ❀ GARDENS REGIONAL HOSPITAL MEDICAL CENTER | Title: | Homeless Discharge Planning Policy |
|---|---|---|
| | Manual: | Hospital Wide |
| | Scope: | |
| | Issued By: | Aileen Tamares, CNO |
| Policy Number: | Approved By: | Governing Board |
| Effective Date:    06/16 | Governing Board Approval Date: | 06-16 |
| Page:    4 of 10 | | |

e.  Once Homeless Discharge Checklist is completed, the attending nurse or the Discharge Planner/Case Manager or Designee will contact the Administrative Nursing Supervisor / ED Charge Nurse to review the checklist for final approval of the discharge.

f.  The ED Charge Nurse / House Supervisor / Designee will document and review the discharge plan, with the date and time.

5.  Barriers to appropriate discharge will be identified and addressed.

a.  For patients in need of ongoing inpatient care (e.g., specialized hospitalization, skilled nursing), Case Managers will arrange transfers in compliance with hospital policy and applicable law.

b.  For patients with assistive care needs (e.g., assistive living, recuperative beds, board & care) or follow-up medical or mental health needs, Nursing staff (Emergency Department) / Case Managers / Social Workers assist the patient with referral options.

c.  Social Worker will provide assistance with referrals to service providers and government agencies for needs identified in the social services needs assessment conducted pursuant to Section D.3. if accepted by the patient.

d.  If the patient's discharge orders include medical equipment (e.g. canes or walkers) or a prescription for medication, refer to local Goodwill or Salvation Army for DME or refer to County Hospital for prescriptions.

6.  Dispensing of Discharge Medications:

a.  The treating Physician will determine which medications are needed in order to manage the current medical care needs of the homeless patient prior to discharge from the Emergency Room or acute care settings.

b.  The Case Manager/Discharge Planner or designee is responsible for transitioning the patient to the community for follow-up care, medication management or other medical care needs. The documentation should include that a list of community-based clinics have been provided to the patient, in order to obtain additional medications and medical care.

7.  Patients will be discharged with appropriate clothing, based on the season.

8.  Documentation of discharge planning pursuant to Section I., Medical Record Documentation Elements below.

**For patients being transported to a Homeless shelter:**

9.  If a patient is being transported to a Shelter, document the time, date, name of the shelter and name of the person you spoke to and what was agreed upon. Bus Tokens or taxi vouchers may be provided by the Hospital

10.  Placement of patients in shelters outside of the geographic area where the patient normally resides must be authorized by the Administrator-On-Call before any transport takes place.

| ![Gardens Regional logo] GARDENS REGIONAL | Title: | Homeless Discharge Planning Policy |
|---|---|---|
| | Manual: | Hospital Wide |
| | Scope: | |
| | Issued By: | Aileen Tamares, CNO |
| Policy Number: | Approved By: | Governing Board |
| Effective Date:    06/16 | Governing Board Approval Date: | 06-16 |
| Page:              5 of 10 | | |

11. Patients shall not be discharged to the area defined within attachment 5, which may be updated as necessary.

   <u>For transportation to battered persons shelter</u>:

12. In certain situations, although a patient may be categorized as homeless, separate transportation arrangements may need to be made for battered persons in order to protect patient and facility anonymity.

13. The ED Charge Nurse/ House Supervisor / Designee will place a copy of the Homeless Discharge Checklist in House Supervisor's office a place accessible for auditing and send a copy to Administration. Forms to be kept in a specially designated folder.

14. Again, if there are any questions regarding the discharge plan being safe and secure, the discharge must be delayed.

E. <u>Referral to Shelters</u>

   1. Social services /ER Nurse/Designee will assist all patients who request shelter referral post-discharge, which should include a list of community shelters and resources available to the patient in the area of residence.

   2. The Social Worker /ER Nurse /Designee will ascertain the patient's wish for a shelter referral and identify the patient's current geographic residence and preferred geographic residence, if they are different. In addition to a shelter, other community organizations serving the homeless may also be considered to assist with shelter alternatives. Efforts will be made to secure shelter / community-based housing within close proximity to the area where the patient resides, unless the patient makes a specific request for a different location.

      a. The Social Worker/ER Nurse/Designee contacts a shelter for space availability and informs the shelter of the fact that the shelter is being discharged from the hospital, informs them of the ability of the patient to provide self-care and their cognitive intactness, and that the patient will have written discharge instructions with any follow-up care recommended. All questions are reviewed with the shelter or community-based housing, as per the specific shelter or community housing policy. The Social Worker documents the name of the shelter, the contact person, date and time and phone number, as able. (Shelter Contact Checklist – Attachment 1)

      b. The Social Worker/ER Nurse /Designee informs the patient of the arrangements made and any special instructions regarding accessing shelter services, assures that the patient agrees to the arrangements and may need to advise the patient that a bed is not guaranteed, as placement is usually on a first-come first-serve basis.

      c. If the patient is deemed to be cognitively intact to negotiate the community and is not requesting shelter placement, then the Social Worker/Case Manager may secure a bus token or other public services to transport the patient to the desired location.

| | Title: | Homeless Discharge Planning Policy |
|---|---|---|
| **GARDENS REGIONAL** HOSPITAL AND MEDICAL CENTER | Manual: | Hospital Wide |
| | Scope: | |
| | Issued By: | Aileen Tamares, CNO |
| **Policy Number:** | **Approved By:** | **Governing Board** |
| **Effective Date:**    06/16 | **Governing Board Approval Date:** | 06-16 |
| **Page:**         6 of 10 | | |

3. In the event a patient needs to be transferred outside of the Hospital area where he/she has received treatment, escalate the situation to the Administrator/Designee for approval before transport and document.

4. The Social Worker/ER Nurse/Designee will locate available shelter options and discuss these options with the patient.

5. The Social Worker/ER Nurse/ Designee will assure that the patient meets the shelter's criteria for acceptance (e.g., gender limitations) and is appropriate to those criteria (e.g., patient expresses willingness to abide by prohibitions on substance use, and is able to follow instructions from the shelter to access shelter services, such as complying with "pick- up" location restrictions for shelters that do not permit direct transportation to the shelter). The Social Worker/ER Nurse/Designee will document the patient's agreement to the shelter and the shelter's acknowledgment that it can provide shelter to the patient (for shelters that are willing to have direct discussions with hospitals). At no time shall Protected Health Information be shared with shelter for acceptance, unless the patient gives written permission

6. Social Workers/Case Managers/Designee will follow the same contact and placement procedures for all shelters.

F. Community Resources

1. Gardens Regional Hospital will establish and build relationships with community service providers to assure accurate contact information and acceptance criteria for community services and to maximize resource availability for Gardens Regional Hospital patients.

G. Accountable Executive

1. The CEO/CNO at Gardens Regional Hospital is accountable for assuring ongoing compliance with this Protocol.

2. The ED Charge Nurse/ House Supervisor or Designee, upon notification of a pending discharge of a homeless patient, will go to the patient's location to review discharge plan, review and validate Shelter Checklist (as appropriate), and Homeless Discharge Checklist (as appropriate), ensuring that the elements of the protocol have been satisfied prior to calling Administrator-On-Call or appropriate designee.

3. In the event that a patient is taken into police custody, expires, elopes or signs out against medical advice (AMA), transfers to a SNF or transfers to a psychiatric facility the ED Charge Nurse /House Supervisor or Designee must be notified and the Administrator-On-Call does not need to be contacted for approval of the discharge plan unless there is an unusual occurrence associated.

H. Training and Education

1. Gardens Regional Hospital will establish initial and periodic training reasonably designed to ensure that hospital physicians, clinical staff, social services and discharge planning personnel, and other hospital staff who are most likely to be involved in discharge planning and discharge of homeless patients receive training regarding the procedures required by this policy.

| | | Title: | Homeless Discharge Planning Policy |
|---|---|---|---|
| **GARDENS REGIONAL** | | Manual: | Hospital Wide |
| | | Scope: | |
| | | Issued By: | Aileen Tamares, CNO |
| Policy Number: | | Approved By: | Governing Board |
| Effective Date: | 06/16 | Governing Board Approval Date: | 06-16 |
| Page: | 7 of 10 | | |

2. The above personnel will be provided training in the following areas, as applicable to their role in the discharge planning process:

   a. Implementation and application of the Homeless Patient Discharge policy.

   b. The nature and extent of homelessness in Los Angeles County

   c. The mental and physical problems typically faced by homeless persons Los Angeles County.

   d. Assessing the presence or lack of cognitive intactness in homeless persons who present for treatment

   e. The post-discharge care issues that distinguish the discharge planning for homeless persons from that of the general patient population

   f. The need for effective communication with homeless persons regarding their post-discharge care

   g. The location and limitations of shelters or services for homeless persons in the City of Los Angeles

   h. The nature, location and limitations of homeless shelters or services in other areas in Los Angeles County

   i. Appropriate referrals to government agencies and non-government service providers that can assist homeless patients in obtaining benefits and other supportive services, including, without limitation, engaging and referring appropriate cases during the hospital stay to programs, such as those offered through the Department of Mental Health, where housing, medical care, food and clothing may be available to the homeless patient during her/his stay in the hospital or immediately following discharge.

   j. The nature and extent of the hazards facing the homeless in the City of Hawaiian Gardens and surrounding areas.

   k. The circumstances and procedures under which a surrogate decision maker may be required, including, but not limited to, appointment of a conservator or public guardian.

   l. Training reference materials will be available at Gardens Regional Hospital.

3. The hospital will establish a process by which to monitor and reconcile training provided to existing staff and to new employees to ensure that relevant staff are trained.

I. Medical Record Documentation Elements

Medical record documentation will include the following elements as appropriate, inclusive of the Shelter Contact Checklist, Homeless Discharge Checklist, along with "discipline specific" documentation forms:

| | | Title: | Homeless Discharge Planning Policy |
|---|---|---|---|
| **GARDENS REGIONAL** HOSPITAL & MEDICAL CENTER | | Manual: | **Hospital Wide** |
| | | Scope: | |
| | | Issued By: | Aileen Tamares, CNO |
| Policy Number: | | Approved By: | **Governing Board** |
| Effective Date: | 06/16 | Governing Board Approval Date: | 06-16 |
| Page: | 8 of 10 | | |

1. Documentation of mental status assessments performed.

2. Documentation of Cognitive Intactness, meaning the absence of cognitive impairment that could interfere with the patient's ability to understand and make informed decisions about treatment options and to follow post-discharge care plans or to effectively negotiate the community in which he or she resides. Assessment will consider the following:

   a. Is the patient alert, oriented (to person, place, circumstance and time), and able to provide self-care and secure needed follow-up medical care, food, clothing and emergency shelter, or effectively utilize these if they are provided for him/her?

   b. Patient's capacity to understand the following:

      i. The reason for his/her hospital visit

      ii. That he/she is being discharged and will be leaving the hospital

      iii. Medical regimen of medications/wound care/diet, etc.

      iv. Plan for follow-up medical care (e.g., where to go for suture removal, how to make follow-up appointments at county clinic)

      v. Other elements of the discharge plan

   c. The patient's living circumstances and available support system post-discharge

   d. The complexity of the discharge plan to be implemented

3. Social services/ER Nurse/Designee needs assessment for all inpatients, and as requested by the Emergency Department. The needs assessment may include the need for food, shelter, substance abuse treatment, treatment for (or protection from) domestic violence, vocational assistance, Medi-Cal enrollment, eligibility for Department of Mental Health services, application for financial assistance (Social Security Insurance, etc.) or other supportive services.

4. Documentation of discharge plan and continuation of care needed post discharge (addressing medical and mental health needs, including substance abuse treatment as applicable):

   a. Clear, concise description of where patient lives and preference of living area post-discharge.

   b. Plan of care discussion between patient (including authorized representative if applicable and family or significant other as authorized by patient), and attending physician, Registered Nurse, Case Managers, Social Worker– using specific names of each person.

   c. Detail of agreements made amongst patient and Health Care Team.

   d. Barriers to be addressed and outcomes of such.

| | | Title: | **Homeless Discharge Planning Policy** |
|---|---|---|---|
| **GARDENS REGIONAL** | | Manual: | **Hospital Wide** |
| | | Scope: | |
| | | Issued By: | **Aileen Tamares, CNO** |
| **Policy Number:** | | Approved By: | **Governing Board** |
| **Effective Date:** | 06/16 | **Governing Board Approval Date:** | 06-16 |
| **Page:** | 9 of 10 | | |

e.  Documentation of the discharge plan is to include complete discharge instructions with the patient's name and signature, documentation of patient's cognitive intactness and documentation that the patient understands and agrees with the discharge plan, including medications and follow-up care.

f.  Condition of patient upon discharge – including ability to ambulate (or operate wheelchair, etc.) adequately and whether patient is adequately clothed.

g.  Discharge instructions given and to whom.

h.  Documentation regarding discharge destination, for all patients, regardless of destination:

    i.  Name of facility (as applicable)

    ii.  Transportation to be provided

    iii.  Accepting person at destination (as applicable)

i.  Medical equipment provided or referrals to the patient

j.  Medications provided to the patient at discharge

k.  Supplies provided to the patient at discharge

l.  Community resources provided

m.  For shelter placement, Social Services/ER Nurse/Designee documentation will include:

    i.  Completion of the Shelter Checklist (Attachment 1),
    ii.  Documentation of communications with shelters

    iii.  Shelter acceptance criteria and whether patient meets that criteria and is able to follow instructions from the shelter to access services,

    iv.  Patient's agreement/refusal to shelter placement

    v.  The shelter's acknowledgment that it can provide shelter to the patient (for shelters that are willing to have direct discussions with hospitals)

n.  Documentation of patient agreement or disagreement with the discharge plan, or refusal of assistance, resources, or element of the discharge plan. For patient refusal, the record should document that the patient understands the consequences of refusing the proposed interventions and discharge plans.

o.  Completion of Belongings Inventory, and documentation that belongings have been returned to patient.

p.  Documentation that the Discharge Plan was reviewed and approved by the ED Charge Nurse /Nursing Supervisor's or Nurse Manager/ /Designee, prior to patient leaving the

| | Title: | Homeless Discharge Planning Policy |
|---|---|---|
| **GARDENS REGIONAL** | Manual: | Hospital Wide |
| | Scope: | |
| | Issued By: | Aileen Tamares, CNO |
| Policy Number: | Approved By: | Governing Board |
| Effective Date:    06/16 | Governing Board | |
| Page:    10 of 10 | Approval Date: | 06-16 |

hospital (inclusive of the Administrator-On-Call/Designee's name, date and time of review and approval), and the Homeless Discharge Checklist (as appropriate) was completed.

## ATTACHMENTS – FORMS AND RECORDS

The following attachments will be used as documentation tools:

Attachment 1:  Shelter Checklist - To be used when a patient has been referred to a shelter. A copy of this form is to be (1) Given to the patient; (2) Maintained in the medical record; (3) Sent to Administration.

Attachment 2: The Medical Center Homeless Discharge Checklist - To be completed for homeless patients. This form does not need to be completed when a patient is transferred to a Skilled Nursing Facility, another acute medical, psychiatric, rehabilitation, or inpatient drug rehabilitation facility, taken into police custody, expires, elopes, or signed out against medical advice (AMA) does not agree with the discharge plan and refuses to sign. This form is to be kept in a place easily accessible for auditing and is a permanent part of the medical record.

Attachment 3: The Financial Assistance Program, Charity Care Application - Admitting Managers, will initiate the financial screening process within 24 hours of admission and provide the Charity Care Application to the patient. Copy to be placed in chart.

Attachment 4: Homeless Log - A standardized Regional Homeless Log is to contain an entry for all Treat and Release Emergency Department patients and Inpatients.   Log to be kept on a common drive for all involved staff to access and update. On at least a quarterly basis, a sampling of the logs shall be audited by a member of the Quality and Risk Management Department.

Attachment 5: Geographic map of "Safety Zone/Skid Row Area" in Downtown Los Angeles.

## RELATED POLICIES

| Revision Date | Review Date | MD Director Signature (if applicable) | Overview of Changes | Owner's Initials |
|---|---|---|---|---|
| | | | | |
| | | | | |

# Gardens Regional Hospital and Medical Center

### Attachment 1: Shelter Contact Checklist

Patient Name: _____

Medical Record Number: _____

| 1. | Patient's Address/ Location of Preference: | |
|---|---|---|
| 2 | Accepting Shelter: | Shelter Name: _____<br><br>Shelter Address:_____<br><br>Shelter Phone Number: _____<br><br>Shelter            Contact            Person:<br><br>_____ |
| 3. | Requirements of Accepting Shelter (i.e., waiting in line, specific time format):<br><br>Special Instructions: | |
| 4a. | Patient Agrees to Shelter: | Patient  Signature:_____Date:<br><br>_____ Patient Name (printed): _____ |
| 4b. | Patient Declines Shelter: | Patient  Signature:_____Date: _____<br><br>Patient Name (printed):_____ |
| 5. | Hospital Approval: | ☐ I attest that:<br><br>• The medical record documents that the patient is cognitively intact and able to negotiate the community.<br><br>Manager/House Supervisor Signature:_____Date:_____ P |

3/16

## Gardens Regional Hospital and Medical Center

### Attachment 2: Homeless Discharge Checklist

**Patient Name:**_____   **Medical Record Number:** _____

**Note:** This form does not need to be completed when a patient is transferred to a Skilled Nursing Facility, another acute medical, psychiatric, rehabilitation, or inpatient drug rehabilitation facility, taken into police custody, expires, elopes, or signed out against medical advice (AMA).

| Discharging Nurse: | Discharging Case Manager (if applicable): |
|---|---|
| Discharging Physician: | Discharging Social Worker (if applicable): |

| Transportation/Destination | |
|---|---|
| *Destination:* _____ | ☐ |
| *To Destination By:*  ☐ Bus tokens ☐Taxi ☐Walking ☐Friend/Family   *Other:* _____ | ☐ |
| *Comments:* | |

| Mental Status | |
|---|---|
| Patient alert, oriented, and able to provide self-care, secure follow-up care, negotiate community | ☐ |
| Mental status assessed at discharge by MD either; Nursing, Social Worker, Case Manager/Designee | ☐ |
| Psychiatric consult, as indicated | ☐ |

| Post Discharge Care | |
|---|---|
| Community referrals made and/or references provided, as appropriate | ☐ |
| Discharge instructions given; Patient understands and agrees.  If patient refuses to sign, refusal documented | ☐ |
| Patient ambulatory or independent with mobility device | ☐ |
| Follow-up plan of care documented on the discharge instructions | ☐ |
| Medication w/ instructions provided, as ordered | ☐ |

| Miscellaneous | |
|---|---|
| Medical equipment provided as ordered | ☐ |
| Patient is appropriately clothed | ☐ |
| Patient's belongings returned | ☐ |
| All IV access lines removed | ☐ |
| All name bands removed | ☐ |
| Vital signs stable | ☐ |
| *Other pertinent information:* | |

| Forms Completed | |
|---|---|
| Charity Care Financial Assistance Program Application completed (if applicable) | ☐ |
| Shelter Checklist completed | ☐ |

| Approving Nurse Mgr./House Supervisor (Sign): | | Date: | Time: |
|---|---|---|---|
| Approving Administrator/Designee (Sign): | Title: | Date: | Time: |

OR

# Gardens Regional Hospital Medical Center

## HOMELESS LOG

| A | B | C | D | E | F | G | H | I | J | K |
|---|---|---|---|---|---|---|---|---|---|---|
| MRN | Dept. of Arrival (ER,In-patient, Other; Not transferred to) | Admit Date (Date PT. admitted to dept.) | Discharge Date | Reason for delay in Discharge )i.e., No Shelter, No SNF, No transport PT. non-cooperative) | Discharge Disposition (Where PT. went ie. Shelter, SNF, street, friend, etc. and with name and address in file) | Transportation (eg: hospital van, priv. vehicle, taxi, none, etc.) | Case Coordinator /Social Worker (Person or persons working in this case) | (1) Shelter Approval Confirmed? (2) Name of persons working on this case) | (1) Homeless Discharge Informed Consent signed and witnessed, (2) Homeless Discharge Plan and Checklist Complete (Y or N/A). NOTE: Must answer both | Comments: add pages as needed |
| 1 | | | | | | | | | | |
| 2 | | | | | | | | | | |
| 3 | | | | | | | | | | |
| 2 | | | | | | | | | | |
| 4 | | | | | | | | | | |

Log submitted by: _____    Date: _____

I attest that the monthly log has been reviewed and the issues are addressed and /or resolved to the best of ability.