1

**STEVEN G. POLARD** (State Bar No. 90319)
spolard@eisnerlaw.com
EISNER JAFFE
9601 Wilshire Boulevard, Suite 700
Beverly Hills, California  90210

Telephone:  (310) 855-3200
Facsimile:  (310) 855-3201

Attorneys for Interested Party and Court
Approved Back Up Bidder,
LE' SUMMIT HEALTHCARE, LLC

2

3

4

5

6

7

8

9

10

11

*EISNER JAFFE*
*9601 WILSHIRE BOULEVARD, SUITE 700*
*BEVERLY HILLS, CALIFORNIA  90210*

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

12

| In re: | **CHAPTER 11** |
|---|---|

13

GARDENS REGIONAL HOSPITAL AND
MEDICAL CENTER, INC. dba GARDENS
REGIONAL HOSPITAL AND MEDICAL
CENTER,

**Case No. 2:16-bk-17463-ER**

14

[Honorable Ernest M. Robles]

15

16

Debtor.

**DECLARATION OF JOAN LEE,
PRESIDENT OF THE APPROVED BACK
UP BIDDER LE SUMMIT HEALTHCARE,
LLC,  IN OPPOSITION TO EMERGENCY
MOTION TO AUTHORIZE CLOSURE OF
THE HOSPITAL**

17

18

19

20

Date: January 19, 2017
Time:   1:00 P.M.
Courtroom: 1568

21

22

23

24

25

26

27

28

1

1

2

3

## DECLARATION OF JOAN LEE

I, Joan Lee, declare as follows:

1.      I am the President and CEO of Le' Summit Healthcare LLP ("Approved Back Up Bidder") which is the approved Back Up Bidder with respect to the original sale of the hospital under the auspices of this Court last Summer.  I have been personally involved in the bidding for the Debtor, Debtor in Possession ("the Hospital") in the within case since the original bidding for the hospital assets last Summer. If called upon to testify to the truth of the matters asserted in this Declaration, I could and would be able to do so competently of my own personal knowledge.

2.      The original successful bid of the lead bidder, Strategic for whatever reasons was not consummated after a six month negotiation which only recently was concluded in the last several weeks, with variations on a new possible purchase under discussion.  My company, the Approved Back Up Bidder was no longer bound to purchase the Hospital assets on the original terms under the terms of the Sale Order as certain time milestones had passed.

3.      Notwithstanding that we were no longer bound by the original terms, and inspite of what we understand Strategic has successfully asserted to the Debtor as material adverse changes, my company has attempted in good faith to negotiate new terms for the purchase of the Hospital assets, in the context of keeping the Hospital open, but owned by my for profit company.  Unlike Strategic, we as the Back Up Bidder approved by the Court have been willing to bear the burden of the extreme financial burden imposed by the Attorney  General's Office with respect to the provision of charitable care as a condition to the purchase of the assets—almost $10,000,000 over time of free care to people needing charitable care.

4.      Our present offer is attached hereto and incorporated hereat as Exhibit "A". This offer tracks almost all of the last proposal made by the seller Hospital.   The key differences are that for the advance of cash funds to finance the projected cash flow shortfall for the period prior to Closing while we obtain expedited AG approval of our purchase, those funds would be credited in our favor against the $2,000,000 that we would be paying at Closing and if the deal doesn't close, there would be a new DIP for the pre-Closing advances junior to the existing DIP.  If we do not get this DIP it

EISNER KAHAN
GORRY CHAPMAN ROSS & JAFFE
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA  90210

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JOAN LEE

Case No. 2:16-bk-17463-ER

EISNER KAHAN
GORRY CHAPMAN ROSS & JAFFE
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210

1    strikes us as particularly unfair because Strategic was able to get a DIP priority for over $3 million

2    dollars when the whole process prior to a closing that never happened ended up being stretched out

3    over about six months which in effect made it impossible for us to go forward with any variation of

4    our approved Back Up Bid.

5        5.    We were informed last week by the investment banker for the Hospital, Eric

6    Weissman, by admission that the Board of Directors want to keep the Hospital open. I have been

7    told that the medical staff and doctors of the Hospital wish to keep the Hospital open.   Two union

8    representatives for the workers at the Hospital want the Hospital to remain open. If given an

9    opportunity, it is my belief that the community wants the Hospital to remain open.

10       6.    However, we have been told by the Hospital's counsel that since our deal would not

11   cover as much administrative as the two apparent competing bids premised on a closed hospital

12   (neither of which want to reopen as an acute care Hospital, and neither of which wish to reopen an

13   ER the Hospital does not want to embrace our offer and would rather have the Hospital closed. A lot

14   depends on the true level of accounts receivable and the ability of the Unsecured Creditors'

15   Committee to reduce the purported secured claims, which in the end might be enough to cover

16   everything, but it might not.

17       7.    We therefore are requesting that the Court approve this revised Back Up Bid to close

18   the purchase of the Hospital before it is too late to keep the Hospital open.

19       8.    I declare under penalty of perjury under the laws of the United States of America and

20   the State of California that the foregoing is true and correct. This Declaration was executed by me on

21   this _____day of January, 2017, at Los Angeles, California.

22

23   _____
     Joan Lee

24

25

26

27

28

DECLARATION OF JOAN LEE

Case No. 2:16-bk-17463-ER

# EXHIBIT A



# EISNER JAFFE

A Professional Corporation

January 18, 2017

*Via-E-Mail*
*eweissman@wilshirepacificadvisors.com*
Mr. Eric Weissman
Wilshire Pacific Capital Advisors, LLC
8447 Wilshire Blvd., Suite 202
Beverly Hills, Ca 90211

Dear Eric:

This letter summarizes certain key terms and conditions of the nonbinding proposal of our client, Le Summit Healthcare ("Le Summit" or the "Buyer"), to acquire certain assets of Gardens Regional Hospital and Medical Center ("GRHMC" or the "Seller"). This letter makes changes to the Seller's own proposal to Buyer dated January 16, 2017:

1.  Purchase Price.

    a.  The Buyer shall pay $2 million in cash at closing.

    b.  The Buyer shall assume the cure obligation of the hospital lease in an amount up to $235,000.

    c.  The Buyer shall pay the Medicare settlement of no greater than $600,000.

    d.  The Buyer shall pay the Medi-Cal settlement of no greater than $50,000.

    e.  The Buyer shall assume the accrued Paid-Time Off Liability of approximately $400,000 to 500,000.

    f.  The Buyer shall assume post-petition obligations to ordinary course vendor on normal terms that the Buyer deems necessary for its ongoing operations.

    g.  The Buyer shall assume the QAF liability, as may be required by the California Attorney General, as a condition of continued participation in the QAF program on a going forward basis (thus entitling the Buyer to the proceeds therefrom).

2.  Funding of Current Operating Losses.

EJ

Mr. Eric Weissman
January 18, 2017
Page 2 of 2

a. The Buyer shall advance ("Advances") up to $650,000 per month for the purpose of funding any current operating losses in bankruptcy during the period that the Buyer's application for approval of the sale transaction is pending approval from the Attorney General. Maximum amount of advances would be $1,300,000. Buyer will control all disbursements during the pre-Closing period which will be used for operational expenses only.

b. The parties intend that this approval be obtained within 60 days of submission of the application thereof; however, the parties understand that the maximum statutory period, including extensions, may be up to 105 days.

c. Under no circumstances shall the Buyer be responsible for advances in excess of $650,000 per month. The sum of all advances shall be credited in favor of the Buyer against the $2,000,000 sum otherwise due at Closing, so only the net amount is then owed at Closing.

d. If the AG does not approve Buyer and/or if the sale does not close Seller will repay Buyer the Advances on a DIP basis behind only the existing DIP.

3. <u>Purchased Assets</u>. The acquisition shall include all hospital assets, both tangible and intangible, except the Excluded Assets. The purchased assets shall be free and clear of all liens, claims and encumbrances, except those related to the interest of the landlord under the hospital lease and any equipment leases.

4. <u>Excluded Assets</u>. The acquisition shall exclude :

a. Cash

b. Pre-Closing Accounts Receivable, except that all Accounts Receivable arising from the Medical Detoxification Unit ("MDU") being brought to the hospital by Buyer's Management Company will be retained by Buyer provided Buyer will pay for the variable costs associated with the operation of the MDU.

c. Any claims or causes of action against third parties arising from or related to the period prior to closing.

5. <u>Management Services Agreement</u>. The Buyer and Seller shall enter into a Management Services Agreement ("MSA") based substantially on the same terms and conditions as the Strategic Global Management MSA, except, however, that the Buyer's proposed initiative related to a new Medical Detoxification Unit ("MDU") shall be treated as a 100% passthrough to the Buyer's designated management company such that all revenue and all variable expenses related to the MDU shall be accrue to the benefit of and be borne by the Buyer. For avoidance of doubt, any receivables generated under the new MDU program shall not be subject to any existing lien on the hospital's accounts receivable.



6. <u>Asset Purchase Agreement</u>.  The Buyer and Seller shall negotiate a definitive Asset Purchase Agreement that is consistent with this term sheet.

7. <u>Attorney General Conditions</u>.  Any new or previously received conditions on the sale imposed by the California Attorney General shall be subject to the Buyer's review and subject to its reasonable discretion.

8. <u>Insurance</u>.  In connection with its involvement in the management of the hospital, the Buyer shall purchase and obtain its own D&O and E&O insurance policy that covers its management of the hospital.

9. <u>Governing Law</u>.  The APA and this term sheet shall be governed by the laws of the State of California except as governed by the bankruptcy code.

*(Signature page to follow)*

Sincerely,
Le' Summit Healthcare LLC

By: J. Lee, President