SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
JOHN A. MOE, II (Bar No. 066893)
john.moe@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone:   (213) 623-9300
Facsimile:   (213) 623-9924

Attorneys for Debtor,
GARDENS REGIONAL HOSPITAL
AND MEDICAL CENTER, INC.

**FILED & ENTERED**

**JAN 20 2017**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** gonzalez **DEPUTY CLERK**

**CHANGES MADE BY COURT**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>GARDENS REGIONAL HOSPITAL AND MEDICAL CENTER, INC., dba GARDENS REGIONAL HOSPITAL AND MEDICAL CENTER,<br><br>Debtor. | Case No. 2:16-bk-17463-ER<br><br>Chapter 11<br><br>**ORDER ON DEBTOR'S EMERGENCY MOTION TO AUTHORIZE CLOSURE OF HOSPITAL**<br><br>Hearing:<br>Date:         January 19, 2017<br>Time:        1:00 P.M.<br>Courtroom: 1568<br>Place:        U.S. Bankruptcy Court<br>                  255 East Temple Street<br>                  Los Angeles, California 90012<br><br>Judge:       Hon. Ernest M. Robles |

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES, THIS 19th DAY OF JANUARY, 2017:**

The *Debtor's Emergency Motion To Authorize Closure of Hospital* (the "Emergency Motion") came on regularly for hearing, before this Court, at 1:00 p.m. on Thursday, January 19, 2017. Samuel R. Maizel and John A. Moe, II, of Dentons US LLP, appeared on behalf of the Debtor, Gardens Regional Hospital and Medical Center, Inc. Steven G. Polard, of Eisner Jaffe,

102370812\v-1

appeared on behalf of Lé Summit Healthcare, LLC ("Lé Summit"). Other appearances are as reflected in the record.

Having considered the Debtor's Emergency Motion, the Declaration Of Joan Lee, President Of The Approved Backup Bidder Lé Summit In Opposition To The Emergency Motion, the arguments of counsel made at the hearing, the record in these proceedings, and good cause appearing therefor, the Court hereby makes the following findings:

1) The closing of the hospital constitutes use of estate property, outside the ordinary course of business, within the meaning of Bankruptcy Code §363(b). The Debtor's decision to close the hospital is a proper exercise of the Debtor's business judgment. The Debtor's existing operations do not generate sufficient cash flow to keep the hospital open. To maintain operations, the Debtor would be required to obtain additional debtor-in-possession ("DIP") financing. No lenders will extend credit to the Debtor unless the credit is secured by a lien senior in priority to the liens of the Debtor's pre-petition secured creditors. Under the circumstances, the Court lacks the statutory authority to authorize the Debtor to obtain additional credit priming the liens of the secured creditors. The reason is that given the value of the Debtor's assets, the liens of secured creditors would not be adequately protected if the Court authorized the incurrence of any additional secured credit.

2) The non-binding proposal of Le Summit to lend the Debtor $1.3 million, secured by a lien priming the secured creditors, is not a viable option to sustain the hospital's operations. Le Summit postulated that secured creditors would remain adequately protected notwithstanding an additional priming lien based upon Le Summit's proposal to open a new detoxification unit at the hospital. Le Summit asserted that the proposed new detoxification unit would generate sufficient receivables to provide adequate protection to the secured creditors. Le Summit failed to establish that it had the ability, in a period of only two months, to open an entirely new medical services unit and then ramp up the operations of the unit, such that receivables to offset an additional $1.3 million in additional borrowing would be generated. The fact that Le Summit was not willing to

extend credit to the Debtor on an unsecured basis undercuts Le Summit's rosy projections for the hypothetical detoxification unit. Finally, in declaration testimony submitted by Joan Lee, even Le Summit acknowledged the substantial risks accompanying its proposal: "A lot depends on the true level of accounts receivable and the ability of the Unsecured Creditors' Committee to reduce the purported secured claims, which in the end might be enough to cover everything, but it might not." Lee Decl. at ¶6 [Doc. No. 628]. In sum, the credit offered by Le Summit could not be approved by the Court consistent with the requirements of the Bankruptcy Code.

3) In view of the lack of funds to continue operations, and the inability of the Debtor to obtain additional credit, the vote by the Debtor's Board of Directors ("Board") to seek closure of the hospital was entirely consistent with the Board's fiduciary duties, imposed under state law, to uphold the hospital's mission of sustaining public health and welfare. Public health and safety would be jeopardized if the Debtor continued to admit new patients when it lacks funds to adequately sustain operations. In fact, the Board would be acting in violation of its fiduciary duties to the community if it attempted to continue operating the hospital despite the lack of sufficient cash to sustain operations.

Based upon the foregoing findings, and the findings set forth on the record at the hearing, it is HEREBY ORDERED that the Emergency Motion is granted. The Debtor is authorized to take such action as is required to close Gardens Regional Hospital and Medical Center, Inc.

### 

Date: January 20, 2017

Ernest M. Robles
United States Bankruptcy Judge